# IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF ALABAMA, EASTERN DIVISION

|  |  |  |
|---|---|---|
| VFS LEASING CO. | ) | 2006 JUL 19  A 9: 22 |
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) | CIVIL ACTION NO. |
| vs. | ) |  |
|  | ) | 3:06cv638-SRW |
| G.F. KELLY, INC. d/b/a KELLY | ) |  |
| TRUCKING; and GUY KELLY, | ) |  |
|  | ) |  |
| Defendants | ) |  |

## COMPLAINT

**COMES NOW the Plaintiff,** VFS Leasing Co. ("VFS"), and respectfully avers as follows:

### Parties and Jurisdiction

1. VFS is a Delaware business trust.

2. Upon information and belief, Defendant G.F. Kelly, Inc. ("GFK") d/b/a Kelly Trucking, is a corporation organized and existing under the laws of the State of Alabama with its principal place of business in Randolph County, Alabama.

3. Upon information and belief, Defendant Guy Kelly ("Kelly") is a resident of the State of Alabama.

4. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 because complete diversity exists between the Plaintiff and the Defendants and the amount in controversy exceeds $75,000 exclusive of interest and costs.

### Factual Allegations

5. VFS is the successor in interest to Volvo Commercial Finance LLC The Americas. Volvo Commercial Finance LLC The Americas is the successor in interest to Volvo

1

Commercial Finance Inc. The Americas, formerly known as Volvo Truck Finance North America Inc. Volvo Truck Finance North America Inc. is the named lessor on the master lease agreements that form the basis of this Complaint. VFS will refer to the lessor throughout this Complaint.

6.      On or about February 6, 2001, Defendant Kelly executed a Continuing Personal Guaranty (the "Guaranty") whereby Kelly guaranteed all liabilities or obligations that GFK had incurred or may incur that shall be due and payable to VFS. *See Guaranty*, attached hereto as **Exhibit A**.

7.      On or about February 11, 1997, VFS entered into its first Master Lease Agreement ("Master Lease 1") with GFK. *See Master Lease 1,* attached hereto as **Exhibit B**.

8.      On or about February 27, 2001, GFK executed Schedule No. 411 of Master Lease 1, thereby leasing from VFS three 2001 Volvo VNL64T610 Tractors, vehicle identification numbers:

    a)      4V4NC9RHX1N325015;
    b)      4V4NC9RH81N325014; and
    c)      4V4NC9RH61N325013

(hereafter collectively referred to as the "Schedule 411 Tractors."). *See* Exhibit B at Schedule No. 411.

9.      On or about March 11, 2001, GFK executed Schedule No. 412 to Master Lease 1, thereby leasing from VFS two 2001 Volvo VNL64T610 Tractors, vehicle identification numbers:

    a)      4V4NC9RH11N325016; and
    b)      4V4NC9RH31N325017

(hereafter collectively referred to as the "Schedule 412 Tractors"). *See* Exhibit B at Schedule No.

2

412.

10.    On or about April 10, 2001, GFK executed Schedule No. 413 to Master Lease 1, thereby leasing from VFS two 2001 Volvo VNL64T660 Tractors, vehicle identification numbers:

a)    4V4NC9TH61N325019; and

b)    4V4NC9TH41N325018

(hereafter collectively referred to as the "Schedule 413 Tractors"). *See* Exhibit B at Schedule No. 413.

11.    Finally, on or about September 11, 2001, GFK executed Schedule No. 415 to Master Lease 1, leasing from VFS one 2002 Volvo VNL64T610 Tractor, vehicle identification number 4V4NC9TH22N325021 (hereafter referred to as the "Schedule 415 Tractor"). *See* Exhibit B at Schedule No. 415.

12.    On or about December 10, 1997, VFS entered into its second Master Lease Agreement ("Master Lease 2") with GFK. *See Master Lease 2,* attached hereto as **Exhibit C**.

13.    On or about July 25, 2001, GFK executed Schedule No. 414 to Master Lease 2, thereby leasing from VFS one 2002 Volvo VNL64T660 Tractor, vehicle identification number 4V4NC9TH02N325020 (hereafter referred to as the "Schedule 414 Tractor."). *See* Exhibit C at Schedule No. 414.

14.    On or about March 13, 2002, GFK executed Schedule No. 416 to Master Lease 2, thereby leasing from VFS two 2000 Volvo VNL64T660 Tractors, vehicle identification numbers:

a)    4V4ND4RJ0YN246739; and

b)    4V4ND4RJ9Y246738

(hereafter collectively referred to as the "Schedule 416 Tractors"). *See* Exhibit C at Schedule No.

B MJA 714460 v1
1039265-000044 07/13/2006

416.

15.    On or about March 20, 2002, GFK executed Schedule No. 417 to Master Lease 2, thereby leasing from VFS three 2001 Volvo VNL64T Tractors, vehicle identification numbers:

a)    4V4NC9 JH71N314761;

b)    4V4NC9JH01N314763; and

c)    4V4NC9JH21N314764

(hereafter collectively referred to as the "Schedule 417 Tractors").  *See* Exhibit C at Schedule No. 417.

16.    On or about April 10, 2002, GFK executed Schedule No. 418 to Master Lease 2, leasing from VFS one 2001 Volvo VNL64T660 Tractor, vehicle identification number 4V4NC9JH91N314762 (hereafter referred to as the "Schedule 418 Tractor"). *See* Exhibit C at Schedule No. 418.

17.    On or about April 19, 2002, GFK executed Schedule No. 419 to Master Lease 2, leasing from VFS one 2000 Volvo VNL64T660 Tractor, vehicle identification number 4V4NDJ4H2YN793584 (hereafter referred to as the "Schedule 419 Tractor"). *See* Exhibit C at Schedule No. 419.

18.    On or about May 14, 2002, GFK executed Schedule No. 420 to Master Lease 2, leasing from VFS one 2000 Volvo VNL64T660 Tractor, vehicle identification number 4V4ND4RJ0YN796989 (hereafter referred to as the "Schedule 420 Tractor"). *See* Exhibit C at Schedule No. 420.

19.    Finally, on or about October 1, 2002, GFK executed Schedule No. 421 to Master Lease 2, thereby leasing from VFS five 2003 Volvo VNL64T Tractors, vehicle identification numbers:

a)    4V4NC9TJ23N341952;

4

b)    4V4NC9TJ43N341953;

c)    4V4NC9TJ43N341954;

d)    4V4NC9TJ43N341958;

e)    4V4NC9TJ43N341959

(hereafter collectively referred to as the "Schedule 421 Tractors"). *See* Exhibit C at Schedule No. 421. The Tractors listed in all of the above schedules will be collectively referred to as the "VF Tractors".

20.    Master Lease 1 and Master Lease 2 required GFK to provide insurance information to VFS. *See* Master Leases 1 and 2, § 11. Failure to provide such information is an event of default of Master Leases 1 and 2. *See* Master Leases 1 and 2, § 15. GFK failed to provide the required insurance information. *See Notice of Lease Cancellation*, attached hereto as **Exhibit D**.

21.    GFK failed to make the necessary payments to VFS as required by Master Leases 1 and 2. Said failures constituted an event of default. *See* Master Leases 1 and 2, § 15; Exhibit D.

22.    VFS exercised its right under Master Leases 1 and 2 to terminate the lease and declare the full unpaid amount immediately due and payable.

23.    Thereafter, VFS, pursuant to the terms of Master Leases 1 and 2, repossessed the VF Tractors.

24.    The VF Tractors were thereafter sold in a commercially reasonable manner.

25.    Deficiencies remained, however, of $80,104.33 on Master Lease 1 and $318,841.57 on Master Lease 2, exclusive of interest, cost, and attorneys' fees. *See Deficiency Balance Calculation for Schedules 411-421,* attached hereto collectively as **Exhibit E**.

5

26.    GFK has failed and/or refused to pay its obligations due under Master Leases 1 and 2.

27.    Master Leases 1 and 2 provide that GFK shall be liable for all costs and expenses, together with attorneys' fees, incurred by VFS to enforce the terms of Master Leases 1 and 2.

28.    VFS notified Kelly of GFK's outstanding amounts due and requested payment under the Guaranty. *See Kelly Letters*, collectively attached hereto as **Exhibit F**. Kelly has failed to pay the liabilities and obligations of GFK.

29.    Master Leases 1 and 2 and the Guaranty state that they are governed by the substantive laws of the State of North Carolina.

COUNT ONE

GFK: Breach of Contract

30.    VFS re-alleges paragraphs 1 through 28 above as if set forth fully herein.

31.    GFK breached Master Lease 1 by:

- failing to make all necessary lease payments; and/or

- failing to provide adequate insurance for the Schedule 411-413 and 415 Tractors and/or provide insurance information regarding these Tractors.

32.    As a result of said breach(es), VFS has suffered damages in the amount of $80,104.33, exclusive of interest, cost and attorneys' fees.

WHEREFORE, premises considered, VFS demands judgment against GFK for compensatory damages in the amount of $80,104.33, plus interest, attorneys' fees and costs.

COUNT TWO

GFK: Breach of Contract

33.    VFS re-alleges paragraphs 1 through 31 above as if set forth fully herein.

6

34.    GFK breached Master Lease 2 by:

- failing to make all necessary lease payments; and/or

- failing to provide adequate insurance for the Schedule 414 and 416-421 Tractors and/or provide insurance information regarding these Tractors.

35.    As a result of said breach(es), VFS has suffered damages in the amount of $318,841.57, exclusive of interest, cost and attorneys' fees.

WHEREFORE, premises considered, VFS demands judgment against GFK for compensatory damages in the amount of $318,841.57, plus interest, attorneys' fees and costs.

COUNT THREE

Kelly: Breach of Contract

36.    VFS re-alleges paragraphs 1 through 34 above as if set forth fully herein.

37.    Kelly breached the Guaranty by failing to make payments as required by the Guaranty.

38.    As a result of said breach, VFS has suffered damages in the amount of $80,104.33 from Master Lease 1 and $318,841.57 from Master Lease 2, for a total of $398,945.90, exclusive of interest, cost and attorneys' fees.

WHEREFORE, premises considered, VFS demands judgment against Kelly for compensatory damages in the amount of $398,945.90, plus interest, attorneys' fees and costs.

Respectfully submitted this _8th_ day of ___July___, 2006.

_____

DAVID B. HALL
JASON ASBELL

Attorneys for Plaintiff VFS Leasing Co.

7

OF COUNSEL:

BAKER DONELSON, BEARMAN
  CALDWELL & BERKOWITZ
A Professional Corporation
420 North 20th Street
Suite 1600 Wachovia Tower
Birmingham, Alabama 35203-5202
(205) 328-0480

**<u>PLEASE SERVE DEFENDANTS BY</u>**
**<u>CERTIFIED MAIL AS FOLLOWS:</u>**

G.F. Kelly d/b/a Kelly Trucking
c/o Guy Kelly as Registered Agent
1 Main Street
P.O. Box 29
Wadley, AL  36276

Guy Kelly
Main Street
P.O. Box 29
Wadley, AL  36276

8





**Continuing Guaranty**

(Individual)

**Volvo Commercial Finance LLC The Americas**

For valuable consideration, each of the undersigned ("Guarantor"), jointly and severally, unconditionally guarantees to Volvo Commercial Finance LLC The Americas (the "Creditor") the full, prompt, and complete payment and performance of all sums, moneys, notes, loans, indebtedness, leases, or lease payments that shall at any time be due and payable to the Creditor and its successors and assigns, from GF KELLY, INC. DBA KELLY TRUCKING ("Debtor"), whether now owing or hereafter contracted, absolute or contingent, including all liabilities or obligations that Debtor has incurred or may incur or from other dealings by which the Creditor may become in any manner a creditor of Debtor (collectively the "Obligations").

This Guaranty is a continuing guaranty and shall not be considered wholly or partially satisfied by the payment at any time of any sum or amount, due or hereafter owing upon any Obligation, but shall continue until terminated by written notice actually received by the Creditor and shall then continue, notwithstanding such termination, as to any Obligation created or incurred by Debtor prior to such receipt of termination.

To the extent permitted under applicable law, Guarantor waives: (i) notice of acceptance, all notices and consents of any kind, protest, dishonor, non-payment, and demand for presentment; (ii) until the Obligations are irrevocably paid in full any claim, right, or remedy which Guarantor may now have or hereafter acquire against Debtor including the right of subrogation; and (iii) all exemptions, homestead laws, and defenses given to sureties and guarantors other than the complete fulfillment performance and payment of all Obligations.

The liability of each Guarantor is direct and unconditional. Guarantor acknowledges that the Creditor would not have entered into any transaction with Debtor without this Guaranty and that the Obligations are of substantial benefit to Guarantor. The Creditor may proceed against each Guarantor without resorting to any other right, remedy, security, or entity. All of the Creditor's remedies for the Obligations or this Guaranty are cumulative. Guarantor agrees that the Creditor may extend any deadline or payment due date, modify any agreement, defer acceleration, postpone the enforcement of any agreement, and release or add any collateral and any party primarily or secondarily liable without affecting the liability of any Guarantor. There are no conditions precedent to this Guaranty.

Guarantor represents and warrants to the Creditor that this Guaranty has been duly executed and delivered and is enforceable against Guarantor in accordance with its terms. In the event of any dispute regarding this Guaranty, Guarantor agrees to pay all costs and expenses of the Creditor, (including reasonable attorney's fees and expenses) incurred in connection with such dispute, regardless of whether litigation or other action is instigated.

This Guaranty constitutes the entire agreement of the Guarantor regarding the guaranty of Debtor's Obligations. No amendment, modification or waiver of any provision of this Guaranty shall be valid unless in writing and executed by an officer of the Creditor. This Guaranty shall extend to and bind the heirs, executors, and administrators, successors and assigns of each of Guarantor and the Creditor.

This Guaranty shall be governed by the internal laws of the State of North Carolina. Any provisions contrary to, prohibited by, or invalid under applicable laws or regulations shall be revised to the minimum extent necessary to make such provision enforceable, but shall not invalidate the remaining provisions of this Guaranty. **Time is of the essence of this Guaranty.**

| Signature of Guarantor | Signature of Guarantor |
|---|---|
| Print Name: Guy Kelly | Print Name: |
| SSN: | SSN: |
| Address: | Address: |

---

**Signature(s) of Guarantor(s) are required to be _either_ notarized or witnessed by two (2) witnesses.**

| Witness: | Witness: |
|---|---|
| Print Name: | Print Name: |

State of Alabama

County of Randolph

I, Melanie Wilkins, do hereby certify that Guy Kelly (name)

personally appeared and executed this Guaranty before me this day of February, 2001

My commission expires: 11-1-01

Melanie Wilkins

Signature of Notary Public                    [SEAL]

981 6r

EXHIBIT

A

# VFS Leasing Co

## Continuing Guaranty
### (Individual)

For valuable consideration, each of the undersigned ("Guarantor"), jointly and severally, unconditionally guarantees to VFS Leasing Co. and its affiliates and subsidiaries (each individually a "Creditor") the full, prompt, and complete payment and performance of all sums, moneys, notes, loans, indebtedness, leases, or lease payments that shall at any time be due and payable to the Creditor and its successors and assigns, from G.F. Kelly, Inc dba Kelly Trucking ("Debtor"), whether now owing or hereafter contracted, absolute or contingent, including all liabilities or obligations that Debtor has incurred or may incur or from other dealings by which the Creditor may become in any manner a creditor of Debtor (collectively the "Obligations").

This Guaranty is a continuing guaranty and shall not be considered wholly or partially satisfied by the payment at any time of any sum or amount, due or hereafter owing upon any Obligation, but shall continue until terminated by written notice actually received by the Creditor and shall then continue, notwithstanding such termination, as to any Obligation created or incurred by Debtor prior to such receipt of termination.

To the extent permitted under applicable law, Guarantor waives: (i) notice of acceptance, all notices and consents of any kind, protest, dishonor, non-payment, and demand for presentment; (ii) until the Obligations are irrevocably paid in full any claim, right, or remedy which Guarantor may now have or hereafter acquire against Debtor including the right of subrogation; and (iii) all exemptions, homestead laws, and defenses given to sureties and guarantors other than the complete fulfillment performance and payment of all Obligations.

The liability of each Guarantor is direct and unconditional. Guarantor acknowledges that the Creditor would not have entered into any transaction with Debtor without this Guaranty and that the Obligations are of substantial benefit to Guarantor. The Creditor may proceed against each Guarantor without resorting to any other right, remedy, security, or collateral. All of the Creditor's remedies for the Obligations or this Guaranty are cumulative. Guarantor agrees that the Creditor may extend any deadline or payment due date, modify any agreement, defer acceleration, postpone the enforcement of any agreement, and release or add any collateral and any party primarily or secondarily liable without affecting the liability of any Guarantor. There are no conditions precedent to this Guaranty.

Guarantor represents and warrants to the Creditor that this Guaranty has been duly executed and delivered and is enforceable against Guarantor in accordance with its terms. In the event of any dispute regarding this Guaranty, Guarantor agrees to pay all costs and expenses of the Creditor, (including reasonable attorney's fees and expenses) incurred in connection with such dispute, regardless of whether litigation or other action is instigated.

This Guaranty constitutes the entire agreement of the Guarantor regarding the guaranty of Debtor's Obligations. No amendment, modification or waiver of any provision of this Guaranty shall be valid unless in writing and executed by an officer of the Creditor. This Guaranty shall extend to and bind the heirs, executors, and administrators, successors and assigns of each of Guarantor and the Creditor.

This Guaranty shall be governed by the internal laws of the State of North Carolina. Any provisions contrary to, prohibited by, or invalid under applicable law/or regulations shall be revised to the minimum extent necessary to make such provision enforceable, but shall not invalidate the remaining provisions of this Guaranty. **Time is of the essence of this Guaranty.**

| Signature of Guarantor | Signature of Guarantor |
|---|---|
| Print Name: Guy Kelly | Print Name: |
| SSN: 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 | SSN: |
| Address: | Address: |

---

**Signature(s) of Guarantor(s) are required to be _either_ notarized or witnessed by two (2) witnesses.**

| Witness: | Witness: |
|---|---|
| Print Name: | Print Name: |

State of Alabama
County of Jefferson
I, Brenda Oliver, do hereby certify that G. F. Kelly name(s) personally appeared and executed this Guaranty before me this 13th day of March

My commission expires: 6·5·2005

_Brenda Oliver_
Signature of Notary Public                [SEAL]

07.001

# VOL**VO**

**Volvo Commercial Finance LLC The Americas**



## Certified Copy of Resolutions

I, _Guy Kelly_ , the undersigned, certify that I am the _President_ of GF KELLY, INC. DBA KELLY TRUCKING, a(n) ALABAMA corporation ("this Corporation"), and that as such, I am authorized to execute this Certification on behalf of this Corporation. I further certify that the following is a true and correct copy of resolutions adopted at a meeting of the Board of Directors of this Corporation held on _2-5-01_ at which meeting there was present and acting throughout a quorum authorized to transact the business described herein and that the proceedings of said meeting were in accordance with the charter and by-laws of this Corporation and that said resolutions have not been in any way amended, annulled, rescinded or revoked and are in full force and effect:

**RESOLVED**, that the Corporation enter into one or more transactions either directly with, to be assigned to, or as a guarantor in favor of, Volvo Commercial Finance LLC The Americas ("the Creditor") and all supporting documents (the "Contracts").

**RESOLVED**, that the below-named officers of the Corporation, and each of them as individual officers of the Corporation, are authorized to: (a) execute and deliver such Contracts (and supporting documents including security interests and liens) in the name and on behalf of this Corporation in the form as the officer executing the same may approve, his approval and authority conclusively evidenced by his execution of the Contract, such execution to be valid and binding on the Corporation with or without the corporate seal of the Corporation; (b) carry out the obligations and enforce the rights of the Corporation under the Contracts; and (c) take all action deemed by them advisable in connection with the foregoing.

**RESOLVED**, that any instruments, agreements or documents executed pursuant to these resolutions by any officers of this Corporation may be in such form and contain such terms, provisions, representations and warranties as they shall in their sole discretion determine.

**RESOLVED**, that an officer of this Corporation shall deliver to the Creditor a certified copy of these resolutions, a list of the names of the officers so-authorized, and notification of any changes in such officers, and the Creditor shall be entitled to conclusively assume that these resolutions remain in full force and effect until the Creditor shall be notified in writing of any change.

I certify that the following are officers of this Corporation who are authorized to enter into the Contracts and related documents, that they have proper corporate power and authority to execute and deliver the Contracts and documents, and that they shall continue to have such power and authority until the Corporation notifies the Creditor otherwise: (Names and Titles):

Name and Title                                          Signature
_Guy Kelly   President_                                 _[signature]_
_____                          _____
_____                          _____

I also certify that the following agents of this Corporation are authorized to enter into the Schedules and related documents, that they have proper corporate power and authority to execute and deliver the Contracts and documents, and that they shall continue to have such power and authority until the Corporation notifies the Creditor otherwise: (Names and Titles):

Name and Title                                          Signature
_____                          _____
_____                          _____

I do further certify that this Corporation is in good standing in all jurisdictions and has all required licenses and permits everywhere it does business. IN WITNESS WHEREOF, I have hereunto set my hand on _2-6-01_ .

_Donna Cole_                     Secretary

981DF

# VOLVO

**Volvo Commercial Finance LLC The Americas**

## Officer's Certificate

*(In Lieu of Resolution)*

The undersigned officer ("**Officer**") (or each, if more than one) certifies that (s)he is the duly appointed officer of
**G.F. Kelly, Inc. dba Kelly Trucking**, a(n) **Alabama** corporation (the "**Corporation**"),
(name of corporation)          (state of incorporation)
holding the title set forth under his/her signature below, and that as such, Officer is authorized to execute this Certificate on behalf of the Corporation.

Officer certifies that the Corporation is authorized to enter into one or more transactions either directly with, to be assigned to, or as a guarantor in favor of, Volvo Commercial Finance LLC The Americas (the "**Creditor**") and that the Corporation is authorized to execute all documents deemed necessary by the Creditor to enter into such transactions (the "**Contracts**").

Officer certifies each of the officers or employees of the Corporation whose names and signatures appear below under "Authorized Signatures" is authorized to: (a) execute and deliver such Contracts (and all related documents, including those necessary to grant and perfect security interests and liens in the assets of the Corporation) in the name and on behalf of the Corporation in the form as the officer or employee executing the same may approve, the approval and authority of such officer or employee conclusively evidenced by the execution of the Contracts or documents, such execution to be valid and binding on the Corporation with or without the corporate seal of the Corporation; (b) cause the Corporation to perform all of its obligations under the Contracts and other documents; and (c) take all others actions deemed advisable or necessary by such officer or employee in connection with the foregoing.

Officer certifies that each of the following persons: (i) is a duly appointed officer or is an employee of the Corporation; (ii) is authorized and has the power and authority to execute and deliver the Contracts and documents on behalf of the Corporation; (iii) shall continue to have such power and authority until the Corporation notifies the Creditor in writing otherwise; and (iv) that the signature next to each person's name and title is the true and accurate signature of such person:

### AUTHORIZED SIGNATURES

Name and Title                                        Signature

DENNIS HAMLET Controller                      *Dennis D. Hamlet*

_____              _____

_____              _____

Officer has executed this Officer's Certificate on behalf of the Corporation this _____ day of _____.

By: _____                  By: _____

Print Name: Guy Kelly                         Print Name: _____

Title: President                              Title: _____

# VFS Leasing Co.

## Officer's Certificate

The undersigned officer ("**Officer**") (or each, if more than one) certifies that (s)he is the duly appointed officer of G.P. Kelly, Inc. dba Kelly Trucking, a(n) Alabama corporation (the "**Corporation**"),
(name of corporation)        (state of incorporation)
holding the title set forth under his/her signature below, and that as such, Officer is authorized to execute this Certificate on behalf of the Corporation.

Officer certifies that the Corporation is authorized to enter into one or more transactions either directly with, to be assigned to, or as a guarantor in favor of, VFS Leasing Co. (the "**Creditor**") and that the Corporation is authorized to execute all documents deemed necessary by the Creditor to enter into such transactions (the "**Contracts**").

Officer certifies each of the officers or employees of the Corporation whose names and signatures appear below under "Authorized Signatures" is authorized to: (a) execute and deliver such Contracts (and all related documents, including those necessary to grant and perfect security interests and liens in the assets of the Corporation) in the name and on behalf of the Corporation in the form as the officer or employee executing the same may approve, the approval and authority of such officer or employee conclusively evidenced by the execution of the Contracts or documents, such execution to be valid and binding on the Corporation with or without the corporate seal of the Corporation; (b) cause the Corporation to perform all of its obligations under the Contracts and other documents; and (c) take all others actions deemed advisable or necessary by such officer or employee in connection with the foregoing.

Officer certifies that each of the following persons: (i) is a duly appointed officer or is an employee of the Corporation; (ii) is authorized and has the power and authority to execute and deliver the Contracts and documents on behalf of the Corporation; (iii) shall continue to have such power and authority until the Corporation notifies the Creditor in writing otherwise; and (iv) that the signature next to each person's name and title is the true and accurate signature of such person:

**AUTHORIZED SIGNATURES**

| Name and Title | Signature |
|---|---|

Officer has executed this Officer's Certificate on behalf of the Corporation this __13th__ day of __March__

By: _____        By: _____

Print Name: _____        Print Name: _____

Title: _____        Title: _____

07.001

10- 1-02: 4:56PM;VCFS-1                                    ;5369513826            # 10/ `2



# VFS Leasing Co.

## Officer's Certificate

The undersigned officer ("Officer") (or each, if more than one) certifies that (s)he is the duly appointed officer of G.P. Kelly, Inc.__, a(n) _____ Alabama corporation (the "**Corporation**"),
(name of corporation)                    (state of incorporation)
holding the title set forth under his/her signature below, and that as such, Officer is authorized to execute this Certificate on behalf of the Corporation.

Officer certifies that the Corporation is authorized to enter into one or more transactions either directly with, to be assigned to, or as a guarantor in favor of, VFS Leasing Co. (the "**Creditor**") and that the Corporation is authorized to execute all documents deemed necessary by the Creditor to enter into such transactions (the "**Contracts**").

Officer certifies each of the officers or employees of the Corporation whose names and signatures appear below under "Authorized Signatures" is authorized to: (a) execute and deliver such Contracts (and all related documents, including those necessary to grant and perfect security interests and liens in the assets of the Corporation) in the name and on behalf of the Corporation in the form as the officer or employee executing the same may approve, the approval and authority of such officer or employee conclusively evidenced by the execution of the Contracts or documents, such execution to be valid and binding on the Corporation with or without the corporate seal of the Corporation; (b) cause the Corporation to perform all of its obligations under the Contracts and other documents; and (c) take all others actions deemed advisable or necessary by such officer or employee in connection with the foregoing.

Officer certifies that each of the officers or employees listed under "Authorized Signatures" below: (i) is a duly appointed officer or is an employee of the Corporation; (ii) is authorized and has the power and authority to execute and deliver the Contracts and documents on behalf of the Corporation; (iii) shall continue to have such power and authority until the Corporation notifies the Creditor in writing otherwise; and (iv) that the signature next to each person's name and title is the true and accurate signature of such person:

### AUTHORIZED SIGNATURES
**(List ALL officers or employees, including Officer, authorized to sign on behalf of Corporation)**

| Title: President | Name: Guy Kelly | Signature: X _____ |
| Title: Vice President | Name: _____ | Signature: X _____ |
| Title: Treasurer | Name: _____ | Signature: X _____ |
| Title: _____ | Name: _____ | Signature: X _____ |

Officer further certifies that the Corporation is in good standing in all jurisdictions in which it is required to be qualified to do business and that the execution of the Contracts and any other instruments and documents authorized hereunder is not in violation of the charter, by-laws, or any agreement made by the Corporation.

Officer has executed this Officer's Certificate on behalf of the Corporation this 2 day of Oct - 02 .

X __Donna Cole_____
Officer/Secretary



03.002

FEB. 11. 1997 10:26AM    VTFNA                                    NO. 6376    P. 2/16

# VOLVO

Volvo Truck Finance North America Inc.

**Master Lease Agreement**

*402*

| | LESSEE NAME AND ADDRESS | | | |
|---|---|---|---|---|
| Legal Name: | GF Kelly, Inc. dba Kelly Trucking | | | |
| Check One: | Corporation [☒]    Partnership [☐]    Joint Venture [☐]    Individual [☐]    LLC [☐] | | | |
| Street Address: | Main Street, Box 29 | | | |
| Mailing Address: | | | | |
| City: | Wadley | State: | AL | Zip: 36276 |
| County: | Randolph | Telephone: | 800-821-0144 | Facsimile: 205-395-2272 |
| Federal ID/SN: | 63-1060032 | ICC No: | | |

| Customer No.: | 2001308 | | |
|---|---|---|---|

**1. Lease:** Subject to the terms and conditions of this Master Lease Agreement (this "Agreement") Volvo Truck Finance North America, Inc., a Delaware corporation with its principal place of business in North Carolina ("Lessor"), agrees to lease to Lessee and Lessee agrees to lease from Lessor the motor vehicles, trailers, and such other equipment (collectively the "Vehicles") described in the Schedules to be attached to this Agreement from time to time (each a "Schedule") as may be agreed upon by Lessor and Lessee. All of the terms and conditions of each Schedule and all other documents executed by Lessor and Lessee shall be incorporated by this reference in this Agreement. Lessee's obligations with respect to the Vehicles as described in the respective Schedule shall become irrevocable upon the execution of the Certificate of Acceptance for such Vehicles.

(a)    **Acceptance of Vehicles by Lessee.** Upon completion of delivery of all of the Vehicles described on a Schedule, Lessee shall inspect such Vehicles and, if in good order and in conformance with any applicable purchase order or supply contract, Lessee will accept delivery of the Vehicles on behalf of the Lessor, and execute and deliver the applicable Certificate of Acceptance.

(b)    **Lessor's Obligations to Fund Any Schedule.** Notwithstanding any other provision of this Agreement, Lessor shall have no obligation to lease the Vehicles on any Schedule or pay the manufacturer or supplier until all of the following conditions precedent are fulfilled to the reasonable satisfaction of Lessor with respect to such Schedule (each a "Closing Date"): (i) All of the representations and warranties made by Lessee in this Lease or the Schedule are true and accurate as of the Closing Date; (ii) Lessor has received evidence of Lessee's compliance with the insurance requirements of this Agreement; (iii) Lessor has received UCC financing statements as required by Lessor; (iv) Lessee has provided a certificate of its secretary or other authorized officer certifying (1) the accuracy of its charter documents; (2) resolutions of its governing board duly authorizing the execution, delivery, and performance of this Agreement, the Schedules, and all other related documents (the foregoing together with any guaranty being collectively the "Lease Documents"); and (3) the incumbency and signatures of the officers authorized to execute the Lease Documents; (v) receipt of the Schedule and all exhibits or attachments duly executed by Lessee; (vi) confirmation of the absence of an Event of Default or an event which, but for the passage of time or the giving of notice or both would constitute an Event of Default, on the Closing Date; and (vii) no enactment of any statute or adoption of any regulation which has or will have an adverse effect on the anticipated federal or state income tax consequences to Lessor, in which case Lessee shall not be obligated to lease from Lessor any Vehicles not already subject to a Certificate of Acceptance. If any of the conditions precedent specified in the preceding (i )-(vii) are not satisfied or waived by Lessor in its sole and absolute discretion, Lessee shall promptly pay Lessor and indemnify, defend, and hold Lessor harmless against all amounts which Lessor has expended or may become obligated to pay and any claims, including the claims of any supplier or manufacturer, with respect to any Vehicle and the transactions contemplated under the applicable Schedule.

**2. Finance Lease:** This Agreement is a "finance lease" as defined in Section 2A - 103 of the Uniform Commercial Code (the "UCC") as adopted in the State of North Carolina (25-2A-101 et seq., General Statutes of North Carolina). Lessee acknowledges that Lessor has neither selected, manufactured, nor supplied the Vehicles. Lessee selected the Vehicles and the suppliers of the Vehicles. Lessor is acquiring the Vehicles at the request of Lessee in connection with this Agreement. Lessee received and approved copies of the purchase order(s) or supply contract(s) for the Vehicles prior to entering into this Agreement.

1(7)

EXHIBIT

B

**3. Precautionary Security Agreement.** Should it be determined, notwithstanding the express intent of the parties, that this Agreement is not a "finance lease" or a lease under the UCC but rather an agreement intended for security, then solely in that event and for the expressly limited purposes thereof, Lessee grants Lessor a security interest in the Vehicles to secure the prompt payment and performance, when and as due, of the obligations and indebtedness of Lessee to Lessor under this Agreement. Lessee hereby also grants Lessor a security interest in all accessions and additions to, substitutions and replacements for, and proceeds (including insurance proceeds), accounts, and income arising from or generated by the Vehicles. Lessee hereby appoints the Lessor as agent for the benefit of the Lessee and grants Lessor an irrevocable power of attorney, to take any and all actions and to execute and file all documents necessary to establish, maintain, and continue the perfected security interest of Lessor in the Vehicles, in the name of and on behalf of Lessee, at Lessee's sole cost and expense. This power of attorney is coupled with an interest and is irrevocable during the term of this Agreement. Lessee shall take all actions and execute and file all documents reasonably requested by Lessor to establish, maintain, and continue the perfected security interest of Lessor. Lessee shall, within ten (10) days after receipt of notice from Lessor, pay all costs and expenses of filing and recording (including the costs of all searches deemed necessary by Lessor) to establish, maintain, and determine the validity and priority of Lessor's security interest.

**4. Term:** Unless terminated earlier by Lessor, with respect to each Schedule, this Agreement shall be effective from the date such Schedule is executed by Lessor for a term expiring on the Lease Termination Date. Lessee's right to use and possess the Vehicles described on any Schedule will begin when all of the following have occurred: (a) Lessee has executed the applicable Certificate of Acceptance and all other documents required thereby; (b) Lessee has supplied Lessor with evidence of insurance coverage on the Vehicles acceptable to Lessor in its reasonable discretion; and (c) Lessee has paid to Lessor both the Advance Rent and the Interim Rent, if any, designated on the applicable Schedule. Notwithstanding any other provision of this Agreement, the term of this Agreement for each Schedule shall continue until all of the Vehicles is returned to Lessor in the condition required by the Schedule. As of any applicable date, the Stipulated Loss Value for a Vehicle is the Lessor's Cost as shown on the applicable Schedule multiplied by the Stipulated Loss Factor as of the applicable date and as designated on Exhibit B to such Schedule. **THIS AGREEMENT IS A "NET LEASE" AND MAY NOT BE TERMINATED BY LESSEE FOR ANY REASON WHATSOEVER.**

**5. Rental Payments:** Lessee shall make all of the following payments to Lessor (collectively "Rent"): (a) the Advance Rent set forth on any Schedule will be due on the Date of Acceptance and, subject to the terms of this Agreement, will be applied to the last Regular Monthly Rental Payment; (b) Interim Rent set forth on any Schedule will be due on the Date of Acceptance and will be calculated by multiplying the Daily Lease Rate Factor times the number of days between the Date of Acceptance to and including the Base Lease Commencement Date; (c) Regular Monthly Rental Payments will be due during the Base Lease Term in the amount and on the dates stated in the applicable Schedule, with the first Regular Monthly Rental Payment due on the Base Lease Commencement Date unless other provided in the Schedule; and (d) All sales and use taxes and the like will accompany each payment in an amount sufficient to pay such taxes and other charges in full. Notwithstanding any other provision of this Agreement, the term of this Agreement and Lessee's obligations to pay Rent on a Vehicle shall continue if Lessee has not returned the Vehicle to Lessor in the condition required by this Agreement or has paid Lessor the Stipulated Loss Value for such Vehicle or is exercising any option to purchase the Vehicle) until the Vehicle is returned to Lessor in the required condition. Lessee agrees to make all payments of Rent in the manner required by Lessor, including but not limited to by wire transfer, electronic funds transfer, or by automatic withdrawal from Lessee's accounts.

**6. Absolute Non-Terminable Obligation:** LESSEE'S OBLIGATION TO MAKE PAYMENT OF ALL RENT AND ALL OTHER AMOUNTS WHEN DUE AND TO OTHERWISE PERFORM AS REQUIRED UNDER THIS AGREEMENT SHALL BE ABSOLUTE AND UNCONDITIONAL AND SHALL NOT BE SUBJECT TO ANY ABATEMENT, REDUCTION, SET-OFF, DEFENSE, COUNTERCLAIM, INTERRUPTION, DEFERMENT OR RECOUPMENT OR TERMINATION, UNDER ANY CIRCUMSTANCE OR FOR ANY REASON WHATSOEVER, AND SHALL NOT REQUIRE PRIOR NOTICE OR DEMAND. Any default under a warranty, service contract, or insurance policy, even when obtained through or from Lessor, does not constitute a defense to Lessee's obligation to make each and every payment in full when due under this Agreement. Lessee will make all Rent and other payments directly to Lessor at such places as Lessor may from time to time designate in writing. Payments will be applied when actually received on good funds by Lessor. To compensate Lessor for the additional costs of processing late payments, a one-time late charge of 5% will be charged on any payment not actually received within ten days of its due date. All other monetary obligations due and not paid when due will bear interest at the lesser of 18% per annum or the maximum rate allowed by law. Lessor may, at its option, apply all payments to any past due charges and then to charges not yet due.

**7. No Warranty:** LESSOR, NOT BEING THE MANUFACTURER, SUPPLIER, OR VENDOR OF THE VEHICLES MAKES NO WARRANTY OR REPRESENTATION, EXPRESS OR IMPLIED, AS TO THE VALUE, CONDITION, QUALITY, MATERIAL, DESIGN, MERCHANTABILITY, OR FITNESS OR SUITABILITY OF ANY VEHICLES FOR ANY PURPOSE. LESSEE ACKNOWLEDGES THAT LESSEE HAS SELECTED THE VEHICLES BASED ON

2(?)

FEB. 11. 1997 10:28AM    VTFNA                                    NO. 6376  P. 4/16

LESSEE'S OWN JUDGMENT AND HAS NOT RELIED ON ANY STATEMENTS OR REPRESENTATIONS OF LESSOR. In no event will Lessor be liable for loss or damage to cargo, contents, attachments, lost profits or to the Vehicles, or incidental, special, or consequential damages of any nature, regardless of cause. So long as no Event of Default has occurred Lessor hereby assigns to Lessee the right to enforce all warranties made by the manufacturer, supplier, or vendor of the Vehicles.

**8. Lessee's Representations:** Lessee warrants and represents to Lessor, expressly acknowledging that Lessor is relying on these warranties and representations, as of the date of this Agreement and/or each Closing Date, as applicable, and until all of Lessee's obligations under this Agreement have been satisfied in full, that: (i) all information supplied by Lessee to Lessor in any financial, credit or accounting statement is and will be true, correct, valid and genuine; (ii) the Vehicles are to be used only for business purposes; (iii) Lessee is duly organized, validly existing, and in good standing under the laws of the state of its formation; (iv) Lessee has the full authority to enter into each of the Lease Documents and to perform all of its obligations under each of the Lease Documents; (v) Lessee has duly authorized, executed, and delivered each of the Lease Documents to which it is a party, and each such Lease Document constitutes the legal, valid, and binding obligation of Lessee, enforceable against Lessee in accordance with its terms; (vi) that each of the Lease Documents does not require the approval of any stockholder, trustee, or holder of any obligation of Lessee and does not and will not violate any law, rule, or order now binding upon Lessee, or the charter, by-laws, or other governing documents of Lessee, or violate the provisions of, constitute a default under, or result in the creation of any lien or encumbrance upon the property of Lessee under, any contract or agreement to which Lessee is a party or by which it or its assets are bound or require the consent or approval or the giving of notice to the Federal, or any state, or local government (other than customary titling, registration, and security interest filings), (vii) there are no pending or overtly threatened actions or proceedings, which either, individually, or in the aggregate, would materially adversely affect the financial condition of Lessee or Lessee's ability to fully perform all of its obligations under all of the Lease Documents; (viii) Lessee maintains its principal place of business at the address set forth on page 1 of this Agreement; and (ix) Lessor's ownership of and interest in the Vehicles shall at all times be prior to any other interests in the Vehicles.

**9. Lessee's Obligations and Covenants:** In addition to and not in limitation of any other agreements of Lessee under the Lease Documents, Lessee agrees at its sole expense: (a) to use each Vehicle only in the United States (or in Canada for not more than 60 days per rolling 12 calendar month period to be determined individually for each Vehicle) in accord with all applicable laws, regulations, and insurance policies; (b) to keep each Vehicle free from all claims, liens, encumbrances and attachments of any kind whatsoever; (c) to file, report, and pay on its and Lessor's behalf by the applicable due date all taxes, fees, and assessments on the Vehicles and the Lease, sending a copy of such filing and payment contemporaneously to Lessor; (d) to defend any action, proceeding or claim affecting the Vehicles or Lessor's interest therein; (e) to obtain a certificate of title on each of the Vehicles showing Lessor's title to the Vehicles, and to preserve and perfect Lessor's title to all of the Vehicles; (f) that Lessee will not (or permit any party to) misuse, secrete, sell, rent, lend, encumber, transfer, or illegally use any of the Vehicles nor permit any Vehicle to be operated by or be in the possession of any party other than Lessee; (g) Lessee will not use or permit the use of any Vehicle off an improved road or for transportation of passengers or of material designated as hazardous, radioactive, toxic, flammable, or explosive, or environmentally hazardous, unsafe, or dangerous under any state, federal, or local law, rule, or requirement; (h) that Lessor may enter any premises to inspect the Vehicles, Vehicles or Lessee's books and records regarding the Vehicles at any time during usual business hours; (i) to provide Lessor with its complete financial information, including Income Statements and Balance Sheets, compiled according to generally accepted accounting principles -- unaudited on a quarterly basis within 60 days after the end of each quarter and audited on an annual basis within 90 days after year end; (j) to give Lessor prompt written notice of any lien or claim for which it is obligated to indemnify Lessor; and (k) that Lessee will not alter or permit the alteration of any Vehicles without the prior written consent of Lessor, and that Lessee will remove or cause the removal of all markings prior to the return of the Vehicles to Lessor.

**10. Vehicle Condition:** In addition to any other requirements of this Agreement, Lessee will, at its sole expense, maintain each of the Vehicles so as to meet all of the following requirements: (a) each Vehicle will be preserved in first class operating condition, repair, and appearance in accordance with all manufacturer service requirements and warranties; (b) all replacement and substitute parts and accessories will be original Vehicle manufacture, or from commercially reputable providers with similar or superior value, serviceability, and warranty; (c) each Vehicle will be kept in roadworthy condition so as to continuously and fully comply with all government requirements, including the United States Department of Transportation. If Lessor notifies Lessee that any Vehicle is not being maintained within the above standards, Lessee will have 20 days from the date of receipt of the written notification to make the necessary corrections.

**11. Insurance and Risk of Loss:** All risk of loss, damage or destruction of the Vehicles will at all times be on Lessee. Lessee will keep the Vehicles insured at Lessee's expense against liability in an amount not less that $1,000,000 per occurrence, and loss or damage by fire, theft and other customary risks for the greater of the full insurable values or the then applicable Stipulated Loss Value for the Vehicles. Coverage and insurer will be subject to Lessor's approval, provided however that such insurer shall have a Best Class rating of at least B+VIII. Lessor and any third party designated by Lessor shall be named as an additional insured and/or loss payee, as applicable, on each policy. Each policy will further provide that Lessor's interest can not

3(7)

be invalidated by any act, omissions, or neglect of anyone other than Lessor and that the insurer will give Lessor thirty days advance written notice of any policy cancellation or non-renewal, whether such cancellation is at the direction of Lessee or insurer. Lessee will promptly deliver a copy of each policy or insurance certificate and proof of renewal at least 30 days prior to expiration or cancellation. If Lessee fails to provide the required insurance, Lessor may purchase such insurance at Lessee's expense, purchase of which need not include liability coverage or protection of Lessee's interest. Lessee irrevocably appoints Lessor as Lessee's attorney-in-fact to execute and endorse all documents, checks or drafts received in payment of loss or damage under any insurance policy. Lessee will immediately notify Lessor in writing of any substantial damage, theft or loss which makes any Vehicle unfit for continued or repairable use at which time Lessee will pay to Lessor the Stipulated Loss Value for the Vehicle calculated as of the day upon which the next Regular Monthly Rental Payment is due, together with all other sums then owed in connection with the Vehicle. Upon receipt of the Stipulated Loss Value and all other amounts then due, Lessor shall transfer title to the Vehicle "Where-Is," "As-Is" to Lessee or as Lessee directs, with Lessee being responsible for all costs of such transfer. Lessor has no obligation to replace any Vehicle and may apply insurance proceeds to any of Lessee's obligations as Lessor deems appropriate.

**12. Return of Vehicles:** In addition to the other requirements of this Agreement, whenever Lessee's right to possess any of the Vehicles terminates, for any reason whatsoever, including after the occurrence of an Event of Default, Lessee will promptly, at its sole expense, assemble and return the Vehicles to locations selected by Lessor. Lessee will also return to Lessor all license plates, registration certificates, manufacturer warranty agreements, maintenance records and other documents relating to the Vehicles. Upon return of a Vehicle, should the average annual miles exceed the maximum mileage provision as specified in the applicable Schedule, Lessee will pay to Lessor an additional return charge equal to the Mileage Rate set forth on the Schedule, times the number of excess miles. If Lessor takes possession of any property not subject to its interests, it shall notify Lessee and may dispose of the property if Lessee fails to take possession within thirty (30) days. If a Vehicle is not returned in the condition set forth below, Lessee shall pay to Lessor within five (5) days of receipt of written notice from Lessor an amount to repair and recondition the Vehicle, in order to offset its decline in value, and to obtain the appropriate licenses and registration.

(a) **Roadworthy.** Each Vehicle will be in roadworthy condition, and all original equipment or replacement equipment of similar value made by the same manufacturer will be intact and in first class working condition, free of mechanical problems to any of its parts and accessories. Permanently installed attachments must remain with the Vehicle unless a written exception is executed by each of Lessor and Lessee. If attachments are removed, the Vehicle must be returned to its original condition.

(b) **Cab and Body.** The cost of necessary repairs to sheet metal (cab, body, fuel tanks) will not exceed four hours labor, flat rated against Mitchell or other industry accepted guide, and $200 replacement parts at truck manufacturers published "fleet" price. All decals, permits, numbers, and other customer identification will be removed from each Vehicle by Lessee in such a manner as not to damage the surface. Interior trim will be free of tears, and no glass will be broken, chipped or cracked. The windshield seal must be free of visible gasket/adhesive material. All mechanical and electrical equipment including radios, heaters and air conditioners must be in proper operating condition.

(c) **Mechanical Power Train.** The Vehicle must be capable of performing at 85% of its rated capacity, at the wheels, under full load without excess oil leakage or blow-by. The condition of the engine and power train will be determined by diagnostic testing conducted by National Truck Protection Co., Inc. or conducted at a service center authorized by Lessor which uses National Truck Protection Co., Inc. standards. Passwords for the engine electronic program, if applicable, must be supplied.

(d) **Systems.** Cooling and lubrication systems will not be contaminated or leaking between fluid systems nor will any system be damaged by the failure to properly maintain fluids. Batteries must be of original CCA rating and capable of holding a charge starting the Vehicle.

(e) **Tires, Wheels, and Brakes.** Tires and wheels will be made of matched generic type, quality, and design as originally supplied and have at least 9/32" tread on front tires and 12/32" tread on rear tires. Front tires will be original casings. Rear tires may have first time recapped casings. Brake linings will have at least 50% remaining wear. There must be no irregular, or unusual wear or damage to the tread or sidewalls. All rear wheel positions must be of matched tread design.

(f) **Documents and Records.** Each Vehicle will have a title free and clear of all liens and encumbrances, meet any ICC requirements, have a state inspection certificate valid for at least 120 days after the date of return; proof of payment of ad valorem, highway and all other taxes, a copy of a vehicle maintenance packet, license plates and registration compliance, and a valid, current DOT inspection certification.

(g) **Inspections.** Not more than 90 days and not less than 45 days prior to return of a Vehicle on the applicable Lease Termination Date, Lessee will make the Vehicle available so that Lessor may conduct a "walk-around" appraisal. Inspections may be made by National Truck Protection at the request and expense of Lessor if the Vehicles meet the National Truck Protection

4(7)

standard. Lessee is responsible for the cost of inspection of Vehicles not meeting the established National Truck Protection standard.

**13. Assignment:**

(a) *Transfer By Lessor:* LESSOR MAY ASSIGN OR TRANSFER THIS AGREEMENT ANY SCHEDULE OR LESSOR'S INTEREST IN ANY OF THE VEHICLES WITHOUT NOTICE TO LESSEE. Any assignee or transferee of Lessor shall have all of the rights, but none of the obligations, of Lessor under this Agreement and Lessee agrees that it will not assert against any assignee or transferee of Lessor any defense, counterclaim, or offset which Lessee may have against Lessor. Lessee acknowledges that any assignment or transfer by Lessor shall not materially change Lessee's duties or obligations under this Lease nor materially increase the burden or risks imposed on Lessee.

(b) *Transfer By Lessee:* LESSEE SHALL NOT ASSIGN, SUBLEASE, TRANSFER, OR DISPOSE OF ALL OR ANY PART OF ITS RIGHTS OR OBLIGATIONS UNDER THIS AGREEMENT OR IN THE VEHICLES, OR ENTER INTO ANY SUBLEASE OF ALL OR ANY OF THE VEHICLES, WITHOUT THE PRIOR WRITTEN CONSENT OF LESSOR, (REGARDLESS OF WHETHER SUCH ACTION OCCURS VOLUNTARILY OR BY OPERATION OF LAW).

(c) *Security Interest and Assignment.* Notwithstanding the prohibition against assignments or subleases without Lessor's prior written consent, Lessee hereby transfers, conveys, and assigns to Lessor and grants to Lessor a security interest in all of Lessee's right, title, and interest in, but none of its obligations under any sublease of the Vehicles, and all proceeds and income arising therefrom. Any sublease permitted under this Agreement shall be in form and contain terms and conditions acceptable to Lessor and assigned to Lessor by form approved by Lessor, all such approvals by Lessor to be granted or withheld in Lessor's sole and absolute discretion.

**14. Lessee's Indemnities:** Lessee agrees that: (a) Lessee will indemnify and hold harmless Lessor and its agents for, from, and against all losses, penalties, claims, and causes of action including legal fees and expenses of every kind and nature related to this Agreement or the selection, manufacture, purchase, delivery, lease, possession, use, misuse, contents, repair, collision, personal injury, death, condition or return of any of the Vehicles; (b) Lessor may, at its sole option, take any action Lessor deems necessary to cure any Event of Default, and Lessee will immediately and fully compensate Lessor for such action; and (c) Lessor is entitled to the accelerated cost recovery (or depreciation) deductions with respect to each Vehicle. Should any taxing authority disallow, eliminate, reduce, recapture, or disqualify, in whole or in part, any tax benefits with respect to any Vehicle (whether because of a change in tax law or policy or because of a change in the status or condition of the Vehicle) then Lessee will immediately pay a sum that permits Lessor to receive (on an after-tax basis over the full term of the Lease) the same after-tax cash flow and after-tax yield that Lessor may have reasonably assumed upon entering into the Lease. Any written request from Lessor for such a payment will be binding, unless objected to within 14 days of notification, and due upon request.

**15. Events of Default:** Each of the following shall constitute an Event of Default which will allow Lessor to exercise all of its rights under this Agreement and applicable law: (a) Lessee fails to make any payment in full when due under this Agreement; (b) Lessee breaches any provision, covenant, or warranty in this Agreement and such breach continues after ten (10) days written notice to Lessee; (c) any of the Vehicles is lost, severely damaged, destroyed or attached and Lessor does not receive the Stipulated Loss Value for such Vehicle, plus all other amounts then due under this Agreement for such Vehicle, within ten (10) days after the date on which such damage, destruction, or attachment occurs; (d) an odometer on any Vehicle fails or appears to have been tampered with and is not repaired within two weeks; (e) Lessee or any guarantor dies, becomes insolvent or ceases to do business in the ordinary course, or suffers a material adverse change in its management or ownership; (f) a petition in bankruptcy is filed by or against Lessee or any guarantor, or Lessee or guarantor admits its inability or is unable to pay its debts as they come due, or a receiver or trustee is appointed for Lessee or any guarantor; (g) any guarantor, surety or endorser for Lessee defaults on any obligation or liability to Lessor; (h) Lessee or any guarantor shall default with respect to any agreement with, or obligation to, any other party for the payment of borrowed money, contractual obligation, or rent, and such default exceeds an aggregate amount of One Million Dollars ($1,000,000); (i) any representation or warranty made by Lessee or any guarantor in any of the Lease Documents or any information delivered by Lessee or any guarantor in obtaining or hereafter in connection with the credit evidenced by this Agreement is materially incomplete, incorrect or misleading as of the date made or delivered; (j) the consolidation or merger of Lessee or guarantor with any other person or entity, or the taking of any action by Lessee or any guarantor towards a dissolution, liquidation, consolidation, or merger; and (k) the sale or transfer (voluntarily or by operation of law) by Lessee or any guarantor of all or substantially all of Lessee's or any guarantor's assets to any person or entity.

**16. Waiver of Defaults:** Lessor may, in its sole discretion, waive an Event of Default or permit a cure of an Event of Default, at Lessee's sole expense. Any such waiver will not constitute a waiver of any other Events of Defaults or a waiver of the same type of an Event of Default at another time.

5(7)

**17. Remedies:** Whenever an Event of Default has occurred under this Agreement, Lessor will have all the rights and remedies provided by this Agreement, the UCC, and other applicable law. Lessor's rights and remedies are cumulative. At the option of Lessor, with or without notice, Lessee's rights to the Vehicles may be canceled and all rental payments and other amounts owed under this Agreement will be immediately due and payable in full, together with all costs and expenses, including attorneys' fees, incurred by Lessor in the enforcement of its rights and remedies under this Lease. Lessor may take possession of any Vehicles (with or without legal process) and, to the extent permitted by law, may enter any locked or unlocked premises for that purpose. Lessor may, at its option, sell, lease, or otherwise dispose of any or all of the Vehicles after it obtains possession. Upon such sale, Lessee will pay to Lessor immediately, as liquidated damages for loss of bargain and not as a penalty, the amount by which the Stipulated Loss Value exceeds the net sales proce ʼs of such Vehicles in addition to all other amounts due. If any Vehicle is not immediately returned to Lessor, or if Lessor is prevented from retaking possession, Lessee will pay Lessor immediately the Stipulated Loss Value for such Vehicle as of the date rental payments are next due, in addition to all other owed charges. Lessor may at its sole discretion seek remedies with respect to Lessee's obligations on some or all of the Schedules without diminishing Lessor's rights to separately or later pursue remedies on any of Lessee's other obligations. To the extent permitted by law, Lessee waives all other remedies, including specific performance, the right to deduct damages from current amounts due, and all indirect, consequential, punitive, and incidental damages.

**18. Statute of Limitations.:** Any action by Lessee against Lessor under this Agreement shall be commenced within one (1) year after any such cause of action accrues.

**19. Survival.** The representations, warranties, and covenants of the Lessee in this Agreement shall survive the execution and delivery of this Agreement.

**20. Integration, Entire Agreement.** This Agreement and the Schedules attached hereto constitute the entire agreement and understanding of Lessor and Lessee and supe..ade all prior representations, warranties, agreements, understandings, and negotiations. Acceptance of late payments shall not waive the TIME IS OF THE ESSENCE PROVISION, the right of Lessor to require that subsequent payments be made when due, or the right of Lessor to declare an Event of Default if subsequent payments are not made when due.

**21. Costs, Expenses, and Fees.** In the event of any dispute between the parties, the prevailing party in such disputes shall recover from the other all fees and expenses (including reasonable attorney's fees and expenses) incurred in connection with such dispute, regardless of whether litigation is instigated.

**22. Severability.** If any provision of any of this Agreement is unenforceable, such provision shall be modified to the minimum extent possible to make such provision enforceable and the enforceability of the other provisions of this Agreement shall not be affected.

**23. Choice of Law.** This Agreement shall not be effective until accepted by Lessor at its North Carolina headquarters and shall be governed by the substantive (and not choice of law or conflicts) laws of the State of North Carolina.

**24. Time Is Of the Essence.** Time is off the essence with regard to each provision of this Agreement as to which time is a factor.

**25. Notices and Demands.** All demands or notices under this Agreement shall be in writing (including without limitation, telecopy or facsimile, receipt confirmed) and mailed, telecopied, or delivered to the address previously specified in writing by the party to whom such notice is being given. Any demand or notice mailed shall be mailed first-class mail, post-prepaid, return-receipt requested. Demands or notices shall be effective upon the earlier of (i) actual receipt by the addressee or (ii) the date shown on the return receipt, fax confirmation, or delivery receipt.

**26. Rescission or Return of Payments.** If at any time, all or any part of any amount received by the Lessor under this Agreement, must or is claimed to be subject to avoidance, rescission, or return to Lessee or any other party for any reason whatsoever, such obligation and any liens, security interests and other encumbrances that secured such obligations at the time such avoidance, rescission, or returned payment was received by Lessor shall be deemed to have continued in existence or shall be reinstated, as the case may be, all as though such payment had not been received.

**27. Headings.** The headings at the beginning of sections of this Agreement are solely for convenience and do not modify any sections.

**28. Number and Gender.** The singular shall include the plural and vice versa and each gender shall include the other genders.

6(7)

FEB. 11. 1997 10:31AM　VTFNA　　　　　　　　　　　NO. 6376　P. 8/16

**29. Multiple Finance Accommodations.** If Lessee has more than one lease or other finance accommodation with Lessor, Lessee agrees that: (i) this Agreement and the documents relating to such other finance accommodation shall all remain in effect and neither shall supersede the other, regardless of whether this Agreement and such other financing documents have differing terms, conditions, and requirements; and (ii) regardless of any such differences, Lessee shall comply with all of the terms, condition, and requirements of this Agreement and of such other financing documents.

**30. Waivers.** Lessee waives, to the fullest extent permitted by law, presentment, notice of dishonor, and all other notices or demands of any kind (except as otherwise expressly provided in this Agreement).

**31. Amendment or Modification.** No term or provision of this Agreement maybe amended, waived, modified, discharged, or terminated orally but only in writing, executed by the parties. By executing this Agreement, Lessee agrees to be bound by the terms of this Lease and, to the extent applicable, the provision concerning a separately signed document pursuant to UCC Section 2A-208 has been satisfied.

Dated: As of the 11th day of February, 1997.

LESSEE:
GF Kelly, Inc. dba Kelly Trucking

By (Signature) _____

Title _____

VOLVO TRUCK FINANCE NORTH AMERICA, INC.
7823 National Service Road
PO Box 26131
Greensboro, North Carolina 27402-6131

By (Signature) _____

Manager, Customer Accounts
Title _____

7(7)

2-27-01;12:35PM;Volvo Comm Finance                          ;885 3328              # 2/11





Volvo Commercial Finance LLC The
~~~~~~~

# Schedule No. 411
## (Terminal Rental Adjustment Clause)

| Customer No: | 2001308 | Schedule No: | 411 |
|---|---|---|---|

This Schedule No. 411 is entered into pursuant to that certain Master Lease Agreement (the "Agreement") between Volvo Commercial Finance LLC The Americas ("Lessor") and G. F. Kelly, Inc. dba Kelly Trucking ("Lessee") dated the 11ᵗʰ day of February, 1997 .

All capitalized terms used and not defined are used with the same meaning as given in the Agreement.

## DESCRIPTION OF VEHICLES

| | |
|---|---|
| Number of Units: | 3 |
| Description (Year/Model): | 2001 Volvo VNL64T610 |

Taxable GVW:

## SUPPLIER INFORMATION

| | | | | | |
|---|---|---|---|---|---|
| Company Name: | Capital Volvo Trucks | | | | |
| Street Address: | 185 West Blvd. | | | | |
| City: | Montgomery | State: | AL | Zip: | 36102 |

## FINANCIAL TERMS

| | | | Per Vehicle | Total on Schedule |
|---|---|---|---|---|
| Base Lease Term (months): | 60 | | | |
| Base Lease Commencement Date: | 2/27/2001 | Lessor's Cost: | 82,000.00 | 246,000.00 |
| Lease Termination Date: | 2/27/2006 | Additional Monthly Rent: | N/a | N/a |
| Date of Acceptance: | 2/27/2001 | Initial Rental Payment: | N/a | N/a |
| Daily Lease Rate Factor: | N/A | Interim Rent: | N/a | N/a |
| Monthly Lease Rate Factor: | 1.7280 | 60 Regular Monthly Rental Payments: | 1,416.99 | 4,250.97 |
| Payments due in: | Arrears | Each Monthly Rental Payment Due On or Before the 27ᵗʰ day of Each Month. | | |
| | | First Monthly Rental Payment is due on or before March 27, 2001. Lessee will also pay all taxes and other amounts under the Agreement whenever due in addition to the Rent stated above. | | |
| INSURANCE: Lessee shall maintain Combined Single Limits insurance: | | | | |
| Per Vehicle on this Schedule: | 1,000,000. | Maximum Miles Per Year: | N/a | |
| Deductible per Occurrence: | 2,500.00 | Excess Mileage Rate: | N/a | |

## ADDRESS OF LOCATION OF PRIMARY DOMICILE OR GARAGE OF VEHICLES

| | | | | | |
|---|---|---|---|---|---|
| Street Address: | West Main St. | | | | |
| City: | Wadley | State: | AL | Zip: | 36776 |
| County: | | | | | |

⚹ Lessee's Initial: GK

1(3)

981

2-27-01:12:55PM:volvo comm finance



**1. Option to Purchase.** So long as no Event of Default has occurred and is continuing under the Agreement, Lessee shall have the right to purchase all, but not less than all, of the Vehicles on the Lease Termination Date. Lessee shall give Lessor at least 90 days and not more than 180 days advance written irrevocable notice of its intent to exercise such purchase option prior to the Lease Termination Date. On or before the Lease Termination Date, Lessee shall purchase all of the Vehicles for a price equal to Twenty percent ( 20 %) of the Lessor's Cost for the Vehicles (the "Purchase Price"), net of all costs and expenses of the transaction (which costs and expenses, whether assessed to Lessor or Lessee, shall be paid by Lessee). The Purchase Price shall be paid to Lessor in immediately available funds on or before the Lease Termination Date. Upon receipt of the Purchase Price, Lessor shall transfer ownership of the Vehicles to Lessee "AS-IS," "WHERE-IS," by bill of sale with no warranties of title or otherwise, except for a warranty of liens arising solely through Lessor. Interest at an annual rate of 18% shall be due and paid by Lessee on any portion of the Purchase Price not paid on or before the Lease Termination Date.

**2. Sales.** If Lessee does not exercise the purchase option provided in Section 1 above, Lessor shall attempt to sell the Vehicles, with Lessee acting as the sales agent for Lessor. Lessor may reject any bid obtained for Lessor by Lessee, the Net Sales Proceeds of which would be less than the Purchase Price due upon exercise of the purchase option. Unless otherwise agreed by Lessor, all such sales shall close and Lessor shall receive the Net Sales Proceeds on or before the Lease Termination Date. All Net Sales Proceeds shall be paid to Lessor. As used in this Schedule, the term "Net Sales Proceeds" means the net amount paid to Lessor from the sale of the Vehicles after deducting reasonable costs of sale, cleaning, or transporting the Vehicles, and other similar expenses in connection with the sale, including any expenses incurred in repairing the Vehicles. Upon receipt of Net Sales Proceeds equal to the Purchase Price (or such lesser amount as acceptable to Lessor in its sole discretion), plus, for Net Sales Proceeds received after the Lease Termination Date, interest at the rate of 18% per year, Lessor shall transfer title to the Vehicles in the same manner as provided in Section 1.

**3. Re-Delivery.** Lessee shall return all Vehicles not purchased or sold in accordance with Sections 1 and 2 above to Lessor on or before the Lease Termination Date. The Vehicles shall be in a condition satisfying all of the requirements of the Agreement. At the time of such return, Lessee shall pay Lessor an amount equal to the Purchase Price. Lessor shall then attempt to sell the Vehicles and shall remit to Lessee all Net Sales Proceeds actually received by Lessor for the sale of any Vehicles for which Lessor received an amount equal to the Purchase Price from Lessee. If any Vehicle is not returned in the condition required under the Agreement, Lessee shall purchase such Vehicle for the Purchase Price with payment in full due on or before the Lease Termination Date.

**4. Final TRAC Adjustment.** If, on the completion of all purchase, sales, and re-deliveries described in Sections 1-3 above Lessor has not received in cash (excluding any sales or salvage value of the Vehicles delivered in accordance with Section 3) a net amount in respect of such purchases and sales equal to the Purchase Price of all of the Vehicles plus all other amounts due under the Agreement, Lessor may retain all payments previously made to it and Lessee shall immediately pay any remaining balance of the Purchase Price, plus interest at a rate of 18% per year from the Lease Termination Date to the date of such payment, to Lessor. If, on such completion, Lessor has received Net Sales Proceeds in excess of the Purchase Price of all of the Vehicles and all other amounts due under the Agreement, plus interest on the Purchase Price at the rate of 18% per year from the Lease Termination Date to the date of receipt of all of the Purchase Price, Lessor shall pay the excess to Lessee.

**5. Conflict.** To the extent there is any conflict between the terms of this Schedule No. 411 and the Agreement, the terms of this Schedule shall control such conflict.

Lessee: G. F. Kelly, Inc. dba Kelly Trucking

By: _____

Title: _____

Dated: _____4-27-01_____

Accepted by Lessor:

Volvo Commercial Finance LLC The Americas

By: _____

Title: _____

Dated: _____

2(3)

981

2-27-01;12:55PM;Volvo Comm Finance                    ;995 3828              # 4/ 11





Volvo Commercial Finance LLC The

**Exhibit A to Schedule No. 411**
**Vehicles and Components Serial Numbers**

| Customer No: | 2001308 |
|---|---|

| Schedule No: | 411 |
|---|---|

| Serial Number | Year | Make | Model | Description |
|---|---|---|---|---|
| 4V4NC9RHX1N325015 | 2001 | VOLVO | VNL64T610 | TRACTOR |
| 4V4NC9RH81N325014 | 2001 | VOLVO | VNL64T610 | TRACTOR |
| 4V4NC9RH61N325013 | 2001 | VOLVO | VNL64T610 | TRACTOR |

X  Lessee's Initials: 6IL

3(3)

981

2-27-0::12:55PM;Volvo Comm Finance

**VOLVO**

Volvo Commercial Finance LLC The Americas



;983-3828          # 8/ 11

**Stipulated Loss Factors**
**Exhibit B Schedule No.:** | 411

| Customer No: | 2001308 |

| Schedule No: | 411 |

| Rental Period | Stipulated Loss Factor | Rental Period | Stipulated Loss Factor |
|---|---|---|---|
| 1 | 105.000% | 41 | 51.716% |
| 2 | 103.814% | 42 | 50.218% |
| 3 | 102.620% | 43 | 48.710% |
| 4 | 101.420% | 44 | 47.194% |
| 5 | 100.213% | 45 | 45.569% |
| 6 | 98.999% | 46 | 44.135% |
| 7 | 97.778% | 47 | 42.591% |
| 8 | 96.549% | 48 | 41.039% |
| 9 | 95.314% | 49 | 39.477% |
| 10 | 94.071% | 50 | 37.906% |
| 11 | 92.821% | 51 | 36.326% |
| 12 | 91.564% | 52 | 34.737% |
| 13 | 90.299% | 53 | 33.138% |
| 14 | 89.027% | 54 | 31.529% |
| 15 | 87.748% | 55 | 29.911% |
| 16 | 86.461% | 56 | 28.284% |
| 17 | 85.166% | 57 | 26.646% |
| 18 | 83.864% | 58 | 25.000% |
| 19 | 82.555% | 59 | 23.343% |
| 20 | 81.237% | 60 | 20.000% |
| 21 | 79.912% | | |
| 22 | 78.580% | | |
| 23 | 77.239% | | |
| 24 | 75.891% | | |
| 25 | 74.534% | | |
| 26 | 73.170% | | |
| 27 | 71.798% | | |
| 28 | 70.417% | | |
| 29 | 69.029% | | |
| 30 | 67.632% | | |
| 31 | 66.227% | | |
| 32 | 64.814% | | |
| 33 | 63.393% | | |
| 34 | 61.963% | | |
| 35 | 60.525% | | |
| 36 | 59.078% | | |
| 37 | 57.623% | | |
| 38 | 56.160% | | |
| 39 | 54.687% | | |
| 40 | 53.206% | | |

** Stipulated Loss Factor does not include Regular Monthly Rental Payment or any other amounts due on same date.

Dated: _____ February 27, 2001 _____

G. F. Kelly, Inc.
Lessee
By: _____

Its: _____  TITLE

Run Date:  02/27/2001 9:45

Volvo Commercial Finance LLC The Americas
Lessee
By: _____

Its: _____

2-27-01;12:35PM;Volvo Comm Finance                    ;923 3326          # 6/ 11



Volvo Commercial Finance LLC The
‾‾‾‾‾‾‾‾

**Exhibit "C" to Schedule No. 411**

**Certificate of Acceptance**

| Customer No: | 2001308 |
|---|---|

| Schedule No: | 411 |
|---|---|

This Certificate of Acceptance is made pursuant to a Master Lease Agreement (the "**Agreement**") between Volvo Commercial Finance LLC The Americas ("**Lessor**") and G. F. Kelly, Inc., dba GF Kelly Trucking ("**Lessee**") dated the 11th day of February, 1997, and Schedule No. 411 to the Agreement.

All capitalized terms used and not defined in this Certificate of Acceptance are used with the same meaning as given in the Agreement.

1. Lessee acknowledges receipt and its irrevocable acceptance of each of the Vehicles listed on Schedule A to Schedule No. 411 as of the date shown below (the "**Date of Acceptance**").

2. Lessee represents and warrants to Lessor that Lessee has: accepted delivery of and inspected each of the Vehicles; determined that each Vehicle contains all of the major components and accessories as agreed; each Vehicle is in good working order, repair, and condition; and that each Vehicle is fit for immediate and continued use and conforms to Lessee's requirements without exception. Lessee understands and acknowledges that Lessor is entering into the lease of these Vehicles based on Lessee's representation and warranty that Lessee will pay in full to Lessor all payments when due as required by the Agreement.

3. Lessee also represents and warrants to Lessor that no Event of Default or event which, but for the passage of time or the giving of notice, or both, would constitute an Event of Default under the Agreement has occurred and is continuing as of the Date of Acceptance and that all of the representations and warranties made be Lessee in the Lessee in the Agreement are correct and complete as though made on and as of the date of this Certificate of Acceptance.

Dated the 27th day of February, 2001.

G.F. Kelly, Inc., dba Kelly Trucking
Lessee

By: _____

Title: _____

Receipt of Certificate of Acceptance Acknowledged By:
Volvo Commercial Finance LLC The Americas
Lessor

By: _____

Title: _____

981

2-27-01:12:58PM;Volvo Comm Finance                    ;963·3828                # 7/ ''



Volvo Commercial Finance LLC The

## Certificate of Business Use and Lessor's Tax Ownership

Lessee hereby certifies under penalty of perjury, in accordance with Section 7701(h)(2)(c) of the Internal Revenue Code of 1986, as amended (the "Code"), that Lessee intends that more than fifty percent (50%) of the use of the Vehicles by Lessee will be in a trade or business of Lessee.

In accordance with Code Section 7701(h)(2)(c), Lessee has been advised that Lessee will not be treated as the owner of the Vehicles for federal income tax purposes and, thus, will not be entitled to claim any of the tax benefits of ownership.

Lessee:   G. F. Kelly, Inc.

By: _____

Name: _____

Title: _____

Date:   2-27-01

2-27-01;12:35PM;Volvo Comm Finance                    ;253-3326          # 10/ 11



**Bill of Sale**

**(Master Lease Agreement)**

Volvo Commercial Finance LLC The

PURCHASER:   VOLVO COMMERCIAL FINANCE LLC THE AMERICAS
7025 Albert Pick Road Suite 105 (27409)
PO Box 26131
Greensboro, NC 27402-6131

SUPPLIER:   Capital Volvo Trucks                    DATE:   2/27/2001
185 West Blvd.
Montgomery, AL 36102

EQUIPMENT:

| Serial Number | Year | Make | Model | Description |
|---|---|---|---|---|
| 4V4NC9RHX1N325015 | 2001 | VOLVO | VNL64T610 | TRACTOR |
| 4V4NC9RH81N325014 | 2001 | VOLVO | VNL64T610 | TRACTOR |
| 4V4NC9RH61N325013 | 2001 | VOLVO | VNL64T610 | TRACTOR |

| Total No. Units: | 3 |
|---|---|

| | |
|---|---|
| Unit Price: | 82,000.00 |
| Extended Price: | 246,000.00 |
| Other Tax (sales, etc.): | N/a |
| Federal Excise Tax | Included |
| Total Price: | 246,000.00 |

Please make MSO's out to VOLVO COMMERCIAL FINANCE LLC THE AMERICAS, using the above address. Unless otherwise specified, VOLVO COMMERCIAL FINANCE LLC THE AMERICAS must also be listed as lienholder.

Payment terms are due upon receipt of written acceptance by Lessee, or as specified below:

Arrears

Please see reverse side for additional terms and conditions.

## ADDITIONAL TERMS AND CONDITIONS

In accordance with, and subject to, all of the undertakings set forth in the Volvo Commercial Finance LLC The Americas Retail Finance Plan Agreement, dated as of 7/1/1999 the "Agreement") between the above-named Dealer and Volvo Commercial Finance LLC The Americas (the "Company"), which Agreement is hereby incorporated by reference, the undersigned, for value received, hereby grants, bargains, sells, assigns, transfers and conveys to Company the described vehicles (the "Vehicles"), and hereby reaffirms its representations, warranties, and covenants contained in the Agreement.

-1 (Z) -

2-27-01;12:35PM;Volvo Comm Finance                    ;853 3828          # 11 11



This Bill of Sale is executed by Dealer to convey title to the Vehicles which will be subject to a Master Lease Agreement between Company and Dealer's customer as contemplated in the Agreement. In order to induce Company to purchase and lease the vehicles, Dealer hereby ratifies and confirms its obligations under the Agreement with respect to transactions to be evidenced by the Master Lease Agreement. Without limiting the generality of the foregoing, Dealer hereby acknowledges that by this conveyance it is making all the representations with respect to the Master Lease Agreement and the related vehicles as are provided to be made with respect to Contracts purchased by Company. Dealer further acknowledges and agrees that its obligations under the paragraphs entitled "Repurchase Obligation" and "Reimbursement and Indemnity" shall apply to the Master Lease Agreement and other documentation reflecting the transaction to be made with respect to the vehicle(s) is hereby conveyed the same as if the lease agreement and other documentation had been entered into between Dealer and its customer and assigned to Company.

Dealer acknowledges that the Commission paid to Dealer in connection with the Master Lease Agreement is 0.

Dealer's further obligations with respect to the above-referenced vehicles and the Master Lease Agreement (the "Contract") are as follows:

[X] **Without Recourse**, except as to Dealer's covenants, representations and warranties contained in the Agreement and to the extent of Commissions and other compensation received by Dealer.

[ ] **With Full Recourse**. (Full guaranty of Dealer.) In addition to its representations and warranties contained in the Agreement, whenever an event of default has occurred under the Contract, Dealer unconditionally guarantees promises to pay upon demand the full amount of the Contract remaining unpaid, including all legal and repossession fees incurred by Company, regardless of whether Company has repossessed the vehicle described in said Contract. Further obligations of the undersigned are set forth in the Agreement.

[ ] **With Limited Recourse**. In addition to its covenants, representations and warranties contained in the Agreement, Dealer is responsible for payment of an amount equal to _____ percent of the outstanding balance due under the Contract as of date of the occurrence of the event of default.

[ ] **With Other Recourse**. In addition to its covenants, representations and warranties contained in the Agreement, Dealer is responsible for:

THIS AGREEMENT made and entered into as of the 27th day of February, 2001.

DEALER: Capital Volvo Trucks

By (Signature): _____

Print/Type Name: _____GREG MAXWELL_____

Title: _____V.P._____

-2 (2) -



**Volvo Commercial Finance LLC The Americas**

● **Schedule No. 412**

**(Terminal Rental Adjustment Clause)**

| Customer No: | 2001308 | | Schedule No: | 412 |
|---|---|---|---|---|

This Schedule No. 412 is entered into pursuant to that certain Master Lease Agreement (the "Agreement") between Volvo Commercial Finance LLC The Americas ("Lessor") and G. F. Kelly, Inc. dba Kelly Trucking ("Lessee") dated the 11th day of February, 1997 .

All capitalized terms used and not defined are used with the same meaning as given in the Agreement.

### DESCRIPTION OF VEHICLES

Number of Units:　　2

Description (Year/Model):　2001 Volvo VNL64T610 Tractors

Taxable GVW:

### SUPPLIER INFORMATION

Company Name:　Capital Volvo Trucks

Street Address:　185 West Blvd.

City:　Montgomery　　　　State: AL　　　　Zip: 36102

### FINANCIAL TERMS

| | | | Per Vehicle | Total on Schedule |
|---|---|---|---|---|
| Base Lease Term (months): | 60 | | | |
| Base Lease Commencement Date: | 03/12/01 | Lessor's Cost: | 82,000.00 | 164,000.00 |
| Lease Termination Date: | 03/12/06 | Additional Monthly Rent: | N/a | N/a |
| Date of Acceptance: | 03/12/01 | Initial Rental Payment: | N/a | N/a |
| Daily Lease Rate Factor: | N/A | Interim Rent: | N/a | N/a |
| Monthly Lease Rate Factor: | 1.7311% | 60 Regular Monthly Rental Payments: | 1,419.49 | 2,838.99 |
| Payments due in: | Arrears | | | |

Each Monthly Rental Payment Due On or Before the 12th day of Each Month. First Monthly Rental Payment is due on or before April 12, 2001. Lessee will also pay all taxes and other amounts under the Agreement whenever due in addition to the Rent stated above.

INSURANCE: Lessee shall maintain Combined Single Limits insurance:

| Per Vehicle on this Schedule: | 1,000,000. | Maximum Miles Per Year: | N/a |
|---|---|---|---|
| Deductible per Occurrence: | 2,500.00 | Excess Mileage Rate: | N/a |

### ADDRESS OR LOCATION OF PRIMARY DOMICILE OR GARAGE OF VEHICLES

Street Address:　West Main St.

City:　Wadley　　　　State: AL　　　　Zip: 36776

County:　Randolph

Lessee's Initial:　GK

**1. Option to Purchase.** So [ ] as no Event of Default has occurred and is con [ ]g under the Agreement, Lessee shall have the right to purchase all, but not less than all, of the Vehicles on the Lease Termination Date. Lessee shall give Lessor at least 90 days and not more than 180 days advance written irrevocable notice of its intent to exercise such purchase option prior to the Lease Termination Date. On or before the Lease Termination Date, Lessee shall purchase all of the Vehicles for a price equal to Twenty percent (20 %) of the Lessor's Cost for the Vehicles (the "Purchase Price"), net of all costs and expenses of the transaction (which costs and expenses, whether assessed to Lessor or Lessee, shall be paid by Lessee). The Purchase Price shall be paid to Lessor in immediately available funds on or before the Lease Termination Date. Upon receipt of the Purchase Price, Lessor shall transfer ownership of the Vehicles to Lessee "AS-IS," "WHERE-IS," by bill of sale with no warranties of title or otherwise, except for a warranty of liens arising solely through Lessor. Interest at an annual rate of 18% shall be due and paid by Lessee on any portion of the Purchase Price not paid on or before the Lease Termination Date.

**2. Sales.** If Lessee does not exercise the purchase option provided in Section 1 above, Lessor shall attempt to sell the Vehicles, with Lessee acting as the sales agent for Lessor. Lessor may reject any bid obtained for Lessor by Lessee, the Net Sales Proceeds of which would be less than the Purchase Price due upon exercise of the purchase option. Unless otherwise agreed by Lessor, all such sales shall close and Lessor shall receive the Net Sales Proceeds on or before the Lease Termination Date. All Net Sales Proceeds shall be paid to Lessor. As used in this Schedule, the term "Net Sales Proceeds" means the net amount paid to Lessor from the sale of the Vehicles after deducting reasonable costs of sale, cleaning, or transporting the Vehicles, and other similar expenses in connection with the sale, including any expenses incurred in repairing the Vehicles. Upon receipt of Net Sales Proceeds equal to the Purchase Price (or such lesser amount as acceptable to Lessor in its sole discretion), plus, for Net Sales Proceeds received after the Lease Termination Date, interest at the rate of 18% per year. Lessor shall transfer title to the Vehicles in the same manner as provided in Section 1.

**3. Re-Delivery.** Lessee shall return all Vehicles not purchased or sold in accordance with Sections 1 and 2 above to Lessor on or before the Lease Termination Date. The Vehicles shall be in a condition satisfying all of the requirements of the Agreement. At the time of such return, Lessee shall pay Lessor an amount equal to the Purchase Price. Lessor shall then attempt to sell the Vehicles and shall remit to Lessee all Net Sales Proceeds actually received by Lessor for the sale of any Vehicles for which Lessor received an amount equal to the Purchase Price from Lessee. If any Vehicle is not returned in the condition required under the Agreement, Lessee shall purchase such Vehicle for the Purchase Price with payment in full due on or before the Lease Termination Date.

**4. Final TRAC Adjustment.** If, on the completion of all purchase, sales, and re-deliveries described in Sections 1-3 above Lessor has not received in cash (excluding any sales or salvage value of the Vehicles delivered in accordance with Section 3) a net amount in respect of such purchases and sales equal to the Purchase Price of all of the Vehicles plus all other amounts due under the Agreement, Lessor may retain all payments previously made to it and Lessee shall immediately pay any remaining balance of the Purchase Price, plus interest at a rate of 18% per year from the Lease Termination Date to the date of such payment, to Lessor. If, on such completion, Lessor has received Net Sales Proceeds in excess of the Purchase Price of all of the Vehicles and all other amounts due under the Agreement, plus interest on the Purchase Price at the rate of 18% per year from the Lease Termination Date to the date of receipt of all of the Purchase Price, Lessor shall pay the excess to Lessee.

**5. Conflict.** To the extent there is any conflict between the terms of this Schedule No. 412 and the Agreement, the terms of this Schedule shall control such conflict.

Lessee: G. F. Kelly, Inc. dba Kelly Trucking

By: _____

Title: _____

Dated: 3-11-01

Accepted by Lessor:

Volvo Commercial Finance LLC The Americas

By: _____

Title: _____

Dated: 3/15/01

2(3)

981





Volvo Commercial Finance LLC The Americas

**Exhibit to Schedule No. 412**
**Vehicles and Components Serial Numbers**

| Customer No: | 2001308 |
|---|---|

| Schedule No: | 412 |
|---|---|

| Serial Number | Year | Make | Model | Description |
|---|---|---|---|---|
| 4V4NC9RH11N325016 | 2001 | VOLVO | VNL64T610 | TRACTOR |
| 4V4NC9RH31N325017 | 2001 | VOLVO | VNL64T610 | TRACTOR |

Lessee's Initials: GL

3(3)

983

# VOLVO
Volvo Commercial Finance LLC The Americas

**Stipulated Loss Factors**

| Exhibit B Schedule No.: | 412 |
|---|---|

| Customer No: | 2001308 |
|---|---|

| Schedule No: | 412 |
|---|---|

| Rental Period | Stipulated Loss Factor | Rental Period | Stipulated Loss Factor |
|---|---|---|---|
| 1 | 105.000% | 41 | 51.697% |
| 2 | 103.813% | 42 | 50.198% |
| 3 | 102.620% | 43 | 48.690% |
| 4 | 101.419% | 44 | 47.174% |
| 5 | 100.211% | 45 | 45.648% |
| 6 | 98.997% | 46 | 44.113% |
| 7 | 97.775% | 47 | 42.569% |
| 8 | 96.546% | 48 | 41.016% |
| 9 | 95.310% | 49 | 39.454% |
| 10 | 94.067% | 50 | 37.882% |
| 11 | 92.817% | 51 | 36.302% |
| 12 | 91.559% | 52 | 34.711% |
| 13 | 90.294% | 53 | 33.112% |
| 14 | 89.021% | 54 | 31.503% |
| 15 | 87.741% | 55 | 29.884% |
| 16 | 86.454% | 56 | 28.256% |
| 17 | 85.159% | 57 | 26.618% |
| 18 | 83.857% | 58 | 24.971% |
| 19 | 82.547% | 59 | 23.314% |
| 20 | 81.229% | 60 | 20.000% |
| 21 | 79.903% | | |
| 22 | 78.570% | | |
| 23 | 77.229% | | |
| 24 | 75.880% | | |
| 25 | 74.523% | | |
| 26 | 73.159% | | |
| 27 | 71.786% | | |
| 28 | 70.405% | | |
| 29 | 69.016% | | |
| 30 | 67.619% | | |
| 31 | 66.214% | | |
| 32 | 64.800% | | |
| 33 | 63.378% | | |
| 34 | 61.948% | | |
| 35 | 60.509% | | |
| 36 | 59.062% | | |
| 37 | 57.606% | | |
| 38 | 56.142% | | |
| 39 | 54.669% | | |
| 40 | 53.188% | | |

** Stipulated Loss Factor does not include Regular Monthly Rental Payment or any other amounts due on same date.

Dated: 3-1-0

GF Kelly
Lessee
By:

Its:

Run Date:    03/09/2001 14:52

Volvo Commercial Finance LLC The Americas
Lessor
By:

Its:



**VOLVO**

Volvo Commercial Finance LLC The Americas

Exhibit "C" to Schedule No. 412
Certificate of Acceptance

| Customer No: | 2001308 |
|---|---|

| Schedule No: | 412 |
|---|---|

This Certificate of Acceptance is made pursuant to a Master Lease Agreement (the "Agreement") between Volvo Commercial Finance LLC The Americas ("Lessor") and G. F. Kelly, Inc., dba GF Kelly Trucking ("Lessee") dated the 11th day of February, 1997, and Schedule No 412 to the Agreement.

All capitalized terms used and not defined in this Certificate of Acceptance are used with the same meaning as given in the Agreement.

1. Lessee acknowledges receipt and its irrevocable acceptance of each of the Vehicles listed on Schedule A to Schedule No. 412 as of the date shown below (the "Date of Acceptance").

2. Lessee represents and warrants to Lessor that Lessee has: accepted delivery of and inspected each of the Vehicles; determined that each Vehicle contains all of the major components and accessories as agreed; each Vehicle is in good working order, repair, and condition; and that each Vehicle is fit for immediate and continued use and conforms to Lessee's requirements without exception. Lessee understands and acknowledges that Lessor is entering into the lease of these Vehicles based on Lessee's representation and warranty that Lessee will pay in full to Lessor all payments when due as required by the Agreement.

3. Lessee also represents and warrants to Lessor that no Event of Default or event which, but for the passage of time or the giving of notice, or both, would constitute an Event of Default under the Agreement has occurred and is continuing as of the Date of Acceptance and that all of the representations and warranties made be Lessee in the Lessee in the Agreement are correct and complete as though made on and as of the date of this Certificate of Acceptance.

Dated the 12th day of March, 2001.

G.F. Kelly, Inc. dba Kelly Trucking
Lessee

By: _____

Title: _____

Receipt of Certificate of Acceptance Acknowledged By:
Volvo Commercial Finance LLC The Americas
Lessor

By: _____

Title: _____

981



**Volvo Commercial Finance LLC The Americas**

## *Certificate of Business Use and Lessor's Tax Ownership*

Lessee hereby certifies under penalty of perjury, in accordance with Section 7701(h)(2)(c) of the Internal Revenue Code of 1986, as amended (the "Code"), that Lessee intends that more than fifty percent (50%) of the use of the Vehicles by Lessee will be in a trade or business of Lessee.

In accordance with Code Section 7701(h)(2)(c), Lessee has been advised that Lessee will not be treated as the owner of the Vehicles for federal income tax purposes and, thus, will not be entitled to claim any of the tax benefits of ownership.

Lessee:    G. F. Kelly, Inc. dba Kelly Trucking

By: _____

Name. _Guy Kelly_____

Title: _____

Date: ____3-11-01_____

9- 9-01; 4:36PM;Volvo Comf Finance                        ;3351382#        # 8/ 11



**Volvo Commercial Finance LLC The Americas**

5367D

**Bill of Sale**

**(Master Lease Agreement)**

PURCHASER:   VOLVO COMMERCIAL FINANCE LLC THE AMERICAS
7025 Albert Pick Road Suite 105 (27409)
PO Box 26131
Greensboro, NC 27402-6131

SUPPLIER:   Capital Volvo Trucks                         DATE:   03/12/01
185 West Blvd.
Montgomery, AL 36102

EQUIPMENT:

| Serial Number | Year | Make | Model | Description |
|---|---|---|---|---|
| 4V4NC9RH11N325016 | 2001 | VOLVO | VNL64T610 | TRACTOR |
| 4V4NC9RH31N325017 | 2001 | VOLVO | VNL64T610 | TRACTOR |

| Total No. Units: | 2 |
|---|---|

| | |
|---|---|
| Unit Price: | 82,000.00 |
| Extended Price: | 164,000.00 |
| Other Tax (sales, etc.): | N/a |
| Federal Excise Tax | Included |
| Total Price: | 164,000.00 |

Please make MSO's out to VOLVO COMMERCIAL FINANCE LLC THE AMERICAS, using the above address. Unless otherwise specified, VOLVO COMMERCIAL FINANCE LLC THE AMERICAS must also be listed as lienholder.

Payment terms are due upon receipt of written acceptance by Lessee, or as specified below:

Please see reverse side for additional terms and conditions.

-1 (2) -

## ADDITIONAL TERMS AND CONDITIONS

In accordance with, and subject to, all of the undertakings set forth in the Volvo Commercial Finance LLC The Americas Retail Finance Plan Agreement, dated as of 7/1/1999 the "Agreement" between the above-named Dealer and Volvo Commercial Finance LLC The Americas (the "Company"), which Agreement is hereby incorporated by reference, the undersigned, for value received, hereby grants, bargains, sells, assigns, transfers and conveys to Company the described vehicles (the "Vehicles"), and hereby reaffirms its representations, warranties, and covenants contained in the Agreement.

This Bill of Sale is executed by Dealer to convey title to the Vehicles which will be subject to a Master Lease Agreement between Company and Dealer's customer as contemplated in the Agreement. In order to induce Company to purchase and lease the vehicles, Dealer hereby ratifies and confirms its obligations under the Agreement with respect to transactions to be evidenced by the Master Lease Agreement. Without limiting the generality of the foregoing, Dealer hereby acknowledges that by this conveyance it is making all the representations with respect to the Master Lease Agreement and the related vehicles as are provided to be made with respect to Contracts purchased by Company. Dealer further acknowledges and agrees that its obligations under the paragraphs entitled "Repurchase Obligation" and "Reimbursement and Indemnity" shall apply to the Master Lease Agreement and other documentation reflecting the transaction to be made with respect to the vehicle(s) is hereby conveyed the same as if the lease agreement and other documentation had been entered into between Dealer and its customer and assigned to Company.

Dealer acknowledges that the Commission paid to Dealer in connection with the Master Lease Agreement is 0.

Dealer's further obligations with respect to the above-referenced vehicles and the Master Lease Agreement (the "Contract") are as follows:

[X] **Without Recourse**, except as to Dealer's covenants, representations and warranties contained in the Agreement and to the extent of Commissions and other compensation received by Dealer.

[ ] **With Full Recourse**. (Full guaranty of Dealer.) In addition to its representations and warranties contained in the Agreement, whenever an event of default has occurred under the Contract, Dealer unconditionally guarantees promises to pay upon demand the full amount of the Contract remaining unpaid. including all legal and repossession fees incurred by Company, regardless of whether Company has repossessed the vehicle described in said Contract. Further obligations of the undersigned are set forth in the Agreement.

[ ] **With Limited Recourse**. In addition to its covenants, representations and warranties contained in the Agreement, Dealer is responsible for payment of an amount equal to          percent of the outstanding balance due under the Contract as of date of the occurrence of the event of default.

[ ] **With Other Recourse**. In addition to its covenants, representations and warranties contained in the Agreement, Dealer is responsible for:

THIS AGREEMENT made and entered into as of the 27th day of February, 2001.

DEALER: Capital Volvo Trucks

By (Signature): _Greg M Maxwell_

Print/Type Name: _GREG MAXWELL_

Title: _VICE PRESIDENT_

-2 (2) -

 

Volvo Commercial Finance LLC The
Americas

**Schedule No.  413**

**(Terminal Rental Adjustment Clause)**

| Customer No: | 2001308 | | Schedule No: | 413 |
|---|---|---|---|---|

This Schedule No. 412 is entered into pursuant to that certain Master Lease Agreement (the "Agreement") between Volvo Commercial Finance LLC The Americas ("Lessor") and G. F. Kelly, Inc. dba Kelly Trucking ("Lessee") dated the 10th day of February, 1997 .

All capitalized terms used and not defined are used with the same meaning as given in the Agreement.

### DESCRIPTION OF VEHICLES

Number of Units:    2

Description (Year/Model):  2001 Volvo VNL64T610 Tractors

Taxable GVW:

### SUPPLIER INFORMATION

Company Name:  Capital Volvo Trucks

Street Address:  185 West Blvd.

City:  Montgomery          State:  AL          Zip:  36102

### FINANCIAL TERMS

| | | Per Vehicle | Total on Schedule |
|---|---|---|---|
| Base Lease Term (months): | 60 | | |
| Base Lease Commencement Date: | 04/10/01 | Lessor's Cost: | 83,000.00 | 166,000.00 |
| Lease Termination Date: | 04/10/06 | Additional Monthly Rent: | N/a | N/a |
| Date of Acceptance: | 04/10/01 | Initial Rental Payment: | N/a | N/a |
| Daily Lease Rate Factor: | N/A | Interim Rent: | N/A | N/a |
| Monthly Lease Rate Factor: | 1.7280 | 60 Regular Monthly Rental Payments: | 1,434.27 | 2,868.54 |
| Payments due in: | Arrears | Each Monthly Rental Payment Due On or Before the 10th day of Each Month. | | |

INSURANCE: Lessee shall maintain Combined Single Limits insurance:

First Monthly Rental Payment is due on or before May 10, 2001. Lessee will also pay all taxes and other amounts under the Agreement whenever due in addition to the Rent stated above.

| Per Vehicle on this Schedule: | 1,000,000. | Maximum Miles Per Year: | N/a |
|---|---|---|---|
| Deductible per Occurrence: | 2,500.00 | Excess Mileage Rate: | N/a |

### ADDRESS OF LOCATION OF PRIMARY DOMICILE OR GARAGE OF VEHICLES

Street Address:  West Main St.

City:  Wadley          State:  AL          Zip:  36776

County:  Randolph

Lessee's Initial:  GK

1(3)                                    981



**1. Option to Purchase.** So long as no Event of Default has occurred and is continuing under the Agreement, Lessee shall have the right to purchase all, but not less than all, of the Vehicles on the Lease Termination Date. Lessee shall give Lessor at least 90 days and not more than 180 days advance written irrevocable notice of its intent to exercise such purchase option prior to the Lease Termination Date. On or before the Lease Termination Date, Lessee shall purchase all of the Vehicles for a price equal to Twenty percent (20 %) of the Lessor's Cost for the Vehicles (the "**Purchase Price**"), net of all costs and expenses of the transaction (which costs and expenses, whether assessed to Lessor or Lessee, shall be paid by Lessee). The Purchase Price shall be paid to Lessor in immediately available funds on or before the Lease Termination Date. Upon receipt of the Purchase Price, Lessor shall transfer ownership of the Vehicles to Lessee "AS-IS," "WHERE-IS," by bill of sale with no warranties of title or otherwise, except for a warranty of liens arising solely through Lessor. Interest at an annual rate of 18% shall be due and paid by Lessee on any portion of the Purchase Price not paid on or before the Lease Termination Date.

**2. Sales.** If Lessee does not exercise the purchase option provided in Section 1 above, Lessor shall attempt to sell the Vehicles, with Lessee acting as the sales agent for Lessor. Lessor may reject any bid obtained for Lessor by Lessee, the Net Sales Proceeds of which would be less than the Purchase Price due upon exercise of the purchase option. Unless otherwise agreed by Lessor, all such sales shall close and Lessor shall receive the Net Sales Proceeds on or before the Lease Termination Date. All Net Sales Proceeds shall be paid to Lessor. As used in this Schedule, the term "**Net Sales Proceeds**" means the net amount paid to Lessor from the sale of the Vehicles after deducting reasonable costs of sale, cleaning, or transporting the Vehicles, and other similar expenses in connection with the sale, including any expenses incurred in repairing the Vehicles. Upon receipt of Net Sales Proceeds equal to the Purchase Price (or such lesser amount as acceptable to Lessor in its sole discretion), plus, for Net Sales Proceeds received after the Lease Termination Date, interest at the rate of 18% per year, Lessor shall transfer title to the Vehicles in the same manner as provided in Section 1.

**3. Re-Delivery.** Lessee shall return all Vehicles not purchased or sold in accordance with Sections 1 and 2 above to Lessor on or before the Lease Termination Date. The Vehicles shall be in a condition satisfying all of the requirements of the Agreement. At the time of such return, Lessee shall pay Lessor an amount equal to the Purchase Price. Lessor shall then attempt to sell the Vehicles and shall remit to Lessee all Net Sales Proceeds actually received by Lessor for the sale of any Vehicles for which Lessor received an amount equal to the Purchase Price from Lessee. If any Vehicle is not returned in the condition required under the Agreement, Lessee shall purchase such Vehicle for the Purchase Price with payment in full due on or before the Lease Termination Date.

**4. Final TRAC Adjustment.** If, on the completion of all purchase, sales, and re-deliveries described in Sections 1-3 above Lessor has not received in cash (excluding any sales or salvage value of the Vehicles delivered in accordance with Section 3) a net amount in respect of such purchases and sales equal to the Purchase Price of all of the Vehicles plus all other amounts due under the Agreement, Lessor may retain all payments previously made to it and Lessee shall immediately pay any remaining balance of the Purchase Price, plus interest at a rate of 18% per year from the Lease Termination Date to the date of such payment, to Lessor. If, on such completion, Lessor has received Net Sales Proceeds in excess of the Purchase Price of all of the Vehicles and all other amounts due under the Agreement, plus interest on the Purchase Price at the rate of 18% per year from the Lease Termination Date to the date of receipt of all of the Purchase Price, Lessor shall pay the excess to Lessee.

**5. Conflict.** To the extent there is any conflict between the terms of this Schedule No. 413 and the Agreement, the terms of this Schedule shall control such conflict.

Lessee: G. F. Kelly, Inc. dba Kelly Trucking

By: _____
Title: _____
Dated: _____4-10-01_____

Accepted by Lessor:

Volvo Commercial Finance LLC The Americas

By: _____
Title: _____
Dated: _____Jean N. Evans_____
Documentation and Funding Specialist





**Volvo Commercial Finance LLC The**

**Exhibit A to Schedule No. 413**
**Vehicles and Components Serial Numbers**

| Customer No: | 2001308 |
|---|---|

| Schedule No: | 413 |
|---|---|

| Serial Number | Year | Make | Model | Description |
|---|---|---|---|---|
| 4V4NC9TH61N325019 | 2001 | VOLVO | VNL64T610 | TRACTOR |
| 4V4NC9TH41N325018 | 2001 | VOLVO | VNL64T610 | TRACTOR |

Lessee's Initials: 61

3(3)

981



**VOLVO**
Volvo Commercial Finance LLC The Americas

| Stipulated Loss Factors | |
|---|---|
| Exhibit B Schedule No.: | 013 |
| Schedule No: | 013 |

Customer No: 2001308

| Rental Period | Stipulated Loss Factor | Rental Period | Stipulated Loss Factor |
|---|---|---|---|
| 1 | 105.000% | 41 | 51.716% |
| 2 | 103.814% | 42 | 50.218% |
| 3 | 102.620% | 43 | 48.710% |
| 4 | 101.420% | 44 | 47.194% |
| 5 | 100.213% | 45 | 45.669% |
| 6 | 98.999% | 46 | 44.135% |
| 7 | 97.778% | 47 | 42.591% |
| 8 | 96.549% | 48 | 41.039% |
| 9 | 95.314% | 49 | 39.477% |
| 10 | 94.071% | 50 | 37.906% |
| 11 | 92.821% | 51 | 36.326% |
| 12 | 91.554% | 52 | 34.737% |
| 13 | 90.239% | 53 | 33.138% |
| 14 | 85.027% | 54 | 31.529% |
| 15 | 87.748% | 55 | 29.911% |
| 16 | 86.461% | 56 | 28.284% |
| 17 | 85.166% | 57 | 26.647% |
| 18 | 83.864% | 58 | 25.000% |
| 19 | 82.555% | 59 | 23.343% |
| 20 | 81.237% | 60 | 20.000% |
| 21 | 79.912% | | |
| 22 | 78.580% | | |
| 23 | 77.239% | | |
| 24 | 75.891% | | |
| 25 | 74.534% | | |
| 26 | 73.170% | | |
| 27 | 71.798% | | |
| 28 | 70.417% | | |
| 29 | 69.029% | | |
| 30 | 67.632% | | |
| 31 | 66.227% | | |
| 32 | 64.814% | | |
| 33 | 63.393% | | |
| 34 | 61.963% | | |
| 35 | 60.525% | | |
| 36 | 59.078% | | |
| 37 | 57.623% | | |
| 38 | 56.160% | | |
| 39 | 54.687% | | |
| 40 | 53.206% | | |

** Stipulated Loss Factor does not include Regular Monthly Rental Payment or any other amounts due on same date.

Dated: _____ April 10, 2001 _____

G.F. Kelly, Inc.
Lessee
By: _____

Its: _____

Run Date: 04/09/2001 9:08

Volvo Commercial Finance LLC The Americas
Lessor
By: _____

Its: Jean H. Evans
Documentation and Funding Specialist

FROM : CAPITAL TRAILER & EQ[...]    PHONE NO. : 334 262 808[...]    Apr. 13 2001 04:25PM P2
    APR-13-01 02:45    TRUCKING, INC.    P.02



# VOLVO

Volvo Commercial Finance LLC The [...]

Exhibit "C" to Schedule No. 413
Certificate of Acceptance

| Customer No: | 1001308 | | Schedule No: | 413 |

This Certificate of Acceptance is made pursuant to a Master Lease Agreement (the "Agreement") between Volvo Commercial Finance LLC The Americas ("Lessor") and G. F. Kelly, Inc., dba GF Kelly Trucking ("Lessee") dated the 11th day of February, 1997, and Schedule No 413 to the Agreement

All capitalized terms used and not defined in this Certificate of Acceptance are used with the same meaning as given in the Agreement.

1. Lessee acknowledges receipt and its irrevocable acceptance of each of the Vehicles listed on Schedule A to Schedule No. 413 as of the date shown below (the "Date of Acceptance").

2. Lessee represents and warrants to Lessor that Lessee has: accepted delivery of and inspected each of the Vehicles; determined that each Vehicle contains all of the major components and accessories as agreed; each Vehicle is in good working order, repair, and condition; and that each Vehicle is fit for immediate and continued use and conforms to Lessee's requirements without exception. Lessee understands and acknowledges that Lessor is entering into the lease of these Vehicles based on Lessee's representation and warranty that Lessee will pay in full to Lessor all payments when due as required by the Agreement.

3. Lessee also represents and warrants to Lessor that no Event of Default or event which, but for the passage of time or the giving of notice, or both, would constitute an Event of Default under the Agreement has occurred and is continuing as of the Date of Acceptance and that all of the representations and warranties made by Lessee in the Lease in the Agreement are correct and complete as though made on and as of the date of this Certificate of Acceptance.

Dated the 10th day of April, 2001.

G.F. Kelly, Inc., dba Kelly Trucking
Lessee

By: _____

Title: _____

Receipt of Certificate of Acceptance Acknowledged By:
Volvo Commercial Finance LLC The Americas
Lessor

By: _____

Title: Jean N. Evans

Documentation and Funding Specialist





Volvo Commercial Finance LLC The

## Certificate of Business Use and Lessor's Tax Ownership

Lessee hereby certifies under penalty of perjury, in accordance with Section 7701(h)(2)(c) of the Internal Revenue Code of 1986, as amended (the "Code"), that Lessee intends that more than fifty percent (50%) of the use of the Vehicles by Lessee will be in a trade or business of Lessee.

In accordance with Code Section 7701(h)(2)(c), Lessee has been advised that Lessee will not be treated as the owner of the Vehicles for federal income tax purposes and, thus, will not be entitled to claim any of the tax benefits of ownership.

Lessee:    G. F. Kelly, Inc. dba Kelly Trucking

By: _____

Name: _____

Title: _____

Date: _____4-10-01_____



**Volvo Commercial Finance LLC The**

53670
**Bill of Sale**

**(Master Lease Agreement)**

PURCHASER:   VOLVO COMMERCIAL FINANCE LLC THE AMERICAS
7025 Albert Pick Road Suite 105 (27409)
PO Box 26131
Greensboro, NC  27402-6131

SUPPLIER:   Capital Volvo Trucks                      DATE:   04/10/01
185 West Blvd.
Montgomery, AL  36102

EQUIPMENT:

| Serial Number | Year | Make | Model | Description |
|---|---|---|---|---|
| 4V4NC9TH61N325019 | 2001 | VOLVO | VNL64T610 | TRACTOR |
| 4V4NC9TH41N325018 | 2001 | VOLVO | VNL64T610 | TRACTOR |

| Total No. Units: | 2 |
|---|---|

| | |
|---|---|
| Unit Price: | 83,000.00 |
| Extended Price: | 166,000.00 |
| Other Tax (sales, etc.): | N/a |
| Federal Excise Tax | Included |
| Total Price: | 166,000.00 |

Please make MSO's out to VOLVO COMMERCIAL FINANCE LLC THE AMERICAS, using the above address.  Unless otherwise specified, VOLVO COMMERCIAL FINANCE LLC THE AMERICAS must also be listed as lienholder.

Payment terms are due upon receipt of written acceptance by Lessee, or as specified below:

Please see reverse side for additional terms and conditions.

-1 (2) -

 

## ADDITIONAL TERMS AND CONDITIONS

In accordance with, and subject to, all of the undertakings set forth in the Volvo Commercial Finance LLC The Americas Retail Finance Plan Agreement, dated as of 7/1/1999 the "**Agreement**") between the above-named Dealer and Volvo Commercial Finance LLC The Americas (the "**Company**"), which Agreement is hereby incorporated by reference, the undersigned, for value received, hereby grants, bargains, sells, assigns, transfers and conveys to Company the described vehicles (the "**Vehicles**"), and hereby reaffirms its representations, warranties, and covenants contained in the Agreement.

This Bill of Sale is executed by Dealer to convey title to the Vehicles which will be subject to a Master Lease Agreement between Company and Dealer's customer as contemplated in the Agreement. In order to induce Company to purchase and lease the vehicles, Dealer hereby ratifies and confirms its obligations under the Agreement with respect to transactions to be evidenced by the Master Lease Agreement. Without limiting the generality of the foregoing, Dealer hereby acknowledges that by this conveyance it is making all the representations with respect to the Master Lease Agreement and the related vehicles as are provided to be made with respect to Contracts purchased by Company. Dealer further acknowledges and agrees that its obligations under the paragraphs entitled "Repurchase Obligation" and "Reimbursement and Indemnity" shall apply to the Master Lease Agreement and other documentation reflecting the transaction to be made with respect to the vehicle(s) is hereby conveyed the same as if the lease agreement and other documentation had been entered into between Dealer and its customer and assigned to Company.

Dealer acknowledges that the Commission paid to Dealer in connection with the Master Lease Agreement is 0.

Dealer's further obligations with respect to the above-referenced vehicles and the Master Lease Agreement (the "**Contract**") are as follows:

[X] **Without Recourse**, except as to Dealer's covenants, representations and warranties contained in the Agreement and to the extent of Commissions and other compensation received by Dealer.

[ ] **With Full Recourse**. (Full guaranty of Dealer.) In addition to its representations and warranties contained in the Agreement, whenever an event of default has occurred under the Contract, Dealer unconditionally guarantees promises to pay upon demand the full amount of the Contract remaining unpaid, including all legal and repossession fees incurred by Company, regardless of whether Company has repossessed the vehicle described in said Contract. Further obligations of the undersigned are set forth in the Agreement.

[ ] **With Limited Recourse**. In addition to its covenants, representations and warranties contained in the Agreement, Dealer is responsible for payment of an amount equal to _____ percent of the outstanding balance due under the Contract as of date of the occurrence of the event of default.

[ ] **With Other Recourse**. In addition to its covenants, representations and warranties contained in the Agreement, Dealer is responsible for:

THIS AGREEMENT made and entered into as of the 10th day of April, 2001.

DEALER: Capital Volvo Trucks

By (Signature): _Greg M Maxwell_

Print/Type Name: _GREG MAXWELL_

Title: _Vice President_

-2 (2) -



## VOLVO

Volvo Commercial Finance

April 16, 2001

G.F. Kelly, Inc.
Main St., Box 29
Wadley, AL 36276
Attn: Guy Kelly

Dear **Mr. Kelly**:

Your company recently completed a financing arrangement with Volvo Commercial Finance LLC The Americas on a **Master Lease Agreement**, under Customer Number **2001308**, Schedule Set Number 413.

Upon review of these documents it was discovered that there were errors or omissions. Please note the following errors or omissions:

      **Stipulated Loss Factor: Schedule number reads: 013**

The corrections are as follows:

      **Stipulated Loss Factor: Schedule number is: 413**

If you have any objections to the above referenced correction or completion please notify me within the next 10 days. If you do not notify us of any objection we will assume you are in agreement with the corrections or completion and will correct or complete documents to reflect such. Except as expressly amended by this addendum, all terms and conditions of the Schedule remain in full force and effect.

Please retain this letter with your **Master Lease Agreement** for your records.

If you have any questions about this letter, or if I may be of assistance in any way, please call me at (336) 393-4110. Your business with Volvo Commercial Finance Inc. The Americas is appreciated.

Sincerely,

Jean H. Evans
Documentation & Funding Specialist

/jhe

SEP-11-2001  10:44
P.02
96%





# VOLVO

**Volvo Commercial Finance LLC The Americas**

**Schedule No. 415**
**(Terminal Rental Adjustment Clause)**

| Customer No: | 2001308 |
|---|---|

| Schedule No: | 415 |
|---|---|

This Schedule No. 412 is entered into pursuant to that certain Master Lease Agreement (the "**Agreement**") between Volvo Commercial Finance LLC The Americas ("Lessor") and G. F. Kelly, Inc. dba Kelly Trucking ("Lessee") dated the 11th day of February, 1997 .

All capitalized terms used and not defined are used with the same meaning as given in the Agreement.

## DESCRIPTION OF VEHICLES

Number of Units: 1
Description (Year/Model): 2002 Volvo VNL64T610 Tractors

Taxable GVW:

## SUPPLIER INFORMATION

Company Name: Capital Volvo Trucks
Street Address: 185 West Blvd.
City: Montgomery    State: AL    Zip: 36102

## FINANCIAL TERMS

|  |  |  | Per Vehicle | Total on Schedule |
|---|---|---|---|---|
| Base Lease Term (months): | 60 |  |  |  |
| Base Lease Commencement Date: | 09/11/01 | Lessor's Cost: | 83,280.00 | 83,280.00 |
| Lease Termination Date: | 09/11/06 | Additional Monthly Rent: | N/a | N/a |
| Date of Acceptance: | 09/11/01 | Initial Rental Payment: | N/a | N/a |
| Daily Lease Rate Factor: | N/A | Interim Rent: | N/a | N/a |
| Monthly Lease Rate Factor: | 1.6926% | 60 Regular Monthly Rental Payments: | 1,409.60 | 1,409.60 |
| Payments due in: | Arrears | Each Monthly Rental Payment Due On or Before the 11th day of Each Month. | | |

First Monthly Rental Payment is due on or before October 11, 2001. Lessee will also pay all taxes and other amounts under the Agreement whenever due in addition to the Rent stated above.

INSURANCE: Lessee shall maintain Combined Single Limits insurance:

| Per Vehicle on this Schedule: | 1,000,000. | Maximum Miles Per Year: | N/a |
|---|---|---|---|
| Deductible per Occurrence: | 2,500.00 | Excess Mileage Rate: | N/a |

## ADDRESS OF LOCATION OF PRIMARY DOMICILE OR GARAGE OF VEHICLES

Street Address: West Main St.
City: Wadley    State: AL    Zip: 36776
County: Randolph

Lessee's Initial: _GIL_

8 /2 #    :3369319826    1-0-11:11:544M:VCF6-1    8-11-01:11:544M:VCF6-1

SEP-11-2001  10:45          96%          P.03



**1. Option to Purchase.** So long as no Event of Default has occurred and is continuing under the Agreement, Lessee shall have the right to purchase all, but not less than all, of the Vehicles on the Lease Termination Date. Lessee shall give Lessor at least 90 days and not more than 180 days advance written irrevocable notice of its intent to exercise such purchase option prior to the Lease Termination Date. On or before the Lease Termination Date, Lessee shall purchase all of the Vehicles for a price equal to Twenty percent (20 %) of the Lessor's Cost for the Vehicles (the "**Purchase Price**"), net of all costs and expenses of the transaction (which costs and expenses, whether assessed to Lessor or Lessee, shall be paid by Lessee). The Purchase Price shall be paid to Lessor in immediately available funds on or before the Lease Termination Date. Upon receipt of the Purchase Price, Lessor shall transfer ownership of the Vehicles to Lessee "AS-IS," "WHERE-IS," by bill of sale with no warranties of title or otherwise, except for a warranty of liens arising solely through Lessor. Interest at an annual rate of 18% shall be due and paid by Lessee on any portion of the Purchase Price not paid on or before the Lease Termination Date.

**2. Sales.** If Lessee does not exercise the purchase option provided in Section 1 above, Lessor shall attempt to sell the Vehicles, with Lessee acting as the sales agent for Lessor. Lessor may reject any bid obtained for Lessor by Lessee, the Net Sales Proceeds of which would be less than the Purchase Price due upon exercise of the purchase option. Unless otherwise agreed by Lessor, all such sales shall close and Lessor shall receive the Net Sales Proceeds on or before the Lease Termination Date. All Net Sales Proceeds shall be paid to Lessor. As used in this Schedule, the term "**Net Sales Proceeds**" means the net amount paid to Lessor from the sale of the Vehicles after deducting reasonable costs of sale, cleaning, or transporting the Vehicles, and other similar expenses in connection with the sale, including any expenses incurred in repairing the Vehicles. Upon receipt of Net Sales Proceeds equal to the Purchase Price (or such lesser amount as acceptable to Lessor in its sole discretion), plus, for Net Sales Proceeds received after the Lease Termination Date, interest at the rate of 18% per year, Lessor shall transfer title to the Vehicles in the same manner as provided in Section 1.

**3. Re-Delivery.** Lessee shall return all Vehicles not purchased or sold in accordance with Sections 1 and 2 above to Lessor on or before the Lease Termination Date. The Vehicles shall be in a condition satisfying all of the requirements of the Agreement. At the time of such return, Lessee shall pay Lessor an amount equal to the Purchase Price. Lessor shall then attempt to sell the Vehicles and shall remit to Lessee all Net Sales Proceeds actually received by Lessor for the sale of any Vehicles for which Lessor received an amount equal to the Purchase Price from Lessee. If any Vehicle is not returned in the condition required under the Agreement, Lessee shall purchase such Vehicle for the Purchase Price with payment in full due on or before the Lease Termination Date.

**4. Final TRAC Adjustment.** If, on the completion of all purchase, sales, and re-deliveries described in Sections 1-3 above Lessor has not received in cash (excluding any sales or salvage value of the Vehicles delivered in accordance with Section 3) a net amount in respect of such purchases and sales equal to the Purchase Price of all of the Vehicles plus all other amounts due under the Agreement, Lessor may retain all payments previously made to it and Lessee shall immediately pay any remaining balance of the Purchase Price, plus interest at a rate of 18% per year from the Lease Termination Date to the date of such payment, to Lessor. If, on such completion, Lessor has received Net Sales Proceeds in excess of the Purchase Price of all of the Vehicles and all other amounts due under the Agreement, plus interest on the Purchase Price at the rate of 18% per year from the Lease Termination Date to the date of receipt of all of the Purchase Price, Lessor shall pay the excess to Lessee.

**5. Conflict.** To the extent there is any conflict between the terms of this Schedule No. 415 and the Agreement, the terms of this Schedule shall control such conflict.

Lessee: G. F. Kelly, Inc. dba Kelly Trucking

By: _____

Title: _____

Dated: _____

Accepted by Lessor:

Volvo Commercial Finance LLC The Americas

By: _____
    Jean H. Evans

Title: Documentation and Funding Specialist

Dated: _____

8  /£  #         :3369313828                        8-11-01;11:54AM;VCFS-1                    1-VOFA;WA4S:11:10-11-8





Volvo Commercial Finance LLC The Americas

**Exhibit A to Schedule No. 415**
**Vehicles and Components Serial Numbers**

| Customer No: | 2001308 |
|---|---|

| Schedule No: | 415 |
|---|---|

| Serial Number | Year | Make | Model | Description |
|---|---|---|---|---|
| 4V4NC9TH22N325021 | 2002 | VOLVO | VNL64T610 | TRACTOR |

Lessee's Initials: BK

P.05                          96%                               SEP-11-2001  10:45
                                                                T

# VOLVO

Volvo Commercial Finance LLC The Americas

**Stipulated Loss Factors**
Exhibit B Schedule No.:    415

Schedule No:    415

Customer No:    2001308

| Rental Period | Stipulated Loss Factor | Rental Period | Stipulated Loss Factor |
|---|---|---|---|
| 1 | 105.000% | 41 | 52.403% |
| 2 | 103.856% | 42 | 50.889% |
| 3 | 102.704% | 43 | 49.365% |
| 4 | 101.544% | 44 | 47.830% |
| 5 | 100.376% | 45 | 46.284% |
| 6 | 99.200% | 46 | 44.727% |
| 7 | 98.015% | 47 | 43.159% |
| 8 | 96.823% | 48 | 41.580% |
| 9 | 95.622% | 49 | 39.990% |
| 10 | 94.413% | 50 | 38.388% |
| 11 | 93.195% | 51 | 36.775% |
| 12 | 91.969% | 52 | 35.151% |
| 13 | 90.734% | 53 | 33.515% |
| 14 | 89.490% | 54 | 31.867% |
| 15 | 88.238% | 55 | 30.208% |
| 16 | 86.977% | 56 | 28.537% |
| 17 | 85.707% | 57 | 26.854% |
| 18 | 84.429% | 58 | 25.159% |
| 19 | 83.141% | 59 | 23.451% |
| 20 | 81.844% | 60 | 20.000% |
| 21 | 80.538% | | |
| 22 | 79.223% | | |
| 23 | 77.899% | | |
| 24 | 76.566% | | |
| 25 | 75.223% | | |
| 26 | 73.871% | | |
| 27 | 72.509% | | |
| 28 | 71.137% | | |
| 29 | 69.756% | | |
| 30 | 68.365% | | |
| 31 | 66.965% | | |
| 32 | 65.554% | | |
| 33 | 64.134% | | |
| 34 | 62.703% | | |
| 35 | 61.263% | | |
| 36 | 59.812% | | |
| 37 | 58.351% | | |
| 38 | 56.879% | | |
| 39 | 55.398% | | |
| 40 | 53.905% | | |

** Stipulated Loss Factor does not include Regular Monthly Rental Payment or any other amounts due on same date.

Dated:    September 11, 2001

G.F. Kelly Inc.dba Kelly Trucking
Lessee
By:

Title

Run Date:    9/10/2001 17:00

Volvo Commercial Finance LLC/The Americas
Lessor
By:

Title

P.06                        %96                ⌐ ⌐⌐   ⌐⌐⌐        ⌐ ⌐⌐⌐⌐⌐        9Þ:0Ɩ  ƖOOZ-ƖƖ-dɐS
                                                                                                       ⊥

# VOLVO

**Volvo Commercial Finance LLC The Americas**

<div align="right">

**Exhibit "C" to Schedule No. 415**

**Certificate of Acceptance**

</div>

| Customer No: | 2001308 |
|---|---|

| Schedule No: | 415 |
|---|---|

This Certificate of Acceptance is made pursuant to a Master Lease Agreement (the "Agreement") between Volvo Commercial Finance LLC The Americas ("Lessor") and G. F. Kelly, Inc., dba GF Kelly Trucking ("Lessee") dated the 11th day of February, 1997, and Schedule No 415 to the Agreement.

All capitalized terms used and not defined in this Certificate of Acceptance are used with the same meaning as given in the Agreement.

1. Lessee acknowledges receipt and its irrevocable acceptance of each of the Vehicles listed on Schedule A to Schedule No. 415 as of the date shown below (the "Date of Acceptance").

2. Lessee represents and warrants to Lessor that Lessee has: accepted delivery of and inspected each of the Vehicles; determined that each Vehicle contains all of the major components and accessories as agreed; each Vehicle is in good working order, repair, and condition; and that each Vehicle is fit for immediate and continued use and conforms to Lessee's requirements without exception. Lessee understands and acknowledges that Lessor is entering into the lease of these Vehicles based on Lessee's representation and warranty that Lessee will pay in full to Lessor all payments when due as required by the Agreement.

3. Lessee also represents and warrants to Lessor that no Event of Default or event which, but for the passage of time or the giving of notice, or both, would constitute an Event of Default under the Agreement has occurred and is continuing as of the Date of Acceptance and that all of the representations and warranties made be Lessee in the Lessee in the Agreement are correct and complete as though made on and as of the date of this Certificate of Acceptance.

Dated the 11th day of October, 2001.

**G.F. Kelly, Inc. dba Kelly Trucking**
Lessee

By: _____

Title: _____

Receipt of Certificate of Acceptance Acknowledged By:
**Volvo Commercial Finance LLC The Americas**
Lessor

By: _____

Title: ____ Jean H. Evans ____
Documentation and Funding Specialist

981

# VOLVO

**Volvo Commercial Finance LLC The Americas**

## *Certificate of Business Use and Lessor's Tax Ownership*

Lessee hereby certifies under penalty of perjury, in accordance with Section 7701(h)(2)(c) of the Internal Revenue Code of 1986, as amended (the "Code"), that Lessee intends that more than fifty percent (50%) of the use of the Vehicles by Lessee will be in a trade or business of Lessee.

In accordance with Code Section 7701(h)(2)(c), Lessee has been advised that Lessee will not be treated as the owner of the Vehicles for federal income tax purposes and, thus, will not be entitled to claim any of the tax benefits of ownership.

Lessee:  G. F. Kelly, Inc. dba Kelly Trucking

By: _____

Name: _____Guy Kelly_____

Title: _____PResiDenT_____

Date: _____9/11/01_____





# VOLVO

Volvo Commercial Finance LLC The Americas

**Bill of Sale**

**(Master Lease Agreement)**

PURCHASER:   VOLVO COMMERCIAL FINANCE LLC THE AMERICAS
7025 Albert Pick Road Suite 105 (27409)
PO Box 26131
Greensboro, NC 27402-6131

SUPPLIER:   Capital Volvo Trucks           DATE:   9/11/01
185 West Blvd.
Montgomery, AL 36102

EQUIPMENT.

| Serial Number | Year | Make | Model | Description |
|---|---|---|---|---|
| 4V4NC9TH22N325021 | 2002 | VOLVO | VNL64T610 | TRACTOR |

| Total No. Units: | 1 |
|---|---|

| | |
|---|---|
| Unit Price: | 83,280.00 |
| Extended Price: | 83,280.00 |
| Other Tax (sales, etc.): | N/a |
| Federal Excise Tax | Included |
| Total Price: | 83,280.00 |

Please make MSO's out to VOLVO COMMERCIAL FINANCE LLC THE AMERICAS, using the above address.  Unless otherwise specified, VOLVO COMMERCIAL FINANCE LLC THE AMERICAS must also be listed as lienholder.

Payment terms are due upon receipt of written acceptance by Lessee, or as specified below:

ARREARS

Please see reverse side for additional terms and conditions.

-1 (2) -



## ADDITIONAL TERMS AND CONDITIONS

In accordance with, and subject to, all of the undertakings set forth in the Volvo Commercial Finance LLC The Americas Retail Finance Plan Agreement, dated as of 7/1/1999 the "Agreement") between the above-named Dealer and Volvo Commercial Finance LLC The Americas (the "Company"), which Agreement is hereby incorporated by reference, the undersigned, for value received, hereby grants, bargains, sells, assigns, transfers and conveys to Company the described vehicles (the "Vehicles"), and hereby reaffirms its representations, warranties, and covenants contained in the Agreement.

This Bill of Sale is executed by Dealer to convey title to the Vehicles which will be subject to a Master Lease Agreement between Company and Dealer's customer as contemplated in the Agreement. In order to induce Company to purchase and lease the vehicles, Dealer hereby ratifies and confirms its obligations under the Agreement with respect to transactions to be evidenced by the Master Lease Agreement. Without limiting the generality of the foregoing, Dealer hereby acknowledges that by this conveyance it is making all the representations with respect to the Master Lease Agreement and the related vehicles as are provided to be made with respect to Contracts purchased by Company. Dealer further acknowledges and agrees that its obligations under the paragraphs entitled "Repurchase Obligation" and "Reimbursement and Indemnity" shall apply to the Master Lease Agreement and other documentation reflecting the transaction to be made with respect to the vehicle(s) is hereby conveyed the same as if the lease agreement and other documentation had been entered into between Dealer and its customer and assigned to Company.

Dealer acknowledges that the Commission paid to Dealer in connection with the Master Lease Agreement is 0.

Dealer's further obligations with respect to the above-referenced vehicles and the Master Lease Agreement (the "Contract") are as follows:

[☒] **Without Recourse**, except as to Dealer's covenants, representations and warranties contained in the Agreement and to the extent of Commissions and other compensation received by Dealer.

[☐] **With Full Recourse.** (Full guaranty of Dealer.) In addition to its representations and warranties contained in the Agreement, whenever an event of default has occurred under the Contract, Dealer unconditionally guarantees promises to pay upon demand the full amount of the Contract remaining unpaid, including all legal and repossession fees incurred by Company, regardless of whether Company has repossessed the vehicle described in said Contract. Further obligations of the undersigned are set forth in the Agreement.

[☐] **With Limited Recourse.** In addition to its covenants, representations and warranties contained in the Agreement, Dealer is responsible for payment of an amount equal to _____ percent of the outstanding balance due under the Contract as of date of the occurrence of the event of default.

[☐] **With Other Recourse.** In addition to its covenants, representations and warranties contained in the Agreement, Dealer is responsible for:

THIS AGREEMENT made and entered into as of the 11th day of September, 2001.

DEALER: Capital Volvo Trucks

By (Signature): _____

Print/Type Name: GREG MAXWELL

Title: V.P.

-2 (2) -



**Volvo Commercial Finance**

September 17, 2001

G.F. Kelly, Inc. dba Kelly Trucking
Main Street, Box 29
Wadley, AL 36276
Attn: Guy Kelly

Dear Mr. Kelly:

Your company recently completed a financing arrangement with Volvo Commercial Finance LLC The Americas on a **Master Lease Agreement** Customer Number **2001308**, Schedule Set Numbers **415.**

Upon review of these documents it was discovered that there were errors or omissions. Please note the following errors or omissions:

### Terminal Rental Adjustment Clause – Schedule no. 412

The corrections are as follows:

### Terminal Rental Adjustment Clause – Schedule no. 415

If you have any objections to the above referenced correction or completion please notify me within the next 10 days. If you do not notify us of any objection we will assume you are in agreement with the corrections or completion and will correct or complete documents to reflect such. Except as expressly amended by this addendum, all terms and conditions of the Schedule remain in full force and effect.

Please retain this letter with your **Master Lease Agreement** for your records.

If you have any questions about this letter, or if I may be of assistance in any way, please call me at (336) 393-4147 Your business with Volvo Commercial Finance Inc. The Americas is appreciated.

Sincerely,

Jean H. Evans
Documentation & Funding Specialist
/jhe

---

7025 Albert Pick Road    PO Box 26131    Greensboro, NC  27409    Tel 336 393-3600    Fax 336 393-3867



**VOLVO**
Volvo Truck Finance North America Inc.

# Master Lease Agreement

| LESSEE NAME AND ADDRESS | | | | | |
|---|---|---|---|---|---|
| Legal Name: | G.F. Kelly, Inc. dba Kelly Trucking | | | | |
| Check One: | Corporation [⊠] | Partnership [☐] | Joint Venture [☐] | Individual [☐] | LLC [☐] |
| Street Address: | Main Street, Box 29 | | | | |
| Mailing Address: | Main Street, Box 29 | | | | |
| City: | Wadley | | State: AL | | Zip: 36276 |
| County: | Randolph | | Telephone: 800-821-0144 | | Facsimile: |
| Federal ID/SN: | 63-1060032 | | ICC No: | | |

Customer No:     030 ?84

**1. Lease:** Subject to the terms and conditions of this Master Lease Agreement (this **"Agreement"**) Volvo Truck Finance North America, Inc., a Delaware corporation with its principal place of business in North Carolina (**"Lessor"**), agrees to lease to Lessee and Lessee agrees to lease from Lessor the motor vehicles, trailers, and such other equipment (collectively the **"Vehicles"**) described in the Schedules to be attached to this Agreement from time to time (each a **"Schedule"**) as may be agreed upon by Lessor and Lessee. All of the terms and conditions of each Schedule and all other documents executed by Lessor and Lessee shall be incorporated by this reference in this Agreement. Lessee's obligations with respect to the Vehicles as described in the respective Schedule shall become irrevocable upon the execution of the Certificate of Acceptance for such Vehicles.

    **(a)**   **Acceptance of Vehicles by Lessee.** Upon completion of delivery of all of the Vehicles described on a Schedule, Lessee shall inspect such Vehicles and, if in good order and in conformance with any applicable purchase order or supply contract, Lessee will accept delivery of the Vehicles on behalf of the Lessor, and execute and deliver the applicable Certificate of Acceptance.

    **(b)**   **Lessor's Obligations to Fund Any Schedule.** Notwithstanding any other provision of this Agreement, Lessor shall have no obligation to lease the Vehicles on any Schedule or pay the manufacturer or supplier until all of the following conditions precedent are fulfilled to the reasonable satisfaction of Lessor with respect to such Schedule (each a **"Closing Date"**): (i) All of the representations and warranties made by Lessee in this Lease or the Schedule are true and accurate as of the Closing Date; (ii) Lessor has received evidence of Lessee's compliance with the insurance requirements of this Agreement; (iii) Lessor has received UCC financing statements as required by Lessor; (iv) Lessee has provided a certificate of its secretary or other authorized officer certifying (1) the accuracy of its charter documents; (2) resolutions of its governing board duly authorizing the execution, delivery, and performance of this Agreement, the Schedules, and all other related documents (the foregoing together with any guaranty being collectively the **"Lease Documents"**); and (3) the incumbency and signatures of the officers authorized to execute the Lease Documents; (v) receipt of the Schedule and all exhibits or attachments duly executed by Lessee; (vi) confirmation of the absence of an Event of Default or an event which, but for the passage of time or the giving of notice or both would constitute an Event of Default, on the Closing Date; and (vii) no enactment of any statute or adoption of any regulation which has or will have an adverse effect on the anticipated federal or state income tax consequences to Lessor, in which case Lessee shall not be obligated to lease from Lessor any Vehicles not already subject to a Certificate of Acceptance. If any of the conditions precedent specified in the preceding (i)-(vii) are not satisfied or waived by Lessor in its sole and absolute discretion, Lessee shall promptly pay Lessor and indemnify, defend, and hold Lessor harmless against all amounts which Lessor has expended or may become obligated to pay and any claims, including the claims of any supplier or manufacturer, with respect to any Vehicle and the transactions contemplated under the applicable Schedule.

**2. Finance Lease:** This Agreement is a **"finance lease"** as defined in Section 2A-103 of the Uniform Commercial Code (the **"UCC"**) as adopted in the State of North Carolina (25-2A-101 et seq., General Statutes of North Carolina). Lessee acknowledges that Lessor has neither selected, manufactured, nor supplied the Vehicles. Lessee selected the Vehicles and the suppliers of the Vehicles. Lessor is acquiring the Vehicles at the request of Lessee in connection with this Agreement. Lessee received and approved copies of the purchase order(s) or supply contract(s) for the Vehicles prior to entering into this Agreement.

\us\lease\\master lease\04.97

**EXHIBIT**

C

**3. Precautionary Security Agreement.** Should it be determined, notwithstanding the express intent of the parties, that this Agreement is not a "finance lease" or a lease under the UCC but rather an agreement intended for security, then solely in that event and for the expressly limited purposes thereof, Lessee grants Lessor a security interest in the Vehicles to secure the prompt payment and performance, when and as due, of the obligations and indebtedness of Lessee to Lessor under this Agreement. Lessee hereby also grants Lessor a security interest in all accessions and additions to, substitutions and replacements for, and proceeds (including insurance proceeds), accounts, and income arising from or generated by the Vehicles. Lessee hereby appoints the Lessor as agent for the benefit of the Lessee and grants Lessor an irrevocable power of attorney, to take any and all actions and to execute and file all documents necessary to establish, maintain, and continue the perfected security interest of Lessor in the Vehicles, in the name of and on behalf of Lessee, at Lessee's sole cost and expense. This power of attorney is coupled with an interest and is irrevocable during the term of this Agreement. Lessee shall take all actions and execute and file all documents reasonably requested by Lessor to establish, maintain, and continue the perfected security interest of Lessor. Lessee shall, within ten (10) days after receipt of notice from Lessor, pay all costs and expenses of filing and recording (including the costs of all searches deemed necessary by Lessor) to establish, maintain, and determine the validity and priority of Lessor's security interest.

**4. Term:** Unless terminated earlier by Lessor, with respect to each Schedule, this Agreement shall be effective from the date such Schedule is executed by Lessor for a term expiring on the Lease Termination Date. Lessee's right to use and possess the Vehicles described on any Schedule will begin when all of the following have occurred: (a) Lessee has executed the applicable Certificate of Acceptance and all other documents required thereby; (b) Lessee has supplied Lessor with evidence of insurance coverage on the Vehicles acceptable to Lessor in its reasonable discretion; and (c) Lessee has paid to Lessor both the Advance Rent and the Interim Rent, if any, designated on the applicable Schedule. Notwithstanding any other provision of this Agreement, the term of this Agreement for each Schedule shall continue until all of the Vehicles are returned to Lessor in the condition required by the Schedule. As of any applicable date, the Stipulated Loss Value for a Vehicle is the Lessor's Cost as shown on the applicable Schedule multiplied by the Stipulated Loss Factor as of the applicable date and as designated on Exhibit B to such Schedule. **THIS AGREEMENT IS A "NET LEASE" AND MAY NOT BE TERMINATED BY LESSEE FOR ANY REASON WHATSOEVER.**

**5. Rental Payments:** Lessee shall make all of the following payments to Lessor (collectively **"Rent"**): (a) the Advance Rent set forth on any Schedule will be due on the Date of Acceptance; (b) Interim Rent set forth on any Schedule will be due on the Date of Acceptance and will be calculated by multiplying the Daily Lease Rate Factor times the number of days between the Date of Acceptance to and including the Base Lease Commencement Date; (c) Regular Monthly Rental Payments (plus any Additional Monthly Rent) will be due during the Base Lease Term in the amounts and on the dates stated in the applicable Schedule; and (d) All sales and use taxes and the like will accompany each payment in an amount sufficient to pay such taxes and other charges in full. Notwithstanding any other provision of this Agreement, the term of this Agreement and Lessee's obligations to pay Rent on a Vehicle shall continue if Lessee has not returned the Vehicle to Lessor in the condition required by this Agreement on the Lease Termination Date (unless Lessee had previously paid Lessor the Stipulated Loss Value for such Vehicle or is exercising any option to purchase the Vehicle) until the Vehicle is returned to Lessor in the required condition. Lessee agrees to make all payments of Rent in the manner required by Lessor, including but not limited to by wire transfer, electronic funds transfer, or by automatic withdrawal from Lessee's accounts.

**6. Absolute Non-Terminable Obligation:** LESSEE'S OBLIGATION TO MAKE PAYMENT OF ALL RENT AND ALL OTHER AMOUNTS WHEN DUE AND TO OTHERWISE PERFORM AS REQUIRED UNDER THIS AGREEMENT SHALL BE ABSOLUTE AND UNCONDITIONAL AND SHALL NOT BE SUBJECT TO ANY ABATEMENT, REDUCTION, SET-OFF, DEFENSE, COUNTERCLAIM, INTERRUPTION, DEFERMENT OR RECOUPMENT OR TERMINATION, UNDER ANY CIRCUMSTANCE OR FOR ANY REASON WHATSOEVER, AND SHALL NOT REQUIRE PRIOR NOTICE OR DEMAND. Any default under a warranty, service contract, or insurance policy, even when obtained through or from Lessor, does not constitute a defense to Lessee's obligation to make each and every payment in full when due under this Agreement. Lessee will make all Rent and other payments directly to Lessor at such places as Lessor may from time to time designate in writing. Payments will be applied when actually received on good funds by Lessor. To compensate Lessor for the additional costs of processing late payments, a one-time late charge of 5% will be charged on any payment not actually received within ten days of its due date. All other monetary obligations due and not paid when due will bear interest at the lesser of 18% per annum or the maximum rate allowed by law. Lessor may, at its option, apply all payments to any past due charges and then to charges not yet due.

**7. No Warranty:** LESSOR, NOT BEING THE MANUFACTURER, SUPPLIER, OR VENDOR OF THE VEHICLES MAKES NO WARRANTY OR REPRESENTATION, EXPRESS OR IMPLIED, AS TO THE VALUE, CONDITION, QUALITY, MATERIAL, DESIGN, MERCHANTABILITY, OR FITNESS OR SUITABILITY OF ANY VEHICLES FOR ANY PURPOSE. LESSEE ACKNOWLEDGES THAT LESSEE HAS SELECTED THE VEHICLES BASED ON LESSEE'S OWN JUDGMENT AND HAS NOT RELIED ON ANY STATEMENTS OR REPRESENTATIONS OF

**LESSOR.** In no event will Lessor be liable for loss or damage to cargo, contents, attachments, lost profits or to the Vehicles, or incidental, special, or consequential damages of any nature, regardless of cause. So long as no Event of Default has occurred, Lessor hereby assigns to Lessee the right to enforce all warranties issued by the manufacturer, supplier, or vender of the Vehicles.

**8. Lessee's Representations:** Lessee warrants and represents to Lessor, expressly acknowledging that Lessor is relying on these warranties and representations, as of the date of this Agreement and/or each Closing Date, as applicable, and until all of Lessee's obligations under this Agreement have been satisfied in full, that: (i) all information supplied by Lessee to Lessor in any financial, credit or accounting statement is and will be true, correct, valid and genuine; (ii) the Vehicles are to be used only for business purposes; (iii) Lessee is duly organized, validly existing, and in good standing under the laws of the state of its formation; (iv) Lessee has the full authority to enter into each of the Lease Documents and to perform all of its obligations under each of the Lease Documents; (v) Lessee has duly authorized, executed, and delivered each of the Lease Documents to which it is a party, and each such Lease Document constitutes the legal, valid, and binding obligation of Lessee, enforceable against Lessee in accordance with its terms; (vi) that each of the Lease Documents does not require the approval of any stockholder, trustee, or holder of any obligation of Lessee and does not and will not violate any law, rule, or order now binding upon Lessee, or the charter, by-laws, or other governing documents of Lessee, or violate the provisions of, constitute a default under, or result in the creation of any lien or encumbrance upon the property of Lessee under, any contract or agreement to which Lessee is a party or by which it or its assets are bound or require the consent or approval or the giving of notice to the Federal, or any state, or local government (other than customary titling, registration, and security interest filings); (vii) there are no pending or overtly threatened actions or proceedings, which either, individually, or in the aggregate, would materially adversely affect the financial condition of Lessee or Lessee's ability to fully perform all of its obligations under all of the Lease Documents; (viii) Lessee maintains its principal place of business at the address set forth on page 1 of this Agreement; and (ix) Lessor's ownership of and interest in the Vehicles shall at all times be prior to any other interests in the Vehicles.

**9. Lessee's Obligations and Covenants:** In addition to and not in limitation of any other agreements of Lessee under the Lease Documents, Lessee agrees at its sole expense: (a) to use each Vehicle only in the United States (or in Canada for not more than 60 days per rolling 12 calendar month period to be determined individually for each Vehicle) in accord with all applicable laws, regulations, and insurance policies; (b) to keep each Vehicle free from all claims, liens, encumbrances and attachments of any kind whatsoever; (c) to file, report, and pay on its and Lessor's behalf by the applicable due date all taxes, fees, and assessments on the Vehicles and the Lease, sending a copy of such filing and payment contemporaneously to Lessor; (d) to defend any action, proceeding or claim affecting the Vehicles or Lessor's interest therein; (e) to obtain a certificate of title on each of the Vehicles showing Lessor's title to the Vehicles, and to preserve and perfect Lessor's title to all of the Vehicles; (f) that Lessee will not (or permit any party to) misuse, secrete, sell, rent, lend, encumber, transfer, or illegally use any of the Vehicles nor permit any Vehicle to be operated by or be in the possession of any party other than Lessee; (g) Lessee will not use or permit the use of any Vehicle off an improved road or for transportation of passengers or of material designated as **hazardous, radioactive, toxic, flammable, or explosive, or environmentally hazardous, unsafe, or dangerous** under any state, federal, or local law, rule, or requirement; (h) that Lessor may enter any premises to inspect the Vehicles, Vehicles or Lessee's books and records regarding the Vehicles at any time during usual business hours; (i) to provide Lessor with its complete financial information, including Income Statements and Balance Sheets, compiled according to generally accepted accounting principles -- unaudited on a quarterly basis within 60 days after the end of each quarter and audited on an annual basis within 90 days after year end; (j) to give Lessor prompt written notice of any lien or claim for which it is obligated to indemnify Lessor; and (k) that Lessee will not alter or permit the alteration of any Vehicles without the prior written consent of Lessor, and that Lessee will remove or cause the removal of all markings prior to the return of the Vehicles to Lessor.

**10. Vehicle Condition:** In addition to any other requirements of this Agreement, Lessee will, at its sole expense, maintain each of the Vehicles so as to meet all of the following requirements: (a) each Vehicle will be preserved in first class operating condition, repair, and appearance in accordance with all manufacturer service requirements and warranties; (b) all replacement and substitute parts and accessories will be original Vehicle manufacture, or from commercially reputable providers with similar or superior value, serviceability, and warranty; (c) each Vehicle will be kept in roadworthy condition so as to continuously and fully comply with all government requirements, including the United States Department of Transportation. If Lessor notifies Lessee that any Vehicle is not being maintained within the above standards, Lessee will have 20 days from the date of receipt of the written notification to make the necessary corrections.

**11. Insurance and Risk of Loss:** All risk of loss, damage or destruction of the Vehicles will at all times be on Lessee. Lessee will keep the Vehicles insured at Lessee's expense against liability in an amount not less that $1,000,000 per occurrence, and loss or damage by fire, theft and other customary risks for the greater of the full insurable values or the then applicable Stipulated Loss Value for the Vehicles. Coverage and insurer will be subject to Lessor's approval, provided however that such insurer shall have a Best Class rating of at least B+VIII. Lessor and any third party designated by Lessor shall be named as an additional insured and/or loss payee, as applicable, on each policy. Each policy will further provide that Lessor's interest can not be invalidated by any act, omissions, or neglect of anyone other than Lessor and that the insurer will give Lessor thirty days

advance written notice of any policy cancellation or non-renewal, whether such cancellation is at the direction of Lessee or insurer. Lessee will promptly deliver a copy of each policy or insurance certificate to Lessor and proof of renewal at least 30 days prior to expiration or cancellation. If Lessee fails to provide the required insurance, Lessor may purchase such insurance at Lessee's expense, purchase of which need not include liability coverage or protection of Lessee's interest. Lessee irrevocably appoints Lessor as Lessee's attorney-in-fact to execute and endorse all documents, checks or drafts received in payment of loss or damage under any insurance policy. Lessee will immediately notify Lessor in writing of any substantial damage, theft or loss which makes any Vehicle unfit for continued or repairable use at which time Lessee will pay to Lessor the Stipulated Loss Value for the Vehicle calculated as of the day upon which the next Regular Monthly Rental Payment is due, together with all other sums then owed in connection with the Vehicle. Upon receipt of the Stipulated Loss Value and all other amounts then due, Lessor shall transfer title to the Vehicle "Where-Is," "As-Is" to Lessee or as Lessee directs, with Lessee being responsible for all costs of such transfer. Lessor has no obligation to replace any Vehicle and may apply insurance proceeds to any of Lessee's obligations as Lessor deems appropriate.

**12. Return of Vehicles:** In addition to the other requirements of this Agreement, whenever Lessee's right to possess any of the Vehicles terminates, for any reason whatsoever, including after the occurrence of an Event of Default, Lessee will promptly, at its sole expense, assemble and return the Vehicles to locations selected by Lessor. Lessee will also return to Lessor all license plates, registration certificates, manufacturer warranty agreements, maintenance records and other documents relating to the Vehicles. Upon return of a Vehicle, should the average annual miles exceed the maximum mileage provision as specified in the applicable Schedule, Lessee will pay to Lessor an additional return charge equal to the Mileage Rate set forth on the Schedule, times the number of excess miles. If Lessor takes possession of any property not subject to its interests, it shall notify Lessee and may dispose of the property if Lessee fails to take possession within thirty (30) days. If a Vehicle is not returned in the condition set forth below, Lessee shall pay to Lessor within five (5) days of receipt of written notice from Lessor an amount to repair and recondition the Vehicle, in order to offset its decline in value, and to obtain the appropriate licenses and registration.

**(a) Roadworthy.** Each Vehicle will be in roadworthy condition, and all original equipment or replacement equipment of similar value made by the same manufacturer will be intact and in first class working condition, free of mechanical problems to any of its parts and accessories. Permanently installed attachments must remain with the Vehicle unless a written exception is executed by each of Lessor and Lessee. If attachments are removed, the Vehicle must be returned to its original condition.

**(b) Cab and Body.** The cost of necessary repairs to sheet metal (cab, body, fuel tanks) will not exceed four hours labor, flat rated against Mitchell or other industry accepted guide, and $200 replacement parts at truck manufacturers published "fleet" price. All decals, permits, numbers, and other customer identification will be removed from each Vehicle by Lessee in such a manner as not to damage the surface. Interior trim will be free of tears, and no glass will be broken, chipped or cracked. The windshield seal must be free of visible gasket/adhesive material. All mechanical and electrical equipment including radios, heaters and air conditioners must be in proper operating condition.

**(c) Mechanical Power Train.** The Vehicle must be capable of performing at 85% of its rated capacity, at the wheels, under full load without excess oil leakage or blow-by. The condition of the engine and power train will be determined by diagnostic testing conducted by National Truck Protection Co., Inc. or conducted at a service center authorized by Lessor which uses National Truck Protection Co., Inc. standards. Passwords for the engine electronic program, if applicable, must be supplied.

**(d) Systems.** Cooling and lubrication systems will not be contaminated or leaking between fluid systems nor will any system be damaged by the failure to properly maintain fluids. Batteries must be of original CCA rating and capable of holding a charge starting the Vehicle.

**(e) Tires, Wheels, and Brakes.** Tires and wheels will be made of matched generic type, quality, and design as originally supplied and have at least 9/32" tread on front tires and 12/32" tread on rear tires. Front tires will be original casings. Rear tires may have first time recapped casings. Brake linings will have at least 50% remaining wear. There must be no irregular, or unusual wear or damage to the tread or sidewalls. All rear wheel positions must be of matched tread design.

**(f) Documents and Records.** Each Vehicle will have a title free and clear of all liens and encumbrances, meet any ICC requirements, have a state inspection certificate valid for at least 120 days after the date of return; proof of payment of ad valorem, highway and all other taxes, a copy of a vehicle maintenance packet, license plates and registration compliance, and a valid, current DOT inspection certification.

**(g) Inspections.** Not more than 90 days and not less than 45 days prior to return of a Vehicle on the applicable Lease Termination Date, Lessee will make the Vehicle available so that Lessor may conduct a "walk-around" appraisal. Inspections may be made by National Truck Protection at the request and expense of Lessor if the Vehicles meet the National Truck Protection

standard. Lessee is responsible for the cost of inspection of Vehicles not meeting the established National Truck Protection standard.

**13. Assignment:**
    (a) <u>Transfer By Lessor</u>:  LESSOR MAY ASSIGN OR TRANSFER THIS AGREEMENT ANY SCHEDULE OR LESSOR'S INTEREST IN ANY OF THE VEHICLES WITHOUT NOTICE TO LESSEE. Any assignee or transferee of Lessor shall have all of the rights, but none of the obligations, of Lessor under this Agreement and Lessee agrees that it will not assert against any assignee or transferee of Lessor any defense, counterclaim, or offset which Lessee may have against Lessor. Lessee acknowledges that any assignment or transfer by Lessor shall not materially change Lessee's duties or obligations under this Lease nor materially increase the burden or risks imposed on Lessee.

    (b) <u>Transfer By Lessee</u>:  LESSEE SHALL NOT ASSIGN, SUBLEASE, TRANSFER, OR DISPOSE OF ALL OR ANY PART OF ITS RIGHTS OR OBLIGATIONS UNDER THIS AGREEMENT OR IN THE VEHICLES, OR ENTER INTO ANY SUBLEASE OF ALL OR ANY OF THE VEHICLES, WITHOUT THE PRIOR WRITTEN CONSENT OF LESSOR, (REGARDLESS OF WHETHER SUCH ACTION OCCURS VOLUNTARILY OR BY OPERATION OF LAW).

    (c) <u>Security Interest and Assignment</u>.  Notwithstanding the prohibition against assignments or subleases without Lessor's prior written consent, Lessee hereby transfers, conveys, and assigns to Lessor and grants to Lessor a security interest in all of Lessee's right, title, and interest in, but none of its obligations under any sublease of the Vehicles, and all proceeds and income arising therefrom.  Any sublease permitted under this Agreement shall be in form and contain terms and conditions acceptable to Lessor and assigned to Lessor by form approved by Lessor, all such approvals by Lessor to be granted or withheld in Lessor's sole and absolute discretion.

**14. Lessee's Indemnities:**  Lessee agrees that:  (a) Lessee will indemnify and hold harmless Lessor and its agents for, from, and against all losses, penalties, claims, and causes of action including legal fees and expenses of every kind and nature related to this Agreement or the selection, manufacture, purchase, delivery, lease, possession, use, misuse, contents, repair, collision, personal injury, death, condition or return of any of the Vehicles; (b) Lessor may, at its sole option, take any action Lessor deems necessary to cure any Event of Default, and Lessee will immediately and fully compensate Lessor for such action; and (c) Lessor is entitled to the accelerated cost recovery (or depreciation) deductions with respect to each Vehicle. Should any taxing authority disallow, eliminate, reduce, recapture, or disqualify, in whole or in part, any tax benefits with respect to any Vehicle (whether because of a change in tax law or policy or because of a change in the status or condition of the Vehicle), then Lessee will immediately pay a sum that permits Lessor to receive (on an after-tax basis over the full term of the Lease) the same after-tax cash flow and after-tax yield that Lessor may have reasonably assumed upon entering into the Lease. Any written request from Lessor for such a payment will be binding, unless objected to within 14 days of notification, and due upon request.

**15. Events of Default:**  Each of the following shall constitute an Event of Default which will allow Lessor to exercise all of its rights under this Agreement and applicable law: (a) Lessee fails to make any payment in full when due under this Agreement; (b) Lessee breaches any provision, covenant, or warranty in this Agreement and such breach continues after ten (10) days written notice to Lessee; (c) any of the Vehicles is lost, severely damaged, destroyed or attached and Lessor does not receive the Stipulated Loss Value for such Vehicle, plus all other amounts then due under this Agreement for such Vehicle, within ten (10) days after the date on which such damage, destruction, or attachment occurs; (d) an odometer on any Vehicle fails or appears to have been tampered with and is not repaired within two weeks; (e) Lessee or any guarantor dies, becomes insolvent or ceases to do business in the ordinary course, or suffers a material adverse change in its management or ownership; (f) a petition in bankruptcy is filed by or against Lessee or any guarantor, or Lessee or guarantor admits its inability or is unable to pay its debts as they come due, or a receiver or trustee is appointed for Lessee or any guarantor; (g) any guarantor, surety or endorser for Lessee defaults on any obligation or liability to Lessor; (h) Lessee or any guarantor shall default with respect to any agreement with, or obligation to, any other party for the payment of borrowed money, contractual obligation, or rent, and such default exceeds an aggregate amount of One Million Dollars ($1,000,000); (i) any representation or warranty made by Lessee or any guarantor in any of the Lease Documents or any information delivered by Lessee or any guarantor in obtaining or hereafter in connection with the credit evidenced by this Agreement is materially incomplete, incorrect or misleading as of the date made or delivered; (j) the consolidation or merger of Lessee or guarantor with any other person or entity, or the taking of any action by Lessee or any guarantor towards a dissolution, liquidation, consolidation, or merger; and (k) the sale or transfer (voluntarily or by operation of law) by Lessee or any guarantor of all or substantially all of Lessee's or any guarantor's assets to any person or entity.

**16. Waiver of Defaults:**  Lessor may, in its sole discretion, waive an Event of Default or permit a cure of an Event of Default, at Lessee's sole expense. Any such waiver will not constitute a waiver of any other Events of Defaults or a waiver of the same type of an Event of Default at another time.

\us\lease\\master lease\04.97

**17. Remedies:** Whenever an Event of Default has occurred under this Agreement, Lessor will have all the rights and remedies provided by this Agreement, the UCC, and other applicable law. Lessor's rights and remedies are cumulative. At the option of Lessor, with or without notice, Lessee's rights to the Vehicles may be canceled and all rental payments and other amounts owed under this Agreement will be immediately due and payable in full, together with all costs and expenses, including attorneys' fees, incurred by Lessor in the enforcement of its rights and remedies under this Lease. Lessor may take possession of any Vehicles (with or without legal process) and, to the extent permitted by law, may enter any locked or unlocked premises for that purpose. Lessor may, at its option, sell, lease, or otherwise dispose of any or all of the Vehicles after it obtains possession. Upon such sale, Lessee will pay to Lessor immediately, as liquidated damages for loss of bargain and not as a penalty, the amount by which the Stipulated Loss Value exceeds the net sales proceeds of such Vehicles in addition to all other amounts due. If any Vehicle is not immediately returned to Lessor, or if Lessor is prevented from retaking possession, Lessee will pay Lessor immediately the Stipulated Loss Value for such Vehicle as of the date rental payments are next due, in addition to all other owed charges. Lessor may at its sole discretion seek remedies with respect to Lessee's obligations on some or all of the Schedules without diminishing Lessor's rights to separately or later pursue remedies on any of Lessee's other obligations. To the extent permitted by law, Lessee waives all other remedies, including specific performance, the right to deduct damages from current amounts due, and all indirect, consequential, punitive, and incidental damages.

**18. Statute of Limitations.:** Any action by Lessee against Lessor under this Agreement shall be commenced within one (1) year after any such cause of action accrues.

**19. Survival.** The representations, warranties, and covenants of the Lessee in this Agreement shall survive the execution and delivery of this Agreement.

**20. Integration, Entire Agreement.** This Agreement and the Schedules attached hereto constitute the entire agreement and understanding of Lessor and Lessee and supersede all prior representations, warranties, agreements, understandings, and negotiations. Acceptance of late payments shall not waive the TIME IS OF THE ESSENCE PROVISION, the right of Lessor to require that subsequent payments be made when due, or the right of Lessor to declare an Event of Default if subsequent payments are not made when due.

**21. Costs, Expenses, and Fees.** In the event of any dispute between the parties, the prevailing party in such dispute shall recover from the other all fees and expenses (including reasonable attorney's fees and expenses) incurred in connection with such dispute, regardless of whether litigation is instigated.

**22. Severability.** If any provision of any of this Agreement is unenforceable, such provision shall be modified to the minimum extent possible to make such provision enforceable and the enforceability of the other provisions of this Agreement shall not be affected.

**23. Choice of Law.** This Agreement shall not be effective until accepted by Lessor at its North Carolina headquarters and shall be governed by the substantive (and not choice of law or conflicts) laws of the State of North Carolina.

**24. Time is Of the Essence.** Time is of the essence with regard to each provision of this Agreement as to which time is a factor.

**25. Notices and Demands.** All demands or notices under this Agreement shall be in writing (including without limitation, telecopy or facsimile, receipt confirmed) and mailed, telecopied, or delivered to the address previously specified in writing by the party to whom such notice is being given. Any demand or notice mailed shall be mailed first-class mail, post-prepaid, return-receipt requested. Demands or notices shall be effective upon the earlier of (i) actual receipt by the addressee or (ii) the date shown on the return receipt, fax confirmation, or delivery receipt.

**26. Rescission or Return of Payments.** If at any time, all or any part of any amount received by the Lessor under this Agreement, must or is claimed to be subject to avoidance, rescission, or return to Lessee or any other party for any reason whatsoever, such obligation and any liens, security interests and other encumbrances that secured such obligations at the time such avoidance, rescission, or returned payment was received by Lessor shall be deemed to have continued in existence or shall be reinstated, as the case may be, all as though such payment had not been received.

**27. Headings.** The headings at the beginning of sections of this Agreement are solely for convenience and do not modify any sections.

**28. Number and Gender.** The singular shall include the plural and vice versa and each gender shall include the other genders.

\us\lease\\master lease\04.97

**29. Multiple Finance Accommodations.** If Lessee has more than one lease or other finance accommodation with Lessor, Lessee agrees that: (i) this Agreement and the documents relating to such other finance accommodation shall all remain in effect and neither shall supersede the other, regardless of whether this Agreement and such other financing documents have differing terms, conditions, and requirements; and (ii) regardless of any such differences, Lessee shall comply with all of the terms, condition, and requirements of this Agreement and of such other financing documents.

**30. Waivers.** Lessee waives, to the fullest extent permitted by law, presentment, notice of dishonor, and all other notices or demands of any kind (except as otherwise expressly provided in this Agreement).

**31. Amendment or Modification.** No term or provision of this Agreement maybe amended, waived, modified, discharged, or terminated orally but only in writing, executed by the parties. By executing this Agreement, Lessee agrees to be bound by the terms of this Lease and, to the extent applicable, the provision concerning a separately signed document pursuant to UCC Section 2A-208 has been satisfied.

Dated: As of the 10th day of December, 1997.

LESSEE:
G.F. Kelly, Inc. dba Kelly Trucking

By (Signature) _____

Title _____ PRESIDENT

VOLVO TRUCK FINANCE NORTH AMERICA, INC.
7823 National Service Road
PO Box 26131
Greensboro, North Carolina 27402-6131

By (Signature) _____

Title _____

7 (7)

\\us\lease\\master lease\04.97



# VFS Leasing Co.

## ADDENDUM NO. 1 TO MASTER LEASE AGREEMENT

This Addendum No. 1 To Master Lease Agreement is dated as 03/13/2002 and is attached to and incorporated by this reference in that certain Master Lease Agreement dated 12/10/1997 between Volvo Commercial Finance LLC The Americas and as partially to VFS Leasing Co., as Lessor, and G.F. Kelly, Inc. dba Kelly Trucking, as Lessee (the "**Agreement**").       All capitalized terms used and not defined in this Addendum are used with the same meaning as given in the Agreement.

1. Section 3 of the Agreement entitled "Precautionary Security Agreement" is hereby amended by deleting the following sentence that appears on lines four through six of Section 3:

   Lessee hereby also grants Lessor a security interest in all accessions and additions to, substitutions and replacements for, and proceeds (including insurance proceeds), accounts, and income arising from or generated by the Vehicles.

   and replacing the sentence in its entirety with the following language:

   Lessee hereby also grants Lessor a security interest in all accessions and additions to, substitutions and replacements for, and proceeds (including insurance proceeds), accounts, rights of payments (including monetary obligations, whether or not earned by performance), secondary obligations incurred or to be incurred, chattel paper, electronic chattel paper, equipment, general intangibles, payment intangibles, promissory notes and income arising from or generated by the Vehicles.

2. Section 8 of the Agreement entitled "Lessee's Representations" is hereby amended by deleting the sentence in subsection (viii), and replacing the subsection in its entirety with the following language:

   (viii) Lessee's exact legal name is G.F. Kelly, Inc. dba Kelly Trucking and state of formation is AL, Lessee agrees not to change its principal place of business, state of formation or legal name without 30 days prior written notice to Lessor;

3. Section 15 of the Agreement entitled "Events of Default" is hereby amended as follows:

   Addition:

   (l) the occurrence of any condition or event that is a default or is designated as a default, event of default, or Event of Default, under any other Lease Document or in any other agreement, contract, indebtedness or obligation of Lessee to Lessor.

   Except as expressly provided in this Addendum, all of the terms and conditions of the Agreement remain in full force and effect.

   Dated: As of March 13, 2002.

ATTEST:                                    LESSEE: G.F. Kelly, Inc. dba Kelly Trucking

(Signature) _____         (Signature) _____

(Title) _____             (Title) _____

07.001

 

# VOLVO

Volvo Commercial Finance LLC The Americas

**Schedule No. 414**
**(Terminal Rental Adjustment Clause)**

| Customer No: | 2001308 |
|---|---|

| Schedule No: | 414 |
|---|---|

This Schedule No. 414 is entered into pursuant to that certain Master Lease Agreement (the "Agreement") between Volvo Commercial Finance LLC The Americas ("Lessor") and GF KELLY, INC. DBA KELLY TRUCKING ("Lessee") dated the 10th day of December, 1997.

All capitalized terms used and not defined are used with the same meaning as given in the Agreement.

### DESCRIPTION OF VEHICLES

| | |
|---|---|
| Number of Units: | 1 |
| Description (Year/Model): | VOLVO VNL64T660 |
| Taxable GVW: | |

### SUPPLIER INFORMATION

| | | | |
|---|---|---|---|
| Company Name: | Capital Trailer & Equipment Co., Inc. | | |
| Street Address: | 185 West Blvd. | | |
| City: Montgomery | State: AL | | Zip: 36108 |

### FINANCIAL TERMS

| | | | Per Vehicle | Total on Schedule |
|---|---|---|---|---|
| Base Lease Term (months): | 60 | | | |
| Base Lease Commencement Date: | 07/25/01 | Lessor's Cost: | $83,280.00 | $83,280.00 |
| Lease Termination Date: | 07/25/06 | Additional Monthly Rent: | | $0.00 |
| Date of Acceptance: | 07/25/01 | Initial Rental Payment: | | $0.00 |
| Daily Lease Rate Factor: | | Interim Rent: | | $0.00 |
| Monthly Lease Rate Factor: | 1.6552 | 60 Regular Monthly Rental Payments: | $1,378.49 | $1,378.49 |
| Payments due in: | ARREAR | Each Monthly Rental Payment Due On or Before the TWENTY FIFTH day of Each Month. | | |
| INSURANCE: Lessee shall maintain Combined Single Limits insurance: | | First Monthly Rental Payment is due on or before 08/25/01. Lessee will also pay all taxes and other amounts under the Agreement whenever due in addition to the Rent stated above. | | |
| Per Vehicle on this Schedule: | 1,000,000. | Maximum Miles Per Year: | | |
| Deductible per Occurrence: | 2,500.00 | Excess Mileage Rate: | | |

### ADDRESS OF LOCATION OF PRIMARY DOMICILE OR GARAGE OF VEHICLES

| | | | |
|---|---|---|---|
| Street Address: | MAIN STREET BOX 29 | | |
| City: WADLEY | State: AL | | Zip: 36276 |
| County: | | | |

Lessee's Initial: GK

 

**1. Option to Purchase.** So long as no Event of Default has occurred and is continuing under the Agreement, Lessee shall have the right to purchase all, but not less than all, of the Vehicles on the Lease Termination Date. Lessee shall give Lessor at least 90 days and not more than 180 days advance written irrevocable notice of its intent to exercise such purchase option prior to the Lease Termination Date. On or before the Lease Termination Date, Lessee shall purchase all of the Vehicles for a price equal to TWENTY percent ( 20 %) of the Lessor's Cost for the Vehicles (the "Purchase Price"), net of all costs and expenses of the transaction (which costs and expenses, whether assessed to Lessor or Lessee, shall be paid by Lessee). The Purchase Price shall be paid to Lessor in immediately available funds on or before the Lease Termination Date. Upon receipt of the Purchase Price, Lessor shall transfer ownership of the Vehicles to Lessee "AS-IS," "WHERE-IS," by bill of sale with no warranties of title or otherwise, except for a warranty of liens arising solely through Lessor. Interest at an annual rate of 18% shall be due and paid by Lessee on any portion of the Purchase Price not paid on or before the Lease Termination Date.

**2. Sales.** If Lessee does not exercise the purchase option provided in Section 1 above, Lessor shall attempt to sell the Vehicles, with Lessee acting as the sales agent for Lessor. Lessor may reject any bid obtained for Lessor by Lessee, the Net Sales Proceeds of which would be less than the Purchase Price due upon exercise of the purchase option. Unless otherwise agreed by Lessor, all such sales shall close and Lessor shall receive the Net Sales Proceeds on or before the Lease Termination Date. All Net Sales Proceeds shall be paid to Lessor. As used in this Schedule, the term "Net Sales Proceeds" means the net amount paid to Lessor from the sale of the Vehicles after deducting reasonable costs of sale, cleaning, or transporting the Vehicles, and other similar expenses in connection with the sale, including any expenses incurred in repairing the Vehicles. Upon receipt of Net Sales Proceeds equal to the Purchase Price (or such lesser amount as acceptable to Lessor in its sole discretion), plus, for Net Sales Proceeds received after the Lease Termination Date, interest at the rate of 18% per year, Lessor shall transfer title to the Vehicles in the same manner as provided in Section 1.

**3. Re-Delivery.** Lessee shall return all Vehicles not purchased or sold in accordance with Sections 1 and 2 above to Lessor on or before the Lease Termination Date. The Vehicles shall be in a condition satisfying all of the requirements of the Agreement. At the time of such return, Lessee shall pay Lessor an amount equal to the Purchase Price. Lessor shall then attempt to sell the Vehicles and shall remit to Lessee all Net Sales Proceeds actually received by Lessor for the sale of any Vehicles for which Lessor received an amount equal to the Purchase Price from Lessee. If any Vehicle is not returned in the condition required under the Agreement, Lessee shall purchase such Vehicle for the Purchase Price with payment in full due on or before the Lease Termination Date.

**4. Final TRAC Adjustment.** If, on the completion of all purchase, sales, and re-deliveries described in Sections 1-3 above Lessor has not received in cash (excluding any sales or salvage value of the Vehicles delivered in accordance with Section 3) a net amount in respect of such purchases and sales equal to the Purchase Price of all of the Vehicles plus all other amounts due under the Agreement, Lessor may retain all payments previously made to it and Lessee shall immediately pay any remaining balance of the Purchase Price, plus interest at a rate of 18% per year from the Lease Termination Date to the date of such payment, to Lessor. If, on such completion, Lessor has received Net Sales Proceeds in excess of the Purchase Price of all of the Vehicles and all other amounts due under the Agreement, plus interest on the Purchase Price at the rate of 18% per year from the Lease Termination Date to the date of receipt of all of the Purchase Price, Lessor shall pay the excess to Lessee.

**5. Conflict.** To the extent there is any conflict between the terms of this Schedule No. 414 and the Agreement, the terms of this Schedule shall control such conflict.

Lessee: GF KELLY, INC. DBA KELLY TRUCKING

By: _____

Title: _____

Dated: _____

Accepted by Lessor:

Volvo Commercial Finance LLC The Americas

By: _____

Title: _____

Dated: _____




# VOLVO

Volvo Commercial Finance LLC The Americas

**Exhibit A to Schedule No. 414**
**Vehicles and Components Serial Numbers**

| Customer No: | 2001308 |
|---|---|

| Schedule No: | 414 |
|---|---|

| **Year** | **Make** | **Model** | **VIN Number** | **Engine S/N** | **Other Components** |
|---|---|---|---|---|---|
| 2002 | VOLVO | VNL64T660 | 4V4NC9TH02N325020 | | |

Lessee's Initials: *GIU*

  

# VOLVO

Volvo Commercial Finance LLC The Americas

| Customer No: | 2001308 |
| --- | --- |

| Rental Period | Stipulated Loss Factor | Rental Period | Stipulated Loss Factor |
| --- | --- | --- | --- |
| 1 | 104.970% | 41 | 51.096% |
| 2 | 103.745% | 42 | 49.612% |
| 3 | 102.515% | 43 | 48.120% |
| 4 | 101.278% | 44 | 46.621% |
| 5 | 100.036% | 45 | 45.115% |
| 6 | 98.787% | 46 | 43.602% |
| 7 | 97.533% | 47 | 42.082% |
| 8 | 96.273% | 48 | 40.554% |
| 9 | 95.006% | 49 | 39.018% |
| 10 | 93.734% | 50 | 37.475% |
| 11 | 92.455% | 51 | 35.925% |
| 12 | 91.170% | 52 | 34.367% |
| 13 | 89.879% | 53 | 32.801% |
| 14 | 88.582% | 54 | 31.228% |
| 15 | 87.279% | 55 | 29.648% |
| 16 | 85.969% | 56 | 28.059% |
| 17 | 84.653% | 57 | 26.463% |
| 18 | 83.331% | 58 | 24.859% |
| 19 | 82.003% | 59 | 23.247% |
| 20 | 80.668% | 60 | 20.000% |
| 21 | 79.326% | | |
| 22 | 77.978% | | |
| 23 | 76.624% | | |
| 24 | 75.263% | | |
| 25 | 73.896% | | |
| 26 | 72.522% | | |
| 27 | 71.141% | | |
| 28 | 69.754% | | |
| 29 | 68.359% | | |
| 30 | 66.959% | | |
| 31 | 65.551% | | |
| 32 | 64.137% | | |
| 33 | 62.716% | | |
| 34 | 61.288% | | |
| 35 | 59.853% | | |
| 36 | 58.411% | | |
| 37 | 56.962% | | |
| 38 | 55.506% | | |
| 39 | 54.043% | | |
| 40 | 52.573% | | |

** Stipulated Loss Factor does not include Regular Monthly Rental Payment or any other amounts due on same date.

Dated:      July 25, 2001

G.F. Kelly, Inc. dba Kelly Trucking
Lessee
By:

Its:

Run Date:      7/24/2001 16:16

Volvo Commercial Finance LLC The Americas
Lessor
By:

Jean H. Evans
Documentation and Funding Specialist




# VOLVO

Volvo Commercial Finance LLC The Americas

**Exhibit "C" to Schedule No. 414**

**Certificate of Acceptance**

| Customer No: | 2001308 |
|---|---|

| Schedule No: | 414 |
|---|---|

This Certificate of Acceptance is made pursuant to a Master Lease Agreement (the "Agreement") between Volvo Commercial Finance LLC The Americas ("Lessor") and GF KELLY, INC. DBA KELLY TRUCKING ("Lessee") dated the 10 day of December, 1997, and Schedule No. 414 to the Agreement.

All capitalized terms used and not defined in this Certificate of Acceptance are used with the same mean as given in the Agreement.

1. Lessee acknowledges receipt and its irrevocable acceptance of each of the Vehicles listed on Schedule A to Schedule No. 414 as of the date shown below (the "Date of Acceptance").

2. Lessee represents and warrants to Lessor that Lessee has: accepted delivery of and inspected each of the Vehicles; determined that each Vehicle contains all of the major components and accessories as agreed; each Vehicle is in good working order, repair, and condition; and that each Vehicle is fit for immediate and continued use and conforms to Lessee's requirements without exception. Lessee understands and acknowledges that Lessor is entering into the lease of these Vehicles based on Lessee's representation and warranty that Lessee will pay in full to Lessor all payments when due as required by the Agreement.

3. Lessee also represents and warrants to Lessor that no Event of Default or event which, but for the passage of time or the giving of notice, or both, would constitute an Event of Default under the Agreement has occurred and is continuing as of the Date of Acceptance and that all of the representations and warranties made be Lessee in the Lessee in the Agreement are correct and complete as though made on and as of the date of this Certificate of Acceptance.

Dated the 25 day of July, 2001.

GF KELLY, INC. DBA KELLY TRUCKING
Lessee

By: _____

Title: _____

Receipt of Certificate of Acceptance Acknowledged By:
Volvo Commercial Finance LLC The Americas
Lessor

By: _____

Title: _____

Jean H. Evans
Documentation and Funding Specialist

921df

  

# VOLVO

**Volvo Commercial Finance LLC The Americas**



### Certificate of Business Use and Lessor's Tax Ownership

Lessee hereby certifies under penalty of perjury, in accordance with Section 7701(h)(2)(c) of the Internal Revenue Code of 1986, as amended (the "Code"), that Lessee intends that more than fifty percent (50%) of the use of the Vehicles by Lessee will be in a trade or business of Lessee.

In accordance with Code Section 7701(h)(2)(c), Lessee has been advised that Lessee will not be treated as the owner of the Vehicles for federal income tax purposes and, thus, will not be entitled to claim any of the tax benefits of ownership.

Lessee: GF KELLY, INC. DBA KELLY TRUCKING

By: _____

Name: _____

Title: _____

Date: _____

JP186




# VOLVO

**Volvo Commercial Finance LLC The Americas**

5 362D

**Bill of Sale
(Master Lease Agreement)**

PURCHASER:  VOLVO COMMERCIAL FINANCE LLC THE AMERICAS
7025 Albert Pick Road, Suite 105 (27409)
PO Box 26131
Greensboro, NC 27402-6131

SUPPLIER:  Capital Trailer & Equipment Co., Inc.    DATE:    July 24, 2001
185 West Blvd.
Montgomery AL
36108
(GF KELLY, INC. DBA KELLY TRUCKING, 2001308)

EQUIPMENT:

| Serial Number | Year | Make | Model | Description |
|---|---|---|---|---|
| 4V4NC9TH02N325020 | 2002 | VOLVO | VNL64T660 | TRACTOR |

| Total No. Units: | 1 |
|---|---|

| | |
|---|---|
| Unit Price: | $83,280.00 |
| Extended Price: | $83,280.00 |
| Other Tax (sales, etc.): | 0.00 |
| Federal Excise Tax | $0.00 |
| Total Price: | $83,280.00 |

Please make MSO's out to VOLVO COMMERCIAL FINANCE LLC THE AMERICAS, using the above address. Unless otherwise specified, VOLVO COMMERCIAL FINANCE LLC THE AMERICAS must also be listed as lienholder.

Payment terms are due upon receipt of written acceptance by Lessee, or as specified below:

ARREARS

Please see reverse side for additional terms and conditions.

-1 (2) -

981df

      1.

## ADDITIONAL TERMS AND CONDITIONS

In accordance with, and subject to, all of the undertakings set forth in the Volvo Commercial Finance LLC The Americas Retail Finance Plan Agreement, dated as of July 28, 1999 the "Agreement") between the above-named Dealer and Volvo Commercial Finance LLC The Americas (the "Company"), which Agreement is hereby incorporated by reference, the undersigned, for value received, hereby grants, bargains, sells, assigns, transfers and conveys to Company the described vehicles (the "Vehicles"), and hereby reaffirms its representations, warranties, and covenants contained in the Agreement.

This Bill of Sale is executed by Dealer to convey title to the Vehicles which will be subject to a Master Lease Agreement between Company and Dealer's customer as contemplated in the Agreement. In order to induce Company to purchase and lease the vehicles, Dealer hereby ratifies and confirms its obligations under the Agreement with respect to transactions to be evidenced by the Master Lease Agreement. Without limiting the generality of the foregoing, Dealer hereby acknowledges that by this conveyance it is making all the representations with respect to the Master Lease Agreement and the related vehicles as are provided to be made with respect to Contracts purchased by Company. Dealer further acknowledges and agrees that its obligations under the paragraphs entitled "Repurchase Obligation" and "Reimbursement and Indemnity" shall apply to the Master Lease Agreement and other documentation reflecting the transaction to be made with respect to the vehicle(s) is hereby conveyed the same as if the lease agreement and other documentation had been entered into between Dealer and its customer and assigned to Company.

Dealer acknowledges that the Commission paid to Dealer in connection with the Master Lease Agreement is $0.00.

Dealer's further obligations with respect to the above-referenced vehicles and the Master Lease Agreement (the "Contract") are as follows:

[X] **Without Recourse**, except as to Dealer's covenants, representations and warranties contained in the Agreement and to the extent of Commissions and other compensation received by Dealer.

[ ] **With Full Recourse.** (Full guaranty of Dealer.) In addition to its representations and warranties contained in the Agreement, whenever the Contract is in default, Dealer unconditionally guarantees promise to pay upon demand the full amount of the Contract remaining unpaid, including all legal and repossession fees incurred by Company, whether or not said Contract shall be in default and regardless of whether Company has repossessed the vehicle described in said Contract. Further obligations of the undersigned are set forth in the Agreement.

[ ] **With Limited Recourse.** In addition to its covenants, representations and warranties contained in the Agreement, Dealer is responsible for payment of an amount equal to _____ percent of the outstanding balance due under the Contract as of date of default.

[ ] **With Other Recourse.** In addition to its covenants, representations and warranties contained in the Agreement, Dealer is responsible for:

THIS AGREEMENT made and entered into as of the 25 day of July, 2001.

DEALER: Capital Trailer & Equipment Co., Inc.

By (Signature): _Greg M Maxwell_

Print/Type Name: _GREG MAXWELL_

Title: _Vice President_

- -2 (2)- -



# VFS Leasing Co.

## Schedule No. 416
### (Terminal Rental Adjustment Clause)

| Customer No: | 2001308 | | Schedule No: | 416 |
|---|---|---|---|---|

This Schedule No. 416 is entered into pursuant to that certain Master Lease Agreement dated the 10th day of December, 1997 and signed by GF KELLY, INC. DBA KELLY TRUCKING ("Lessee") (the "Agreement"). Lessee agrees to lease from Lessor the Vehicle(s) identified below upon the terms and conditions set forth in the Agreement.

All capitalized terms used and not defined are used with the same meaning as given in the Agreement.

### DESCRIPTION OF VEHICLES

| | |
|---|---|
| Number of Units: | 2 |
| Description (Year/Model): | 2000 VOLVO VNL64T660 |
| Taxable GVW: | |

### SUPPLIER INFORMATION

| | | | |
|---|---|---|---|
| Company Name: | Volvo Trucks of Birmingham | | |
| Street Address: | 1801 Fulton Road | | |
| City: | Fultondale | State: AL | Zip: 35068 |

### FINANCIAL TERMS

| | | | Per Vehicle | Total on Schedule |
|---|---|---|---|---|
| Base Lease Term (months): | 60 | | | |
| Base Lease Commencement Date: | 03/13/02 | Lessor's Cost: | $76,133.00 | $152,266.00 |
| Lease Termination Date: | 03/13/07 | Additional Monthly Rent: | $17.83 | $35.66 |
| Date of Acceptance: | 03/13/02 | Initial Rental Payment: | | $0.00 |
| Daily Lease Rate Factor: | | Interim Rent: | | $0.00 |
| Monthly Lease Rate Factor: | 1.7146 | 60 Regular Monthly Rental Payments: | $1,305.39 | $2,610.78 |
| Payments due in: | ARREAR | Each Monthly Rental Payment Due On or Before the Thirteenth day of Each Month. | | |
| INSURANCE: Lessee shall maintain Combined Single Limits Insurance: | | First Monthly Rental Payment is due on or before 04/13/2002. Lessee will also pay all taxes and other amounts under the Agreement whenever due in addition to the Rent stated above. | | |
| Per Vehicle on this Schedule: | 1,000,000.00 | Maximum Miles Per Year: | 100,000.00 | |
| Deductible per Occurrence: | 2,500.00 | Excess Mileage Rate: | 0.05 | |

### ADDRESS OF LOCATION OF PRIMARY DOMICILE OR GARAGE OF VEHICLES

| | | |
|---|---|---|
| Street Address: | MAIN STREET, BOX 29 | |
| City: | WADLEY | State: AL    Zip: 36276 |
| County: | RANDOLPH | |

Lessee's Initial: GK

1(3)

07.001 dg



**1. Option to Purchase.** So long as no Event of Default has occurred and is continuing under the Agreement, Lessee shall have the right to purchase all, but not less than all, of the Vehicles on the Lease Termination Date. Lessee shall give Lessor at least 90 days and not more than 180 days advance written irrevocable notice of its intent to exercise such purchase option prior to the Lease Termination Date. On or before the Lease Termination Date, Lessee shall purchase all of the Vehicles for a price equal to Twenty percent ( 20 %) of the Lessor's Cost for the Vehicles (the **"Purchase Price"**), net of all costs and expenses of the transaction (which costs and expenses, whether assessed to Lessor or Lessee, shall be paid by Lessee). The Purchase Price shall be paid to Lessor in immediately available funds on or before the Lease Termination Date. Upon receipt of the Purchase Price, Lessor shall transfer ownership of the Vehicles to Lessee "AS-IS," "WHERE-IS," by bill of sale with no warranties of title or otherwise, except for a warranty of liens arising solely through Lessor. Interest at an annual rate of 18% shall be due and paid by Lessee on any portion of the Purchase Price not paid on or before the Lease Termination Date.

**2. Sales.** If Lessee does not exercise the purchase option provided in Section 1 above, Lessor shall attempt to sell the Vehicles, with Lessee acting as the sales agent for Lessor. Lessor may reject any bid obtained for Lessor by Lessee, the Net Sales Proceeds of which would be less than the Purchase Price due upon exercise of the purchase option. Unless otherwise agreed by Lessor, all such sales shall close and Lessor shall receive the Net Sales Proceeds on or before the Lease Termination Date. All Net Sales Proceeds shall be paid to Lessor. As used in this Schedule, the term **"Net Sales Proceeds"** means the net amount paid to Lessor from the sale of the Vehicles after deducting reasonable costs of sale, cleaning, or transporting the Vehicles, and other similar expenses in connection with the sale, including any expenses incurred in repairing the Vehicles. Upon receipt of Net Sales Proceeds equal to the Purchase Price (or such lesser amount as acceptable to Lessor in its sole discretion), plus, for Net Sales Proceeds received after the Lease Termination Date, interest at the rate of 18% per year, Lessor shall transfer title to the Vehicles in the same manner as provided in Section 1.

**3. Re-Delivery.** Lessee shall return all Vehicles not purchased or sold in accordance with Sections 1 and 2 above to Lessor on or before the Lease Termination Date. The Vehicles shall be in a condition satisfying all of the requirements of the Agreement. At the time of such return, Lessee shall pay Lessor an amount equal to the Purchase Price, Lessor shall then attempt to sell the Vehicles and shall remit to Lessee all Net Sales Proceeds actually received by Lessor for the sale of any Vehicles for which Lessor received an amount equal to the Purchase Price from Lessee. If any Vehicle is not returned in the condition required under the Agreement, Lessee shall purchase such Vehicle for the Purchase Price with payment in full due on or before the Lease Termination Date.

**4. Final TRAC Adjustment.** If, on the completion of all purchase, sales, and re-deliveries described in Sections 1-3 above Lessor has not received in cash (excluding any sales or salvage value of the Vehicles delivered in accordance with Section 3) a net amount in respect of such purchases and sales equal to the Purchase Price of all of the Vehicles plus all other amounts due under the Agreement, Lessor may retain all payments previously made to it and Lessee shall immediately pay any remaining balance of the Purchase Price, plus interest at a rate of 18% per year from the Lease Termination Date to the date of such payment, to Lessor. If, on such completion, Lessor has received Net Sales Proceeds in excess of the Purchase Price of all of the Vehicles and all other amounts due under the Agreement, plus interest on the Purchase Price at the rate of 18% per year from the Lease Termination Date to the date of receipt of all of the Purchase Price, Lessor shall pay the excess to Lessee.

**5. Conflict.** To the extent there is any conflict between the terms of this Schedule No. 416 and the Agreement, the terms of this Schedule shall control such conflict.

**6. Agreements Prior to October 1, 2001.** This section is only applicable if the Agreement was executed by Lessee and Volvo Commercial Finance LLC The Americas (or a predecessor in interest) as lessor (the "Prior Lessor"). If the Agreement was executed before October 1, 2001, it and all related documents has been partially assigned by the Prior Lessor to VFS Leasing Co., and partially assumed by, Lessor, effective as of October 1, 2001. Such partial assignment and assumption of the agreement and all related documents applies to all Schedules executed on or after October 1, 2001 but does not apply to Schedules executed prior to October 1, 2001. Lessee acknowledges and agrees that as used in the Agreement, the phrase "this Agreement" and any similar phrase shall mean collectively, the Agreement, all Schedules, and all other documents executed by Lessor (or the Prior Lessor) and Lessee. Each Schedule shall be deemed a separate lease agreement with respect to the Vehicles described therein, each of which shall be deemed to incorporate by reference the terms of the Agreement. Lessor may designate other entities (each, a "Lessor Designee") to lease Vehicles to Lessee under this Lease, and either Lessor or Lessor Designee may directly enforce such rights against Lessee. For any rights with respect to any Vehicle leased to Lessee by a Lessor Designee, references in the Agreement to Lessor will be deemed to be references to the Lessor Designee. Lessee agrees that Lessor or any Lessor Designee may appoint one or more agents to act on its behalf and that such agents have the power and right to administer and enforce the Agreement.

Lessee: GF KELLY, INC. DBA KELLY TRUCKING

By: _____

Accepted by Lessor:

VFS Leasing Co.

By: _____
2(3)              Sandra E. McCauley
          Documentation and Funding Specialist

Title: _Pres, det_

Dated: _3-15-02_

Dated: _____  Servicing Agent

Sandra E. McCauley
Documentation and Funding Specialist

3(3)

07.001 dg

# VFS Leasing Co.

## Exhibit A to Schedule No. 416
## Vehicles and Components Serial Numbers

| Customer No: | 2001308 |
|---|---|

| Schedule No: | 416 |
|---|---|

| Year | Make | Model | VIN Number | Engine S/N | Other Components |
|---|---|---|---|---|---|
| 2000 | VOLVO | VNL64T660 | 4V4ND4RJ0YN246759 | | |
| 2000 | VOLVO | VNL64T660 | 4V4ND4RJ9YN246758 | | |

Lessee's Initials: GK

| VFS Leasing Co ▼ | | | | **Stipulated Loss Factors** |
|---|---|---|---|---|

**Exhibit B Schedule No.:** 4/16

2001308

4/16

| Rental Period | Stipulated Loss Factor | Rental Period | Stipulated Loss Factor |
|---|---|---|---|
| 1 | 105.000% | 41 | 51.604% |
| 2 | 103.807% | 42 | 50.108% |
| 3 | 102.606% | 43 | 48.604% |
| 4 | 101.400% | 44 | 47.091% |
| 5 | 100.186% | 45 | 45.569% |
| 6 | 98.965% | 46 | 44.038% |
| 7 | 97.738% | 47 | 42.499% |
| 8 | 96.504% | 48 | 40.951% |
| 9 | 95.262% | 49 | 39.394% |
| 10 | 94.014% | 50 | 37.828% |
| 11 | 92.759% | 51 | 36.253% |
| 12 | 91.497% | 52 | 34.669% |
| 13 | 90.227% | 53 | 33.077% |
| 14 | 88.950% | 54 | 31.475% |
| 15 | 87.666% | 55 | 29.863% |
| 16 | 86.375% | 56 | 28.243% |
| 17 | 85.077% | 57 | 26.613% |
| 18 | 83.771% | 58 | 24.974% |
| 19 | 82.458% | 59 | 23.326% |
| 20 | 81.137% | 60 | 20.000% |
| 21 | 79.809% | | |
| 22 | 78.473% | | |
| 23 | 77.130% | | |
| 24 | 75.779% | | |
| 25 | 74.421% | | |
| 26 | 73.055% | | |
| 27 | 71.681% | | |
| 28 | 70.299% | | |
| 29 | 68.909% | | |
| 30 | 67.512% | | |
| 31 | 66.107% | | |
| 32 | 64.693% | | |
| 33 | 63.272% | | |
| 34 | 61.842% | | |
| 35 | 60.404% | | |
| 36 | 58.958% | | |
| 37 | 57.504% | | |
| 38 | 56.042% | | |
| 39 | 54.571% | | |
| 40 | 53.092% | | |

** Stipulated Loss Factor does not include Regular Monthly Rental Payment or any other amounts due on same date.

Dated:   March 13, 2002

G.F. KELLY, INC. DBA KELLY TRUCKING
Lessee
By: _____

Its: _____

Run Date:   03/13/02 15:06

VFS Leasing Co
Lessor
By: _____

Sandra E. McCauley
Documentation and Funding Specialist



**VFS Leasing Co.**                Exhibit "C" to Schedule No. 416
                                   Certificate of Acceptance

| Customer No: | 2001308 |
|---|---|

| Schedule No: | 416 |
|---|---|

This Certificate of Acceptance is made pursuant to a Master Lease Agreement (the "**Agreement**") between VFS Leasing Co. ("Lessor") and GF KELLY, INC. DBA KELLY TRUCKING ("Lessee") dated the 10th day of December, 1997, and Schedule No. 416 to the Agreement.

All capitalized terms used and not defined in this Certificate of Acceptance are used with the same mean as given in the Agreement.

1. Lessee acknowledges receipt and its irrevocable acceptance of each of the Vehicles listed on Schedule A to Schedule No. 416 as of the date shown below (the "**Date of Acceptance**").

2. Lessee represents and warrants to Lessor that Lessee has: accepted delivery of and inspected each of the Vehicles; determined that each Vehicle contains all of the major components and accessories as agreed; each Vehicle is in good working order, repair, and condition; and that each Vehicle is fit for immediate and continued use and conforms to Lessee's requirements without exception. Lessee understands and acknowledges that Lessor is entering into the lease of these Vehicles based on Lessee's representation and warranty that Lessee will pay in full to Lessor all payments when due as required by the Agreement.

3. Lessee also represents and warrants to Lessor that no Event of Default or event which, but for the passage of time or the giving of notice, or both, would constitute an Event of Default under the Agreement has occurred and is continuing as of the Date of Acceptance and that all of the representations and warranties made be Lessee in the Lessee in the Agreement are correct and complete as though made on and as of the date of this Certificate of Acceptance.

Dated the 13 day of March, 2002.

**GF KELLY, INC. DBA KELLY TRUCKING**
Lessee

By: _____

Title: _____

Receipt of Certificate of Acceptance Acknowledged By:
VFS Leasing Co.
Lessor

By: _____

Servicing Agent
Sandra E. McCauley
Documentation and Funding Specialist

07.001 DO

# VFS Leasing Co.

## *Certificate of Business Use and Lessor's Tax Ownership*

Lessee hereby certifies under penalty of perjury, in accordance with Section 7701(h)(2)(c) of the Internal Revenue Code of 1986, as amended (the "Code"), that Lessee intends that more than fifty percent (50%) of the use of the Vehicles by Lessee will be in a trade or business of Lessee.

In accordance with Code Section 7701(h)(2)(c), Lessee has been advised that Lessee will not be treated as the owner of the Vehicles for federal income tax purposes and, thus, will not be entitled to claim any of the tax benefits of ownership.

Lessee:  GF KELLY, INC. DBA KELLY TRUCKING

By: _____

Name: __Guy Kelly_____

Title: __Pres_____

Date: __3-15-02_____

07.001 df



# VFS Leasing Co.

# Bill of Sale
# (Master Lease Agreement)

PURCHASER:   VFS Leasing Co.
7025 Albert Pick Road, Suite 105 (27409)
PO Box 26131
Greensboro, NC 27402-6131

SUPPLIER:   Volvo Trucks of Birmingham              DATE:   March 13, 2002
1801 Fulton Road
Fultondale AL
35068
(OF KELLY, INC. DBA KELLY TRUCKING, 2001308)

EQUIPMENT:

| Serial Number | Year | Make | Model | Description |
|---|---|---|---|---|
| 4V4ND4RJ0YN246739 | 2000 | VOLVO | VNL64T660 | TRACTOR |
| 4V4ND4RJ9YN246738 | 2000 | VOLVO | VNL64T660 | TRACTOR |

| Total No. Units: | 2 |
|---|---|

| | |
|---|---|
| Unit Price: | $76,133.00 |
| Extended Price: | $152,266.00 |
| Other Tax (sales, etc.): | 0.00 |
| Federal Excise Tax | $0.00 |
| Total Price: | $152,266.00 |

Please make MSO's out to VFS Leasing Co., using the above address. Unless otherwise specified, VFS Leasing Co. must also be listed as lienholder.

Payment terms are due upon receipt of written acceptance by Lessee, or as specified below:

     ARREARS

Please see reverse side for additional terms and conditions.

-1 (2) -

07,001 df



## ADDITIONAL TERMS AND CONDITIONS

In accordance with, and subject to, all of the undertakings set forth in the Retail Finance Plan Agreement, dated as of 06/24/1996 (the "Agreement") signed by the above named Dealer and as partically assigned to VPS Leasing Co. (the "Company"), which Agreement is hereby incorporated by reference, the undersigned, for value received, hereby grants, bargains, sells, assigns, transfers and conveys to Company the described vehicles (the "Vehicles"), and hereby reaffirms its representations, warranties, and covenants contained in the Agreement.

This Bill of Sale is executed by Dealer to convey title to the Vehicles, which will be subject to a Master Lease Agreement between Company and Dealer's customer as contemplated in the Agreement. In order to induce Company to purchase and lease the vehicles, Dealer hereby ratifies and confirms its obligations under the Agreement with respect to transactions to be evidenced by the Master Lease Agreement. Without limiting the generality of the foregoing, Dealer hereby acknowledges that by this conveyance it is making all the representations with respect to the Master Lease Agreement and the related vehicles as are provided to be made with respect to Contracts purchased by Company. Dealer further acknowledges and agrees that its obligations under the paragraphs entitled "Repurchase Obligation" and "Reimbursement and Indemnity" shall apply to the Master Lease Agreement and other documentation reflecting the transaction to be made with respect to the vehicle(s) is hereby conveyed the same as if the lease agreement and other documentation had been entered into between Dealer and its customer and assigned to Company.

Dealer acknowledges that the Commission paid to Dealer in connection with the Master Lease Agreement is $400.57.

Dealer's further obligations with respect to the above-referenced vehicles and the Master Lease Agreement (the "Contract") are as follows:

[☒] **Without Recourse**, except as to Dealer's covenants, representations and warranties contained in the Agreement and to the extent of Commissions and other compensation received by Dealer.

[☐] **With Full Recourse**. (Full guaranty of Dealer.) In addition to its representations and warranties contained in the Agreement, whenever the Contract is in default, Dealer unconditionally guarantees promises to pay upon demand the full amount of the Contract remaining unpaid, including all legal and repossession fees incurred by Company, whether or not said Contract shall be in default and regardless of whether Company has repossessed the vehicle described in said Contract. Further obligations of the undersigned are set forth in the Agreement.

[☐] **With Limited Recourse**. In addition to its covenants, representations and warranties contained in the Agreement, Dealer is responsible for payment of an amount equal to           percent of the outstanding balance due under the Contract as of date of default.

[☐] **With Other Recourse**. In addition to its covenants, representations and warranties contained in the Agreement, Dealer is responsible for:

THIS AGREEMENT made and entered into as of the 13th day of March, 2002.

DEALER: Volvo Trucks of Birmingham

By (Signature):

Print/Type Name: JOSEPH L. KING

Title: CFO

-2 (2) -

07.001 df

**VFS Leasing Co.**

**Schedule No.  417**
**(Terminal Rental Adjustment Clause)**

| Customer No: | 2001308 | | | Schedule No: | 417 |
|---|---|---|---|---|---|

This Schedule No. 417 is entered into pursuant to that certain Master Lease Agreement dated the 10th day of December, 1997 and signed by GF KELLY, INC. DBA KELLY TRUCKING ("Lessee") (the "Agreement"). Lessee agrees to lease from Lessor the Vehicle(s) identified below upon the terms and conditions set forth in the Agreement.

All capitalized terms used and not defined are used with the same meaning as given in the Agreement.

### DESCRIPTION OF VEHICLES

| | |
|---|---|
| Number of Units: | 3 |
| Description (Year/Model): | 2001 VOLVO VNL64T |
| Taxable GVW: | |

### SUPPLIER INFORMATION

| | | | |
|---|---|---|---|
| Company Name: | Volvo Trucks of Birmingham | | |
| Street Address: | 1801 Fulton Road | | |
| City: | Fultondale | State:  AL | Zip:  35068 |

### FINANCIAL TERMS

| | | | Per Vehicle | Total on Schedule |
|---|---|---|---|---|
| Base Lease Term (months): | 60 | | | |
| Base Lease Commencement Date: | 03/19/02 | Lessor's Cost: | $77,518.33 | $232,555.00 |
| Lease Termination Date: | 03/19/07 | Additional Monthly Rent: | $17.93 | $53.79 |
| Date of Acceptance: | 03/19/02 | Initial Rental Payment: | | $0.00 |
| Daily Lease Rate Factor: | | Interim Rent: | | $0.00 |
| Monthly Lease Rate Factor: | 1.71462% | 60 Regular Monthly Rental Payments: | $1,329.14 | $3,987.42 |
| Payments due in: | ARREAR | Each Monthly Rental Payment Due On or Before the nineteenth day of Each Month. | | |
| INSURANCE:  Lessee shall maintain Combined Single Limits Insurance: | | First Monthly Rental Payment is due on or before 04/19/02. Lessee will also pay all taxes and other amounts under the Agreement whenever due in addition to the Rent stated above. | | |
| Per Vehicle on this Schedule: | 1,000,000. | Maximum Miles Per Year: | 100,000.00 | |
| Deductible per Occurrence: | 2,500.00 | Excess Mileage Rate: | .05 | |

### ADDRESS OF LOCATION OF PRIMARY DOMICILE OR GARAGE OF VEHICLES

| | | | |
|---|---|---|---|
| Street Address: | Main Street Box 29 | | |
| City: | Wadley | State:  AL | Zip:  36276 |
| County: | Randolph | | |

Lessee's Initial:  GK

1(3)

07.001 dg



**1. Option to Purchase.** So long as no Event of Default has occurred and is continuing under the Agreement, Lessee shall have the right to purchase all, but not less than all, of the Vehicles on the Lease Termination Date. Lessee shall give Lessor at least 90 days and not more than 180 days advance written irrevocable notice of its intent to exercise such purchase option prior to the Lease Termination Date. On or before the Lease Termination Date, Lessee shall purchase all of the Vehicles for a price equal to twenty percent ( 20 %) of the Lessor's Cost for the Vehicles (the **"Purchase Price"**), net of all costs and expenses of the transaction (which costs and expenses, whether assessed to Lessor or Lessee, shall be paid by Lessee). The Purchase Price shall be paid to Lessor in immediately available funds on or before the Lease Termination Date. Upon receipt of the Purchase Price, Lessor shall transfer ownership of the Vehicles to Lessee "AS-IS," "WHERE-IS," by bill of sale with no warranties of title or otherwise, except for a warranty of liens arising solely through Lessor. Interest at an annual rate of 18% shall be due and paid by Lessee on any portion of the Purchase Price not paid on or before the Lease Termination Date.

**2. Sales.** If Lessee does not exercise the purchase option provided in Section 1 above, Lessor shall attempt to sell the Vehicles, with Lessee acting as the sales agent for Lessor. Lessor may reject any bid obtained for Lessor by Lessee, the Net Sales Proceeds of which would be less than the Purchase Price due upon exercise of the purchase option. Unless otherwise agreed by Lessor, all such sales shall close and Lessor shall receive the Net Sales Proceeds on or before the Lease Termination Date. All Net Sales Proceeds shall be paid to Lessor. As used in this Schedule, the term **"Net Sales Proceeds"** means the net amount paid to Lessor from the sale of the Vehicles after deducting reasonable costs of sale, cleaning, or transporting the Vehicles, and other similar expenses in connection with the sale, including any expenses incurred in repairing the Vehicles. Upon receipt of Net Sales Proceeds equal to the Purchase Price (or such lesser amount as acceptable to Lessor in its sole discretion), plus, for Net Sales Proceeds received after the Lease Termination Date, interest at the rate of 18% per year, Lessor shall transfer title to the Vehicles in the same manner as provided in Section 1.

**3. Re-Delivery.** Lessee shall return all Vehicles not purchased or sold in accordance with Sections 1 and 2 above to Lessor on or before the Lease Termination Date. The Vehicles shall be in a condition satisfying all of the requirements of the Agreement. At the time of such return, Lessee shall pay Lessor an amount equal to the Purchase Price, and then attempt to sell the Vehicles and shall remit to Lessee all Net Sales Proceeds actually received by Lessor for the sale of any Vehicles for which Lessor received an amount equal to the Purchase Price from Lessee. If any Vehicle is not returned in the condition required under the Agreement, Lessee shall purchase such Vehicle for the Purchase Price with payment in full due on or before the Lease Termination Date.

**4. Final TRAC Adjustment.** If, on the completion of all purchase, sales, and re-deliveries described in Sections 1-3 above Lessor has not received in cash (excluding any sales or salvage value of the Vehicles delivered in accordance with Section 3) a net amount in respect of such purchases and sales equal to the Purchase Price of all of the Vehicles plus all other amounts due under the Agreement, Lessor may retain all payments previously made to it and Lessee shall immediately pay any remaining balance of the Purchase Price, plus interest at a rate of 18% per year from the Lease Termination Date to the date of such payment, to Lessor. If, on such completion, Lessor has received Net Sales Proceeds in excess of the Purchase Price of all of the Vehicles and all other amounts due under the Agreement, plus interest on the Purchase Price at the rate of 18% per year from the Lease Termination Date to the date of receipt of all of the Purchase Price, Lessor shall pay the excess to Lessee.

**5. Conflict.** To the extent there is any conflict between the terms of this Schedule No. 417 and the Agreement, the terms of this Schedule shall control such conflict.

**6. Agreements Prior to October 1, 2001.** This section is only applicable if the Agreement was executed by Lessee and Volvo Commercial Finance LLC The Americas (or a predecessor in interest) as lessor (the "Prior Lessor"). If the Agreement was executed before October 1, 2001, it and all related documents has been partially assigned by the Prior Lessor to VFS Leasing Co., and partially assumed by, Lessor, effective as of October 1, 2001. Such partial assignment and assumption of the agreement and all related documents applies to all Schedules executed on or after October 1, 2001 but does not apply to Schedules executed prior to October 1, 2001. Lessee acknowledges and agrees that as used in the Agreement, the phrase "this Agreement" and any similar phrase shall mean collectively, the Agreement, all Schedules, and all other documents executed by Lessor (or the Prior Lessor) and Lessee. Each Schedule shall be deemed a separate lease agreement with respect to the Vehicles described therein, each of which shall be deemed to incorporate by reference the terms of the Agreement. Lessor may designate other entities (each, a "Lessor Designee") to lease Vehicles to Lessee on the terms set forth in the Agreement and the related Schedules. Each Lessor Designee will have the same rights as Lessor under this Lease, and either Lessor or Lessor Designee may directly enforce such rights against Lessee. For any rights with respect to any Vehicle leased to Lessee by a Lessor Designee, references in the Agreement to Lessor will be deemed to be references to the Lessor Designee. Lessee agrees that Lessor or any Lessor Designee may appoint one or more agents to act on its behalf and that such agents have the power and right to administer and enforce the Agreement.

| Lessee: GF KELLY, INC. DBA KELLY TRUCKING | Accepted by Lessor: |
|---|---|
| | VFS Leasing Co. |
| By: | By: |
| Title: Prexdext | Servicing Agent |
| Dated: 3/20-02 | Dated: 3-2402 |
| | 2(3)                                    07.001 dg |

**VFS Leasing Co.**

**Exhibit A to Schedule No. 417**
**Vehicles and Components Serial Numbers**

| Customer No: | 2001308 |
|---|---|

| Schedule No: | 417 |
|---|---|

| Year | Make | Model | VIN Number | Engine S/N | Other Components |
|------|------|-------|------------|------------|------------------|
| 2001 | VOLVO | VNL64T | 4V4NC9JH71N314761 | | |
| 2001 | VOLVO | VNL64T | 4V4NC9JH01N314763 | | |
| 2001 | VOLVO | VNL64T | 4V4NC9JH21N314764 | | |

Lessee's Initials: GK

3(3)

07.001 dg

VPS Leasing Co

**Stipulated Loss Factors**
**Exhibit B Schedule No.:**

| Rental Period | Stipulated Loss Factor | Rental Period | Stipulated Loss Factor |
|---|---|---|---|
| 1 | 105.000% | 41 | 51.604% |
| 2 | 103.807% | 42 | 50.108% |
| 3 | 102.606% | 43 | 48.604% |
| 4 | 101.400% | 44 | 47.091% |
| 5 | 100.186% | 45 | 45.569% |
| 6 | 98.965% | 46 | 44.038% |
| 7 | 97.738% | 47 | 42.499% |
| 8 | 96.504% | 48 | 40.951% |
| 9 | 95.262% | 49 | 39.394% |
| 10 | 94.014% | 50 | 37.828% |
| 11 | 92.759% | 51 | 36.253% |
| 12 | 91.496% | 52 | 34.669% |
| 13 | 90.227% | 53 | 33.077% |
| 14 | 88.950% | 54 | 31.475% |
| 15 | 87.666% | 55 | 29.863% |
| 16 | 86.375% | 56 | 28.243% |
| 17 | 85.077% | 57 | 26.613% |
| 18 | 83.771% | 58 | 24.974% |
| 19 | 82.458% | 59 | 23.326% |
| 20 | 81.137% | 60 | 20.000% |
| 21 | 79.809% | | |
| 22 | 78.473% | | |
| 23 | 77.130% | | |
| 24 | 75.779% | | |
| 25 | 74.421% | | |
| 26 | 73.055% | | |
| 27 | 71.681% | | |
| 28 | 70.299% | | |
| 29 | 68.909% | | |
| 30 | 67.512% | | |
| 31 | 66.107% | | |
| 32 | 64.693% | | |
| 33 | 63.272% | | |
| 34 | 61.842% | | |
| 35 | 60.404% | | |
| 36 | 58.958% | | |
| 37 | 57.504% | | |
| 38 | 56.042% | | |
| 39 | 54.571% | | |
| 40 | 53.092% | | |

** Stipulated Loss Factor does not include Regular Monthly Rental Payment or any other amounts due on same date.

Dated: 3-20-02

G.F. Kelly, Inc. dba Kelly Trucking
Lessee
By: _____

Its: _____

Run Date: 03/19/02 11:06

VFS Leasing Co
Lessor
By: _____

Its: _____
Sandra E. McCauley
Documentation and Funding Specialist

**VFS Leasing Co.**                    Exhibit "C" to Schedule No. 417

                                       **Certificate of Acceptance**

| Customer No: | 2001308 |
|---|---|

| Schedule No: | 417 |
|---|---|

This Certificate of Acceptance is made pursuant to a Master Lease Agreement (the "Agreement") between VFS Leasing Co. ("Lessor") and GF KELLY, INC. DBA KELLY TRUCKING ("Lessee") dated the 10th day of December, 1997, and Schedule No. 417 to the Agreement.

All capitalized terms used and not defined in this Certificate of Acceptance are used with the same mean as given in the Agreement.

1. Lessee acknowledges receipt and its irrevocable acceptance of each of the Vehicles listed on Schedule A to Schedule No. 417 as of the date shown below (the **"Date of Acceptance"**).

2. Lessee represents and warrants to Lessor that Lessee has: accepted delivery of and inspected each of the Vehicles; determined that each Vehicle contains all of the major components and accessories as agreed; each Vehicle is in good working order, repair, and condition; and that each Vehicle is fit for immediate and continued use and conforms to Lessee's requirements without exception. Lessee understands and acknowledges that Lessor is entering into the lease of these Vehicles based on Lessee's representation and warranty that Lessee will pay in full to Lessor all payments when due as required by the Agreement.

3. Lessee also represents and warrants to Lessor that no Event of Default or event which, but for the passage of time or the giving of notice, or both, would constitute an Event of Default under the Agreement has occurred and is continuing as of the Date of Acceptance and that all of the representations and warranties made be Lessee in the Lessee in the Agreement are correct and complete as though made on and as of the date of this Certificate of Acceptance.

Dated the 19 day of March, 2002.

GF KELLY, INC. DBA KELLY TRUCKING                Receipt of Certificate of Acceptance Acknowledged By:
Lessee                                           VFS Leasing Co.
                                                 Lessor
By:                                              By:
Title: President                                          Servicing Agent

07.001 DG

# VFS Leasing Co.

## Certificate of Business Use and Lessor's Tax Ownership

Lessee hereby certifies under penalty of perjury, in accordance with Section 7701(h)(2)(c) of the Internal Revenue Code of 1986, as amended (the "Code"), that Lessee intends that more than fifty percent (50%) of the use of the Vehicles by Lessee will be in a trade or business of Lessee.

In accordance with Code Section 7701(h)(2)(c), Lessee has been advised that Lessee will not be treated as the owner of the Vehicles for federal income tax purposes and, thus, will not be entitled to claim any of the tax benefits of ownership.

Lessee:   GF KELLY, INC. DBA KELLY TRUCKING

By: _Guy Kelly_

Name: _G Kelly_

Title: _President_

Date: _3-20-02_

07.001 df

# VFS Leasing Co.

# Bill of Sale
# (Master Lease Agreement)

PURCHASER:  VFS Leasing Co.
7025 Albert Pick Road, Suite 105 (27409)
PO Box 26131
Greensboro, NC  27402-6131

SUPPLIER:  Volvo Trucks of Birmingham          DATE:  March 19, 2002
1801 Fulton Road
Fultondale AL
35068
(GF KELLY, INC. DBA KELLY TRUCKING, 2001308)

EQUIPMENT:

| Serial Number | Year | Make | Model | Description |
|---|---|---|---|---|
| 4V4NC9JH71N314761 | 2001 | VOLVO | VNL64T | |
| 4V4NC9JH01N314763 | 2001 | VOLVO | VNL64T | |
| 4V4NC9JH21N314764 | 2001 | VOLVO | VNL64T | |

| Total No. Units: | 3 |
|---|---|

| Unit Price: | $77,518.33 |
|---|---|
| Extended Price: | $232,555.00 |
| Other Tax (sales, etc.): | N/a |
| Federal Excise Tax | Included |
| Total Price: | $232,555.00 |

Please make MSO's out to VFS Leasing Co., using the above address.  Unless otherwise specified, VFS Leasing Co. must also be listed as lienholder.

Payment terms are due upon receipt of written acceptance by Lessee, or as specified below:

Please see reverse side for additional terms and conditions.

-1 (2) -                                                                                              07.001 df



## ADDITIONAL TERMS AND CONDITIONS

In accordance with, and subject to, all of the undertakings set forth in the Retail Finance Plan Agreement, dated as of _____ (the "Agreement") signed by the above named Dealer and as partially assigned to VFS Leasing Co. (the "Company"), which Agreement is hereby incorporated by reference, the undersigned, for value received, hereby grants, bargains, sells, assigns, transfers and conveys to Company the described vehicles (the "Vehicles"), and hereby reaffirms its representations, warranties, and covenants contained in the Agreement.

This Bill of Sale is executed by Dealer to convey title to the Vehicles, which will be subject to a Master Lease Agreement between Company and Dealer's customer as contemplated in the Agreement. In order to induce Company to purchase and lease the vehicles, Dealer hereby ratifies and confirms its obligations under the Agreement with respect to transactions to be evidenced by the Master Lease Agreement. Without limiting the generality of the foregoing, Dealer hereby acknowledges that by this conveyance it is making all the representations with respect to the Master Lease Agreement and the related vehicles as are provided to be made with respect to Contracts purchased by Company. Dealer further acknowledges and agrees that its obligations under the paragraphs entitled "Repurchase Obligation" and "Reimbursement and Indemnity" shall apply to the Master Lease Agreement and other documentation reflecting the transaction to be made with respect to the vehicle(s) is hereby conveyed the same as if the lease agreement and other documentation had been entered into between Dealer and its customer and assigned to Company.

Dealer acknowledges that the Commission paid to Dealer in connection with the Master Lease Agreement is $604.64.

Dealer's further obligations with respect to the above-referenced vehicles and the Master Lease Agreement (the "Contract") are as follows:

[X] **Without Recourse**, except as to Dealer's covenants, representations and warranties contained in the Agreement and to the extent of Commissions and other compensation received by Dealer.

[ ] **With Full Recourse.** (Full guaranty of Dealer.) In addition to its representations and warranties contained in the Agreement, whenever the Contract is in default, Dealer unconditionally guarantees promises to pay upon demand the full amount of the Contract remaining unpaid, including all legal and repossession fees incurred by Company, whether or not said Contract shall be in default and regardless of whether Company has repossessed the vehicle described in said Contract. Further obligations of the undersigned are set forth in the Agreement.

[ ] **With Limited Recourse.** In addition to its covenants, representations and warranties contained in the Agreement, Dealer is responsible for payment of an amount equal to _____ percent of the outstanding balance due under the Contract as of date of default.

[ ] **With Other Recourse.** In addition to its covenants, representations and warranties contained in the Agreement, Dealer is responsible for:

THIS AGREEMENT made and entered into as of the 19 day of March, 2002.

DEALER: Volvo Trucks of Birmingham

By (Signature): _____

Print/Type Name: JOSEPH L. KING

Title: CFO

-2 (2)-

07.001 df

# 48VFS Leasing Co.

# Schedule No. 418
## (Terminal Rental Adjustment Clause)

| Customer No: | 2001308 |
| --- | --- |

| Schedule No: | 418 |
| --- | --- |

This Schedule No. 416 is entered into pursuant to that certain Master Lease Agreement dated the 10th day of December, 1997 and signed by GF KELLY, INC. DBA KELLY TRUCKING ("Lessee") (the "Agreement"). Lessee agrees to lease from Lessor the Vehicle(s) identified below upon the terms and conditions set forth in the Agreement.

All capitalized terms used and not defined are used with the same meaning as given in the Agreement.

### DESCRIPTION OF VEHICLES

| | |
| --- | --- |
| Number of Units: | 1 |
| Description (Year/Model): | 2000 VOLVO VNL64T660 |
| Taxable GVW: | |

### SUPPLIER INFORMATION

| | |
| --- | --- |
| Company Name: | Volvo Trucks of Birmingham |
| Street Address: | 1801 Fulton Road |
| City: Fultondale | State: AL | Zip: 35068 |

### FINANCIAL TERMS

| | | | Per Vehicle | Total on Schedule |
| --- | --- | --- | --- | --- |
| Base Lease Term (months): | 60 | | | |
| Base Lease Commencement Date: | 04/10/02 | Lessor's Cost: | $78,235.00 | $78,235.00 |
| Lease Termination Date: | 04/10/07 | Additional Monthly Rent: | $19.02 | $19.02 |
| Date of Acceptance: | 04/10/02 | Initial Rental Payment: | | $0.00 |
| Daily Lease Rate Factor: | | Interim Rent: | | $0.00 |
| Monthly Lease Rate Factor: | 1.7524 | 60 Regular Monthly Rental Payments: | $1,355.23 | $1,355.23 |
| Payments due in: | ARREAR | Each Monthly Rental Payment Due On or Before the Tenth day of Each Month. | | |
| INSURANCE: Lessee shall maintain Combined Single Limits insurance: | | First Monthly Rental Payment is due on or before 05/10/02. Lessee will also pay all taxes and other amounts under the Agreement whenever due in addition to the Rent stated above. | | |
| Per Vehicle on this Schedule: | 1,000,000.00 | Maximum Miles Per Year: | 100,000.00 | |
| Deductible per Occurrence: | 2,500.00 | Excess Mileage Rate: | 0.05 | |

### ADDRESS OF LOCATION OF PRIMARY DOMICILE OR GARAGE OF VEHICLES

| | |
| --- | --- |
| Street Address: | MAIN STREET, BOX 29 |
| City: WADLEY | State: AL | Zip: 36276 |
| County: RANDOLPH | |

Lessee's Initial: _GK_

1(3)

**1. Option to Purchase.** So long as no Event of Default has occurred and is continuing under the Agreement, Lessee shall have the right to purchase all, but not less than all, of the Vehicles on the Lease Termination Date. Lessee shall give Lessor at least 90 days and not more than 180 days advance written irrevocable notice of its intent to exercise such purchase option prior to the Lease Termination Date. On or before the Lease Termination Date, Lessee shall purchase all of the Vehicles for a price equal to Twenty percent ( 20 %) of the Lessor's Cost for the Vehicles (the "Purchase Price"), net of all costs and expenses of the transaction (which costs and expenses, whether assessed to Lessor or Lessee, shall be paid by Lessee). The Purchase Price shall be paid to Lessor in immediately available funds on or before the Lease Termination Date. Upon receipt of the Purchase Price, Lessor shall transfer ownership of the Vehicles to Lessee "AS-IS," "WHERE-IS," by bill of sale with no warranties of title or otherwise, except for a warranty of liens arising solely through Lessor. Interest at an annual rate of 18% shall be due and paid by Lessee on any portion of the Purchase Price not paid on or before the Lease Termination Date.

**2. Sales.** If Lessee does not exercise the purchase option provided in Section 1 above, Lessor shall attempt to sell the Vehicles, with Lessee acting as the sales agent for Lessor. Lessor may reject any bid obtained for Lessor by Lessee, the Net Sales Proceeds of which would be less than the Purchase Price due upon exercise of the purchase option. Unless otherwise agreed by Lessor, all such sales shall close and Lessor shall receive the Net Sales Proceeds on or before the Lease Termination Date. All Net Sales Proceeds shall be paid to Lessor. As used in this Schedule, the term "Net Sales Proceeds" means the net amount paid to Lessor from the sale of the Vehicles after deducting reasonable costs of sale, cleaning, or transporting the Vehicles, and other similar expenses in connection with the sale, including any expenses incurred in repairing the Vehicles. Upon receipt of Net Sales Proceeds equal to the Purchase Price (or such lesser amount as acceptable to Lessor in its sole discretion), plus, for Net Sales Proceeds received after the Lease Termination Date, interest at the rate of 18% per year, Lessor shall transfer title to the Vehicles in the same manner as provided in Section 1.

**3. Re-Delivery.** Lessee shall return all Vehicles not purchased or sold in accordance with Sections 1 and 2 above to Lessor on or before the Lease Termination Date. The Vehicles shall be in a condition satisfying all of the requirements of the Agreement. At the time of such return, Lessee shall pay Lessor an amount equal to the Purchase Price. Lessor shall then attempt to sell the Vehicles and shall remit to Lessee all Net Sales Proceeds actually received by Lessor for the sale of any Vehicles for which Lessor received an amount equal to the Purchase Price from Lessee. If any Vehicle is not returned in the condition required under the Agreement, Lessee shall purchase such Vehicle for the Purchase Price with payment in full due on or before the Lease Termination Date.

**4. Final TRAC Adjustment.** If, on the completion of all purchase, sales, and re-deliveries described in Sections 1-3 above Lessor has not received in cash (excluding any sales or salvage value of the Vehicles delivered in accordance with Section 3) a net amount in respect of such purchases and sales equal to the Purchase Price of all of the Vehicles plus all other amounts due under the Agreement, Lessor may retain all payments previously made to it and Lessee shall immediately pay any remaining balance of the Purchase Price, plus interest at a rate of 18% per year from the Lease Termination Date to the date of such payment, to Lessor. If, on such completion, Lessor has received Net Sales Proceeds in excess of the Purchase Price of all of the Vehicles and all other amounts due under the Agreement, plus interest at the rate of 18% per year from the Lease Termination Date to the date of receipt of all of the Purchase Price, Lessor shall pay the excess to Lessee.

**5. Conflict.** To the extent there is any conflict between the terms of this Schedule No. 418 and the Agreement, the terms of this Schedule shall control such conflict.

**6. Agreements Prior to October 1, 2001.** This section is only applicable if the Agreement was executed by Lessee and Volvo Commercial Finance LLC The Americas (or a predecessor in interest) as lessor (the "Prior Lessor"). If the Agreement was executed before October 1, 2001, it and all related documents has been partially assigned by the Prior Lessor to VFS Leasing Co., and partially assumed by, Lessor, effective as of October 1, 2001. Such partial assignment and assumption of the agreement and all related documents applies to all Schedules executed on or after October 1, 2001 but does not apply to Schedules executed prior to October 1, 2001. Lessee acknowledges and agrees that as used in the Agreement, the phrase "this Agreement" and any similar phrase shall mean collectively, the Agreement, all Schedules, and all other documents executed by Lessor (or the Prior Lessor) and Lessee. Each Schedule shall be deemed a separate lease agreement although with respect to the Vehicles described therein, each of which shall be deemed to incorporate by reference the terms of the Agreement. Lessor may designate other entities (each, a "Lessor Designee") to lease Vehicles to Lessee on the terms set forth in the Agreement and the related Schedules. Each Lessor Designee will have the same rights as Lessor under this Lease, and either Lessor or Lessor Designee may directly enforce such rights against Lessee. For any rights with respect to any Vehicle leased to Lessee by a Lessor Designee, references in the Agreement to Lessor will be deemed to be references to the Lessor Designee. Lessee agrees that Lessor or any Lessor Designee may appoint one or more agents to act on its behalf and that such agents have the power and right to administer and enforce the Agreement.

Lessee: GF KELLY, INC. DBA KELLY
TRUCKING

By:

Accepted by Lessor:

VFS Leasing Co.

By:

2(3)

07.001 dn

Title: _President_
Dated: _4-10-02_

Servicing Agent
Dated:

3(3)

07.001 dg

## VFS Leasing Co.

## Exhibit A to Schedule No. 418
## Vehicles and Components Serial Numbers

| Customer No: | 2001308 |
|---|---|

| Schedule No: | 418 |
|---|---|

| Serial Number | Year | Make | Model | Description |
|---|---|---|---|---|
| 4V4NC9JH91N314762 | 2001 | VOLVO | VNL64T660 | TRACTOR |

Lessee's Initials: G lC

4(3)

07.001 dg

Mack Commercial Finance

**Stipulated Loss Factors**
Exhibit B Schedule No.:

| Rental Period | Stipulated Loss Factor | Rental Period | Stipulated Loss Factor |
|---|---|---|---|
| 1 | 105.000% | 41 | 57.813% |
| 2 | 103.986% | 42 | 56.439% |
| 3 | 102.965% | 43 | 55.054% |
| 4 | 101.936% | 44 | 53.659% |
| 5 | 100.899% | 45 | 52.253% |
| 6 | 99.854% | 46 | 50.835% |
| 7 | 98.802% | 47 | 49.407% |
| 8 | 97.741% | 48 | 47.968% |
| 9 | 96.672% | 49 | 46.518% |
| 10 | 95.596% | 50 | 45.056% |
| 11 | 94.511% | 51 | 43.583% |
| 12 | 93.418% | 52 | 42.099% |
| 13 | 92.316% | 53 | 40.603% |
| 14 | 91.206% | 54 | 39.095% |
| 15 | 90.088% | 55 | 37.576% |
| 16 | 88.961% | 56 | 36.045% |
| 17 | 87.826% | 57 | 34.502% |
| 18 | 86.682% | 58 | 32.947% |
| 19 | 85.530% | 59 | 31.381% |
| 20 | 84.368% | 60 | 20.000% |
| 21 | 83.198% | | |
| 22 | 82.018% | | |
| 23 | 80.830% | | |
| 24 | 79.633% | | |
| 25 | 78.426% | | |
| 26 | 77.211% | | |
| 27 | 75.986% | | |
| 28 | 74.751% | | |
| 29 | 73.507% | | |
| 30 | 72.254% | | |
| 31 | 70.991% | | |
| 32 | 69.718% | | |
| 33 | 68.435% | | |
| 34 | 67.143% | | |
| 35 | 65.841% | | |
| 36 | 64.528% | | |
| 37 | 63.206% | | |
| 38 | 61.873% | | |
| 39 | 60.530% | | |
| 40 | 59.177% | | |

** Stipulated Loss Factor does not include Regular Monthly Rental Payment or any other amounts due on same date.

Dated: 4-10-02

GF KELLY
Lessee
By: _____
Its: _____

Run Date: 04/10/02 11:04

Mack Commercial Finance
Lessor
By: _____
Its: Evan H. Evans



## VFS Leasing Co.

## Exhibit "C" to Schedule No. 418
### Certificate of Acceptance

| Customer No: | 2001308 |
|---|---|

| Schedule No: | 418 |
|---|---|

This Certificate of Acceptance is made pursuant to a Master Lease Agreement (the "**Agreement**") between VFS Leasing Co. ("Lessor") and GF KELLY, INC. DBA KELLY TRUCKING ("Lessee") dated the 10th day of December, 1997, and Schedule No. 418 to the Agreement.

All capitalized terms used and not defined in this Certificate of Acceptance are used with the same mean as given in the Agreement.

1. Lessee acknowledges receipt and its irrevocable acceptance of each of the Vehicles listed on Schedule A to Schedule No. 418 as of the date shown below (the "**Date of Acceptance**").

2. Lessee represents and warrants to Lessor that Lessee has: accepted delivery of and inspected each of the Vehicles; determined that each Vehicle contains all of the major components and accessories as agreed; each Vehicle is in good working order, repair, and condition; and that each Vehicle is fit for immediate and continued use and conforms to Lessee's requirements without exception. Lessee understands and acknowledges that Lessor is entering into the lease of these Vehicles based on Lessee's representation and warranty that Lessee will pay in full to Lessor all payments when due as required by the Agreement.

3. Lessee also represents and warrants to Lessor that no Event of Default or event which, but for the passage of time or the giving of notice, or both, would constitute an Event of Default under the Agreement has occurred and is continuing as of the Date of Acceptance and that all of the representations and warranties made be Lessee in the Lessee in the Agreement are correct and complete as though made on and as of the date of this Certificate of Acceptance.

Dated the 10th day of April, 2002.

GF KELLY, INC. DBA KELLY TRUCKING
Lessee

By: _____

Title: _____

Receipt of Certificate of Acceptance Acknowledged By:
VFS Leasing Co.
Lessor

By: _____

Servicing Agent

07.001 DG

# VFS Leasing Co.

## Certificate of Business Use and Lessor's Tax Ownership

Lessee hereby certifies under penalty of perjury, in accordance with Section 7701(h)(2)(c) of the Internal Revenue Code of 1986, as amended (the "Code"), that Lessee intends that more than fifty percent (50%) of the use of the Vehicles by Lessee will be in a trade or business of Lessee.

In accordance with Code Section 7701(h)(2)(c), Lessee has been advised that Lessee will not be treated as the owner of the Vehicles for federal income tax purposes and, thus, will not be entitled to claim any of the tax benefits of ownership.

Lessee:  GF KELLY, INC. DBA KELLY TRUCKING

By: _____

Name: _____

Title: _____

Date: _____

07.001 df

# VFS Leasing Co.

# Bill of Sale
# (Master Lease Agreement)

PURCHASER:   VFS Leasing Co.
7025 Albert Pick Road, Suite 105 (27409)
PO Box 26131
Greensboro, NC  27402-6131

SUPPLIER:    Volvo Trucks of Birmingham          DATE:    April 10, 2002
1801 Fulton Road
Fultondale AL
35068
(GF KELLY, INC. DBA KELLY TRUCKING, 2001308)

EQUIPMENT:

| Serial Number | Year | Make | Model | Description |
|---|---|---|---|---|
| 4V4NC9JH91N314762 | 2001 | VOLVO | VNL64T660 | TRACTOR |

| Total No. Units: | 1 |
|---|---|

| | |
|---|---|
| Unit Price: | $78,235.00 |
| Extended Price: | $78,235.00 |
| Other Tax (sales, etc.): | 0.00 |
| Federal Excise Tax | $0.00 |
| Total Price: | $78,235.00 |

Please make MSO's out to VFS Leasing Co., using the above address.  Unless otherwise specified, VFS Leasing Co. must also be listed as lienholder.

Payment terms are due upon receipt of written acceptance by Lessee, or as specified below:

    ARREARS

Please see reverse side for additional terms and conditions.

-1 (2) -

07.001 01



### ADDITIONAL TERMS AND CONDITIONS

In accordance with, and subject to, all of the undertakings set forth in the Retail Finance Plan Agreement, dated as of 06/24/1996 (the "Agreement") signed by the above named Dealer and as partically assigned to VFS Leasing Co. (the "Company"), which Agreement is hereby incorporated by reference, the undersigned, for value received, hereby grants, bargains, sells, assigns, transfers and conveys to Company the described vehicles (the "Vehicles"), and hereby reaffirms its representations, warranties, and covenants contained in the Agreement.

This Bill of Sale is executed by Dealer to convey title to the Vehicles, which will be subject to a Master Lease Agreement between Company and Dealer's customer as contemplated in the Agreement. In order to induce Company to purchase and lease the vehicles, Dealer hereby ratifies and confirms its obligations under the Agreement with respect to transactions to be evidenced by the Master Lease Agreement. Without limiting the generality of the foregoing, Dealer hereby acknowledges that by this conveyance it is making all the representations with respect to the Master Lease Agreement and the related vehicles as are provided to be made with respect to Contracts purchased by Company. Dealer further acknowledges and agrees that its obligations under the paragraphs entitled "Repurchase Obligation" and "Reimbursement and Indemnity" shall apply to the Master Lease Agreement and other documentation reflecting the transaction to be made with respect to the vehicle(s) is hereby conveyed the same as if the lease agreement and other documentation had been entered into between Dealer and its customer and assigned to Company.

Dealer acknowledges that the Commission paid to Dealer in connection with the Master Lease Agreement is $200.00.

Dealer's further obligations with respect to the above-referenced vehicles and the Master Lease Agreement (the "Contract") are as follows:

[X] **Without Recourse**, except as to Dealer's covenants, representations and warranties contained in the Agreement and to the extent of Commissions and other compensation received by Dealer.

[ ] **With Full Recourse**. (Full guaranty of Dealer.) In addition to its representations and warranties contained in the Agreement, whenever the Contract is in default, Dealer unconditionally guarantees promises to pay upon demand the full amount of the Contract remaining unpaid, including all legal and repossession fees incurred by Company, whether or not said Contract shall be in default and regardless of whether Company has repossessed the vehicle described in said Contract. Further obligations of the undersigned are set forth in the Agreement.

[ ] **With Limited Recourse**. In addition to its covenants, representations and warranties contained in the Agreement, Dealer is responsible for payment of an amount equal to _____ percent of the outstanding balance due under the Contract as of date of default.

[ ] **With Other Recourse**. In addition to its covenants, representations and warranties contained in the Agreement, Dealer is responsible for:

THIS AGREEMENT made and entered into as of the 10th day of April, 2002.

DEALER: Volvo Trucks of Birmingham

By (Signature): _____

Print/Type Name: _____JOSEPH L XING_____

Title: _____CFO_____

- 2 (2) -

07.001 df

**VFS Leasing Co.**

**Schedule No. 419**
**(Terminal Rental Adjustment Clause)**

| Customer No: | 2001308 |
|---|---|

| Schedule No: | 419 |
|---|---|

This Schedule No. 419 is entered into pursuant to that certain Master Lease Agreement dated the 10th day of December, 1997 and signed by GP KELLY, INC. DBA KELLY TRUCKING ("Lessee") (the "**Agreement**"). Lessee agrees to lease from Lessor the Vehicle(s) identified below upon the terms and conditions set forth in the Agreement.

All capitalized terms used and not defined are used with the same meaning as given in the Agreement.

| DESCRIPTION OF VEHICLES | |
|---|---|
| Number of Units: | 1 |
| Description (Year/Model): | 2000 VOLVO VNL64T660 |
| Taxable GVW: | |

| SUPPLIER INFORMATION | | | |
|---|---|---|---|
| Company Name: | Volvo Trucks of Birmingham | | |
| Street Address: | 1801 Fulton Road | | |
| City: | Fultondale | State: AL | Zip: 35068 |

| FINANCIAL TERMS | | | |
|---|---|---|---|
| | | Per Vehicle | Total on Schedule |
| Base Lease Term (months): | 60 | **Gap Waiver $900.00** | |
| Base Lease Commencement Date: | 04/18/02 | Lessor's Cost: $74,800.00 | $74,800.00 |
| Lease Termination Date: | 04/18/07 | Additional Monthly Rent: $18.22 | $18.22 |
| Date of Acceptance: | 04/18/02 | Initial Rental Payment: | $0.00 |
| Daily Lease Rate Factor: | | Interim Rent: | $0.00 |
| Monthly Lease Rate Factor: | 1.7524 | 60 Regular Monthly Rental Payments: $1,310.84 | $1,310.84 |
| Payments due in: | ARREAR | Each Monthly Rental Payment Due On or Before the Eighteenth day of Each Month. | |
| | | First Monthly Rental Payment is due on or before 05/18/02. Lessee will also pay all taxes and other amounts under the Agreement whenever due in addition to the Rent stated above. | |
| INSURANCE: Lessee shall maintain Combined Single Limits insurance: | | | |
| Per Vehicle on this Schedule: | 1,000,000.00 | Maximum Miles Per Year: | 100,000.00 |
| Deductible per Occurrence: | 2,500.00 | Excess Mileage Rate: | 0.05 |

| ADDRESS OF LOCATION OF PRIMARY DOMICILE OR GARAGE OF VEHICLES | | |
|---|---|---|
| Street Address: | MAIN STREET, BOX 29 | |
| City: | WADLEY | State: AL    Zip: 36276 |
| County: | RANDOLPH | |

Lessee's Initial: _GK_

1(3)

07.001 dg



**1. Option to Purchase.** So long as no Event of Default has occurred and is continuing under the Agreement, Lessee shall have the right to purchase all, but not less than all, of the Vehicles on the Lease Termination Date. Lessee shall give Lessor at least 90 days and not more than 180 days advance written irrevocable notice of its intent to exercise such purchase option prior to the Lease Termination Date. On or before the Lease Termination Date, Lessee shall purchase all of the Vehicles for a price equal to Twenty percent ( 20 %) of the Lessor's Cost for the Vehicles (the "Purchase Price"), net of all costs and expenses of the transaction (which costs and expenses, whether assessed to Lessor or Lessee, shall be paid by Lessee). The Purchase Price shall be paid to Lessor in immediately available funds on or before the Lease Termination Date. Upon receipt of the Purchase Price, Lessor shall transfer ownership of the Vehicles to Lessee "AS-IS," "WHERE-IS," by bill of sale with no warranties of title or otherwise, except for a warranty of liens arising solely through Lessor. Interest at an annual rate of 18% shall be due and paid by Lessee on any portion of the Purchase Price not paid on or before the Lease Termination Date.

**2. Sales.** If Lessee does not exercise the purchase option provided in Section 1 above, Lessor shall attempt to sell the Vehicles, with Lessee acting as the sales agent for Lessor. Lessor may reject any bid obtained for Lessor by Lessee, the Net Sales Proceeds of which would be less than the Purchase Price due upon exercise of the purchase option. Unless otherwise agreed by Lessor, all such sales shall close and Lessor shall receive the Net Sales Proceeds on or before the Lease Termination Date. All Net Sales Proceeds shall be paid to Lessor. As used in this Schedule, the term "Net Sales Proceeds" means the net amount paid to Lessor from the sale of the Vehicles after deducting reasonable costs of sale, cleaning, or transporting the Vehicles, and other similar expenses in connection with the sale, including any expenses incurred in repairing the Vehicles. Upon receipt of Net Sales Proceeds equal to the Purchase Price (or such lesser amount as acceptable to Lessor in its sole discretion), plus, for Net Sales Proceeds received after the Lease Termination Date, interest at the rate of 18% per year, Lessor shall transfer title to the Vehicles in the same manner as provided in Section 1.

**3. Re-Delivery.** Lessee shall return all Vehicles not purchased or sold in accordance with Sections 1 and 2 above to Lessor on or before the Lease Termination Date. The Vehicles shall be in a condition satisfying all of the requirements of the Agreement. At the time of such return, Lessee shall pay Lessor an amount equal to the Purchase Price. Lessor shall then attempt to sell the Vehicles and shall remit to Lessee all Net Sales Proceeds actually received by Lessor for the sale of any Vehicles for which Lessor received an amount equal to the Purchase Price from Lessee. If any Vehicle is not returned in the condition required under the Agreement, Lessee shall purchase such Vehicle for the Purchase Price with payment in full due on or before the Lease Termination Date.

**4. Final TRAC Adjustment.** If, on the completion of all purchase, sales, and re-deliveries described in Sections 1-3 above Lessor has not received in cash (excluding any sales or salvage value of the Vehicles delivered in accordance with Section 3) a net amount in respect of such purchases and sales equal to the Purchase Price of all of the Vehicles plus all other amounts due under the Agreement, Lessor may retain all payments previously made to it and Lessee shall immediately pay any remaining balance of the Purchase Price, plus interest at a rate of 18% per year from the Lease Termination Date to the date of such payment, to Lessor. If, on such completion, Lessor has received Net Sales Proceeds in excess of the Purchase Price of all of the Vehicles and all other amounts due under the Agreement, plus interest on the Purchase Price at the rate of 18% per year from the Lease Termination Date to the date of receipt of all of the Purchase Price, Lessor shall pay the excess to Lessee.

**5. Conflict.** To the extent there is any conflict between the terms of this Schedule No. 419 and the Agreement, the terms of this Schedule shall control such conflict.

6. Agreements Prior to October 1, 2001. This section is only applicable if the Agreement was executed by Lessee and Volvo Commercial Finance LLC The Americas (or a predecessor in interest) as lessor (the "Prior Lessor"). If the Agreement was executed before October 1, 2001, it and all related documents has been partially assigned by the Prior Lessor to VFS Leasing Co., and partially assumed by, Lessor, effective as of October 1, 2001. Such partial assignment and assumption of the agreement and all related documents applies to all Schedules executed on or after October 1, 2001 but does not apply to Schedules executed prior to October 1, 2001. Lessee acknowledges and agrees that as used in the Agreement, the phrase "this Agreement" and any similar phrase shall mean collectively, the Agreement, all Schedules, and all other documents executed by Lessor (or the Prior Lessor) and Lessee. Each Schedule shall be deemed a separate lease agreement with respect to the Vehicles described therein, each of which shall be deemed to incorporate by reference the terms of the Agreement. Lessor may designate other entities (each, a "Lessor Designee") to lease Vehicles to Lessee on the terms set forth in the Agreement and the related Schedules. Each Lessor Designee will have the same rights as Lessor under this Lease, and either Lessor or Lessor Designee may directly enforce such rights against Lessee. For any rights with respect to any Vehicle leased to Lessee by a Lessor Designee, references in the Agreement to Lessor will be deemed to be references to the Lessor Designee. Lessee agrees that Lessor or any Lessor Designee may appoint one or more agents to act on its behalf and that such agents have the power and right to administer and enforce the Agreement.

Lessee: GF KELLY, INC. DBA KELLY TRUCKING

By:

Accepted by Lessor:

VFS Leasing Co.

By:

2(3)

07.001 dg

Title: _Presd___

Dated: _4-19-02_

Servicing Agent

Dated: _____

3(3)

07.001 dx



## VFS Leasing Co.

## Exhibit A to Schedule No. 419
## Vehicles and Components Serial Numbers

| Customer No: | 2001308 |
|---|---|

| Schedule No: | 419 |
|---|---|

| Serial Number | Year | Make | Model | Description |
|---|---|---|---|---|
| 4V4ND4JH2YN793584 | 2001 | VOLVO | VNL64T660 | TRACTOR |

Lessee's Initials: GK

4(3)

#7.001 dg

| | VFS Leasing Co | | **Stipulated Loss Factors** |
| | | | **Exhibit B Schedule No.:** |

| Rental Period | Stipulated Loss Factor | Rental Period | Stipulated Loss Factor |
|---|---|---|---|
| 1 | 105.000% | 41 | 51.920% |
| 2 | 103.826% | 42 | 50.417% |
| 3 | 102.645% | 43 | 48.904% |
| 4 | 101.457% | 44 | 47.382% |
| 5 | 100.262% | 45 | 45.851% |
| 6 | 99.059% | 46 | 44.310% |
| 7 | 97.849% | 47 | 42.759% |
| 8 | 96.631% | 48 | 41.199% |
| 9 | 95.406% | 49 | 39.629% |
| 10 | 94.173% | 50 | 38.049% |
| 11 | 92.933% | 51 | 36.459% |
| 12 | 91.685% | 52 | 34.859% |
| 13 | 90.429% | 53 | 33.249% |
| 14 | 89.165% | 54 | 31.629% |
| 15 | 87.894% | 55 | 29.999% |
| 16 | 86.615% | 56 | 28.358% |
| 17 | 85.328% | 57 | 26.707% |
| 18 | 84.033% | 58 | 25.046% |
| 19 | 82.730% | 59 | 23.375% |
| 20 | 81.418% | 60 | 20.000% |
| 21 | 80.099% | | |
| 22 | 78.772% | | |
| 23 | 77.436% | | |
| 24 | 76.092% | | |
| 25 | 74.739% | | |
| 26 | 73.379% | | |
| 27 | 72.009% | | |
| 28 | 70.632% | | |
| 29 | 69.245% | | |
| 30 | 67.850% | | |
| 31 | 66.447% | | |
| 32 | 65.034% | | |
| 33 | 63.613% | | |
| 34 | 62.183% | | |
| 35 | 60.744% | | |
| 36 | 59.296% | | |
| 37 | 57.839% | | |
| 38 | 56.373% | | |
| 39 | 54.898% | | |
| 40 | 53.414% | | |

** Stipulated Loss Factor does not include Regular Monthly Rental Payment or any other amounts due on same date.

Dated: 4-19-02

G.F. Kelly, Inc. and Kelly Trucking
Lessee
By: _____

Its: _____

Run Date: 04/18/02 5:08

VFS Leasing Co
Lessor
By: _____

Its: Joan H. Evans

**VFS Leasing Co.**

**Exhibit "C" to Schedule No. 419**

**Certificate of Acceptance**

| Customer No: | 2001308 |
|---|---|

| Schedule No: | 419 |
|---|---|

This Certificate of Acceptance is made pursuant to a Master Lease Agreement (the "Agreement") between VFS Leasing Co. ("Lessor") and GF KELLY, INC. DBA KELLY TRUCKING ("Lessee") dated the 10th day of December, 1997, and Schedule No. 419 to the Agreement.

All capitalized terms used and not defined in this Certificate of Acceptance are used with the same mean as given in the Agreement.

1. Lessee acknowledges receipt and its irrevocable acceptance of each of the Vehicles listed on Schedule A to Schedule No. 419 as of the date shown below (the "Date of Acceptance").

2. Lessee represents and warrants to Lessor that Lessee has: accepted delivery of and inspected each of the Vehicles; determined that each Vehicle contains all of the major components and accessories as agreed; each Vehicle is in good working order, repair, and condition; and that each Vehicle is fit for immediate and continued use and conforms to Lessee's requirements without exception. Lessee understands and acknowledges that Lessor is entering into the lease of these Vehicles based on Lessee's representation and warranty that Lessee will pay in full to Lessor all payments when due as required by the Agreement.

3. Lessee also represents and warrants to Lessor that no Event of Default or event which, but for the passage of time or the giving of notice, or both, would constitute an Event of Default under the Agreement has occurred and is continuing as of the Date of Acceptance and that all of the representations and warranties made be Lessee in the Lessee in the Agreement are correct and complete as though made on and as of the date of this Certificate of Acceptance.

Dated the 18th day of April, 2002.

**GF KELLY, INC. DBA KELLY TRUCKING**
Lessee

By: _____

Title: _____

Receipt of Certificate of Acceptance Acknowledged By:
VFS Leasing Co.
Lessor

By: _____

Servicing Agent

07,001 DG



# VFS Leasing Co.

## *Certificate of Business Use and Lessor's Tax Ownership*

Lessee hereby certifies under penalty of perjury, in accordance with Section 7701(h)(2)(c) of the Internal Revenue Code of 1986, as amended (the "Code"), that Lessee intends that more than fifty percent (50%) of the use of the Vehicles by Lessee will be in a trade or business of Lessee.

In accordance with Code Section 7701(h)(2)(c), Lessee has been advised that Lessee will not be treated as the owner of the Vehicles for federal income tax purposes and, thus, will not be entitled to claim any of the tax benefits of ownership.

Lessee:  GF KELLY, INC. DBA KELLY TRUCKING

By: _____

Name: _____

Title: _____

Date: _____

07.001 df

# VFS Leasing Co.

# Bill of Sale
## (Master Lease Agreement)

PURCHASER:  VFS Leasing Co.
7025 Albert Pick Road, Suite 105 (27409)
PO Box 26131
Greensboro, NC  27402-6131

SUPPLIER:  Volvo Trucks of Birmingham            DATE:  April 18, 2002
1801 Fulton Road
Fultondale AL
35068
(GF KELLY, INC. DBA KELLY TRUCKING, 2001308)

EQUIPMENT:

| Serial Number | Year | Make | Model | Description |
|---|---|---|---|---|
| 4V4ND4JH2YN793584 | 2001 | VOLVO | VNL64T660 | TRACTOR |

| Total No. Units: | 1 |
|---|---|

| | |
|---|---|
| Unit Price: | $74,800.00 |
| Extended Price: | $74,800.00 |
| Other Tax (sales, etc.): | 0.00 |
| Federal Excise Tax | $0.00 |
| Total Price: | $74,800.00 |

Please make MSO's out to VFS Leasing Co., using the above address.  Unless otherwise specified, VFS Leasing Co. must also be listed as lienholder.

Payment terms are due upon receipt of written acceptance by Lessee, or as specified below:

ARREARS

Please see reverse side for additional terms and conditions.

-1 (2) -                                      07.001 df



## ADDITIONAL TERMS AND CONDITIONS

In accordance with, and subject to, all of the undertakings set forth in the Retail Finance Plan Agreement, dated as of 06/24/1996 (the "Agreement") signed by the above named Dealer and as partically assigned to VFS Leasing Co. (the "Company"), which Agreement is hereby incorporated by reference, the undersigned, for value received, hereby grants, bargains, sells, assigns, transfers and conveys to Company the described vehicles (the "Vehicles"), and hereby reaffirms its representations, warranties, and covenants contained in the Agreement.

This Bill of Sale is executed by Dealer to convey title to the Vehicles, which will be subject to a Master Lease Agreement between Company and Dealer's customer as contemplated in the Agreement. In order to induce Company to purchase and lease the vehicles, Dealer hereby ratifies and confirms its obligations under the Agreement with respect to transactions to be evidenced by the Master Lease Agreement. Without limiting the generality of the foregoing, Dealer hereby acknowledges that by this conveyance it is making all the representations with respect to the Master Lease Agreement and the related vehicles as are provided to be made with respect to Contracts purchased by Company. Dealer further acknowledges and agrees that its obligations under the paragraphs entitled "Repurchase Obligation" and "Reimbursement and Indemnity" shall apply to the Master Lease Agreement and other documentation reflecting the transaction to the same extent as if the lease conveyed the same as if the lease agreement and other documentation had been entered into between Dealer and its customer and assigned to Company.

Dealer acknowledges that the Commission paid to Dealer in connection with the Master Lease Agreement is $187.00

Dealer's further obligations with respect to the above-referenced vehicles and the Master Lease Agreement (the "Contract") are as follows:

[X] **Without Recourse**, except as to Dealer's covenants, representations and warranties contained in the Agreement and to the extent of Commissions and other compensation received by Dealer.

[ ] **With Full Recourse.** (Full guaranty of Dealer.) In addition to its representations and warranties contained in the Agreement, whenever the Contract is in default, Dealer unconditionally guarantees promises to pay upon demand the full amount of the Contract remaining unpaid, including all legal and repossession fees incurred by Company, whether or not said Contract shall be in default and regardless of whether Company has repossessed the vehicle described in said Contract. Further obligations of the undersigned are set forth in the Agreement.

[ ] **With Limited Recourse.** In addition to its covenants, representations and warranties contained in the Agreement, Dealer is responsible for payment of an amount equal to _____ percent of the outstanding balance due under the Contract as of date of default.

[ ] **With Other Recourse.** In addition to its covenants, representations and warranties contained in the Agreement, Dealer is responsible for:

THIS AGREEMENT made and entered into as of the 18th day of April, 2002.

DEALER: Volvo Trucks of Birmingham

By (Signature): _____

Print/Type Name: JOSEPH L. KING

Title: CFO

-2 (2) -

07.001 dr





# VOLVO

## Volvo Commercial Finance

April 19, 2002
G.F. KELLY, INC. DBA KELLY TRU
MAIN STREET, BOX 29
WADLEY, AL  35276
Attn:  Guy Kelly

Dear Mr. Kelly:

Your company recently completed the financing with  Volvo Commercial Finance on Schedule Set
Number 419, Master Loan Agreement contract - 2001308.

Upon review of these documents, it was discovered that there was a discrepancy concerning the
following:

**All documents:  Year of Unit 4V4ND4JH2YN793584read: 2001**

**The corrections are as follows:**

**All documents:  Year of Unit 4V4ND4JH2YN793584 should have read: 2000**

Except as expressly amended by this addendum, all terms and conditions of the Master Loan Agreement
and any supporting documentation remain in full force and effect.

If you have any questions please feel free to give me a call at 866-281-8585.

Sincerely,

Jean Evans
Volvo Commercial Finance

Volvo Commercial Finance
7025 Albert Pick Road Suite 105 (27409)
P.O. Box 26131
Greensboro, NC  27402-6131

Telephone
(877) 865-8623

Fax
(336) 931-4008

5-14-02; 4:51PM;VFS-1                       ;3389313826          # 2/ 1

## VFS Leasing Co.

## Schedule No. 420
## (Terminal Rental Adjustment Clause)

This Schedule No. 420 is entered into pursuant to that certain Master Lease Agreement dated the 10th day of December,

| Customer No: | 2001308 | | Schedule No: | 420 |
|---|---|---|---|---|

1997 and signed by G.F. KELLY, INC. DBA KELLY TRUCKING ("Lessee") (the "Agreement"). Lessee agrees to lease from
Lessor the Vehicle(s) identified below upon the terms and conditions set forth in the Agreement.
All capitalized terms used and not defined are used with the same meaning as given in the Agreement.

### DESCRIPTION OF VEHICLES

| | |
|---|---|
| Number of Units: | 1 |
| Description (Year/Model): | 2000 VOLVO VNL64T660 |
| Taxable GVW: | |

### SUPPLIER INFORMATION

| | | | | |
|---|---|---|---|---|
| Company Name: | Volvo Trucks of Birmingham | | | |
| Street Address: | 1801 Fulton Road | | | |
| City: | Fultondale | State: AL | | Zip: 35068 |

### FINANCIAL TERMS

| | | | Per Vehicle | Total on Schedule |
|---|---|---|---|---|
| Base Lease Term (months): | 60 | Gap Waiver $900.00 | | |
| Base Lease Commencement Date: | 05/15/02 | Lessor's Cost: | $76,383.00 | $76,383.00 |
| Lease Termination Date: | 05/15/07 | Additional Monthly Rent: | $18.20 | $18.20 |
| Date of Acceptance: | 05/15/02 | Initial Rental Payment: | | $0.00 |
| Daily Lease Rate Factor: | | Interim Rent: | | $0.00 |
| Monthly Lease Rate Factor: | 1.7559 | 60 Regular Monthly Rental Payments: | $1,336.83 | $1,336.83 |
| Payments due in: | ARREAR | Each Monthly Rental Payment Due On or Before the Eighteenth day of Each Month. | | |
| | | First Monthly Rental Payment is due on or before 06/15/02. Lessee will also pay all taxes and other amounts under the Agreement whenever due in addition to the Rent stated above. | | |
| INSURANCE: Lessee shall maintain Combined Single Limits insurance: | | | | |
| Per Vehicle on this Schedule: | 1,000,000.00 | Maximum Miles Per Year: | 100,000.00 | |
| Deductible per Occurrence: | 2,500.00 | Excess Mileage Rate: | 0.05 | |

### ADDRESS OF LOCATION OF PRIMARY DOMICILE OR GARAGE OF VEHICLES

| | | | | |
|---|---|---|---|---|
| Street Address: | MAIN STREET, BOX 29 | | | |
| City: | WADLEY | State: AL | | Zip: 36276 |
| County: | RANDOLPH | | | |

Lessee's Initial: GK

1(3)

07.001 dq

5-14-02; 4:51PM;VCF5-1                                           ;3359313928           # 3/ 1

**1. Option to Purchase.** So long as no Event of Default has occurred and is continuing under the Agreement, Lessee shall have the right to purchase all, but not less than all, of the Vehicles on the Lease Termination Date. Lessee shall give Lessor at least 90 days and not more than 180 days advance written irrevocable notice of its intent to exercise such purchase option prior to the Lease Termination Date. On or before the Lease Termination Date, Lessee shall purchase all of the Vehicles for a price equal to Twenty percent ( 20 %) of the Lessor's Cost for the Vehicles (the "Purchase Price"), net of all costs and expenses of the transaction (which costs and expenses, whether assessed to Lessor or Lessee, shall be paid by Lessee). The Purchase Price shall be paid to Lessor in immediately available funds on or before the Lease Termination Date. Upon receipt of the Purchase Price, Lessor shall transfer ownership of the Vehicles to Lessee "AS-IS," "WHERE-IS," by bill of sale with no warranties of title or otherwise, except for a warranty of liens arising solely through Lessor. Interest at an annual rate of 18% shall be due and paid by Lessee on any portion of the Purchase Price not paid on or before the Lease Termination Date.

**2. Sales.** If Lessee does not exercise the purchase option provided in Section 1 above, Lessor shall attempt to sell the Vehicles, with Lessee acting as the sales agent for Lessor. Lessor may reject any bid obtained for Lessor by Lessee, the Net Sales Proceeds of which would be less than the Purchase Price upon exercise of the purchase option. Unless otherwise agreed by Lessor, all such sales shall close and Lessor shall receive the Net Sales Proceeds on or before the Lease Termination Date. All Net Sales Proceeds shall be paid to Lessor. As used in this Schedule, the term "Net Sales Proceeds" means the net amount paid to Lessor from the sale of the Vehicles after deducting reasonable costs of sale, cleaning, or transporting the Vehicles, and other similar expenses in connection with the sale, including any expenses incurred in repairing the Vehicles. Upon receipt of Net Sales Proceeds equal to the Purchase Price (or such lesser amount as acceptable to Lessor in its sole discretion), plus, for Net Sales Proceeds received after the Lease Termination Date, interest at the rate of 18% per year, Lessor shall transfer title to the Vehicles in the same manner as provided in Section 1.

**3. Re-Delivery.** Lessee shall return all Vehicles not purchased or sold in accordance with Sections 1 and 2 above to Lessor on or before the Lease Termination Date. The Vehicles shall be in a condition satisfying all of the requirements of the Agreement. At the time of such return, Lessee shall pay Lessor an amount equal to the Purchase Price. Lessor shall then attempt to sell the Vehicles and shall remit to Lessee all Net Sales Proceeds actually received by Lessor for the sale of any Vehicles for which Lessor received an amount equal to the Purchase Price from Lessee. If any Vehicle is not returned in the condition required under the Agreement, Lessee shall purchase such Vehicle for the Purchase Price with payment in full due on or before the Lease Termination Date.

**4. Final TRAC Adjustment.** If, on the completion of all purchase, sales, and re-deliveries described in Sections 1-3 above Lessor has not received in cash (excluding any sales or salvage value of the Vehicles delivered in accordance with Section 3) a net amount in respect of such purchases and sales equal to the Purchase Price of all of the Vehicles plus all other amounts due under the Agreement, Lessor may retain all payments previously made to it and Lessee shall immediately pay any remaining balance of the Purchase Price, plus interest at a rate of 18% per year from the Lease Termination Date to the date of such payment, to Lessor. If, on such completion, Lessor has received Net Sales Proceeds in excess of the Purchase Price of all of the Vehicles and all other amounts due under the Agreement, plus interest on the Purchase Price at the rate of 18% per year from the Lease Termination Date to the date of receipt of all of the Purchase Price, Lessor shall pay the excess to Lessee.

**5. Conflict.** To the extent there is any conflict between the terms of this Schedule No. 420 and the Agreement, the terms of this Schedule shall control such conflict.

**6. Agreements Prior to October 1, 2001.** This section is only applicable if the Agreement was executed by Lessee and Volvo Commercial Finance LLC The Americas (or a predecessor in interest) as lessor (the "Prior Lessor"). If the Agreement was executed before October 1, 2001, it and all related documents has been partially assigned by the Prior Lessor to VFS Leasing Co., and partially assumed by, Lessor, effective as of October 1, 2001. Such partial assignment and assumption of the agreement and all related documents applies to all Schedules executed on or after October 1, 2001 but does not **apply to Schedules executed prior to October 1, 2001.** Lessee acknowledges and agrees that as used in the Agreement, the phrase "this Agreement" and any similar phrase shall mean collectively, the Agreement, all Schedules, and all other documents executed by Lessor (or the Prior Lessor) and Lessee. Each Schedule shall be deemed a separate lease agreement with respect to the Vehicles described therein, each of which shall be deemed to incorporate by reference the terms of the Agreement. Lessor may appoint other entities (each, a "Lessor Designee") to lease Vehicles to Lessee on the terms set forth in the Agreement and the related Schedules. Each Lessor Designee will have the same rights as Lessor under this Lease, and either Lessor or Lessor Designee may directly enforce such rights against Lessee. For any rights with respect to any Vehicle leased to Lessee by a Lessor Designee, references in the Agreement to Lessor will be deemed to be references to the Lessor Designee. Lessee agrees that Lessor or any Lessor Designee may appoint one or more agents to act on its behalf and that such agents have the power and right to administer and enforce the Agreement.

Lessee: G.F. KELLY, INC. DBA KELLY TRUCKING

By: _____

Title: _President_

Dated: _5-14-02_

Accepted by Lessor:

VFS Leasing Co.

By: _____

Servicing Agent

Dated: _____

Sandra E. McCauley

Documentation and Funding Specialist.001 dg

2(3)

5-14-02; 4:51PM;VFS-1                          8369313826              # 4/ 1

**VFS Leasing Co.**

**Exhibit A to Schedule No. 420**
**Vehicles and Components Serial Numbers**

| Customer No: | 2001308 |
|---|---|

| Serial Number | Year | Make | Model | Description |
|---|---|---|---|---|
| 4V4ND4RJ0YN796989 | 2000 | VOLVO | VNL64T660 | TRACTOR |

| Schedule No: | 420 |
|---|---|

Lessee's Initials: GK

3(3)                                              #7.001 dg

5-14-02;  4:51PM;VCFS-1                                                      ;3369313926        # 5/ 11

**Stipulated Loss Factors**
**Exhibit B Schedule No.:** 420

Customer No:          2001308                                               Schedule No:

| Rental Period | Stipulated Loss Factor | Rental Period | Stipulated Loss Factor |
|---|---|---|---|
| 1 | 105.000% | 41 | 51.852% |
| 2 | 103.824% | 42 | 50.349% |
| 3 | 102.640% | 43 | 48.836% |
| 4 | 101.450% | 44 | 47.313% |
| 5 | 100.252% | 45 | 45.782% |
| 6 | 99.047% | 46 | 44.240% |
| 7 | 97.834% | 47 | 42.689% |
| 8 | 96.614% | 48 | 41.129% |
| 9 | 95.387% | 49 | 39.558% |
| 10 | 94.152% | 50 | 37.978% |
| 11 | 92.909% | 51 | 36.389% |
| 12 | 91.659% | 52 | 34.789% |
| 13 | 90.401% | 53 | 33.179% |
| 14 | 89.135% | 54 | 31.559% |
| 15 | 87.862% | 55 | 29.929% |
| 16 | 86.581% | 56 | 28.289% |
| 17 | 85.292% | 57 | 26.639% |
| 18 | 83.995% | 58 | 24.978% |
| 19 | 82.690% | 59 | 23.307% |
| 20 | 81.377% | 60 | 20.000% |
| 21 | 80.056% | | |
| 22 | 78.726% | | |
| 23 | 77.389% | | |
| 24 | 76.043% | | |
| 25 | 74.689% | | |
| 26 | 73.327% | | |
| 27 | 71.956% | | |
| 28 | 70.577% | | |
| 29 | 69.190% | | |
| 30 | 67.793% | | |
| 31 | 66.388% | | |
| 32 | 64.975% | | |
| 33 | 63.553% | | |
| 34 | 62.122% | | |
| 35 | 60.682% | | |
| 36 | 59.233% | | |
| 37 | 57.775% | | |
| 38 | 56.308% | | |
| 39 | 54.832% | | |
| 40 | 53.347% | | |

** Stipulated Loss Factor does not include Regular Monthly Rental Payment or any other amounts due on same date.

Dated:  6-14-02

G.P. Kelly, Inc.
Lessee
By:

Title:

Run Date:  05/14/02 17:37

Lessor
By:

Its:

Sandra E. McCauley
Documentation and Funding Specialist

5-14-02; 4:51PM;VCFS-1                                    :5339313828          # 6/ 1

## VFS Leasing Co.

### Exhibit "C" to Schedule No. 420
### Certificate of Acceptance

| Customer No: | 2001308 |
|---|---|

| Schedule No: | 420 |
|---|---|

This Certificate of Acceptance is made pursuant to a Master Lease Agreement (the "Agreement") between VFS Leasing Co. ("Lessor") and GF KELLY, INC. DBA KELLY TRUCKING ("Lessee") dated the 10th day of December, 1997, and Schedule No. 420 to the Agreement.

All capitalized terms used and not defined in this Certificate of Acceptance are used with the same mean as given in the Agreement.

1. Lessee acknowledges receipt and its irrevocable acceptance of each of the Vehicles listed on Schedule A to Schedule No. 420 as of the date shown below (the "Date of Acceptance").

2. Lessee represents and warrants to Lessor that Lessee has: accepted delivery of and inspected each of the Vehicles; determined that each Vehicle contains all of the major components and accessories as agreed; each Vehicle is in good working order, repair, and condition; and that each Vehicle is fit for immediate and continued use and conforms to Lessee's requirements without exception. Lessee understands and acknowledges that Lessor is entering into the lease of these Vehicles based on Lessee's representation and warranty that Lessee will pay in full to Lessor all payments when due as required by the Agreement.

3. Lessee also represents and warrants to Lessor that no Event of Default or event which, but for the passage of time or the giving of notice, or both, would constitute an Event of Default under the Agreement has occurred and is continuing as of the Date of Acceptance and that all of the representations and warranties made be Lessee in the Lessee in the Agreement are correct and complete as though made on and as of the date of this Certificate of Acceptance.

Dated the 15th day of May, 2002.

**GF KELLY, INC. DBA KELLY TRUCKING**
Lessee

By: _____

Title: _____

Receipt of Certificate of Acceptance Acknowledged By:
VFS Leasing Co.
Lessor

By: _____

Sandra D. McGinley
Documentation and Funding Specialist

07.001 DG

5-14-02; 4:51PM;VCFB-1                                    :33595·3926          # 7/ ·1

# VFS Leasing Co.

### *Certificate of Business Use and Lessor's Tax Ownership*

Lessee hereby certifies under penalty of perjury, in accordance with Section 7701(h)(2)(c) of the Internal Revenue Code of 1986, as amended (the "Code"), that Lessee intends that more than fifty percent (50%) of the use of the Vehicles by Lessee will be in a trade or business of Lessee.

In accordance with Code Section 7701(h)(2)(c), Lessee has been advised that Lessee will not be treated as the owner of the Vehicles for federal income tax purposes and, thus, will not be entitled to claim any of the tax benefits of ownership.

Lessee:    GF KELLY, INC. DBA KELLY TRUCKING

By: _____

Name: _____

Title: _____

Date: _____

07.001 df

5-14-02; 4:51PM;VCFS-1                                    ;3363315926          # 10/ 11

 

# VFS Leasing Co.

# Bill of Sale
## (Master Lease Agreement)

PURCHASER:   VFS Leasing Co.
             7025 Albert Pick Road, Suite 105 (27409)
             PO Box 26131
             Greensboro, NC 27402-6131

SUPPLIER:   Volvo Trucks of Birmingham          DATE:   May 15, 2002
            1801 Fulton Road
            Fultondale AL
            35068
            (OF KELLY, INC. DBA KELLY TRUCKING, 2001308)

EQUIPMENT:

| Serial Number | Year | Make | Model | Description |
|---|---|---|---|---|
| 4V4ND4RJ0YN796989 | 2000 | VOLVO | VNL64T660 | TRACTOR |

| Total No. Units: | 1 |
|---|---|

| | |
|---|---|
| Unit Price: | $77,283.00 |
| Extended Price: | $77,283.00 |
| Other Tax (sales, etc.): | 0.00 |
| Federal Excise Tax | 30.00 |
| Total Price: | $77,283.00 |

Please make MSO's out to VFS Leasing Co., using the above address. Unless otherwise specified, VFS Leasing Co must also be listed as lienholder.

Payment terms are due upon receipt of written acceptance by Lessee, or as specified below:

    ARREARS

Please see reverse side for additional terms and conditions.

-1 (2) -                                                    07.001 dr

5-14-02; 4:51PM;VCF5-1                                    ;3389313525                    # 11/...



## ADDITIONAL TERMS AND CONDITIONS

In accordance with, and subject to, all of the undertakings set forth in the Retail Finance Plan Agreement, dated as of 06/24/1996 (the "Agreement") signed by the above named Dealer and is partially assigned to VFS Leasing Co. (the "Company"), which Agreement is hereby incorporated by reference, the undersigned, for value received, hereby grants, bargains, sells, assigns, transfers and conveys to Company the described vehicles (the "Vehicles"), and hereby reaffirms its representations, warranties, and covenants contained in the Agreement.

This Bill of Sale is executed by Dealer to convey title to the Vehicles, which will be subject to a Master Lease Agreement between Company and Dealer's customer as contemplated in the Agreement. In order to induce Company to purchase and lease the vehicles, Dealer hereby ratifies and confirms its obligations under the Master Lease Agreement. Without limiting the generality of the foregoing, Dealer hereby acknowledges that by this conveyance it is making all the representations with respect to the Master Lease Agreement and the related vehicles as are provided to be made with respect to Contracts purchased by Company. Dealer further acknowledges and agrees that its obligations under the paragraphs entitled "Repurchase Obligation" and "Reimbursement and Indemnity" shall apply to the Master Lease Agreement and other documentation reflecting the transaction to be made with respect to the vehicle(s) is hereby conveyed the same as if the lease agreement and other documentation had been entered into between Dealer and its customer and assigned to Company.

Dealer acknowledges that the Commission paid to Dealer in connection with the Master Lease Agreement is $192.58

Dealer's further obligations with respect to the above-referenced vehicles and the Master Lease Agreement (the "Contract") are as follows:

[X] **Without Recourse**, except as to Dealer's covenants, representations and warranties contained in the Agreement and to the extent of Commissions and other compensation received by Dealer.

[ ] **With Full Recourse**. (Full guaranty of Dealer.) In addition to its representations and warranties contained in the Agreement, whenever the Contract is in default, Dealer unconditionally guarantees promises to pay upon demand the full amount of the Contract remaining unpaid, including all legal and repossession fees incurred by Company, whether or not said Contract shall be in default and regardless of whether Company has repossessed the vehicle described in said Contract. Further obligations of the undersigned are set forth in the Agreement.

[ ] **With Limited Recourse**. In addition to its covenants, representations and warranties contained in the Agreement, Dealer is responsible for payment of an amount equal to _____ percent of the outstanding balance due under the Contract as of date of default.

[ ] **With Other Recourse**. In addition to its covenants, representations and warranties contained in the Agreement, Dealer is responsible for: _____

THIS AGREEMENT made and entered into as of the 15th day of May, 2002.

DEALER: Volvo Trucks of Birmingham

By (Signature): _____

Print/Type Name: ___JOSEPH   L. KING___

Title: _____CFO_____

-2 (2) -

07.001 df

10- 1-02; 4:58PM;VCFS-1                                     :3369513825        # 2/ 2

## VFS Leasing Co.

### Terminal Rental Adjustment Clause Schedule

**Customer No:**    **2001308**                    Schedule No:    **421**

 This Schedule is entered into pursuant to that certain Master Lease Agreement dated the 10th day of December 1997 and signed by G.F. Kelly, Inc. ("Lessee") (the "Agreement"). Lessee agrees to lease from Lessor the Vehicle(s) identified below upon the terms and conditions set forth in the Agreement. All capitalized terms used and not defined are used with the same meaning as given in the Agreement.

1. **Description of Vehicles.**

| Serial Number | Year | Make | Model | Description |
|---|---|---|---|---|
| 4V4NC9TJ23N341952 | 2003 | VOLVO | VNL64T | TRACTOR |
| 4V4NC9TJ43N341953 | 2003 | VOLVO | VNL64T | TRACTOR |
| 4V4NC9T763N341954 | 2003 | VOLVO | VNL64T | TRACTOR |
| 4V4NC9TJ33N341958 | 2003 | VOLVO | VNL64T | TRACTOR |
| 4V4NC9TJ53N341959 | 2003 | VOLVO | VNL64T | TRACTOR |

**Number of Vehicles: 1**                    **Taxable GVW:**

2. **Supplier(s) Information.**

Company Name:  Premier Truck Center                    Company Name:
Street Address:  1801 Fulton Rd.                        Street Address:
City/State/Zip:  Fultondale, AL 35068                   City/State/Zip:

3. **Financial Terms.**

 a. **Rent.**

| | | | Per Vehicle | Total on Schedule |
|---|---|---|---|---|
| Base Lease Term (months): | 60 | | | |
| Base Lease Commencement Date: | 10/01/02 | Lessor's Cost: | $83,867.18 | $419,335.90 |
| Lease Termination Date: | 10/01/07 | Additional Income: | $17.80 | $89.00 |
| Date of Acceptance: | 10/01/02 | Initial Rental Payment: | N/A | N/A |
| Daily Lease Rate Factor: | N/A | Interim Rent: | N/A | N/A |
| Monthly Lease Rate Factor: | 1.7327 | Regular Monthly Rental Payments: | $ 1,452.29 | $ 7,261.45 |
| Payments due in: | Arrears | | | |

Each Monthly Rental Payment shall be due on or before the first day of each month. The first Monthly Rental Payment is due on or before November 1, 2002. Lessee will also pay all taxes and other amounts whenever due under the Agreement in addition to the Rent stated above.

 b. **Insurance.**
 Lessee shall maintain the following combined Single Limits insurance:
 Per Unit on this Schedule $1,000,000.
 Deductible per occurrence: $2,500.

 c. **Excess Mileage Charges.**
 Lessee will be assessed an Excess Mileage Charge under the Lease based on the following:
 Maximum Miles Per Year:
 Excess Mileage Rate:

Lessee's Initials: 

06.0C2                                        1

:0- 1-02; 4:58PM;VCF5-1                                        ;3359313928          # 3/ 12

**4. Address(es) of Location(s) of Primary Domicile or Garage of Vehicles.**

Street Address: 242 Main St.                    Street Address:
City/State/Zip: Wadley, AL 36176                City/State/Zip:
County: Randolph                                County:

**5. Option to Purchase.** So long as no Event of Default has occurred and is continuing under the Agreement, Lessee shall have the right to purchase all, but not less than all, of the Vehicles on the Lease Termination Date. Lessee shall give Lessor at least 90 days and not more than 180 days advance written irrevocable notice of its intent to exercise such purchase option prior to the Lease Termination Date. On or before the Lease Termination Date, Lessee shall purchase all of the Vehicles for a price equal to twenty percent ( 20 %) of the Lessor's Cost for the Vehicles (the "Purchase Price"), net of all costs and expenses of the transaction (which costs and expenses, whether assessed to Lessor or Lessee, shall be paid by Lessee). The Purchase Price shall be paid to Lessor in immediately available funds on or before the Lease Termination Date. Upon receipt of the Purchase Price, Lessor shall transfer ownership of the Vehicles to Lessee "AS-IS, WHERE-IS," by bill of sale with no warranties of title or otherwise, except for a warranty of liens arising solely through Lessor. Interest at an annual rate of 18% shall be due and paid by Lessee on any portion of the Purchase Price not paid on or before the Lease Termination Date.

**6. Sales.** If Lessee does not exercise the purchase option provided in Section 5 above, Lessor shall attempt to sell the Vehicles, with Lessee acting as the sales agent for Lessor. Lessor may reject any bid obtained for Lessor by Lessee, the Net Sales Proceeds of which would be less than the Purchase Price due upon exercise of the purchase option. Unless otherwise agreed by Lessor, all such sales shall close and Lessor shall receive the Net Sales Proceeds on or before the Lease Termination Date. All Net Sales Proceeds shall be paid to Lessor. As used in this Schedule, the term "Net Sales Proceeds" means the net amount paid to Lessor from the sale of the Vehicles after deducting reasonable costs of sale, cleaning, or transporting the Vehicles, and other similar expenses in connection with the sale, including any expenses incurred in repairing the Vehicles. Upon receipt of Net Sales Proceeds equal to the Purchase Price (or such lesser amount as acceptable to Lessor in its sole discretion), plus, for Net Sales Proceeds received after the Lease Termination Date, interest at the rate of 18% per year, Lessor shall transfer title to the Vehicles in the same manner as provided in Section 5.

**7. Re-Delivery.** Lessee shall return all Vehicles not purchased or sold in accordance with Sections 5 and 6 above to Lessor on or before the Lease Termination Date. The Vehicles shall be in a condition satisfying all of the requirements of the Agreement. At the time of such return, Lessee shall pay Lessor an amount equal to the Purchase Price. Lessor shall then attempt to sell the Vehicles and shall remit to Lessee all Net Sales Proceeds actually received by Lessor for the sale of any Vehicles for which Lessor received an amount equal to the Purchase Price from Lessee. If any Vehicle is not returned in the condition required under the Agreement, Lessee shall purchase such Vehicle for the Purchase Price with payment in full due on or before the Lease Termination Date.

**8. Final TRAC Adjustment.** If, on the completion of all purchase, sales, and re-deliveries described in Sections 5-7 above Lessor has not received in cash (excluding any sales or salvage value of the Vehicles delivered in accordance with Section 7) a net amount in respect of such purchases and sales equal to the Purchase Price of all of the Vehicles plus all other amounts due under the Agreement, Lessor may retain all payments previously made to it and Lessee shall immediately pay any remaining balance of the Purchase Price, plus interest at a rate of 18% per year from the Lease Termination Date to the date of such payment, to Lessor. If, on such completion, Lessor has received Net Sales Proceeds in excess of the Purchase Price of all of the Vehicles and all other amounts due under the Agreement, plus interest on the Purchase Price at the rate of 18% per year from the Lease Termination Date to the date of receipt of all of the Purchase Price, Lessor shall pay the excess to Lessee.

**9. Agreements Prior to October 1, 2001.** This section is only applicable if the Agreement was executed by Lessee and Volvo Commercial Finance LLC The Americas (or a predecessor in interest) as lessor (the "Prior Lessor"). If the Agreement was executed before October 1, 2001, it and all related documents has been partially assigned by the Prior Lessor to VFS Leasing Co., and partially assumed by, Lessor, effective as of October 1, 2001. Such partial assignment and assumption of the agreement and all related documents applies to all Schedules executed on or after October 1, 2001 but does not apply to Schedules executed prior to October 1, 2001. Lessee acknowledges and agrees that as used in the Agreement, the phrase "this Agreement" and any similar phrase shall mean collectively, the Agreement, all Schedules, and all other documents executed by Lessor (or the Prior Lessor) and Lessee. Each Schedule shall be deemed a separate lease agreement with respect to the Vehicles described therein, each of which shall be deemed to incorporate by reference the terms of the Agreement. Lessor may designate other entities (each, a "Lessor Designee") to lease Vehicles to Lessee on the terms set forth in the Agreement and the related Schedules. Each Lessor Designee will have the same rights as Lessor under this Lease, and either Lessor or Lessor Designee may directly enforce such rights against Lessee. For any rights with respect to any Vehicle leased to Lessee by a Lessor Designee, references in the Agreement to Lessor will be deemed to be references to the Lessor Designee. Lessee agrees that Lessor or any Lessor Designee may appoint one or more agents to act on its behalf and that such agents have the power and right to administer and enforce the Agreement.

06.002                                              2

10- 1-02; 4:58PM;VCFS-1                                    ;3389313828              # 4/ 2

## 10. Delivery and Acceptance.

a.  Lessee acknowledges receipt and its irrevocable acceptance of each of the Vehicles listed in this Schedule as of the date shown below (the "Date of Acceptance").

b.  Lessee represents and warrants to Lessor that Lessee has: accepted delivery of and inspected each of the Vehicles; determined that each Vehicle contains all of the major components and accessories as agreed; each Vehicle is in good working order, repair, and condition; and that each Vehicle is fit for immediate and continued use and conforms to Lessee's requirements without exception.  Lessee understands and acknowledges that Lessor is entering into the lease of these Vehicles based on Lessee's representation and warranty that Lessee will pay in full to Lessor all payments when due as required by the Agreement.

c.  Lessee also represents and warrants to Lessor that no Event of Default or event which, but for the passage of time or the giving of notice, or both, would constitute an Event of Default under the Agreement has occurred and is continuing as of the Date of Acceptance and that all of the representations and warranties made be Lessee in the Lessee in the Agreement are correct and complete as though made on and as of the date of this Schedule.

## 11. Conflict.  To the extent there is any conflict between the terms of this Schedule and the Agreement, the terms of this Schedule shall control such conflict.

Lessee:                                    VFS Leasing Co.
G.F. Kelley, Inc.                          7025 Albert Pick Rd., Suite 105(27409)
                                           PO Box 26131
                                           Greensboro, NC 27402-6131

By: X _____             By: Jennif Willson

Title: _____            Jennifer Williams
                                           Documentation and Funding Specialist

---

### Certificate of Business Use and Lessor's Tax Ownership

Lessee hereby certifies under penalty of perjury, in accordance with Section 7701(h)(2)(c) of the Internal Revenue Code of 1986, as amended (the "Code"), that Lessee intends that more than fifty percent (50%) of the use of the Vehicles by Lessee will be in a trade or business of Lessee.  In accordance with Code Section 7701(h)(2)(c), Lessee has been advised that Lessee will not be treated as the owner of the Vehicles for federal income tax purposes and, thus, will not be entitled to claim any of the tax benefits of ownership.

Lessee: G.F. Kelly, Inc.                   Title: _Presidet_

By: X _____             Date: _10-2-02_

---

06.002                          3

10- 1-02; 4:58PM;VCFS-1                                    ;3389513926        #  5/  2

Stipulated Loss Factors

Exhibit A Schedule No.:    421

Customer No:    2001308

Schedule No:    421

| Rental Period | Stipulated Loss Factor | Rental Period | Stipulated Loss Factor |
|---|---|---|---|
| 1 | 105.000% | 41 | 51.738% |
| 2 | 103.815% | 42 | 50.238% |
| 3 | 102.624% | 43 | 48.730% |
| 4 | 101.425% | 44 | 47.213% |
| 5 | 100.219% | 45 | 45.686% |
| 6 | 99.007% | 46 | 44.151% |
| 7 | 97.787% | 47 | 42.606% |
| 8 | 96.560% | 48 | 41.053% |
| 9 | 95.325% | 49 | 39.490% |
| 10 | 94.084% | 50 | 37.917% |
| 11 | 92.835% | 51 | 36.335% |
| 12 | 91.579% | 52 | 34.744% |
| 13 | 90.315% | 53 | 33.143% |
| 14 | 89.044% | 54 | 31.533% |
| 15 | 87.766% | 55 | 29.913% |
| 16 | 86.480% | 56 | 28.284% |
| 17 | 85.186% | 57 | 26.644% |
| 18 | 83.885% | 58 | 24.995% |
| 19 | 82.576% | 59 | 23.336% |
| 20 | 81.260% | 60 | 20.000% |
| 21 | 79.935% | | |
| 22 | 78.603% | | |
| 23 | 77.263% | | |
| 24 | 75.915% | | |
| 25 | 74.559% | | |
| 26 | 73.195% | | |
| 27 | 71.823% | | |
| 28 | 70.443% | | |
| 29 | 69.055% | | |
| 30 | 67.658% | | |
| 31 | 66.253% | | |
| 32 | 64.840% | | |
| 33 | 63.418% | | |
| 34 | 61.988% | | |
| 35 | 60.550% | | |
| 36 | 59.103% | | |
| 37 | 57.647% | | |
| 38 | 56.183% | | |
| 39 | 54.710% | | |
| 40 | 53.228% | | |

Stipulated Loss Factor does not include Regular Monthly Rental Payment or any other amounts due on same date.

Lessee's Initials    GK

Run Date:    10/01/02 16:09

10- 1-02; 4:38PM;VCFS-1        ;35693·3828    # 6/ ·2

# VFS Leasing Co.

# Bill of Sale
## (Master Lease Agreement)

PURCHASER:   VFS Leasing Co.
7025 Albert Pick Road, Suite 105 (27409)
PO Box 26131
Greensboro, NC 27402-6131

SUPPLIER:   Premier Truck Center
1801 Fulton Rd.
Fultondale, AL 35068

DATE:   October 1, 2002

(G.F. Kelley, Inc., 2001308-421)

EQUIPMENT:

| Serial Number | Year | Make | Model | Description |
|---|---|---|---|---|
| 4V4NC9TJ23N341952 | 2003 | VOLVO | VNL64T | TRACTOR |
| 4V4NC9TJ43N341953 | 2003 | VOLVO | VNL64T | TRACTOR |
| 4V4NC9TJ63N341954 | 2003 | VOLVO | VNL64T | TRACTOR |
| 4V4NC9TJ53N341958 | 2003 | VOLVO | VNL64T | TRACTOR |
| 4V4NC9TJ53N341959 | 2003 | VOLVO | VNL64T | TRACTOR |

| Total No. Units: | 5 |
|---|---|

| | |
|---|---|
| Unit Price: | $83,867.18 |
| Extended Price: | $83,867.18 |
| Other Tax (sales, etc.): | 0.00 |
| Federal Excise Tax | $0.00 |
| Total Price: | $419,335.90 |

Please make MSO's out to VFS Leasing Co., using the above address. Unless otherwise specified, VFS Leasing Co. must also be listed as lienholder.

Payment terms are due upon receipt of written acceptance by Lessee, or as specified below:

     ARREARS

Please see reverse side for additional terms and conditions.

-1 (2) -

07.001 df

10- 1-02; 4:56PM;VCFS-1                              ;3389813826              # 9/ 2

## ADDITIONAL TERMS AND CONDITIONS

In accordance with, and subject to, all of the undertakings set forth in the Retail Finance Plan Agreement, dated as of June 24, 1996 (the "Agreement") signed by the above named Dealer and as partially assigned to VFS Leasing Co. (the "Company"), which Agreement is hereby incorporated by reference, the undersigned, for value received, hereby grants, bargains, sells, assigns, transfers and conveys to Company the described vehicles (the "Vehicles"), and hereby reaffirms its representations, warranties, and covenants contained in the Agreement.

This Bill of Sale is executed by Dealer to convey title to the Vehicles, which will be subject to a Master Lease Agreement between Company and Dealer's customer as contemplated in the Agreement. In order to induce Company to purchase and lease the vehicles, Dealer hereby ratifies and confirms its obligations under the Agreement with respect to transactions to be evidenced by the Master Lease Agreement. Without limiting the generality of the foregoing, Dealer hereby acknowledges that by this conveyance it is making all the representations with respect to the Master Lease Agreement and the related vehicles as are provided to be made with respect to Contracts purchased by Company. Dealer further acknowledges and agrees that its obligations under the paragraphs entitled "Repurchase Obligation" and "Reimbursement and Indemnity" shall apply to the Master Lease Agreement and other documentation reflecting the transaction to be made with respect to the vehicle(s) is hereby conveyed the same as if the lease agreement and other documentation had been entered into between Dealer and its customer and assigned to Company.

Dealer acknowledges that the Commission paid to Dealer in connection with the Master Lease Agreement is $4,235.86.

Dealer's further obligations with respect to the above-referenced vehicles and the Master Lease Agreement (the "Contract") are as follows:

[X] **Without Recourse**, except as to Dealer's covenants, representations and warranties contained in the Agreement and to the extent of Commissions and other compensation received by Dealer.

[ ] **With Full Recourse.** (Full guaranty of Dealer.) In addition to its representations and warranties contained in the Agreement, whenever the Contract is in default, Dealer unconditionally guarantees promises to pay upon demand the full amount of the Contract remaining unpaid, including all legal and repossession fees incurred by Company, whether or not said Contract shall be in default and regardless of whether Company has repossessed the vehicle described in said Contract. Further obligations of the undersigned are set forth in the Agreement.

[ ] **With Limited Recourse.** In addition to its covenants, representations and warranties contained in the Agreement, Dealer is responsible for payment of an amount equal to _____ percent of the outstanding balance due under the Contract as of date of default.

[ ] **With Other Recourse.** In addition to its covenants, representations and warranties contained in the Agreement, Dealer is responsible for:

THIS AGREEMENT made and entered into as of the 1st day of October, 2002.

DEALER: *Premier* Truck Center, Inc

By (Signature): _____

Print/Type Name: _JOSEPH L KING_

Title: _CFO_

-2 (2) -                                                07.001 dr

# VOLVO

## Volvo Commercial Finance

September 9, 2005

G. F. Kelly, Inc.
Main St. Box 29
Wadley, AL 36276

**NOTICE OF LEASE CANCELLATION**

RE:  Contract No. 001-2001308-411 thru 415 and 500-2001308-416 thru 421

Due to a failure to make payments when due, and a failure to provide proof of adequate insurance, you are in default under your Lease Agreements with Volvo Commercial Finance LLC The Americas, successor in interest to Volvo Commercial Finance Inc. The Americas, formerly known as Volvo Truck Finance North America Inc., which were partially assigned to VFS Leasing Co. ("Lessor").  You are hereby notified that the above-referenced Lease Agreements have been cancelled by the Lessor as of September 9, 2005 the date of this Notice.  As such, your rights to the vehicles listed on the attached Schedule A have been canceled, and immediate demand is hereby made on you to assemble the vehicles at the following location:

Adesa - Atlanta
5055 Oakley Industrial Blvd.
Fairburn, GA 30213
Contact Person: Darla
Phone Number: 770-357-2179

Please be advised that all amounts due under the above-referenced Lease Agreements are immediately due and payable to Lessor in the total amount of $1,001,847.68.  As of the date of this Notice, the total amount is accruing interest at the rate of 18% per annum, as stated in the Lease Agreement.  Please be further advised that you have five (5) days from the date of this notice to pay the total amount before Lessor will seek to enforce the attorney fees provision of the Lease Agreements, pursuant to N.C.G.S. Sec. 6-21.2.

Your immediate attention to this matter is advised.  Please call either the undersigned at (877) 865-8623 x4095 or Tara Disher Maxey at (877) 865-8623 x4105.

Sincerely,

Catherine Tucker
Associate General Counsel

cc:    Adesa Atlanta
       G. F. Kelly, Inc., 242 Main St., Wadley, AL 36276
       G. F. Kelly, Inc. DBA Kelly Trucking, P. O. Box 29, Wadley, AL 36276
       Guy F. Kelly, Main St., Box 29, Wadley, AL 36276

---

**Volvo Commercial Finance**
7025 Albert Pick Rd, Suite 105
P.O. Box 26131
Greensboro, NC 27402-6131

**Telephone**        **Fax**
(336) 931-4000    (336) 931-4008





## Volvo Commercial Finance

### SCHEDULE A

attached to Notice of Lease Cancellation
dated September 9, 2005

| | |
|---|---|
| 001-2001308-411 | **4V4NC9RHX1N325015** |
| | **4V4NC9RH81N325014** |
| | **4V4NC9RH61N325013** |
| 001-2001308-412 | **4V4NC9RH11N325016** |
| | **4V4NC9RH31N325017** |
| 001-2001308-413 | **4V4NC9TH61N325019** |
| | **4V4NC9TH41N325018** |
| 001-2001308-414 | **4V4NC9TH02N325020** |
| 001-2001308-415 | **4V4NC9TH22N325021** |
| 500-2001308-416 | **4V4ND4RJ0YN246739** |
| | **4V4ND4RJ9YN246738** |
| 500-2001308-417 | **4V4NC9JH71N314761** |
| | **4V4NC9JH01N314763** |
| | **4V4NC9JH21N314764** |
| 500-2001308-418 | **4V4NC9JH91N314762** |
| 500-2001308-419 | **4V4ND4JH2YN793584** |
| 500-2001308-420 | **4V4ND4RJ0YN796989** |
| 500-2001308-421 | **4V4NC9TJ23N341952** |
| | **4V4NC9TJ43N341953** |
| | **4V4NC9TJ63N341954** |
| | **4V4NC9TJ33N341958** |
| | **4V4NC9TJ53N341959** |

## DEFICIENCY BALANCE CALCULATION
## USING STIPULATED LOSS FACTOR

| | | |
|---|---|---|
| CUSTOMER'S NAME: | G.F. Kelly, Inc | |
| CONTRACT NUMBER: | 500-2001308-411 | 4V4NC9RH61N325013 |
| | | 4V4NC9RH81N325014 |
| | | 4V4NC9RHX1N325015 |

| | |
|---|---|
| DATE OF DISPOSITION: | 11/16/2005 |
| DATE OF REPO: | 9/24/2005 |

| | | | |
|---|---|---|---|
| LESSOR'S COST: | | | $ 246,000.00 |
| # OF PMTS MADE | 50 | FACTOR | 37.906% |
| STIP LOSS FACTOR: | | | $ 93,248.76 |

**Plus:**

| | | |
|---|---|---|
| Partial payments O/C | $ | - |
| Repossession Fees | $ | 2,100.00 |
| Cleaning | $ | 1,000.00 |
| Inspection | $ | 900.00 |
| Commission | $ | - |
| Storage | $ | - |
| Repairs | $ | - |
| Transportation | $ | - |
| Late Charges | $ | 6,525.19 |
| Insurance billed but unpaid | $ | - |
| Taxes billed but unpaid | $ | 148.75 |
| Other Fees/Admin Fees | $ | 400.00 |
| TOTAL FEES | | $ 11,073.94 |

**Minus**

| | | |
|---|---|---|
| Net Sales Proceeds | $ | 84,000.00 |
| Misc. deductions | $ | - |
| Other* | $ | - |
| TOTAL DEDUCTIONS | | $ 84,000.00 |
| | | |
| Customer's Deficiency Balance | | $ 20,322.70 |

| | | | |
|---|---|---|---|
| Completed by: | Tim Craver | Date: | 1/11/2006 |

---

STATE OF NORTH CAROLINA

COUNTY OF GUILFORD

Sworn and subscribed before me this the _____ day of _____, 20___,
by _____. I have personal knowledge of the identity
of the principal.

_____
Notary Public
My commission expires _____



**EXHIBIT**

E

**DEFICIENCY BALANCE CALCULATION**
**USING STIPULATED LOSS FACTOR**

| | | | |
|---|---|---|---|
| CUSTOMER'S NAME: | G.F. Kelly, Inc | | |
| CONTRACT NUMBER: | 500-2001308-412 | | 4V4NC9RH11N325016 |
| | | | 4V4NC9RH31N325017 |

| | | |
|---|---|---|
| DATE OF DISPOSITION: | 10/26/2005 | |
| DATE OF REPO: | 9/11/2005 | |

| | | | | | |
|---|---|---|---|---|---|
| LESSOR'S COST: | | | | $ | 164,000.00 |
| # OF PMTS MADE | | 49 | FACTOR | | 39.454% |
| STIP LOSS FACTOR: | | | | $ | 64,704.56 |

Plus:

| | | | | |
|---|---|---|---|---|
| Partial payments O/C | $ | - | | |
| Repossession Fees | $ | 1,400.00 | | |
| Cleaning/Reconditioning | $ | - | | |
| Inspection | $ | 600.00 | | |
| Commission | $ | - | | |
| Storage | $ | - | | |
| Repairs | $ | - | | |
| Transportation | $ | - | | |
| Late Charges | $ | 3,423.91 | | |
| Insurance billed but unpaid | $ | - | | |
| Taxes billed but unpaid | $ | 127.74 | | |
| Other Fees/Admin Fees | $ | 400.00 | | |
| TOTAL FEES | | | $ | 5,951.65 |

Minus

| | | | | |
|---|---|---|---|---|
| Net Sales Proceeds | $ | 48,000.00 | | |
| Misc. deductions | $ | - | | |
| Other* | $ | - | | |
| TOTAL DEDUCTIONS | | | $ | 48,000.00 |

| | | | |
|---|---|---|---|
| Customer's Deficiency Balance | | $ | 22,656.21 |

| | | | | |
|---|---|---|---|---|
| Completed by: | Tim Craver | | Date: | 2/7/2006 |

---

STATE OF NORTH CAROLINA

COUNTY OF GUILFORD

Sworn and subscribed before me this the _____ day of _____, 20___,
by _____. I have personal knowledge of the identity
of the principal.

_____
Notary Public
My commission expires  _____

## DEFICIENCY BALANCE CALCULATION
## USING STIPULATED LOSS FACTOR

| | | | | |
|---|---|---|---|---|
| CUSTOMER'S NAME: | **G.F. Kelly, Inc** | | | |
| CONTRACT NUMBER: | **001-2001308-413** | | **4V4NC9TH41N325018** | |
| | | | **4V4NC9TH61N325019** | |

| | | | | |
|---|---|---|---|---|
| DATE OF DISPOSITION: | **11/16/2005** | | | |
| DATE OF REPO: | **9/24/2005** | | | |

| | | | | |
|---|---|---|---|---|
| LESSOR'S COST: | | | $ | 166,000.00 |
| # OF PMTS MADE | 50 | FACTOR | | 37.906% |
| STIP LOSS FACTOR: | | | **$** | **62,923.96** |

Plus:

| | | | | |
|---|---|---|---|---|
| Partial payments O/C | | $ | - | |
| Repossession Fees | | $ | 1,400.00 | |
| Cleaning | | $ | - | |
| Inspection | | $ | 600.00 | |
| Commission | | $ | 700.00 | |
| Storage | | $ | - | |
| Repairs | | $ | - | |
| Transportation | | $ | - | |
| Late Charges | | $ | 1,434.30 | |
| Insurance billed but unpaid | | $ | - | |
| Taxes billed but unpaid | | $ | 107.60 | |
| Other Fees/Admin Fees | | $ | 200.00 | |
| TOTAL FEES | | | **$** | **4,441.90** |

Minus

| | | | | |
|---|---|---|---|---|
| Net Sales Proceeds | | $ | 45,000.00 | |
| Misc. deductions | | $ | - | |
| Other* | | $ | - | |
| TOTAL DEDUCTIONS | | | **$** | **45,000.00** |
| | | | | |
| Customer's Deficiency Balance | | | **$** | **22,365.86** |

Completed by:  Tim Craver          Date:  1/11/2006

---

STATE OF NORTH CAROLINA

COUNTY OF GUILFORD

Sworn and subscribed before me this the _____ day of _____, 20___,
by _____. I have personal knowledge of the identity
of the principal.

_____
Notary Public
My commission expires          _____

**DEFICIENCY BALANCE CALCULATION
USING STIPULATED LOSS FACTOR**

| | |
|---|---|
| CUSTOMER'S NAME: | G.F. Kelly, Inc |
| CONTRACT NUMBER: | 500-2001308-415 |

4V4NC9TH22N325021

| | |
|---|---|
| DATE OF DISPOSITION: | 10/19/2005 |
| DATE OF REPO: | 9/1/2005 |

LESSOR'S COST:                                              $    83,280.00
# OF PMTS MADE                            44    FACTOR              47.830%
STIP LOSS FACTOR:                                          $    39,832.82

Plus:

| | | |
|---|---|---:|
| Partial payments O/C | $ | - |
| Repossession Fees | $ | 700.00 |
| Cleaning/Reconditioning | $ | - |
| Inspection | $ | 300.00 |
| Commission | $ | - |
| Storage | $ | - |
| Repairs | $ | - |
| Transportation | $ | - |
| Late Charges | $ | 1,621.04 |
| Insurance billed but unpaid | $ | - |
| Taxes billed but unpaid | $ | 105.70 |
| Other Fees/Admin Fees | $ | 200.00 |
| **TOTAL FEES** | $ | **2,926.74** |

Minus

| | | |
|---|---|---:|
| Net Sales Proceeds | $ | 28,000.00 |
| Misc. deductions | $ | - |
| Other* | $ | - |
| **TOTAL DEDUCTIONS** | $ | **28,000.00** |

**Customer's Deficiency Balance**                          $    **14,759.56**

Completed by:    Tim Craver                    Date:    2/7/2006

---

STATE OF NORTH CAROLINA

COUNTY OF GUILFORD

Sworn and subscribed before me this the _____ day of _____, 20___,
by _____. I have personal knowledge of the identity
of the principal.

_____
Notary Public
My commission expires    _____

███████████████████████████████████████

| | | |
|---|---|---|
| CUSTOMER'S NAME: | **G.F. KELLY, INC.** | |
| CONTRACT NUMBER: | **001-2001308-414**     VIN#  **4V4NC9TH02N325020** | |

DATE OF DSP          11/15/2005
DATE OF REPO:        10/18/2005

| | | |
|---|---|---|
| LESSOR'S COST: | | $      83,280.00 |
| # OF PMTS MADE | 45 FACTOR | 45.115% |
| STIP LOSS FACTOR: | | **$      37,571.77** |

Plus:

| | | |
|---|---|---|
| Partial payments O/C | $ | - |
| Repossession Fees | $ | 700.00 |
| Cleaning | $ | - |
| Inspection | $ | 300.00 |
| Commission | $ | - |
| Storage | $ | - |
| Transportation | $ | 200.00 |
| Late Charges | $ | 1,585.16 |
| Insurance billed but unpaid | $ | - |
| Taxes Due | $ | 144.76 |
| Attorney Fees | $ | - |
| **TOTAL FEES** | | **$      2,929.92** |

Minus

| | | |
|---|---|---|
| Sales Price | $ | 26,760.00 |
| Insurance Check | $ | - |
| Misc. deductions | $ | - |
| Other | $ | - |
| **TOTAL DEDUCTIONS** | | **$      26,760.00** |
| | | |
| **Customer's Deficiency Balance** | | **$      13,741.69** |

Completed by:      Tammie Reynolds
Date:                   11/17/2005

**DEFICIENCY BALANCE CALCULATION**
**USING STIPULATED LOSS FACTOR**

| | | | |
|---|---|---|---|
| CUSTOMER'S NAME: | **G.F. Kelly, Inc** | | |
| CONTRACT NUMBER: | **500-2001308-416** | **4V4ND4RJ9YN246738** | |
| | | **4V4ND4RJ0YN246739** | |

| | | | |
|---|---|---|---|
| DATE OF DISPOSITION: | **11/16/2005** | | |
| DATE OF REPO: | **9/11/2005** | | |

| | | | | |
|---|---|---|---|---|
| LESSOR'S COST: | | | $ | 152,266.00 |
| # OF PMTS MADE | 38 | FACTOR | | 56.042% |
| STIP LOSS FACTOR: | | | **$** | **85,332.91** |

Plus:

| | | | |
|---|---|---|---|
| Partial payments O/C | $ | - | |
| Repossession Fees | $ | 1,400.00 | |
| Cleaning/Reconditioning | $ | 500.00 | |
| Inspection | $ | 600.00 | |
| Commission | $ | - | |
| Storage | $ | - | |
| Repairs | $ | - | |
| Transportation | $ | - | |
| Late Charges | $ | 3,488.70 | |
| Insurance billed but unpaid | $ | 35.86 | |
| Taxes billed but unpaid | $ | 117.48 | |
| Other Fees/Admin Fees | $ | 200.00 | |
| TOTAL FEES | | | **$    6,342.04** |

Minus

| | | | |
|---|---|---|---|
| Net Sales Proceeds | $ | 44,500.00 | |
| Misc. deductions | $ | - | |
| Other* | $ | - | |
| TOTAL DEDUCTIONS | | | **$    44,500.00** |

| | | |
|---|---|---|
| Customer's Deficiency Balance | | **$    47,174.95** |

| | | | | |
|---|---|---|---|---|
| Completed by: | Tim Craver | | Date: | 2/7/2006 |

STATE OF NORTH CAROLINA

COUNTY OF GUILFORD

Sworn and subscribed before me this the _____ day of _____, 20___,
by _____. I have personal knowledge of the identity
of the principal.

_____
Notary Public
My commission expires    _____

**DEFICIENCY BALANCE CALCULATION
USING STIP LOSS FACTOR**

| | | |
|---|---|---|
| CUSTOMER'S NAME: | **G.F. Kelly, Inc** | |
| CONTRACT NUMBER: | **500-2001308-417** | **4V4NC9JH71N314761** |
| | | **4V4NC9JH01N314763** |
| | | **4V4NC9JH21N314764** |

| | |
|---|---|
| DATE OF DISPOSITION: | **12/7/2005** |
| DATE OF REPO: | **10/31/2005** |

LESSOR'S COST: $ 232,554.99
# OF PMTS MADE        37   FACTOR         57.504%
STIP LOSS FACTOR:                        $ **133,728.42**

Plus:

| | | | |
|---|---|---|---|
| Partial payments O/C | $ | - | |
| Repossession Fees | $ | 1,400.00 | |
| Cleaning | $ | - | |
| Inspection | $ | 600.00 | |
| Commission | $ | - | |
| Storage | $ | - | |
| Repairs | $ | 5,489.45 | |
| Transportation | $ | 400.00 | |
| Late Charges | $ | 4,452.60 | |
| Insurance billed but unpaid | $ | 53.79 | |
| Taxes billed but unpaid | $ | 159.52 | |
| Other Fees | $ | - | |
| TOTAL FEES | | | $ **12,555.36** |

Minus

| | | | |
|---|---|---|---|
| Net Sales Proceeds | $ | 56,350.00 | (unit -314761 wrecked) |
| Misc. deductions | $ | - | |
| Other* | $ | - | |
| TOTAL DEDUCTIONS | | | $ **56,350.00** |

Customer's Deficiency Balance                 $ **89,933.78**

Completed by:    **Tim Craver**            Date:    **1/11/2006**

---

STATE OF NORTH CAROLINA

COUNTY OF GUILFORD

Sworn and subscribed before me this the _____ day of _____, 20___,
by _____. I have personal knowledge of the identity
of the principal.

_____
Notary Public
My commission expires    _____

## DEFICIENCY BALANCE CALCULATION
## USING STIPULATED LOSS FACTOR

| | | | |
|---|---|---|---|
| CUSTOMER'S NAME: | G.F. Kelly, Inc | | |
| CONTRACT NUMBER: | 500-2001308-418 | 4V4NC9JH91N314762 | |

| | | | |
|---|---|---|---|
| DATE OF DISPOSITION: | 10/19/2005 | | |
| DATE OF REPO: | 9/1/2005 | | |

| | | | | |
|---|---|---|---|---|
| LESSOR'S COST: | | | $ | 78,235.00 |
| # OF PMTS MADE | 35 | FACTOR | | 63.206% |
| STIP LOSS FACTOR: | | | $ | 49,449.21 |

Plus:

| | | | | |
|---|---|---|---|---|
| Partial payments O/C | $ | - | | |
| Repossession Fees | $ | 700.00 | | |
| Cleaning/Reconditioning | $ | - | | |
| Inspection | $ | 300.00 | | |
| Commission | $ | - | | |
| Storage | $ | - | | |
| Repairs | $ | - | | |
| Transportation | $ | - | | |
| Late Charges | $ | 1,463.67 | | |
| Insurance billed but unpaid | $ | 409.67 | | |
| Taxes billed but unpaid | $ | 101.65 | | |
| Other Fees/Admin Fees | $ | 200.00 | | |
| TOTAL FEES | | | $ | 3,174.99 |

Minus

| | | | | |
|---|---|---|---|---|
| Net Sales Proceeds | $ | 31,000.00 | | |
| Misc. deductions | $ | - | | |
| Other* | $ | - | | |
| TOTAL DEDUCTIONS | | | $ | 31,000.00 |
| | | | | |
| Customer's Deficiency Balance | | | $ | 21,624.20 |

| | | | |
|---|---|---|---|
| Completed by: | Tim Craver | Date: | 2/7/2006 |

STATE OF NORTH CAROLINA

COUNTY OF GUILFORD

Sworn and subscribed before me this the _____ day of _____, 20____,
by _____. I have personal knowledge of the identity
of the principal.

_____
Notary Public
My commission expires _____

**DEFICIENCY BALANCE CALCULATION USING STIPULATED LOSS FACTOR**

| | | |
|---|---|---|
| CUSTOMER'S NAME: | G.F. Kelly, Inc | |
| CONTRACT NUMBER: | 500-2001308-419 | 4V4ND4JH2YN793584 |

DATE OF DISPOSITION: **11/16/2005**
DATE OF REPO: **9/19/2005**

| | | | |
|---|---|---|---|
| LESSOR'S COST: | | | $ 74,800.00 |
| # OF PMTS MADE | 36 | FACTOR | 59.296% |
| STIP LOSS FACTOR: | | | $ 44,353.41 |

Plus:

| | | |
|---|---|---|
| Partial payments O/C | $ | - |
| Repossession Fees | $ | 700.00 |
| Cleaning | $ | - |
| Inspection | $ | 300.00 |
| Commission | $ | - |
| Storage | $ | - |
| Repairs | $ | - |
| Transportation | $ | 200.00 |
| Late Charges | $ | 1,638.50 |
| Insurance billed but unpaid | $ | - |
| Taxes billed but unpaid | $ | 137.62 |
| Other Fees | $ | - |
| TOTAL FEES | | $ 2,976.12 |

Minus

| | | |
|---|---|---|
| Net Sales Proceeds | $ | 24,000.00 |
| Misc. deductions | $ | - |
| Other* | $ | - |
| TOTAL DEDUCTIONS | | $ 24,000.00 |
| | | |
| Customer's Deficiency Balance | | $ 23,329.53 |

Completed by: **Tim Craver**          Date: **1/11/2006**

STATE OF NORTH CAROLINA

COUNTY OF GUILFORD

Sworn and subscribed before me this the _____ day of _____, 20___, by _____. I have personal knowledge of the identity of the principal.

_____
Notary Public
My commission expires _____

**DEFICIENCY BALANCE CALCULATION
USING STIPULATED LOSS FACTOR**

CUSTOMER'S NAME: **G.F. Kelly, Inc**
CONTRACT NUMBER: **500-2001308-420**          4V4ND4RJ0YN796989

DATE OF DISPOSITION: **10/31/2005**
DATE OF REPO: **8/30/2005**

LESSOR'S COST:                                        $   76,383.00
# OF PMTS MADE                          35   FACTOR        60.744%
STIP LOSS FACTOR:                                    $   46,398.09
              Plus:

|  |  |  |  |
|---|---|---|---|
| Partial payments O/C | $ | - | |
| Repossession Fees | $ | 700.00 | |
| Cleaning/Reconditioning | $ | 500.00 | |
| Inspection | $ | 300.00 | |
| Commission | $ | - | |
| Storage | $ | - | |
| Repairs | $ | - | |
| Transportation | $ | - | |
| Late Charges | $ | 1,671.00 | |
| Insurance billed but unpaid | $ | 18.20 | |
| Taxes billed but unpaid | $ | 120.30 | |
| Other Fees/Admin Fees | $ | 200.00 | |
| TOTAL FEES | | | $   3,509.50 |

          Minus

| | | | |
|---|---|---|---|
| Net Sales Proceeds | $ | 23,000.00 | |
| Misc. deductions | $ | - | |
| Other* | $ | - | |
| TOTAL DEDUCTIONS | | | $   23,000.00 |

          Customer's Deficiency Balance                    $   26,907.59

Completed by:    Tim Craver                Date:    2/7/2006

STATE OF NORTH CAROLINA

COUNTY OF GUILFORD

Sworn and subscribed before me this the _____ day of _____, 20___,
by _____. I have personal knowledge of the identity
of the principal.

_____
Notary Public
My commission expires    _____

## DEFICIENCY BALANCE CALCULATION
## USING STIPULATED LOSS FACTOR

| | | |
|---|---|---|
| CUSTOMER'S NAME: | **G.F. Kelly, Inc** | |
| CONTRACT NUMBER: | **500-2001308-421** | **4V4NC9TJ33N341958** |
| | | **4V4NC9TJ63N341954** |
| | | **4V4NC9TJ43N341953** |
| | | **4V4NC9TJ23N341952** |
| | | **4V4NC9TJ53N341959** |

| | |
|---|---|
| DATE OF DISPOSITION: | **11/16/2005** |
| DATE OF REPO: | **10/18/2005** |

| | | | |
|---|---|---|---|
| LESSOR'S COST: | | | $ 419,335.90 |
| # OF PMTS MADE | **31** | FACTOR | 66.253% |
| STIP LOSS FACTOR: | | | **$ 277,822.61** |

Plus:

| | | | |
|---|---|---|---|
| Partial payments O/C | $ | - | |
| Repossession Fees | $ | 3,500.00 | |
| Cleaning/Reconditioning | $ | 1,000.00 | |
| Inspection | $ | 1,500.00 | |
| Commission | $ | - | |
| Storage | $ | - | |
| Repairs | $ | - | |
| Transportation | $ | - | |
| Late Charges | $ | 7,987.54 | |
| Insurance billed but unpaid | $ | 89.00 | |
| Taxes billed but unpaid | $ | 130.68 | |
| Other Fees/Admin Fees | $ | 1,000.00 | |
| **TOTAL FEES** | | | **$ 15,207.22** |

Minus

| | | | |
|---|---|---|---|
| Net Sales Proceeds | $ | 196,900.00 | |
| Misc. deductions | $ | - | |
| Other* | $ | - | |
| **TOTAL DEDUCTIONS** | | | **$ 196,900.00** |
| | | | |
| **Customer's Deficiency Balance** | | | **$ 96,129.83** |

| | | | |
|---|---|---|---|
| Completed by: | Tim Craver | Date: | 2/7/2006 |

STATE OF NORTH CAROLINA

COUNTY OF GUILFORD

Sworn and subscribed before me this the _____ day of _____, 20___,
by _____. I have personal knowledge of the identity
of the principal.

_____
Notary Public
My commission expires _____

# VOLVO

## Volvo Commercial Finance

November 17, 2005


**GUY F. KELLY**
**MAIN STREET, BOX 29**
**WADLEY, AL  36276**

RE: **Contract No:  001-2001308-411**      **VINS:  4V4NC9RH61N325013**
                        **4V4NC9RHX1N325015, 4V4NC9RH81N325014**

**Collateral:  2001 VOLVO (3)**

DEAR **GUY F. KELLY:**

As you are aware, you failed to pay your debt when due.  As a result, you are in default under the terms of the indebtedness.  By previous letter, you were given formal notice of your default under the terms of the **MASTER LEASE AGREEMENT.**  Volvo Commercial Finance proposed to sell the property securing the debt if you failed to cure the default.

You failed to cure the default.  A sale of the property securing the debt was held.  The property sold for **$84,000.00,** leaving a total deficiency balance of **$18,922.70.**  This is left upon you to pay the deficiency balance to Volvo Commercial Finance within (10) days from the date of this letter.

In the event that you fail to pay the balance within 10 days from the date of this letter, please be advised that Volvo Commercial Finance will seek to enforce the attorney fees provision of the contract, pursuant to N.C.G.S. Sec 6-21.2.  Please contact our office to arrange suitable payment arrangements within 10 days of this letter.

Please forward all payments to:
        Volvo Commercial Finance
        C/O Citi Bank
        P. O. Box 7247-0236
        Philadelphia, PA  19170-0236

Sincerely,

Vicky Bliss
Deficiency Collections Specialist
Volvo Commercial Finance
(877) 865-8623 Ext. 3862

---

**Volvo Commercial Finance LLC The Americas**       **Telephone**       **Fax**
7025 Albert Pick Road, Suite 105 (27409)       **(336) 931-4000**       **(336) 931-4437**
P.O. Box 26131
Greensboro, NC  27402-6131



**EXHIBIT**

F

# VOLVO

## Volvo Commercial Finance

October 27, 2005


**GUY F. KELLY**
**MAIN STREET, BOX 29**
**WADLEY, AL  36276**

RE: **Contract No:  001-2001308-412**          **VINS:  4V4NC9RH11N325016**
                                                          **4V4NC9RH31N325017**

**Collateral:  2001 VOLVO (2)**

DEAR **GUY F. KELLY:**

As you are aware, you failed to pay your debt when due.  As a result, you are in default
under the terms of the indebtedness.  By previous letter, you were given formal notice of
your default under the terms of the **MASTER LEASE AGREEMENT.**  Volvo
Commercial Finance proposed to sell the property securing the debt if you failed to cure
the default.

You failed to cure the default.  A sale of the property securing the debt was held.  The
property sold for **$48,000.00**, leaving a total deficiency balance of **$22,256.21.**  This is
left upon you to pay the deficiency balance to Volvo Commercial Finance within (10)
days from the date of this letter.

In the event that you fail to pay the balance within 10 days from the date of this letter,
please be advised that Volvo Commercial Finance will seek to enforce the attorney fees
provision of the contract, pursuant to N.C.G.S. Sec 6-21.2.  Please contact our office to
arrange suitable payment arrangements within 10 days of this letter.

Please forward all payments to:
                    Volvo Commercial Finance
                    C/O Citi Bank
                    P. O. Box 7247-0236
                    Philadelphia, PA  19170-0236

Sincerely,

Vicky Bliss
Deficiency Collections Specialist
Volvo Commercial Finance
(877) 865-8623 Ext. 3862

---

# VOLVO

## Volvo Commercial Finance

November 17, 2005

**GUY F. KELLY**
**MAIN STREET, BOX 29**
**WADLEY, AL  36276**

RE: **Contract No:  001-2001308-413**          **VINS:  4V4NC9TH61N325019**
                                                                    **4V4NC9TH41N325018**

**Collateral:  2001 VOLVO  (2)**

DEAR **GUY F. KELLY:**

As you are aware, you failed to pay your debt when due.  As a result, you are in default under the terms of the indebtedness.  By previous letter, you were given formal notice of your default under the terms of the **MASTER LEASE AGREEMENT.**  Volvo Commercial Finance proposed to sell the property securing the debt if you failed to cure the default.

You failed to cure the default.  A sale of the property securing the debt was held.  The property sold for **$45,000.00,** leaving a total deficiency balance of **$21,465.86.**  This is left upon you to pay the deficiency balance to Volvo Commercial Finance within (10) days from the date of this letter.

In the event that you fail to pay the balance within 10 days from the date of this letter, please be advised that Volvo Commercial Finance will seek to enforce the attorney fees provision of the contract, pursuant to N.C.G.S. Sec 6-21.2.  Please contact our office to arrange suitable payment arrangements within 10 days of this letter.

Please forward all payments to:
                    Volvo Commercial Finance
                    C/O Citi Bank
                    P. O. Box 7247-0236
                    Philadelphia, PA  19170-0236

Sincerely,

Vicky Bliss
Deficiency Collections Specialist
Volvo Commercial Finance
(877) 865-8623 Ext. 3862

---

# VOLVO

## Volvo Commercial Finance

November 17, 2005

**GUY F. KELLY**
**MAIN STREET, BOX 29**
**WADLEY, AL  36276**

RE: **Contract No: 001-2001308-414**      **VINS:  4V4NC9TH02N325020**

**Collateral:  2002 VOLVO**

DEAR **GUY F. KELLY**:

As you are aware, you failed to pay your debt when due.  As a result, you are in default under the terms of the indebtedness.  By previous letter, you were given formal notice of your default under the terms of the **MASTER LEASE AGREEMENT.**  Volvo Commercial Finance proposed to sell the property securing the debt if you failed to cure the default.

You failed to cure the default.  A sale of the property securing the debt was held.  The property sold for **$26,760.00,** leaving a total deficiency balance of **$13,741.69.**  This is left upon you to pay the deficiency balance to Volvo Commercial Finance within (10) days from the date of this letter.

In the event that you fail to pay the balance within 10 days from the date of this letter, please be advised that Volvo Commercial Finance will seek to enforce the attorney fees provision of the contract, pursuant to N.C.G.S. Sec 6-21.2.  Please contact our office to arrange suitable payment arrangements within 10 days of this letter.

Please forward all payments to:
        Volvo Commercial Finance
        C/O Citi Bank
        P. O. Box 7247-0236
        Philadelphia, PA  19170-0236

Sincerely,

Vicky Bliss
Deficiency Collections Specialist
Volvo Commercial Finance
(877) 865-8623 Ext. 3862

---

# VOLVO

## Volvo Commercial Finance

October 20, 2005

**GUY F. KELLY**
**MAIN STREET, BOX 29**
**WADLEY, AL  36276**

RE: **Contract No:  001-2001308-415**          **VINS:  4V4NC9TH22N325021**

**Collateral:  2002 VOLVO**

DEAR **GUY F. KELLY:**

As you are aware, you failed to pay your debt when due.  As a result, you are in default under the terms of the indebtedness.  By previous letter, you were given formal notice of your default under the terms of the **MASTER LEASE AGREEMENT.**  Volvo Commercial Finance proposed to sell the property securing the debt if you failed to cure the default.

You failed to cure the default.  A sale of the property securing the debt was held. The property sold for **$28,000.00,** leaving a total deficiency balance of **$14,559.56.**  This is left upon you to pay the deficiency balance to Volvo Commercial Finance within (10) days from the date of this letter.

In the event that you fail to pay the balance within 10 days from the date of this letter, please be advised that Volvo Commercial Finance will seek to enforce the attorney fees provision of the contract, pursuant to N.C.G.S. Sec 6-21.2.  Please contact our office to arrange suitable payment arrangements within 10 days of this letter.

Please forward all payments to:
                        Volvo Commercial Finance
                        C/O Citi Bank
                        P. O. Box 7247-0236
                        Philadelphia, PA  19170-0236

Sincerely,

Vicky Bliss
Deficiency Collections Specialist
Volvo Commercial Finance
(877) 865-8623 Ext. 3862

---

Volvo Commercial Finance LLC The Americas        Telephone        Fax
7025 Albert Pick Road, Suite 105 (27409)         (336) 931-4000   (336) 931-4437
P.O. Box 26131
Greensboro, NC  27402-6131

# VOLVO

## Volvo Commercial Finance

November 17, 2005

**GUY F. KELLY**
**MAIN STREET, BOX 29**
**WADLEY, AL  36276**

RE: **Contract No:  500-2001308-416**        **VINS:  4V4ND4RJ9YN246738**
                                                                        **4V4ND4RJ0YN246739**

**Collateral:   2000 VOLVO (2)**

DEAR **GUY F. KELLY:**

As you are aware, you failed to pay your debt when due.  As a result, you are in default under the terms of the indebtedness.  By previous letter, you were given formal notice of your default under the terms of the **MASTER LEASE AGREEMENT.**  Volvo Commercial Finance proposed to sell the property securing the debt if you failed to cure the default.

You failed to cure the default.  A sale of the property securing the debt was held.  The property sold for **$44,500.00,** leaving a total deficiency balance of **$47,174.95.**  This is left upon you to pay the deficiency balance to Volvo Commercial Finance within (10) days from the date of this letter.

In the event that you fail to pay the balance within 10 days from the date of this letter, please be advised that Volvo Commercial Finance will seek to enforce the attorney fees provision of the contract, pursuant to N.C.G.S. Sec 6-21.2.  Please contact our office to arrange suitable payment arrangements within 10 days of this letter.

Please forward all payments to:
            Volvo Commercial Finance
            C/O Citi Bank
            P. O. Box 7247-0236
            Philadelphia, PA  19170-0236

Sincerely,

Vicky Bliss
Deficiency Collections Specialist
Volvo Commercial Finance
(877) 865-8623 Ext. 3862

---

**Volvo Commercial Finance LLC The Americas**        **Telephone**        **Fax**
7025 Albert Pick Road, Suite 105 (27409)            (336) 931-4000      (336) 931-4437
P.O. Box 26131
Greensboro, NC  27402-6131



## Volvo Commercial Finance

December 8, 2005

**GUY F. KELLY**
**MAIN STREET, BOX 29**
**WADLEY, AL  36276**

RE: **Contract No: 500-2001308-417**        **VINS:  4V4NC9JH71N314761,**
**4V4NC9JH01N314763, 4V4NC9JH21N314764**

**Collateral:  2001 VOLVO (3)**

DEAR **GUY F. KELLY:**

As you are aware, you failed to pay your debt when due.  As a result, you are in default
under the terms of the indebtedness.  By previous letter, you were given formal notice of
your default under the terms of the **MASTER LEASE AGREEMENT.**  Volvo
Commercial Finance proposed to sell the property securing the debt if you failed to cure
the default.

You failed to cure the default.  A sale of the property securing the debt was held.  The
property sold for **$56,350.00,** leaving a total deficiency balance of **$84,444.33.**  This is
left upon you to pay the deficiency balance to Volvo Commercial Finance within (10)
days from the date of this letter.

In the event that you fail to pay the balance within 10 days from the date of this letter,
please be advised that Volvo Commercial Finance will seek to enforce the attorney fees
provision of the contract, pursuant to N.C.G.S. Sec 6-21.2.  Please contact our office to
arrange suitable payment arrangements within 10 days of this letter.

Please forward all payments to:
Volvo Commercial Finance
C/O Citi Bank
P. O. Box 7247-0236
Philadelphia, PA  19170-0236

Sincerely,

Vicky Bliss
Deficiency Collections Specialist
Volvo Commercial Finance
(877) 865-8623 Ext. 3862

---

**Volvo Commercial Finance**          **Telephone**      **Fax**
7025 Albert Pick Road Suite 105 (27409)    (336) 931-4000    (336) 931-4008
P.O. Box 26131
Greensboro, NC  27402-6131

# VOLVO

## Volvo Commercial Finance

October 20, 2005

**GUY F. KELLY**
**MAIN STREET, BOX 29**
**WADLEY, AL  36276**

RE: **Contract No:  500-2001308-418**          **VINS:  4V4NC9JH91N314762**

**Collateral:  2001 VOLVO**

DEAR **GUY F. KELLY:**

As you are aware, you failed to pay your debt when due.  As a result, you are in default under the terms of the indebtedness.  By previous letter, you were given formal notice of your default under the terms of the **MASTER LEASE AGREEMENT.**  Volvo Commercial Finance proposed to sell the property securing the debt if you failed to cure the default.

You failed to cure the default.  A sale of the property securing the debt was held. The property sold for **$31,000.00,** leaving a total deficiency balance of **$21,424.40.**  This is left upon you to pay the deficiency balance to Volvo Commercial Finance within (10) days from the date of this letter.

In the event that you fail to pay the balance within 10 days from the date of this letter, please be advised that Volvo Commercial Finance will seek to enforce the attorney fees provision of the contract, pursuant to N.C.G.S. Sec 6-21.2.  Please contact our office to arrange suitable payment arrangements within 10 days of this letter.

Please forward all payments to:
                        Volvo Commercial Finance
                        C/O Citi Bank
                        P. O. Box 7247-0236
                        Philadelphia, PA  19170-0236

Sincerely,

Vicky Bliss
Deficiency Collections Specialist
Volvo Commercial Finance
(877) 865-8623 Ext. 3862

---

# VOLVO

## Volvo Commercial Finance

November 17, 2005

GUY F. KELLY
MAIN STREET, BOX 29
WADLEY, AL 36276

VINS: 4V4ND4JH2YN793584

RE: Contract No: 500-2001308-419

Collateral: 2000 VOLVO

DEAR GUY F. KELLY:

As you are aware, you failed to pay your debt when due. As a result, you are in default under the terms of the indebtedness. By previous letter, you were given formal notice of your default under the terms of the **MASTER LEASE AGREEMENT.** Volvo Commercial Finance proposed to sell the property securing the debt if you failed to cure the default.

You failed to cure the default. A sale of the property securing the debt was held. The property sold for **$24,000.00,** leaving a total deficiency balance of **$23,129.53.** This is left upon you to pay the deficiency balance to Volvo Commercial Finance within (10) days from the date of this letter.

In the event that you fail to pay the balance within 10 days from the date of this letter, please be advised that Volvo Commercial Finance will seek to enforce the attorney fees provision of the contract, pursuant to N.C.G.S. Sec 6-21.2. Please contact our office to arrange suitable payment arrangements within 10 days of this letter.

Please forward all payments to:
Volvo Commercial Finance
C/O Citi Bank
P. O. Box 7247-0236
Philadelphia, PA 19170-0236

Sincerely,

Vicky Bliss
Deficiency Collections Specialist
Volvo Commercial Finance
(877) 865-8623 Ext. 3862

---

**Volvo Commercial Finance LLC The Americas**
7025 Albert Pick Road, Suite 105 (27409)
P.O. Box 26131
Greensboro, NC 27402-6131

**Telephone**
(336) 931-4000

**Fax**
(336) 931-4437

# VOLVO

## Volvo Commercial Finance

November 1, 2005

**GUY F. KELLY**
**MAIN STREET, P.O. BOX 29**
**WADLEY, AL  36276**

RE: **Contract No:  500-2001308-420**          **VINS:  4V4ND4RJ0YN796989**
**Collateral:   2000 VOLVO**

DEAR **G.F. KELLY**:

As you are aware, you failed to pay your debt when due.  As a result, you are in default under the terms of the indebtedness.  By previous letter, you were given formal notice of your default under the terms of the **MASTER LEASE AGREEMENT.**  Volvo Commercial Finance proposed to sell the property securing the debt if you failed to cure the default.

You failed to cure the default.  A sale of the property securing the debt was held.  The property sold for **$23,000.00,** leaving a total deficiency balance of **$26,207.59.**  This is left upon you to pay the deficiency balance to Volvo Commercial Finance within (10) days from the date of this letter.

In the event that you fail to pay the balance within 10 days from the date of this letter, please be advised that Volvo Commercial Finance will seek to enforce the attorney fees provision of the contract, pursuant to N.C.G.S. Sec 6-21.2.  Please contact our office to arrange suitable payment arrangements within 10 days of this letter.

Please forward all payments to:
        Volvo Commercial Finance
        C/O Citi Bank
        P. O. Box 7247-0236
        Philadelphia, PA  19170-0236

Sincerely,

Vicky Bliss
Deficiency Collections Specialist
Volvo Commercial Finance
(877) 865-8623 Ext. 3862

---

**Volvo Commercial Finance LLC The Americas**          **Telephone**          **Fax**
7025 Albert Pick Road, Suite 105 (27409)          (336) 931-4000          (336) 931-4437
P.O. Box 26131
Greensboro, NC  27402-6131

# **VOLVO**

## Volvo Commercial Finance

November 17, 2005

**GUY F. KELLY**
**MAIN STREET, BOX 29**
**WADLEY, AL  36276**

RE: **Contract No:  500-2001308-421**        **VINS:  4V4NC9TJ33N341958,**
**4V4NC9TJ63N341954,  4V4NC9TJ43N341953,  4V4NC9TJ23N341952,  4V4NC9TJ53N341959**

**Collateral:  2003 VOLVO  (5)**

DEAR **GUY F. KELLY:**

As you are aware, you failed to pay your debt when due.  As a result, you are in default
under the terms of the indebtedness.  By previous letter, you were given formal notice of
your default under the terms of the **MASTER LEASE AGREEMENT.**  Volvo
Commercial Finance proposed to sell the property securing the debt if you failed to cure
the default.

You failed to cure the default.  A sale of the property securing the debt was held.  The
property sold for **$196,900.00,** leaving a total deficiency balance of **$95,629.83.**  This is
left upon you to pay the deficiency balance to Volvo Commercial Finance within (10)
days from the date of this letter.

In the event that you fail to pay the balance within 10 days from the date of this letter,
please be advised that Volvo Commercial Finance will seek to enforce the attorney fees
provision of the contract, pursuant to N.C.G.S. Sec 6-21.2.  Please contact our office to
arrange suitable payment arrangements within 10 days of this letter.

Please forward all payments to:
             Volvo Commercial Finance
             C/O Citi Bank
             P. O. Box 7247-0236
             Philadelphia, PA  19170-0236
Sincerely,


Vicky Bliss
Deficiency Collections Specialist
Volvo Commercial Finance
(877) 865-8623 Ext. 3862

---

**Volvo Commercial Finance LLC The Americas**        **Telephone**        **Fax**
**7025 Albert Pick Road, Suite 105 (27409)**        **(336) 931-4000**        **(336) 931-4437**
**P.O. Box 26131**
**Greensboro, NC  27402-6131**