IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA

| | | |
|---|---|---|
| VFS LEASING CO., | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | CIVIL ACTION NO.: 3:06CV638-SRW |
| VS. | ) | |
| | ) | |
| G. F. KELLY, INC d/b/a KELLY | ) | |
| TRUCKING; and GUY KELLY, | ) | |
| | ) | |
| DEFENDANTS. | ) | |

## DEFENDANTS' RESPONSE TO
## PLAINTIFF'S MOTION FOR SUMMARY JUDGEMENT

Comes now the Defendants G. F. Kelly, Inc. d/b/a Kelly Trucking and Guy Kelly and, and submits the following in response to the Motion for Summary Judgement filed by Plaintiff:

### FACTUAL SUBMISSION

1.      The deposition of Kevin Miller, plaintiffs' representative.

2.      Documents produced by plaintiff at the deposition, all of which were made exhibits to the deposition.[1]

3.      Volvo reconciliation reports (Exhibit A).

4.      Volvo spreadsheet recapping the disposition of the trucks (Exhibit B).

5.      Affidavit of Guy Kelly with attachment.

6.      Affidavit of Charles Lance.

### SUMMARY JUDGEMENT STANDARD

Under the provisions of Rule 56©), F.R.C.P., summary judgement is appropriate if "there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law."  *See Celotex v. Cattrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

---

[1] The exhibits were marked as Exhibits 2 through 34 and are composed of documents Bates stamped by Volvo from 1 through 525. All exhibits referred to in the motion and affidavits are not attached because they are voluminous. Both parties have these documents. If the court requests, copies will be submitted.

The movant "always bears the initial responsibility of informing the district court of the basis for its motion"... and ... must "demonstrate the absence of a genuine issue of material fact." *Id*.

After the movant has met its burden under Rule 56( c ), the non-movant must set forth "specific facts showing that there is a genuine issue for trial" *Id*.  In ruling, the Court "must believe the evidence of the non-movant and must draw all justifiable inferences from the evidence in the non-moving party's favor."  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513-14, 91 L.Ed.2d 202 (1986); cited in *Reeves v. Thigpen*, 879 F.Supp 1153, 1166 (M.D.Ala. 1995).

## STATEMENT OF THE CASE

In this case, Volvo claims that it is owed money by the defendants due to their default under three truck leases.  While Kelly Trucking admits that it is in default of the leases and owes some amount of money to Volvo, it vigorously disputes the amount being claimed.

At the time of default, Kelly Trucking was operating 21 tractors covered by the leases. One additional tractor covered by the leases had been wrecked so it is not at issue in this litigation.  The 21 trucks were repossessed by Volvo in the fall of 2005.  All 21 trucks were sold to third parties by Volvo in the October and November, 2005.

The case is still in the discovery stage and will be until April 30, 2007. Defendants will provide expert witness information on or before February 28, 2007 as required by the court's schedule. Defendants plan to utilize at least one expert in addition to Guy Kelly and Charles Lance.

## STATEMENT OF FACTS

1.      Volvo has not provided any evidence that the 21 trucks at issue were resold in a commercially reasonable manner or that the amounts it is attempting to charge the defendants are reasonable and proper.  In its motion, Volvo simply attaches some documents as exhibits that have amounts of money in them.  It has submitted no evidence as to the reasonableness of the amounts or that the amounts claimed are due under the lease.

2.      This dispute involves 21 trucks.  Kelly Trucking was unable to make payments

under the leases starting in 2005 and, due to unforeseen circumstances, was forced to default on the leases. Kelly Trucking fully cooperated with Volvo in providing access to the trucks at its yard in Wadley, Alabama. As the trucks were brought to the yard, Kelly Trucking called Volvo and Volvo sent drivers to Wadley. The trucks were driven from Wadley to the Adessa yard in Fairburn, Georgia. The distance from the Kelly Trucking yard to the Adessa yard is less than 75 miles. Volvo did not incur any direct expense in repossessing the trucks other than the cost to drive 150 miles round trip. (Kelly Affidavit).

3.      As shown on the submitted Volvo reconciliation reports (Exhibit A), plaintiff is attempting to charge the defendants a repossession fee of $700.00 per truck. Part of the amount Volvo is claiming in its Motion is for $14,700.00 in repossession expenses. These charges are completely unreasonable. In light of the fact that the only cost would be administrative plus driving 150 miles, the maximum reasonable cost per truck would be $200.00. In its motion, Volvo is asking the court to award it a much greater amount. (Kelly Affidavit).

4.      The Volvo reconciliation reports also show that it is attempting to charge the defendants a $300.00 inspection fee for each truck, a total of $6,300.00. Again, this charge is grossly excessive and unreasonable. The maximum reasonable charge per truck for inspection  is $125.00. In its motion, Volvo is asking the court to award it a much greater amount. (Kelly Affidavit).

5.      Volvo is attempting to charge the defendants a detailing fee on eight trucks of $500.00 per truck**.** This charge also is greatly excessive. In 2005, the reasonable charge for detailing a truck of this type was $125.00. Volvo is requesting an award of $#,000.00 more than it is due. (Kelly Affidavit; Lance Affidavit).

6.      There are clearly established facts in the record that the repossession, inspection and detailing fees that Volvo is asking this court to access are excessive and unreasonable.

7.      The company hired by Volvo to perform the inspections prepared an appraisal report and took pictures of each truck. The report stated the specifications of the truck and also included an estimate of reconditioning expenses which the inspector determined needed to be performed in order to bring the truck to a wholesale condition. (Miller Depo. 30-34).

8.      Volvo maintains a website on which it posts information about trucks it has for resale. Once Volvo is ready to put the truck out for bid, the appraisal and the pictures are viewable by dealers who are registered to access the site and bid on trucks. (Miller Depo. 41-47).

9.      The website has a sale price for each posted truck. According to the Volvo representative, the sales price shown on the website for a particular truck is the maximum NADA wholesale price plus $3,000.00-$5,000.00. (Miller Depo. 46-47). However, the true facts for the 21 trucks at issue here are very different. As shown on the Volvo recap (Exhibit B), the sale price on these trucks was substantially less than the maximum wholesale plus $3,000.00-$5,000.00. As a result, the bar was lowered at the very beginning as far as what Volvo could expect to get for these trucks. (Kelly Affidavit).

10.     Once a truck is put out for bid on the website, the auction could stay open for any length of time and the time was determined solely by Volvo. The auction could stay open for five minutes or 30 days. Miller testified that the auction was generally left open for seven to ten days. (Miller Depo. 54-57). Again, the evidence in this case is totally inconsistent with Miller's testimony. Only two of the 21 auctions stayed open for seven or more days. Sixteen of the auctions were open for four days or less, and 12 of the auctions lasted less than 48 hours. (Kelly Affidavit).

11.     Other truck finance companies and auction houses that conduct auctions on their websites follow a completely different practice. The standard in the industry is that the auction should be open for a specified period of time and the end of the auction would be readily known by looking at the website page for a particular truck. Once that time comes, the auction automatically closes regardless of the status of bids. Also, the industry standard requires that the high bid be posted on the website. Volvo's site does not show the high bid. In addition to having sole discretion as to when the auction closes, Volvo does not let bidders know what they need to bid in order to be high bidder at any given time. Nor do the bidders know that a previously submitted bid has been exceeded by another bidder and that they need to submit another bid if they want the truck. Auctions conducted on Volvo's website do not comply with industry standards and are not commercially reasonable. (Kelly Affidavit).

12.     As stated previously the appraisal report which is viewable on the website for each truck contains an estimation of costs to recondition the truck to bring it to wholesale condition.  The reconditioning expenses for the 21 trucks at issue here are greatly excessive and unreasonable.  In fact, the total of the so-called reconditioning expenses for these 21 trucks is more than $50,000.00 in excess of the actual expenses.  As a result, bidders are given a false impression as to the value of these trucks resulting in lower bids and lower sale prices.  (Kelly Affidavit; Lance Affidavit).

13.     These trucks were not sold in a commercially reasonable manner as described in detail in the affidavit of Guy Kelly.  Despite the fact that the trucks were sold in a seller's market (Miller Depo. 233), the total amount received by Volvo for the 21 trucks is more than $100,000.00 less than it should have been.  Volvo sold these trucks at a huge discount, thereby giving the defendants much less of a credit on the amount due under the leases.  The actions of Volvo were not commercially reasonable.

14.     As shown on the Volvo recap spreadsheet (Exhibit B), three trucks were purchased by Volvo & GMC of Charlotte and five trucks were bought by The Ed Schmidt Truck Store.  These two dealers are top ten customers of Volvo. (Miller Depo 210,220)  As stated by Miller in his deposition and evidenced by the documentation, in the three auctions on which Volvo of Charlotte was the low bidder, the bids were closed as soon as Volvo of Charlotte submitted a high bid.  The same sort of situation occurred on the auctions where Schmidt was the low bidder.  All of the auctions lasted for a very short amount of time and all were closed with the top ten dealers in the low bid position.  These eight auctions were not conducted in a commercially reasonable manner.  (Kelly Affidavit).

15.     Kevin Miller testified that trucks posted on the Volvo website are sold "as is, where is".  (Miller Depo. 68-69).  This is in keeping with the industry standard.  Bidders are assumed to know the condition of the trucks since the inspection report and pictures are available on the website and the trucks are available for visual inspection at the location where they are stored.  (Kelly Affidavit).

16.     Despite the stated policy, Volvo paid out over $12,000.00 to purchasers of three

trucks after the sale was finalized and the proceeds paid to Volvo.  This action by Volvo was totally inappropriate and commercially unreasonable.  On one of the trucks, the problem was visually evident to both the inspection company hired by Volvo and the purchaser.  On the second truck, the problem could easily be diagnosed and should have been diagnosed by the inspection company as well as the purchaser.  (Miller Depo. 188-195).  On the third truck, Miller could not even say that the problem was present on the date title was transferred to the purchaser.  Miller admitted that the problem for which he paid over $2,000.00 to the purchaser could very well have happened after the title to the truck was transferred.  Volvo is attempting to charge the amount of these three payments to the defendants.  This is not only commercially unreasonable, it is unfair.

17.    In summary, the defendants have submitted evidence showing that the attempted charges by Volvo for repossession, inspection and detailing were excessive and unreasonable.  These charges are included in the amount Volvo is asking the court to award in its Motion for Summary Judgment.  Additionally, the trucks were not disposed of in a commercially reasonable manner and were sold at prices substantially less than the actual value because of the manner and method in which they were sold.  The amount due Volvo from the defendants should be substantially less than the amount that is claimed.  Finally, Volvo is asking that it be reimbursed for monies paid out to purchasers after title was transferred despite the fact that its policy is "as is, where is."

## ARGUMENT

Plaintiff is not entitled to summary judgment.  It has not made any showing that its actions in disposing of these trucks and charging the defendants for a huge amount of "expenses" were reasonable.  Volvo has not in any way "…demonstrat[ed] the absence of a genuine issue of material fact."  Celotex, Supra.

Secondly, there are numerous genuine issues of material fact present in this case.  The defendants have produced evidence that the charges claimed by Volvo for repossession, inspection and cleaning are unreasonable and excessive.  The defendants have produced evidence that Volvo paid more than $12,000.00 in contradiction of its stated "as is" policy.  The

defendants have presented evidence that the disposition of the trucks was not commercially reasonable. There is evidence that the sale price posted was too low and that there was no set and published time for the auction to remain open. Additionally, the bidder was not aware of the high bid, contrary to industry standards. There is also evidence that the posted reconditioning expenses were extremely high and unreasonable, logically leading to lower bids. Finally, there is evidence that Volvo bent over backwards to help its top customers.

The factual issues outlined above involve a substantial amount of money. The defendants should be allowed to present their full case in an understandable and organized fashion so that the judgment against them is consistent with the facts and industry standards.

Whether Alabama or North Carolina law governs this case is not important because the relevant statutes are identical. N.C. Gen. Stat. § 25-28-504(1) and Code of Alabama § 7-28-504(1) both provide that "…damages payable…for default…may be liquidated but only at an amount that is reasonable…". This requires that the plaintiff act in a commercially reasonable manner in disposing of equipment under the lease agreements and in charging the lessee for alleged expenses associated with the default.

The defendants have been unable to locate a case decided under either the Alabama or North Carolina statute where the issue of reasonableness was discussed. However, there are cases involving the commercially reasonable standard under Title 9 of the UCC. The law is clear that the party selling the equipment has the burden of proof to show that its actions in all respects were commercially reasonable. Arden Equipment Co. v. Rhodes, 55 N.C. App. 470, 472, 285 S.E. 2d 814 (1982). If there are disputed facts, summary judgment is inappropriate and the case must proceed to trial. Parks Chevrolet, Inc. v. Watkins, 74 N.C. App. 719, 722 (1985).

Plaintiff has not come close to meeting its burden. Volvo has submitted absolutely no evidence to support that is actions were commercially reasonable and that the charges it is attempting to impose on the defendants are commercially reasonable. Also, there are numerous factual disputes that require a trial.

## **CONCLUSION**

The Motion for Summary Judgment should be denied.

Respectfully Submitted,


/s/ James H. Starnes
James H. Starnes, Attorney for Defendants

**OF COUNSEL:**
P. O. Box 590003
Birmingham, AL 35259-0003
(205) 320-0800


/s/ S. Sanford Holliday
S. Sanford Holliday, Attorney for Defendants

**OF COUNSEL:**
P. O. Box 727
Roanoke, AL 36274
(334)863-2717


<u>CERTIFICATE OF SERVICE</u>

     I hereby certify that I have the foregoing pleading electronically using the CM/ECF system which will electronically serve a copy of same on all counsel of record on this the 29th day of November, 2006 as follows:

     David B. Hall
     Jason Asbell
     BAKER DONALDSON
     420 North 20th Street, Suite 1600
     Birmingham, AL 35203


/s/ James H. Starnes
OF COUNSEL

## NATIONAL COURT REPORTING

```
 1        IN THE UNITED STATES DISTRICT COURT

 2        FOR THE MIDDLE DISTRICT OF ALABAMA

 3

 4    VFS LEASING CO.,

 5

 6                   Plaintiff,

 7

 8         VS.              CASE NO.

 9                          3:06cv638-SRW

10

11    G.F. KELLY, INC., d/b/a KELLY

12    TRUCKING; and GUY KELLY,

13

14                   Defendant.

15

16        DEPOSITION OF KEVIN MILLER

17

18            STIPULATIONS

19        IT IS STIPULATED AND

20    AGREED, by and between the parties,

21    through their respective counsel,

22    that the deposition of KEVIN MILLER

23    may be taken before Sunnie E.
```

Page 2

```
 1   Gillespie, Commissioner, State of
 2   Alabama at Large, at the law offices
 3   of Baker, Donelson, Bearman, Caldwell
 4   & Berkowitz, PC, 420 20th Street
 5   North, Suite 1600, Birmingham,
 6   Alabama, on the 14th day of December,
 7   2006, commencing at or about 10:02
 8   a.m.
 9          IT IS FURTHER STIPULATED
10   AND AGREED that the reading and
11   signature to the deposition by the
12   witness is waived, said deposition to
13   have the same force and effect as if
14   full compliance had been had with all
15   laws and rules of court relating to
16   taking of depositions.
17          IT IS FURTHER STIPULATED
18   AND AGREED that it shall not be
19   necessary for any objections to be
20   made by counsel as to any questions,
21   except as to form or leading
22   questions, and that counsel for the
23   parties may make objections and
```

Page 4

```
 1              I N D E X
 2
 3   EXAMINATION BY:            PAGE NO.
 4   Mr. Starnes--------------------8
 5
 6           E X H I B I T S
 7   DEFENDANT'S EXHIBIT NO.      MARKED
 8   1 - Deposition Notice-------------71
 9   2 - Recap of sales----------------72
10   3 - E-mail & photos---------------78
11   4 - File 013, Bates 129-154-------82
12   5 - File 014, Bates 328-349------122
13   6 - Adesa Sale Advertisement-----136
14   7 - File 015, Bates 363-388------142
15   8 - File 016, Bates 304-327------147
16   9 - File 017, Bates 026-051------150
17   10 - File 018, Bates 226-241C----152
18   11 - File 019, Bates 52-75-------161
19   12 - File 020, Bates 103-128A----164
20   13 - File 021, Bates 1-25--------168
21   14 - E-mail & photos-------------174
22   15 - File 738, Bates 389-409-----176
23   16 - File 739, Bates 350-362-----178
```

Page 3

```
 1   assign grounds at the time of the
 2   trial, or at the time said deposition
 3   is offered in evidence, or prior
 4   thereto.
 5          IT IS FURTHER STIPULATED
 6   AND AGREED that notice of filing of
 7   the deposition by the Commissioner is
 8   waived.
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
```

Page 5

```
 1           E X H I B I T S
 2   DEFENDANT'S EXHIBIT NO.      MARKED
 3   17 - File 763, Bates 242-265-----182
 4   18 - File 764, Bates 532-559-----185
 5   19 - Repair Invoice on 764-------191
 6   20 - File 762, Bates 266-303-----195
 7   21 - File 584, Bates 410-431-----197
 8   22 - File 989, Bates 204-225-----199
 9   23 - File 958, Bates 447-472-----203
10   24 - Repair Invoice on 958-------208
11   25 - File 954, Bates 155-178-----210
12   26 - File 953, Bates 473-482 &
13        433-446--------------------211
14   27 - File 952, Bates 179-203-----215
15   28 - File 959, Bates 76-102 & 72-218
16   29 - Repair Invoice on 021-------222
17   30 - Repo & Delivery docs--------222
18   31 - Collector system notes------224
19   32 - Collector system notes------225
20   33 - Collector system notes------225
21   34 - Collector system notes------225
22
23
```

Page 6

1    BEFORE: Sunnie E. Gillespie
2         Commissioner
3
4    APPEARING ON BEHALF OF THE PLAINTIFF:
5      Mr. Jason Asbell
6      Baker, Donelson, Bearman,
7      Caldwell & Berkowitz, PC
8      420 North 20th Street
9      Suite 1600
10     Birmingham, Alabama 35203
11
12   APPEARING ON BEHALF OF THE DEFENDANT:
13     Mr. James H. Starnes
14     Law Office of James H. Starnes
15     300 21st Street North, Suite 501
16     P.O. Box 590003
17     Birmingham, Alabama 35259-0003
18
19
20   ALSO PRESENT:
21     None
22
23

Page 7

1         I, Sunnie E. Gillespie,
2    Commissioner, State of Alabama at
3    Large, acting as commissioner,
4    certify that on this date, in
5    accordance with Rule 30 of the
6    Alabama Rules of Civil Procedure and
7    the foregoing stipulations of
8    counsel, there came before me at the
9    law offices of Baker, Donelson,
10   Bearman, Caldwell & Berkowitz, PC,
11   420 20th Street North, Suite 1600,
12   Birmingham, Alabama, on the 14th day
13   of December, 2006, KEVIN MILLER,
14   witness in the above cause for oral
15   examination, whereupon the following
16   proceedings were had:
17
18         KEVIN MILLER,
19   having been first duly sworn, was
20   examined and testified as follows:
21         THE COURT REPORTER:  Usual
22   stipulations?
23         MR. STARNES:  Yes.

Page 8

1    EXAMINATION BY MR. STARNES:
2      Q.   State your name, please,
3    sir.
4      A.   Kevin Arthur Miller.
5      Q.   Mr. Miller, what's your
6    residence address?
7      A.   8101 Stafford Mill Road,
8    Oak Ridge, North Carolina 27310.
9      Q.   Okay.  Is that Charlotte,
10   Raleigh, Durham, what area of North
11   Carolina?
12     A.   Greensboro.
13     Q.   Greensboro.  All right.  By
14   whom are you employed?
15     A.   By Volvo Financial
16   Services.
17     Q.   What's your position?
18     A.   Remarketing manager.
19     Q.   In that position, what
20   generally are your duties and
21   responsibilities?
22     A.   To handle the resale and
23   remarket of off leased and

Page 9

1    repossessed equipment.
2      Q.   Are you overall in charge
3    of that for the entire operation or
4    is it regional or what?
5      A.   I'm over the trucks and
6    currently also the construction
7    vehicles.
8      Q.   Construction vehicles
9    talking about heavy equipment, off
10   road construction equipment?
11     A.   Right.
12     Q.   Okay.  How long have you
13   been in this position?
14     A.   Eight years.
15     Q.   And been with Volvo
16   Financial --
17     A.   Eight years.
18     Q.   -- eight years?  Let me go
19   ahead and get your background before
20   I get some information about the
21   company.  Where did you graduate from
22   high school?
23     A.   Roosevelt High School in

Page 10

1  Minneapolis.
2      Q.   And then what was your
3  formal education after that?
4      A.   University of Minnesota, a
5  community college too, I can't
6  remember the name of it.
7      Q.   That's okay.
8      A.   It's just left me.  And
9  then I have an engineering degree at
10  University of Minnesota and then with
11  TMI, specialize in truck
12  applications.
13      Q.   Okay.  What is TMI?
14      A.   It's a company that -- it's
15  a school that is just for the truck
16  business.  They specialize in it.
17      Q.   But engineering
18  applications, that kind of thing?
19      A.   Yes.
20      Q.   Okay.  All right.  Is that
21  the extent of your formal education?
22      A.   Yes.
23      Q.   All right.  Tell me your

Page 11

1  work history briefly.
2      A.   I worked for a construction
3  company for seven years in their
4  truck shop when I was going through
5  school, and then I worked for GE
6  Capital Fleet Services for 20 years,
7  and then I went to work for Volvo
8  Financial.
9      Q.   GE Capital, where did you
10  work, what office?
11      A.   Eden Prairie, Minnesota.
12      Q.   And the last job you had
13  was what?
14      A.   Their marketing manager.
15      Q.   How long did you do that
16  for them?
17      A.   From -- ten years, '88 to
18  '98.
19      Q.   Did that involve the resale
20  of repossessed, over-the-road
21  tractors among other things?
22      A.   Correct.
23      Q.   Now, Volvo Financial, where

Page 12

1  is it located, it's home?
2      A.   Greensboro, North Carolina.
3      Q.   Okay.  And that's where
4  you're based?
5      A.   Yes.
6      Q.   Do you have other offices
7  around the country that have
8  remarketing people in them that
9  report to you, or is that all done
10  out of the Greensboro office?
11      A.   It's all done out of the
12  Greensboro office.
13      Q.   Okay.  How many people do
14  you have that work under you that are
15  involved in remarketing?  I'm not
16  talking about clerical help or that
17  sort of thing, I'm talking about --
18      A.   One.
19      Q.   -- one person?
20      A.   Yes.
21      Q.   Okay.  What does that
22  person do vis-a-vis you?
23      A.   Pretty much she's qualified

Page 13

1  to do pretty much everything that I
2  do.
3      Q.   So do y'all sort of divide
4  up the work load?  Like do you have
5  so many units out there, do y'all
6  kind of split it up some way, or are
7  y'all both involved with each unit,
8  or how does that work?
9      A.   We're both involved in each
10  unit to some degree, and I basically
11  have the overall say in it.
12      Q.   Okay.  But is there some
13  role that she plays generally with
14  each unit and some role that you
15  play?
16      A.   She does most of the
17  clerical data entry stuff.
18      Q.   Okay.  In terms of actually
19  deciding how the truck is going to be
20  remarketed in what fashion, what way,
21  is that something you decide?
22      A.   That would be my decision,
23  although it can be a community

# NATIONAL COURT REPORTING

Page 30

1  thing that's done after you get the
2  recovery documents?
3      A.   We hire a outside appraisal
4  services called Asset Appraisal
5  Services, and they inspect the unit.
6      Q.   You call it Asset what?
7      A.   Asset Appraisal Services.
8      Q.   Are they a nationwide
9  company?
10     A.   Yes.
11     Q.   Do you know where their
12  home is?
13     A.   Omaha, Nebraska.
14     Q.   Are they affiliated with
15  any other company to your knowledge?
16     A.   They're an independently
17  owned company.
18     Q.   Okay.  They have no
19  relationship other than
20  client/customer whatever with Volvo?
21     A.   Correct.
22     Q.   Do they have offices around
23  the country?

Page 31

1      A.   No.
2      Q.   They send somebody to the
3  trucks?
4      A.   Yes, they do.
5      Q.   Okay.  So you would
6  contact -- and I say you, your
7  department, and when I use that
8  generic you, that's what I'm talking
9  about generally.  You send them
10  something saying we've got some
11  trucks located at some location and
12  then they send somebody to appraise
13  them?
14     A.   Correct.
15     Q.   And do we have some of
16  their appraisal reports in these
17  files?
18     A.   Yes.
19     Q.   Generally speaking, do they
20  note the mileage on the unit?
21     A.   Yes.
22     Q.   The condition of the unit?
23     A.   Yes.

Page 32

1      Q.   Those kinds of things?
2      A.   Correct.
3      Q.   Do they put a value on
4  them?
5      A.   No, they do not.
6      Q.   Okay.  So what information
7  do you generally get from the report
8  that -- did you say that you call
9  them AAS?
10     A.   Yes, AAS.
11     Q.   Okay.  What generally do
12  you get from an AAS report, you know,
13  doing your job?
14     A.   Okay.  They go out and they
15  inspect the unit.  They list the
16  specifications on the unit.  They
17  make note of damages or conditions
18  that would detract from the value.
19  They estimate the repairs needed to
20  bring the unit to a wholesale value.
21  They post 8 to 26 photos, and that
22  inspection is loaded on our website.
23     Q.   You say 28 photos?

Page 33

1      A.   Up to.
2      Q.   Up to.
3      A.   At that time.
4      Q.   They list specifications,
5  note any damages or conditions,
6  estimate the payers necessary to
7  bring the unit to wholesale?
8      A.   Wholesale condition.
9      Q.   And they take photographs
10  of the unit?
11     A.   Correct.
12     Q.   Up to 28?
13     A.   Correct.
14     Q.   Have you heard the use of
15  the phrase in terms of this kind of
16  used truck situation trade terms?
17     A.   Correct.
18     Q.   Is that basically what
19  wholesale condition is, trade terms,
20  or are those different than the way
21  you understand that to be used?
22     A.   There's a couple of
23  different interpretations of trade

## 1425 FINANCIAL CENTER

Page 34

1    terms, but the most generic trade
2    term, when you say trade terms,
3    that's wholesale is what they're
4    talking about.
5        Q.   And this includes the
6    condition of the tires, and there's a
7    lot of things that go into that?
8        A.   Correct.  It's also spelled
9    out in --
10       Q.   The N.A.D.A.?
11       A.   Correct.
12       Q.   So what you were describing
13   as wholesale condition is what that
14   condition that's described in the
15   N.A.D.A. book?
16           MR. ASBELL:  Object to the
17   form.
18       Q.   (BY MR. STARNES)  Is that
19   correct?
20           MR. ASBELL:  You can answer
21   it.
22       A.   Correct.
23       Q.   (BY MR. STARNES)  Pull one

Page 35

1    of your books out and let's just say
2    what page that is and just identify
3    it for me so I can -- I mean, I've
4    got some of those books so I don't
5    necessarily need this, but --
6        A.   And there's more detail but
7    that's --
8        Q.   Okay.  For the record, the
9    inside front cover of the N.A.D.A.
10   manual, there is what's called a
11   publisher's note, and the witness has
12   pointed to the third paragraph that
13   begins with the values in this guide
14   consumer vehicle in average condition
15   for its age.  Are there some
16   additional details somewhere in the
17   book relating to specifying wholesale
18   condition or trade terms?
19       A.   There's mileage section
20   that has to be considered, mileage
21   adjustment.
22       Q.   Right.
23       A.   And then there's

Page 36

1    specifications listed in each --
2    under each category --
3        Q.   Sure.
4        A.   -- to a specific vehicle.
5        Q.   But there's nothing in the
6    N.A.D.A. book concerning the specific
7    condition of tires; for instance, how
8    much tread and that kind of thing?
9            MR. ASBELL:  Object to the
10   form.
11       A.   No.
12       Q.   (BY MR. STARNES)  Is that,
13   generally speaking, a part of what
14   somebody is talking about when they
15   talk about a truck being up to trade
16   terms or wholesale condition?
17           MR. ASBELL:  Object to the
18   form.
19       Q.   (BY MR. STARNES)  You can
20   answer.
21           MR. ASBELL:  If you know,
22   you can answer.
23       A.   Yes.

Page 37

1        Q.   (BY MR. STARNES)  Do you
2    know of anything in writing that
3    Volvo uses that specifies the
4    particulars of what it considers to
5    be wholesale condition?
6        A.   There's the UTA, the Used
7    Truck Association --
8        Q.   Right.
9        A.   -- has a printed guideline
10   for trade terms.
11       Q.   Okay.
12       A.   And that's been compiled
13   from industry people.
14       Q.   Okay.  And what --
15       A.   And it's more or less the
16   standard in the industry.
17       Q.   And that's generally what
18   y'all use?
19       A.   Correct.
20       Q.   Okay.  Fair enough.  All
21   right.  You've given me all the
22   general information that's provided
23   to you by Asset Appraisal Services

Page 38

1  when they go inspect a unit that's
2  been repossessed?
3      A.   Yes.
4      Q.   And then you say that
5  information is loaded on its website?
6      A.   Yes, our website.
7      Q.   And who has access to that
8  information?
9          MR. ASBELL:  Object to the
10  form.
11      A.   The initial access is Volvo
12  Asset personnel and Deborah and
13  myself.
14      Q.   (BY MR. STARNES)  Okay.  So
15  you say they load it on your website,
16  then that's when you can look at it?
17      A.   Correct.
18      Q.   It's available to you?
19      A.   Correct.
20      Q.   Do they also send you a
21  written report or not?
22      A.   There's a PDF file of the
23  inspector's written report that's

Page 39

1  attached.
2      Q.   That you can print?
3      A.   That I could print, yeah.
4      Q.   But basically the
5  information is transmitted to you
6  electronically, either uploaded or
7  sent to you as a PDF?
8      A.   Right.  It's uploaded on
9  the website.
10      Q.   All right.  Once you get
11  the inspection report from AAS, what
12  do you do?
13      A.   I review the photos, the
14  write-up on the unit.
15      Q.   When you say write-up, is
16  that the notes of damages and
17  condition?
18      A.   Correct, necessary.
19      Q.   Right.  Okay.  You review
20  the inspection report?
21      A.   Correct.
22      Q.   All right.
23      A.   I also look at what's owed

Page 40

1  out on the unit.  That's not going to
2  help change what someone will pay for
3  it, but it lets me know where we're
4  sitting.
5      Q.   Is that information
6  contained in what recovery has sent
7  you?
8      A.   It's in the file, yes.
9      Q.   Somebody has already given
10  you that; that's something you can
11  just look at the file that's been
12  provided to you and obtain the
13  information about what's owed on the
14  unit?
15      A.   Correct.  But I generally
16  pull it -- I generally pull it from
17  our -- I pull the account up in our
18  system.
19      Q.   Okay.  All right.  What's
20  next?
21      A.   We price the unit and then
22  the unit is posted viewable so that
23  the dealers can bid on the units.

Page 41

1      Q.   Okay.  Let's go one at a
2  time.  You price the unit?
3      A.   Right.  We set an asking
4  price.
5      Q.   All right.  Tell me, and I
6  want to get this as detailed as I
7  can, what process do you go through
8  to price a repossessed, over-the-road
9  tractor?
10      A.   The condition of the unit
11  is taken into consideration, the
12  prices that we have attained
13  previously.
14      Q.   What do you mean?  Tell me
15  what you mean by that.
16      A.   Our previous sales.
17      Q.   And you have access to
18  those in your database?
19      A.   Yes.
20      Q.   So what, you look at
21  previous sales of a similarly specked
22  2004 Peterbuilt?
23      A.   It would be --

Page 42

1    Q.   I mean, is that what you're
2  talking about when you say --
3    A.   Yes, similar.
4    Q.   Well, is that similar or do
5  you just look at 2004 tractors of any
6  make with an X type engine in it?
7        MR. ASBELL:  Object to the
8  form.
9    A.   We bring it right down to
10  the specifications.
11    Q.   (BY MR. STARNES)  Okay.
12  What was next?
13    A.   We review auction results.
14    Q.   How do you do that?
15    A.   There's a on-line auction
16  results that you can go to and sort
17  and then we go -- then we look --
18    Q.   Let me ask you this before
19  we get off auctions.  Tell me which
20  ones you typically look at.
21    A.   At that time we were using
22  what was called -- it was yellow,
23  Machinery Trader and the Truck Paper

Page 43

1  has purchased that, purchased that
2  publication, and I don't remember
3  what it's -- we just called it the
4  yellow book.
5    Q.   Okay.  Any others that you
6  looked at?
7    A.   The N.A.D.A. book.
8    Q.   But as far as auction
9  results, did you look at anything
10  other than the yellow book auction
11  site?
12    A.   Yellow book records all
13  auction sales.
14    Q.   Okay.
15    A.   It was an industry
16  collection of auction sales.
17    Q.   Okay.  Is this an actual
18  publication you would get weekly, or
19  is this something you would look at
20  on the internet?
21    A.   We would get one copy
22  in-house, but, you know, we looked at
23  it on-line because you can just sort

Page 44

1  it and it's quicker.
2    Q.   Okay.  What else would you
3  do in preparation for pricing the
4  unit; look at the N.A.D.A. book?
5    A.   N.A.D.A. book.
6    Q.   And what else?
7    A.   And currently what units
8  have sold for and been financed in
9  our system by our dealers.
10    Q.   How would you do that?
11    A.   Through our system again.
12  You put in, you know, 2001 Volvo 660,
13  and you can see, look at what was
14  booked for the last month.
15    Q.   Okay.  Anything else?
16    A.   Wholesale, wholesale
17  approvals, wholesale report, which
18  would be what the dealers have the
19  units in their inventory for.
20    Q.   How would you get that
21  information?
22    A.   From our wholesale group
23  and I also sign off on all the units

Page 45

1  that go on to our wholesale.
2    Q.   Even if they --
3    A.   Floor plan.
4    Q.   -- just take in a trade?
5    A.   Correct.
6    Q.   I'm still not quite clear.
7  Do you call your wholesale group and
8  say okay, what's the going wholesale
9  price for X tractor or is there
10  information?
11    A.   There's inventory reports
12  you can go into by dealer or by all
13  and see what inventory is out there,
14  what they are into it for.  It's a
15  floor plan.  We hold the floor plan
16  on many of the dealers.
17    Q.   Okay.  So this would be in
18  Volvo Financial's database?
19    A.   Uh-huh.
20    Q.   Your answer is yes?
21    A.   Yes.
22    Q.   All right.  Anything else?
23    A.   That pretty much covers it.

NATIONAL COURT REPORTING

Page 46

1    Q.   All right.  After you price
2 the unit, what do you do?
3    A.   We make the unit viewable
4 on our website.
5    Q.   All right.  And this would
6 be just pictures of the unit and a
7 description; what would be typical?
8    A.   The full appraisal or
9 inspection is posted on the system.
10 The only thing they can't see is
11 appraiser comments and creditor
12 comments are held back.  It's a full
13 disclosure type site.
14    Q.   Okay.  Anything else on
15 that site about this particular unit;
16 is the price on there?
17    A.   It's priced on there, and
18 there's an area where they can go
19 into and place a bid.
20    Q.   The price that you put on
21 this website, is it wholesale plus a
22 markup; what is the price?
23    A.   It's wholesale plus markup.

Page 47

1    Q.   What's the markup?
2    A.   It depends on if the unit
3 is a better looking unit, you know,
4 we'll mark it up higher.
5    Q.   Tell me what the range is,
6 and is this something you do?
7        MR. ASBELL:  Object to the
8 form.
9    A.   Yes.
10    Q.   (BY MR. STARNES)  Okay.
11 Tell me how you do it.
12    A.   Generally take the N.A.D.A.
13 value because that's what we use to
14 finance off of, and I will not take
15 condition into play on that number
16 and I'll price it up 3, 4, $5,000
17 above that.
18    Q.   Depending on what?
19    A.   How nice the unit looks.
20    Q.   Okay.
21    A.   The reason I do that is
22 sometimes the dealers will show that
23 to a user.

Page 48

1    Q.   Show what?
2    A.   They'll show the -- they'll
3 go on the website as a sales tool for
4 them too.  And so that price isn't
5 necessarily an actual sales price.
6    Q.   You mean it had some float
7 in it?
8    A.   Yes.
9    Q.   Who has access to the
10 information on the website at this
11 stage, the stage we are right now?
12    A.   There's 14 -- at that time
13 there was 14 to 1500 dealers signed
14 up, registered, that can access that
15 24 hours a day, 7 days a week.
16    Q.   Okay.  Do they pay you for
17 this?
18        MR. ASBELL:  Object to the
19 form.
20    Q.   (BY MR. STARNES)  You can
21 answer it.  Do they pay for access?
22    A.   No, they do not.
23    Q.   How do they go about

Page 49

1 getting permission to or getting
2 access?
3    A.   They -- there's a sign-up
4 area before they can get into the
5 site, and AAS gives them a password
6 after they've signed up and shown
7 that they have a dealer's license and
8 they check them out and make sure
9 they're a licensed dealer.  It's
10 closed to dealer only.
11    Q.   Okay.  So the requirement
12 is that they be an authorized or a
13 licensed dealer in wherever they
14 operate?
15    A.   Correct.
16    Q.   And have whatever that
17 particular state requires for you to
18 sell used trucks?
19    A.   Correct.
20    Q.   And it's your understanding
21 that so long as information is
22 provided sufficient to satisfy you
23 that they have such a license, they

Page 54

1  the terms of the agreement that
2  they've agreed to specify how long
3  the auction or the bidding process
4  will be open?
5      MR. ASBELL:  Object to the
6  form.  You're talking about the
7  agreement that the dealer enters into
8  when they first agree to get access
9  to the website.
10      MR. STARNES:  Right, to the
11 website.
12     Q.  (BY MR. STARNES)  The same
13 thing they've agreed if they agree to
14 pay the asking price, they get the
15 truck if they're the first?
16     A.  There's no time limit
17 specified on it.
18     Q.  Okay.  Does Volvo have a
19 policy that determines how long a
20 bidding process remains open?
21     A.  There's not a written
22 policy.
23     Q.  Well, how has it worked

Page 55

1  over the last several years?
2      A.  Seven to ten days has been
3  the general time for the unit to be
4  viewable.
5      Q.  What dictates taking it
6  off?
7      A.  Whether it's hitting a fair
8  wholesale market number or the
9  number --
10     Q.  Of people looking at it?
11     A.  No.  There's no
12 consideration taken by the number
13 that have looked at it.
14     Q.  You say consideration, are
15 you talking about the prices you're
16 getting?
17     A.  Right.  What the wholesale
18 market is bearing, the condition of
19 the unit and the number of bids on
20 the unit.
21     Q.  And the way you close a
22 bidding process, I take it from your
23 previous answer, is you take it down?

Page 56

1      MR. ASBELL:  Object to the
2  form.
3      Q.  (BY MR. STARNES)  You take
4  it down and then tell whoever is the
5  high person, you're the high bidder
6  for this unit?
7      MR. ASBELL:  Object to the
8  form.  By take it down you mean --
9      MR. STARNES:  The website.
10     Q.  (BY MR. STARNES)  You said
11 you generally keep things viewable
12 seven to ten days?
13     A.  Right.
14     Q.  I assume that when the bids
15 are closed, the thing is no longer
16 viewable?
17     MR. ASBELL:  I'll object to
18 the form.
19     MR. STARNES:  Let him
20 object.  You object and we'll get to
21 the facts.
22     MR. ASBELL:  I just want to
23 be sure that it's clear.  When you

Page 57

1  say take it down, you mean --
2      MR. STARNES:  I withdraw
3  the question.  Let's just try to get
4  this -- this doesn't need to be
5  complicated.
6      Q.  (BY MR. STARNES)  You told
7  me you keep the bidding process open
8  seven to ten days?
9      A.  And up to 30.  And up to 30
10 if, you know, depending on if, you
11 know -- I'll tell you easy.  Let's
12 say the market value on the truck is
13 25, and we have a bid in there of 24,
14 and maybe there's a couple of other
15 bids that are less than that or maybe
16 24 is the only one on there and it's
17 been out there for a while.  We'll go
18 ahead and hit the high bid.  All the
19 other bidders are rejected
20 automatically and sent a reject
21 notification that tells them the
22 price that the truck was sold at so
23 they can track the market, what we're

# NATIONAL COURT REPORTING

Page 66

1  come in on that truck?
2      A.  No, there's not.
3      Q.  So, for all he knows, he's
4  the only bidder, he's the high
5  bidder, or people have bid way over
6  him, he just doesn't know?
7      A.  Correct.
8      Q.  But if he wants to two or
9  three days later, despite his lack of
10  knowledge, he can go in and make
11  another bid?
12      A.  Correct.
13      Q.  If his bid is higher, I
14  assume it supersedes his lower bid of
15  $23,000?
16      A.  Correct.
17      Q.  What if his bid is lower?
18      A.  It will not allow him to do
19  that.  They have the option to pick
20  up the phone and call us.
21      Q.  Okay.  But the website
22  wouldn't let him make a lower bid?
23      A.  No.

Page 67

1      Q.  But it will allow them to
2  raise their bid?
3      A.  Correct.
4      Q.  As you understand it, does
5  the agreement that these dealers, who
6  have access to the website and bid on
7  trucks, require that if you accept
8  their bid, that they in turn provide
9  you with the funds within a certain
10  amount of time?
11      A.  Yes, it does.
12      Q.  I mean, it doesn't allow
13  them to renig on it?
14      A.  No.
15      Q.  Okay.  So these bids come
16  in.  At some point in time is it your
17  decision to say okay, we're going to
18  go ahead and close bids and accept
19  the high bid which is X?
20      A.  Yes.
21      Q.  Okay.  And you've told me
22  that what you consider in deciding
23  when to close bids is based on the

Page 68

1  market, the wholesale price, how
2  close this is to the wholesale price,
3  those factors that you've told me
4  earlier?
5      A.  Correct.
6      Q.  Once you decide to close
7  the bids, what happens next?
8      A.  We click on the high bid.
9  The system automatically sends out
10  the acceptance e-mail and the
11  rejection e-mails.  We log the sale
12  in our system and print out the
13  paperwork to bill the dealer.
14      Q.  Okay.  I didn't ask you
15  this:  Is this price that you offered
16  or accept deliverable at whatever the
17  location is; in other words, the
18  purchaser is responsible for going
19  and getting the truck and
20  transporting it to wherever they are
21  located?
22      MR. ASBELL:  Object to the
23  form.

Page 69

1      A.  As is, where is.
2      Q.  (BY MR. STARNES)  As is,
3  where is.  All right.  Go ahead.
4  Excuse me.  All right.  You send out
5  the acceptance/rejection e-mails.
6  You send the paperwork to the dealer
7  who is the low bidder, then you get
8  the paperwork back and close the file
9  or is there more steps?
10      A.  There's a lot of steps to
11  the -- you mean after we collect the
12  funds from the person?
13      Q.  Yes.
14      A.  Then we release the title
15  and then our part of the file, we
16  make sure every piece of document is
17  in there that we need and then we
18  pass the file on to deficiency,
19  deficiency collection.
20      Q.  Okay.  Are there occasions
21  where trucks do not sell on this
22  website or are they all sold?
23      MR. ASBELL:  Object to the

Page 86

1 that he appraised the truck?
2    A. Correct.
3    Q. And would the location be
4 reflected there on the first page
5 Fairburn, Georgia?
6    A. Yes.
7    Q. Do you recall what lot that
8 is in Fairburn?
9    A. Yes. That's Adesa
10 Fairburn.
11    Q. That's an auction yard?
12    A. Right. It calls it out in
13 more detail right here (indicating).
14    Q. I got you. I see that now.
15 Okay. And that's a place in the
16 Atlanta area that you use to safe
17 house trucks?
18    A. Correct.
19    Q. All right. Going back to
20 the exhibit, we're down to Bates 140.
21 It's Exhibit 4. What is 140?
22    A. This is an account
23 reconciliation report.

Page 87

1    Q. Okay. What's its purpose
2 to --
3    A. It's to detail sales price
4 and nonrelated sales fees that were
5 spent on the unit.
6    Q. Okay. Let's go over this.
7 Under the sold to box, that's just
8 information on the purchaser, is that
9 your understanding, as far as the
10 contact name and company name, under
11 the sold to block up at the top?
12    A. Oh, yeah, sold to, yes.
13    Q. All right. And the total
14 amount of those costs is $27,000,
15 that's the amount that TEC of
16 California paid for this truck?
17    A. Correct.
18    Q. All right. Non sales
19 related fees, repo fee?
20    A. Correct.
21    Q. Is that something that is
22 standard $700 or do you know?
23    MR. ASBELL: Object to the

Page 88

1 form.
2    A. That I don't know. That's
3 in the repossession section.
4    Q. Okay. Inspection, that's
5 the amount charged by AAS to inspect
6 this truck?
7    A. Correct.
8    Q. Cleaning fee, what's that?
9    A. That was a clean and detail
10 that I had done at the auction.
11    Q. Do you do that on every
12 truck you sell?
13    A. No.
14    Q. Okay. Why did you do it on
15 this truck?
16    A. If I felt that the clean
17 and detail would help it, I might
18 have had trouble selling it, I
19 decided to clean and detail it to
20 make it more presentable.
21    Q. Okay. And can you tell me
22 or can we find somewhere of what that
23 other fee is of $200?

Page 89

1    A. Yes. That is a marshalling
2 fee. That means that I did not sell
3 the unit through the auction, and
4 they charged me a fee to just hold
5 it, keep it safe.
6    Q. Basically a storage fee is
7 what it amounts to?
8    A. Right. And that's on 142A
9 is a copy of that bill.
10    Q. All right. We'll get to
11 that. Bates 141, that appears to be
12 a copy of another account
13 reconciliation report, but it's X'd
14 out?
15    A. Right. We print this
16 reconciliation report at different
17 times through the process. I'm not
18 sure why we kill trees, but this one
19 is the only important one.
20    Q. And 142 is another
21 reconciliation report again with just
22 different numbers on it involved with
23 the same truck; is that correct?

Page 166

1  automatically rejected when you put
2  the unit into auction; is that
3  correct?
4      A.  That is not correct.
5      Q.  Okay.
6      A.  This unit was sold for
7  26,760.
8      Q.  Okay.  I see that.  I read
9  that wrong.  You're right.  The first
10  bid that was made on 11/3 was
11  accepted.  And if we look over at --
12  well, I'm trying to see if there's an
13  e-mail acceptance letter, but I do
14  not see one.  Is it correct,
15  Mr. Miller, that we know based on the
16  entry on that inspection report and
17  on the website log-in sheet that you
18  ran this unit through auction on
19  November 10?
20          MR. ASBELL:  Which page are
21  you on?
22      Q.  (BY MR. STARNES)  I just
23  summarized two sheets based on what

Page 167

1  we've already looked at.  I don't
2  have the pages, but we looked at
3  an --
4      A.  Correct.
5      Q.  -- inspection report.  It
6  indicated you ran this thing through
7  the auction on November 10?
8      A.  Correct.
9      Q.  And so did that website
10  log-in sheet, correct?
11      A.  Correct.
12      Q.  The high price there was
13  what; what was the offer?
14      A.  18,000.
15      Q.  And you wouldn't take it?
16      A.  Correct.
17      Q.  So then on either that day
18  or the next day you accepted this bid
19  that had come in on November 3rd for
20  $26,760?
21      A.  Correct.  If you look at
22  111, it shows a sale date of 11/11.
23  So when I got back in the office the

Page 168

1  next day, I accepted that bid.
2      Q.  All right.  Look over, this
3  is just a new document for me, it's
4  the last document 128A.  Can you tell
5  me what this is?
6      A.  This is a document entered
7  into the -- well, from our cash app.
8  department, it's a wire receipt for a
9  transaction, receipt of a wire.
10      Q.  Okay.  I understand now.
11          (Whereupon, Defendant's
12          Exhibit Number 13 was
13          marked for identification.)
14      Q.  All right.  Let's go to
15  Exhibit 13.  It's Bates numbers 1
16  through 25, and it relates to tractor
17  serial number 021.  You may have to
18  look through here to tell me, but I
19  notice on page 2 that you had $4,000
20  charged on the reconciliation report
21  to repairs?
22      A.  Yes.
23      Q.  Can you tell me what those

Page 169

1  for were for, first?
2      A.  Those were for repairs that
3  were missed or light on the
4  appraiser's estimate.  This unit had
5  been crashed at one time and repaired
6  improperly, and I made it right with
7  the purchaser, and that was a dollar
8  amount that we agreed on.
9      Q.  All right.  We'll come back
10  to that in a minute.  Looking at the
11  inspection report on page 8 and 9,
12  the inspection was done on October 7;
13  is that correct?
14      A.  Correct.
15      Q.  And he shows on there
16  reconditioning expenses needed of
17  $8,040?
18      A.  Correct.
19      Q.  Go to page 19, the website
20  log that shows the inspection on
21  October 7 and then that the unit was
22  priced by Ms. Nelson on October 12?
23      A.  Yes.

Page 170

1    Q.  And some of it's cut off,
2  but there's a note there that we are
3  unable to open hood to check
4  components.  Can you tell me what
5  that says?
6    A.  Right.  That is printed on
7  the inspection sheet that's from the
8  appraiser.  It is on 08 and 09, and
9  there you'll find the full comment.
10    Q.  Where is the full comment?
11    A.  In public comments.
12    Q.  It's still cut off.  What
13  does it say?
14    A.  This.  Okay.  We are unable
15  to open hood and check components.
16  This and oil leaks are open items.
17  And if you look in the inspection,
18  they were listed as open.
19    Q.  Open being?
20    A.  That it could cost more.
21    Q.  All right.  So the unit was
22  priced at $30,000.  The bids marked
23  as viewable on the 12th, October

Page 171

1  12th.  And then on page 18 it shows
2  you've got three bids.  The highest
3  coming in on October 14 for $28,000;
4  is that correct?
5    A.  That is correct.
6    Q.  And you closed the bids on,
7  according to page 20, you closed the
8  bids on October 14 and accepted the
9  $28,000 bid; is that correct?
10    A.  That is correct.
11    Q.  Now, you said something
12  about paying $4,000 back to the
13  purchaser.  There are no documents in
14  here dealing with that issue other
15  than a $4,000 figure on a
16  reconciliation statement?
17    A.  Right.  The file was
18  already on it's way to disposition.
19  The purchaser had paid for the unit
20  and had picked it up.  And if you
21  want to have this entered, this is my
22  e-mails and the photos of the unit
23  with a copy of the serial number.

Page 172

1    Q.  I'm going to need documents
2  reflecting that.  Assuming you're
3  going to charge or try to charge us
4  $4,000, then I need to know who it
5  was paid to and documentation
6  explaining why.  Is this something
7  you're going to give me?  Can I look
8  at it?
9    A.  Yes.  And there should be a
10  copy of that invoice in this file.  I
11  know we looked at it earlier.
12    MR. ASBELL:  Can we go off
13  the record?
14    (Whereupon, a discussion
15     was held off the record.)
16    Q.  (BY MR. STARNES)  Going
17  back to this truck number 021, the
18  truck sold, the purchaser took
19  delivery of the truck from the Adesa
20  site, I take it?
21    A.  Correct.
22    Q.  What happens next?
23    A.  The drive-away company

Page 173

1  delivered the unit to the dealer.  He
2  went out and inspected the unit, and
3  he found the damage that was previous
4  accident damage that had been
5  repaired but not repaired properly.
6  I went to the dealer --
7    Q.  Well, let me ask you this:
8  Was this damage readily visible?
9    A.  It was visible.
10    Q.  Would it have been visible
11  at the time that AAS did its
12  inspection?
13    A.  Yes, but we don't ask them
14  to call out repairs that are already
15  completed.  We do ask them and I did
16  talk to them about missing this on
17  the dashboard, and then leading to
18  the other repair work that they could
19  have noted that this unit had
20  previous accident damage.  That was a
21  discussion with AAS and the inspector
22  and their quality manager.
23    Q.  So you went and saw this

Page 174

```
1    truck yourself --
2        A.  Yes.
3        Q.  -- and spoke to the
4    purchaser?
5        A.  Yes.
6        Q.  Did you take these
7    pictures?
8        A.  I did not take those
9    pictures.  Those pictures were taken
10   and sent to me, and then I went and
11   viewed the unit to verify it.
12           (Whereupon, Defendant's
13           Exhibit Number 14 was
14           marked for identification.)
15       Q.  This e-mail you gave me I
16   marked as Exhibit 14.  With the
17   picture as attached to it, it said,
18   "This is the unit we talked about car
19   fax shows good history," what is that
20   car fax?
21       A.  Car fax is if the unit --
22   that's primarily for cars, but if
23   there was ever a major collision that
```

Page 175

```
1    involved an insurance company, the
2    insurance company would have tagged
3    that serial number.
4        Q.  Okay.  So y'all ran a car
5    fax report on this unit?  Who ran a
6    car fax report on this unit?
7        A.  Danny at Central Carolina
8    ran a car fax.  It is not uncommon
9    for it to not show up on a heavy duty
10   truck because they're not really in
11   the scope of the guidelines, but a
12   lot of the, you know, the insurance
13   companies would report it.  I don't
14   believe this was repaired by an
15   insurance company.  I believe this
16   was repaired in-house.
17       Q.  What other documents exist
18   to your knowledge relating to this
19   payment?  Did you actually write him
20   a check?  Had he already paid for
21   this unit?
22       A.  He had already paid for the
23   unit, so we had to --
```

Page 176

```
1        Q.  So you wrote him a check?
2        A.  Correct.
3        Q.  And you say there is an
4    invoice?
5        A.  There is an invoice from
6    him.  I cannot pay anything without
7    an invoice.
8        Q.  To your knowledge,
9    Mr. Miller, what other documents
10   besides that invoice exists relating
11   in any way to this $4,000 payment,
12   any correspondence, anything related
13   to this other than what you've given
14   me, but I'm talking about --
15       A.  Just the invoice.
16           (Whereupon, Defendant's
17           Exhibit Number 15 was
18           marked for identification.)
19       Q.  Okay.  Let's go to Exhibit
20   15.  This is Bates numbers 389
21   through 409.  It relates to tractor
22   738.  We're going to change gears
23   here, 738.  It looks like on page 390
```

Page 177

```
1    that there was $700 and other fees
2    charged on this account, and is this
3    one that you had detailed?
4        A.  It was, yes, it was a
5    detail.
6        Q.  And that's because you
7    planned to put it in the auction?
8        A.  Correct.
9        Q.  Is that why you detailed
10   it?
11       A.  Correct.
12       Q.  It looks like a page skips,
13   but if you look at page 394 this
14   appraisal was done on October 7; does
15   that appear to be correct?
16       A.  Yes.
17       Q.  And it had $4,080 worth of
18   estimated reconditioning expenses?
19       A.  Yes.
20       Q.  All right.  Let's look over
21   at the log sheet, it's page 404.  It
22   reflects the inspection we just
23   talked about on October 7, and it
```

Page 186

1   have an unusual thing. So let's go
2   ahead and find the inspection report.
3   On page 548 -- you're right. This is
4   the original.
5       Q. (BY MR. STARNES) 548 it
6   shows that the inspection was done on
7   November 8th; is that correct?
8       A. Yes.
9       Q. And then it shows on page
10  559 that it was priced by Ms. Nelson
11  and put out for bid on November 17;
12  is that correct?
13      A. Yes.
14      Q. And the price was $35,000?
15      A. Yes.
16      Q. And then 558 shows bids
17  received on 11/17 all the way through
18  11/30, a total of five bids; is that
19  correct?
20      A. That's correct.
21      Q. And the high bid was
22  received 25,250 on the 29th; is that
23  correct?

Page 187

1       A. Correct.
2       Q. Okay. First, the bids were
3   still, even the one that was accepted
4   was still some $10,000 less than the
5   asking price; is that correct?
6       A. Yes.
7       Q. Why in this case did you
8   leave the bids open, based on all the
9   exhibits we've looked at before, a
10  good deal longer than any other bids
11  we see?
12      MR. ASBELL: Object to the
13  form.
14      MR. STARNES: I'm trying to
15  mark something. So go ahead. I'll
16  find it.
17      A. The miles are lower than
18  the rest of the units and the
19  reconditioning is on the low end, and
20  so it didn't fit into, you know, it
21  didn't fit into the average as well,
22  and that's why we left it out there
23  for a little bit.

Page 188

1       Q. (BY MR. STARNES) The
2   reconditioning estimate was $4855; is
3   that right?
4       A. Correct.
5       Q. And I don't see an
6   acceptance letter, but it appears
7   from page 558 that the bids -- well,
8   I can't tell whether the bid was
9   accepted. Can you tell me when that
10  bid was accepted, what date?
11      A. November 30th.
12      Q. All right. Now, looking at
13  page 543, the reconciliation report,
14  there is a charge of $5,489 for
15  repairs. Is there anything in this
16  exhibit other than this mention on
17  page 543 about those repairs?
18      A. No.
19      Q. Do you know anything about
20  those repairs?
21      MR. ASBELL: Object to the
22  form.
23      A. I do not, but there was one

Page 189

1   unit that had a transmission problem,
2   and this possibly could have been the
3   unit.
4       Q. (BY MR. STARNES) So I'll
5   have to come back to it. Assuming
6   this was the unit that had
7   transmission problems, tell me what
8   you recall about that.
9       A. About the transmission
10  problems?
11      Q. Yeah. And ultimately
12  paying the guy $5,000 for it.
13      MR. ASBELL: Object to the
14  form.
15      Q. (BY MR. STARNES) I mean,
16  just tell me what you can remember
17  about the situation that led to that
18  payment?
19      A. One of the G.F. Kelly
20  units, when they went to pick it up,
21  it wouldn't go in two of the gears,
22  and fourth was the first gear, I
23  believe -- I'm going by memory --

Page 190

1  that you could start out in. And it
2  was noted somewhere, and we missed
3  it. But I don't know if this is the
4  unit or not.
5      Q. Well, let's just assume it
6  was, so if we do come to one that it
7  is, we don't have to go through these
8  questions again. You can't think of
9  any other reason for there to be a
10  $5,000 payment on any of these trucks
11  other than that transmission problem?
12      A. Correct.
13      Q. Can you think of any other
14  possibilities?
15      A. Correct, and that's the
16  dollar amount that a transmission
17  repair would be in too.
18      Q. So does AAS not drive these
19  trucks?
20      A. No, they do not.
21      Q. They don't see if they'll
22  go in gear?
23      A. They're supposed to check

Page 191

1  that.
2      Q. Did you go to AAS and tell
3  them to pay for this?
4      A. We have a working
5  relationship with them that they will
6  give us the inspection for free if
7  they make a mistake.
8      Q. $500?
9      A. Yes.
10      Q. Did they do that in this
11  case?
12      A. I don't see that.
13          MR. ASBELL: Can we go off
14  the record?
15          (Whereupon, a discussion
16          was held off the record.)
17          (Whereupon, Defendant's
18          Exhibit Number 19 was
19          marked for identification.)
20          MR. STARNES: First off,
21  let me see if we can match up the
22  serial number somewhere. I'm sure
23  it's the same truck, but I'm trying

Page 192

1  to find it on here. We did say we
2  were dealing with 4764. There's the
3  serial number up here on one of these
4  things, so that's obviously the
5  right -- tell me, this is three
6  pages, Bates numbers 560 to 560 --
7  only this top page is Bates stamped,
8  but I guess he's going to Bates stamp
9  them.
10      Q. (BY MR. STARNES) So
11  anyway, is this the repairs for the
12  transmission you were referring to,
13  Mr. Miller?
14      A. I'll have to look at it.
15  Yes, it is.
16      Q. And your recollection is
17  that that invoice is dated when?
18      A. 12/15.
19      Q. And you had sold this unit
20  on November 30th?
21      A. Correct.
22      Q. So your recollection is
23  sometime after you sold it, you

Page 193

1  received a call from the purchaser
2  saying that it didn't have all its
3  gears?
4      A. Right. I had it -- I
5  remember more now looking at this. I
6  had it verified by the auction
7  personnel, and what happened was the
8  driver, the drive-away company driver
9  showed up to pick this unit up, and
10  he could not drive the unit away. So
11  they had to leave it at that time,
12  and then they towed the unit into
13  their facility. But before it left,
14  I had it verified, I had the
15  condition verified by the auction.
16  It does not state in here the problem
17  to the transmission, but I do -- I
18  remember the problem.
19      Q. Why was it repaired in
20  Chicago?
21          MR. ASBELL: Object to the
22  form.
23      A. The price was fair. I

Page 194

1  don't know why it was repaired in
2  Chicago. I just said that I would
3  cover the bill. I didn't cover the
4  towing it in, so I don't really care
5  where it was repaired at.
6      Q.  (BY MR. STARNES) Is this
7  all the documentation that you had
8  reflecting this work?
9      A.  As far as I know but I
10  didn't --
11      Q.  So the only thing you based
12  it on is you have an estimate to
13  replace transmission 5,489.45, and
14  you paid it?
15      A.  Correct.
16      Q.  You didn't get any repair
17  bills to show they actually have paid
18  this money or anything like that?
19          MR. ASBELL:  Object to the
20  form.
21      A.  This was not from -- the
22  purchaser was R&J Truck Sales, and
23  they're out of Michigan, and the

Page 195

1  repair bill is from Pozzo in Illinois
2  or the repair estimate. I generally
3  do not pay out for an estimate.
4      Q.  So there may be other
5  documents?
6      A.  It's possible. The average
7  transmission was $6500 to 9,000, but
8  65 is the low one, so I'm good with
9  5,439.
10          (Whereupon, Defendant's
11          Exhibit Number 20 was
12          marked for identification.)
13      Q.  All right. Let's move on.
14  The next truck is truck number 762
15  it's Exhibit 20. It appears to be
16  Bates numbers 266 through 303. The
17  inspection is 271. Mr. Miller, was
18  it done on October 7?
19      A.  Yes.
20      Q.  It shows estimated
21  recondition and expenses $4940?
22      A.  $4,940, yes.
23      Q.  Then if we look at page

Page 196

1  280, it shows that you priced the
2  unit and put it up for bid on October
3  14 at a price of $31,000; is that
4  right?
5      A.  Yes.
6      Q.  And you received a bid that
7  date for that amount, and they
8  accepted it; is that correct?
9      A.  On 279 there's three bids
10  in there on the 14th, and, yes,
11  31,000.
12      Q.  And you accepted it on that
13  date according to --
14      A.  Yes.
15      Q.  -- page 281?
16      A.  Yes.
17      Q.  It appears on this exhibit
18  that we got a bunch of duplicates,
19  but rather than figuring that out,
20  I'll just leave it as it is. I think
21  it's copied twice, clips on either
22  side, and I think it got copied two
23  times and stamped twice.

Page 197

1          21 which relates to truck
2  number 584, and it's Bates 410
3  through 446.
4          (Whereupon, Defendant's
5          Exhibit Number 21 was
6          marked for identification.)
7      Q.  Looks like if you look at
8  page 415 can you tell me when it was
9  inspected and what the estimated
10  reconditioning was?
11      A.  10/24, $4,580.
12      Q.  And there's a log sheet
13  transaction log on 426. It shows
14  that you priced the unit at $26,000
15  and put it out for bid on November
16  3rd?
17      A.  Correct.
18      Q.  And then bids were
19  reflected on page 425; is that
20  correct?
21      A.  That is correct.
22      Q.  Sold the unit for $24,000?
23      A.  Correct.

Page 198

1    Q.  All right.  I'm confused.
2  Look at page 435.  Is this a document
3  that's just out of place?
4    A.  Yes.  The serial number
5  doesn't match.  The serial number
6  341953.
7    Q.  All right.  See if you
8  can -- we'll pull these.  That
9  belongs to another truck?
10    A.  Is that the one that we're
11  missing.
12    Q.  No, I don't think we're
13  missing it.  I think it's an exhibit
14  we haven't gotten to yet.  Look
15  through here and see when it changes
16  to 53 if we can real quick,
17  Mr. Miller.  I believe it changes on
18  page 433.  If you look at the pages
19  immediately preceding that, they all
20  relate to what we've been talking
21  about, 584?
22    A.  Yes.
23    Q.  But then on 433, they start

Page 199

1  talking about this serial number 953.
2  So I'm going to remove pages 433
3  through 446 on Exhibit 21.  There's
4  no need to have a bunch of -- and
5  we'll hold these.  I think we'll find
6  the exhibit, but they maybe
7  duplicative.
8        (Whereupon, Defendant's
9        Exhibit Number 22 was
10        marked for identification.)
11    Q.  All right.  22 is Bates
12  numbers 204 through 225, and it
13  relates to VIN number 989.  This
14  truck has a $500 reconditioning
15  detail fee.  Why is that?
16    A.  Because I was going to run
17  it through the auction or I didn't --
18  well, I didn't run it through because
19  there's a $200 fee, marshalling fee.
20    Q.  Again, why did you select
21  to have certain trucks reconditioned
22  or detailed because you were going to
23  run them through the auction and not

Page 200

1  others?  What dictated that, what
2  condition of the truck or mileage or
3  what?
4    A.  The combination of the
5  mileage, the condition, and the
6  specifications on the unit.
7    Q.  But, generally speaking,
8  was it high miles, low miles, what?
9    A.  Well, it would have been
10  the combination of them all, because
11  this one right here has 9,470.  So I
12  was preparing that one to go through
13  the auction because that's a rougher
14  unit.
15    Q.  So the rougher the unit,
16  the more likely you were to put it
17  through the auction?
18    A.  Correct.
19    Q.  The higher the miles, the
20  more reconditioning and expenses?
21    A.  That's generally.
22    Q.  And if we look here at 209,
23  the inspection report, it was

Page 201

1  inspected on October 7th?
2    A.  Correct.
3    Q.  And what was the estimated
4  reconditioning expense?
5    A.  $9,470.
6    Q.  And if we go through here,
7  we'll find the log on page 220.  Ms.
8  Nelson priced the unit at $30,000
9  five days later on October 12th; is
10  that correct?
11    A.  Correct.
12    Q.  All right.  And then two
13  days later you reduced it down to
14  $23,000 and put it out for bid; is
15  that correct?
16    A.  Correct.
17    Q.  And tell me why you did
18  that.
19    A.  To put it more in line with
20  where the unit should sell.
21    Q.  And your belief -- I mean,
22  Ms. Nelson is trained like you.  Why
23  was hers, in your judgment, high so

Page 206

1  that I felt that I'd like to try at
2  the auction.
3      Q.  Well, you told me earlier
4  that generally it was high miles,
5  high conditioning expenses, rough
6  condition?
7      A.  Right.  But I also don't
8  want to be known at the auction for
9  just selling my junk.  So I might
10  pick a nicer one or --
11     Q.  All right.  The transaction
12  log is on page 205, and it shows that
13  the truck was, after the inspection
14  on the 7th, no transactions occurred
15  until the 27th when you priced it for
16  $44,000; is that correct, page 463?
17     A.  That's correct.
18     Q.  And, again, other than
19  possible getting the title or a
20  notice issue, would you have any
21  explanation for the 20-day delay?
22         MR. ASBELL:  Object to the
23  form.

Page 207

1      A.  I do not.
2      Q.  (BY MR. STARNES)  So you
3  put it out for bids, and you got
4  three bids; is that right?
5      A.  That is correct.
6      Q.  And the bid on October 31
7  for $39,300, you accepted it?
8      A.  Correct.
9      Q.  Now, if you look at page
10  448, in addition to these other fees,
11  we've talked about detailing it --
12  and this never went to the auction,
13  by the way, did it, this truck?
14     A.  It never went through the
15  auction.
16     Q.  Right.  There's a $2,880.10
17  for repairs on the reconciliation
18  sheet on page 448.  Can you explain
19  that to me, please, sir?
20     A.  Okay.  This unit had a bad
21  head gasket and it was allowing
22  coolant to go into the oil, and I
23  have the repair backup, and my

Page 208

1  authorization to pay it.  This was
2  after the sale.
3      Q.  The sale occurred on the
4  31st, October 31st; is that right?
5      A.  Yes.
6         (Whereupon, Defendant's
7         Exhibit Number 24 was
8         marked for identification.)
9      Q.  I will mark as Exhibit 24
10  the cover pages.  It's Bates numbers
11  563 through 566.  The invoice is
12  dated March 2nd, and then there is a
13  more detailed three-page invoice
14  behind it.  It's dated February 16th.
15     A.  And on that repair, I did
16  not want the Volvo dealer to do it in
17  their shop.  I asked for Cummins to
18  inspect the unit, and they brought it
19  over to Cummins.
20     Q.  So Cummins actually did the
21  repairs?
22     A.  Yes.
23     Q.  Did you ask somebody for an

Page 209

1  opinion as to when this head gasket
2  blew?
3         MR. ASBELL:  Object to the
4  form.
5      A.  No.
6      Q.  (BY MR. STARNES)  So you
7  don't know whether it was blown at
8  the time of sale or blew sometime
9  between the time it was sold and
10  February the 15th or 16th?  It's hard
11  for me to read.
12     A.  That's correct.
13     Q.  And you would certainly
14  agree that head gaskets could blow
15  anytime?
16     A.  Correct.
17         MR. ASBELL:  Object to the
18  form.
19     Q.  (BY MR. STARNES)  But you
20  chose to pay this?
21     A.  Correct.
22     Q.  This is Volvo and GMC of
23  Charlotte.  Is that somebody you do

Page 218

1  N.A.D.A. base or a N.A.D.A. with all
2  adds and no deducts.  That's where
3  that number came from.
4      Q.   The bid list is on page
5  195.  It appears that you received
6  three bids on this unit; is that
7  right?
8      A.   Yes.
9      Q.   And you accepted a bid of
10 $38,000?
11     A.   Correct.
12     Q.   Okay.  And it was accepted
13 on October 31st?
14     A.   It was placed on -- oh,
15 yeah, placed on 10/27, accepted on --
16     Q.   On the 31st.  Look at 197.
17     A.   Yes.
18         (Whereupon, Defendant's
19         Exhibit Number 28 was
20         marked for identification.)
21     Q.   Here's the last truck
22 number.  It's Exhibit 28, 76 through
23 102, and it's truck number 959.  We

Page 219

1  had an earlier misplacement of an
2  acceptance notice that was in an
3  earlier exhibit that relates to this
4  truck, so I'm going to insert it into
5  Exhibit 28, and it's Bates number 72.
6  It will be at the back of this
7  exhibit, the tail end of it, and I
8  say it's one of those acceptance
9  e-mails.  All right.  The inspection
10 was done on this truck when,
11 Mr. Miller?
12     A.   10/7 and the reconditioning
13 on it was $8,200.
14     Q.   Okay.  And then under the
15 transaction log it appears that you
16 priced this truck at $40,000 on
17 10/27?
18     A.   Correct.
19     Q.   Again it's got a $46,300
20 credit comment.  Would your answer be
21 the same as far as the basis for that
22 number that you gave me just
23 previous?

Page 220

1      A.   Yes.
2          MR. ASBELL:  Object to the
3  form.
4      Q.   (BY MR. STARNES)  And then
5  on 10/27, it looks like page 92, you
6  received two bids?
7      A.   What was the --
8      Q.   92?
9      A.   Yes.
10     Q.   And the bid you accepted on
11 the same day you put it out was for
12 $37,000?
13     A.   Yes.
14     Q.   Why did you not leave the
15 bids open longer?
16     A.   That was a price that was
17 in line with the target number that
18 we're trying to go for and within the
19 average of what that truck was
20 selling for.
21     Q.   Are you familiar with The
22 Ed Schmidt, S-C-H-M-I-D-T, Truck
23 Store?

Page 221

1      A.   Yes.
2      Q.   Are they one of your top
3  customers?
4          MR. ASBELL:  Object to the
5  form.
6      A.   They are.
7      Q.   (BY MR. STARNES)  You can
8  answer.
9      A.   They are.
10     Q.   Would the same be true for,
11 is it TEC of California, or do you
12 call them T-E-C?
13     A.   We call them TEC.
14     Q.   Are they one of your top
15 customers also?
16         MR. ASBELL:  Object to the
17 form.  Do you mean someone that just
18 frequently buys?
19         MR. STARNES:  He described
20 Charlotte Volvo and GMC of Charlotte
21 as one of his top ten customers.
22     A.   In 2005 they were.
23     Q.   (BY MR. STARNES)  TEC was?

Page 230

```
1   transmission is operable?
2      A.  Correct.
3      Q.  Check the lights?
4      A.  I don't think they check
5   lights.
6      Q.  What else are they supposed
7   to do that requires something more
8   than visually looking like start the
9   engine to see if the transmission is
10  operable?  What else are they to do
11  to see if something works or not?
12     A.  They do a visual
13  inspection, check for oil leaks and
14  anything that would detract from the
15  value of the unit.
16     Q.  Okay.  But as far as
17  anything that would require them to
18  do something more than look, we know
19  they have to visually go turn the key
20  to start the engine?
21     A.  Correct.
22     Q.  They have to operate the
23  gear shift to see if the transmission
```

Page 231

```
1   is operable?
2      A.  Correct.
3      Q.  What else would they be
4   required to do that requires them to
5   take some action, if there is
6   anything?
7      A.  Aside from the visual
8   inspection?
9      Q.  Right.
10     A.  There's not a deeper
11  mechanical inspection that they do.
12     Q.  So do they in any way check
13  the electronics, for instance?
14     A.  Well, when they start the
15  unit, they verify voltage and that
16  everything is working.
17     Q.  Okay.
18     A.  There's a driver
19  information center in the trucks too
20  that self-diagnose.  So if there's a
21  problem, it shows up like
22  immediately.
23     Q.  Does your company finance
```

Page 232

```
1   and lease truck other than Volvo?
2      A.  Yes, we do.
3      Q.  So would you say you deal
4   with pretty much all makes and models
5   of trucks --
6      A.  Yes, I do.
7      Q.  -- in terms of reselling
8   them?
9      A.  Yes.
10     Q.  Back in 2005, were there
11  any particular things, specs in
12  trucks, that these tractors either
13  had or didn't have that made them
14  more or less marketable?
15     A.  The units were -- these
16  units were basic fleet spec units.
17  They were 610s and 670s -- 660s,
18  excuse me, which are kind of a fleet
19  spec truck.  They were on the low end
20  of the horsepower.  It was a generic
21  fleet truck.
22     Q.  Would you agree that the
23  fall of 2005, the used truck market
```

Page 233

```
1   was a seller's market?
2         MR. ASBELL:  Object to the
3   form.  You can answer it if you have
4   an opinion.
5      A.  The market was pretty good
6   at that time.
7         MR. STARNES:  That's all I
8   have.  Thank you, sir.
9         MR. ASBELL:  I have no
10  questions.
11
12     FURTHER THE DEPONENT SAITH NOT
13
14
15
16
17
18
19
20
21
22
23
```

102

# VOLVO

## Volvo Commercial Finance

7025 Albert Pick Road, Suite 105 (27409)
P.O. Box 26131
Greensboro, NC 27402-6131

Telephone: (877) 965-8623 ext 4277
Fax: (336) 931-3999

**Account Reconciliation Report**

Date: December 1, 2005

Lessee Name: G.F. KELLY, INC.

Account#: 001-2001308-411

| Year: | 2001 | Model: | VNL64T610 |
|---|---|---|---|
| Make: | VOLVO/ WHITEGMC | Vin: | 4V4NC9RH61N325013 |

| Sold To | | |
|---|---|---|
| Sale Date: | November 4, 2005 | Sale Price: 27000.00 |
| Contact Name: | Ron Breeden | Purchaser Repair : 0.00 |
| Company Name: | Tec of California | Purchaser Sales Commission : 0.00 |
| Address: | 15170 Valley Blvd. | Purchaser Other : 0.00 |
| Address: | | Purchaser Cleaning : 0.00 |
| City, State, Zip | Fontana Ca 93325 | Purchaser Transportation : 0.00 |
| | | Net Sale Price: 27000.00 |

| Non Sales Related Fees | | | |
|---|---|---|---|
| Sales Commissions : | 0.00 | Inspection : | 300.00 |
| Repo Fee : | 700.00 | Storage Fee : | 0.00 |
| Attorney Fee : | 0.00 | Repairs : | 0.00 |
| Transportation : | 0.00 | Cleaning Fee : | 500.00 |
| Fee Paid Out : | 0.00 | Other Fees : | 200.00 |
| | | Total Fees: | 1700.00 |

| Remarketing Internal Data | | | |
|---|---|---|---|
| NI / Contract: | 88978.82 | Book Value: | 29729.52 |
| Cost % per Asset: | 0.00% | Engine Add/Deduct: | 0.00 |
| | | Trans Add/Deduct: | 0.00 |
| | | Mileage Add/Deduct: | 0.00 |
| NI / Asset: | 0.00 | Atthment Add/Deduct: | 0.00 |
| | | Body Add/Deduct: | 0.00 |
| | | Total: | 29729.52 |

**Disposition Code for Cash Application to use:**
- 001 Casualty Loss - for insurance losses
- 004 Completed Term - use for end of term dispositions
- 005 Inventory - for inventoried units
- 006 Workout - for modifications
- 007 Refinance - for refinances
- 008 Repo - use for ALL repossession accounts

VFS Leasing v. G.F. Kelly
Plaintiffs'
Doc. Prod.   P 000140

104

Page 1 of 1

# VOLVO

## Volvo Commercial Finance

7025 Albert Pick Road, Suite 105 (27409)
P.O. Box 26131
Greensboro, NC 27402-6131

Telephone: (877) 865-8623 ext 4277
Fax: (336) 931-3999

**Account Reconcillation Report**

Date: December 1, 2005

Lessee Name: G.F. KELLY, INC.

Account#: 001-2001308-411

| Year: | 2001 | Model: | VNL64T610 |
|---|---|---|---|
| Make: | VOLVO/ WHITEGMC | Vin: | 4V4NC9RH81N325014 |

| Sold To | | |
|---|---|---|
| Sale Date: | November 2, 2005 | Sale Price: 31000.00 |
| Contact Name: | Danny Everhart | Purchaser Repair : 0.00 |
| Company Name: | Central Carolina Trucks, Inc. | Purchaser Sales Commission : 0.00 |
| Address: | 306 Pineview Drive | Purchaser Other : 0.00 |
| Address: | | Purchaser Cleaning : 0.00 |
| City, State, Zip | Kernersville NC 27284 | Purchaser Transportation : 0.00 |
| | | Net Sale Price: 31000.00 |

| Non Sales Related Fees | | | |
|---|---|---|---|
| Sales Commissions : | 0.00 | Inspection : | 300.00 |
| Repo Fee : | 700.00 | Storage Fee : | 0.00 |
| Attorney Fee : | 0.00 | Repairs : | 0.00 |
| Transportation : | 0.00 | Cleaning Fee : | 500.00 |
| Fee Paid Out : | 0.00 | Other Fees : | 0.00 |
| | | Total Fees: | 1500.00 |

| Remarketing Internal Data | | | |
|---|---|---|---|
| NI / Contract: | 88978.82 | Book Value: | 23493.75 |
| Cost % per Asset: | 100.00% | Engine Add/Deduct: | 0.00 |
| | | Trans Add/Deduct: | 0.00 |
| NI / Asset: | 88978.82 | Mileage Add/Deduct: | 0.00 |
| | | Atthment Add/Deduct: | 0.00 |
| | | Body Add/Deduct: | 0.00 |
| | | Total: | 23493.75 |

**Disposition Code for Cash Application to use:**
- 001 Casualty Loss - for insurance losses
- 004 Completed Term - use for end of term dispositions
- 005 Inventory - for inventoried units
- 006 Workout - for modifications
- 007 Refinance - for refinances
- 008 Repo - use for ALL repossession accounts

VFS Leasing v. G.F. Kelly
Plaintiffs'
Doc. Prod. P 000336

103

Page 1 of 1



## Volvo Commercial Finance

7025 Albert Pick Road, Suite 105 (27409)
P.O. Box 26131
Greensboro, NC 27402-6131

Telephone: (877) 865-8623 ext 4277
Fax: (336) 931-3999

**Account Reconciliation Report**

Date: November 11, 2005

Lessee Name: G.F. KELLY, INC.

Account#: 001-2001308-411

| Year: | 2001 | Model: | VNL64T610 |
|---|---|---|---|
| Make: | VOLVO/ WHITEGMC | Vin: | 4V4NC9RHX1N325015 |

*handwritten: 1-52620*

| Sold To | | | |
|---|---|---|---|
| Sale Date: | October 31, 2005 | Sale Price: | 26000.00 |
| Contact Name: | FRANK CRAWFORD | Purchaser Repair : | 0.00 |
| Company Name: | The Ed Schmidt Truck Store | Purchaser Sales Commission : | 0.00 |
| Address: | 1270 Conant Street | Purchaser Other : | 0.00 |
| Address: | | Purchaser Cleaning : | 0.00 |
| City, State, Zip | Maumee OH 43537 | Purchaser Transportation : | 0.00 |
| | | Net Sale Price: | 26000.00 |

| Non-Sales Related Fees | | | |
|---|---|---|---|
| Sales Commissions : | 0.00 | Inspection : | 300.00 |
| Repo Fee : | 700.00 | Storage Fee : | 0.00 |
| Attorney Fee : | 0.00 | Repairs : | 0.00 |
| Transportation : | 0.00 | Cleaning Fee : | 0.00 |
| Fee Paid Out : | 0.00 | Other Fees : | 200.00 |
| | | **Total Fees:** | **1200.00** |

| Remarketing Internal Data | | | |
|---|---|---|---|
| NI / Contract: | 88978.62 | Book Value: | 31325.00 |
| Cost % per Asset: | 33.33% | Engine Add/Deduct: | 0.00 |
| | | Trans Add/Deduct: | 0.00 |
| NI / Asset: | 29656.64 | Mileage Add/Deduct: | 0.00 |
| | | Atthment Add/Deduct: | 0.00 |
| | | Body Add/Deduct: | 0.00 |
| | | **Total:** | **31325.00** |

**Disposition Code for Cash Application to use:**
- 001 Casualty Loss - for insurance losses
- 004 Completed Term - use for end of term dispositions
- 005 Inventory - for inventoried units
- 006 Workout - for modifications
- 007 Refinance - for refinances
- 008 Repo - use for ALL repossession accounts

VFS Leasing v. G.F. Kelly
Plaintiffs'
Doc. Prod.   P 000373

105

Page 1 of 1



## Volvo Commercial Finance

7025 Albert Pick Road, Suite 105 (27409)          Telephone: (877) 865-8623 ext 4277
P.O. Box 26131                                     Fax: (336) 931-3999
Greensboro, NC 27402-6131

### Account Reconciliation Report

Date: January 10, 2006

Lessee Name: G.F. KELLY, INC.

Account#: 001-2001308-412

| Year: | 2001 | Model: | VNL64T610 |
|---|---|---|---|
| Make: | VOLVO/ WHITEGMC | Vin: | 4V4NC9RH11N325016 |

| Sold To | | |
|---|---|---|

| | | | |
|---|---|---|---|
| Sale Date: | October 13, 2005 | Sale Price: | 23000.00 |
| Contact Name: | Danny Everhart | Purchaser Repair : | 0.00 |
| Company Name: | Central Carolina Trucks, Inc. | Purchaser Sales Commission : | 0.00 |
| Address: | 306 Pineview Drive | Purchaser Other : | 0.00 |
| Address: | | Purchaser Cleaning : | 0.00 |
| City, State, Zip | Kernersville NC 27284 | Purchaser Transportation : | 0.00 |
| | | Net Sale Price: | 23000.00 |

| Non Sales Related Fees | | |
|---|---|---|

| | | | |
|---|---|---|---|
| Sales Commissions : | 0.00 | Inspection : | 300.00 |
| Repo Fee : | 700.00 | Storage Fee : | 0.00 |
| Attorney Fee : | 0.00 | Repairs : | 0.00 |
| Transportation : | 0.00 | Cleaning Fee : | 0.00 |
| Fee Paid Out : | 0.00 | Other Fees : | 200.00 |
| | | Total Fees: | 1200.00 |

| Remarketing Internal Data | | |
|---|---|---|

| | | | |
|---|---|---|---|
| NI / Contract: | 62043.47 | Book Value: | 31325.00 |
| Cost % per Asset: | 0.00% | Engine Add/Deduct: | 0.00 |
| | | Trans Add/Deduct: | 0.00 |
| NI / Asset: | 0.00 | Mileage Add/Deduct: | 0.00 |
| | | Atthment Add/Deduct: | 0.00 |
| | | Body Add/Deduct: | 0.00 |
| | | Total: | 31325.00 |

**Disposition Code for Cash Application to use:**
- 001 Casualty Loss - for insurance losses
- 004 Completed Term - use for end of term dispositions
- 005 Inventory - for inventoried units
- 006 Workout - for modifications
- 007 Refinance - for refinances
- 008 Repo - use for ALL repossession accounts

VFS Leasing v. G.F. Kelly
Plaintiffs'
Doc. Prod.    P 000311

106

Page 1 of 1

# **VOLVO**

## **Volvo Commercial Finance**

7025 Albert Pick Road, Suite 105 (27409)
P.O. Box 26131
Greensboro, NC 27402-6131

Telephone: (877) 865-8623 ext 4277
Fax: (336) 931-3999

**Account Reconciliation Report**

Date: January 10, 2006

Lessee Name: G.F. KELLY, INC.

Account#: 001-2001308-412

| Year: | 2001 | Model: | VNL64T610 |
|---|---|---|---|
| Make: | VOLVO/ WHITEGMC | Vin: | 4V4NC9RH31N325017 |

| Sold To | | |
|---|---|---|
| Sale Date: | October 13, 2005 | Sale Price: 25000.00 |
| Contact Name: | Danny Everhart | Purchaser Repair : 0.00 |
| Company Name: | Central Carolina Trucks, Inc. | Purchaser Sales Commission : 0.00 |
| Address: | 306 Pineview Drive | Purchaser Other : 0.00 |
| Address: | | Purchaser Cleaning : 0.00 |
| City, State, Zip | Kernersville NC 27284 | Purchaser Transportation : 0.00 |
| | | Net Sale Price: 25000.00 |

| Non Sales Related Fees | | | |
|---|---|---|---|
| Sales Commissions : | 0.00 | Inspection : | 300.00 |
| Repo Fee : | 700.00 | Storage Fee : | 0.00 |
| Attorney Fee : | 0.00 | Repairs : | 0.00 |
| Transportation : | 0.00 | Cleaning Fee : | 0.00 |
| Fee Paid Out : | 0.00 | Other Fees : | 200.00 |
| | | Total Fees: | 1200.00 |

| Remarketing Internal Data | | | |
|---|---|---|---|
| NI / Contract: | 62043.47 | Book Value: | 31325.00 |
| Cost % per Asset: | 100.00% | Engine Add/Deduct: | 0.00 |
| | | Trans Add/Deduct: | 0.00 |
| NI / Asset: | 62043.47 | Mileage Add/Deduct: | 0.00 |
| | | Atthment Add/Deduct: | 0.00 |
| | | Body Add/Deduct: | 0.00 |
| | | Total: | 31325.00 |

**Disposition Code for Cash Application to use:**
- 001 Casualty Loss - for insurance losses
- 004 Completed Term - use for end of term dispositions
- 005 Inventory - for inventoried units
- 006 Workout - for modifications
- 007 Refinance - for refinances
- 008 Repo - use for ALL repossession accounts

VFS Leasing v. G.F. Kelly
Plaintiffs'
Doc. Prod.   P 000032

107



## Volvo Commercial Finance

7025 Albert Pick Road, Suite 105 (27409)
P.O. Box 26131
Greensboro, NC 27402-6131

Telephone: (877) 865-8623 ext 4277
Fax: (336) 931-3999

### Account Reconciliation Report

Date: November 10, 2005

Lessee Name: G.F. KELLY, INC.

Account#: 001-2001308-413

| Year: | 2001 | Model: | VNL64T610 |
|---|---|---|---|
| Make: | VOLVO/ WHITEGMC | Vin: | 4V4NC9TH41N325018 |

### Sold To

| | | | |
|---|---|---|---|
| Sale Date: | November 10, 2005 | Sale Price: | 21000.00 |
| Contact Name: | Amanda Kent | Purchaser Repair : | 0.00 |
| Company Name: | Adesa - Atlanta | Purchaser Sales Commission : | 700.00 |
| Address: | 5055 Oakley Industrial Blvd | Purchaser Other : | 0.00 |
| Address: | | Purchaser Cleaning : | 0.00 |
| City, State, Zip | Fairburn GA 30213 | Purchaser Transportation : | 0.00 |
| | | Net Sale Price: | 20300.00 |

### Non Sales Related Fees

| | | | |
|---|---|---|---|
| Sales Commissions : | 0.00 | Inspection : | 300.00 |
| Repo Fee : | 700.00 | Storage Fee : | 0.00 |
| Attorney Fee : | 0.00 | Repairs : | 0.00 |
| Transportation : | 0.00 | Cleaning Fee : | 0.00 |
| Fee Paid Out : | 0.00 | Other Fees : | 0.00 |
| | | Total Fees: | 1000.00 |

### Remarketing Internal Data

| | | | |
|---|---|---|---|
| NI / Contract: | 59578.07 | Book Value: | 30425.00 |
| Cost % per Asset: | 50.00% | Engine Add/Deduct: | 0.00 |
| | | Trans Add/Deduct: | 0.00 |
| NI / Asset: | 29789.04 | Mileage Add/Deduct: | 0.00 |
| | | Atthment Add/Deduct: | 0.00 |
| | | Body Add/Deduct: | 0.00 |
| | | Total: | 30425.00 |

**Disposition Code for Cash Application to use:**
- 001 Casualty Loss - for insurance losses
- 004 Completed Term - use for end of term dispositions
- 005 Inventory - for inventoried units
- 006 Workout - for modifications
- 007 Refinance - for refinances
- 008 Repo - use for ALL repossession accounts

VFS Leasing v. G.F. Kelly
Plaintiffs'
Doc. Prod.  P 000232

108



## VOLVO

### Volvo Commercial Finance

7025 Albert Pick Road, Suite 105 (27409)
P.O. Box 26131
Greensboro, NC 27402-6131

Telephone: (877) 865-8623 ext 4277
Fax: (336) 931-3999

**Account Reconciliation Report**

Date: November 17, 2005

Lessee Name: G.F. KELLY, INC.

Account#: 001-2001308-413

| Year: | 2001 | Model: | VNL64T610 |
|---|---|---|---|
| Make: | VOLVO/ WHITEGMC | Vin: | 4V4NC9TH61N325019 |

| Sold To | | |
|---|---|---|
| Sale Date: | October 31, 2005 | Sale Price: 24000.00 |
| Contact Name: | FRANK CRAWFORD | Purchaser Repair : 0.00 |
| Company Name: | The Ed Schmidt Truck Store | Purchaser Sales Commission : 0.00 |
| Address: | 1270 Conant Street | Purchaser Other : 0.00 |
| Address: | | Purchaser Cleaning : 0.00 |
| City, State, Zip | Maumee OH 43537 | Purchaser Transportation : 0.00 |
| | | Net Sale Price: 24000.00 |

| Non Sales Related Fees | | | |
|---|---|---|---|
| Sales Commissions : | 0.00 | Inspection : | 300.00 |
| Repo Fee : | 700.00 | Storage Fee : | 0.00 |
| Attorney Fee : | 0.00 | Repairs : | 0.00 |
| Transportation : | 0.00 | Cleaning Fee : | 0.00 |
| Fee Paid Out : | 0.00 | Other Fees : | 200.00 |
| | | Total Fees: | 1200.00 |

| Remarketing Internal Data | | | |
|---|---|---|---|
| NI / Contract: | 59578.07 | Book Value: | 23493.75 |
| Cost % per Asset: | 50.00% | Engine Add/Deduct: | 0.00 |
| | | Trans Add/Deduct: | 0.00 |
| NI / Asset: | 29789.04 | Mileage Add/Deduct: | 0.00 |
| | | Atthment Add/Deduct: | 0.00 |
| | | Body Add/Deduct: | 0.00 |
| | | Total: | 23493.75 |

**Disposition Code for Cash Application to use:**
- 001 Casualty Loss - for insurance losses
- 004 Completed Term - use for end of term dispositions
- 005 Inventory - for inventoried units
- 006 Workout - for modifications
- 007 Refinance - for refinances
- 008 Repo - use for ALL repossession accounts

VFS Leasing v. G.F. Kelly
Plaintiffs'
Doc. Prod. P 000058

109

Page 1 of 1

# VOLVO



## Volvo Commercial Finance

7025 Albert Pick Road, Suite 105 (27409)
P.O. Box 26131
Greensboro, NC 27402-6131

Telephone: (877) 865-9623 ext 4277
Fax: (336) 931-3999

**Account Reconciliation Report**

Date: November 11, 2005

Lessee Name: G.F. KELLY, INC.

Account#: 001-2001308-414

| Year: | 2002 | Model: | VNL64T660 |
|-------|------|--------|-----------|
| Make: | VOLVO/ WHITEGMC | Vin: | 4V4NC9TH02N325020 |

### Sold To

| | | |
|---|---|---|
| Sale Date: | November 11, 2005 | Sale Price: 26760.00 |
| Contact Name: | Ron Meyering | Purchaser Repair : 0.00 |
| Company Name: | M & K QUALITY TRUCK SALES | Purchaser Sales Commission : 0.00 |
| Address: | 8800 Bryon Commerance Drive | Purchaser Other : 0.00 |
| Address: | | Purchaser Cleaning : 0.00 |
| City, State, Zip | Bryon Center MI 49315- | Purchaser Transportation : 0.00 |
| | | Net Sale Price: 26760.00 |

### Non Sales Related Fees

| | | | |
|---|---|---|---|
| Sales Commissions : | 0.00 | Inspection : | 300.00 |
| Repo Fee : | 700.00 | Storage Fee : | 0.00 |
| Attorney Fee : | 0.00 | Repairs : | 0.00 |
| Transportation : | 0.00 | Cleaning Fee : | 0.00 |
| Fee Paid Out : | 0.00 | Other Fees : | 200.00 |
| | | Total Fees: | 1200.00 |

### Remarketing Internal Data

| | | | |
|---|---|---|---|
| NI / Contract: | 35904.16 | Book Value: | 26868.75 |
| Cost % per Asset: | 100.00% | Engine Add/Deduct: | 0.00 |
| | | Trans Add/Deduct: | 0.00 |
| NI / Asset: | 35904.16 | Mileage Add/Deduct: | 0.00 |
| | | Atthment Add/Deduct: | 0.00 |
| | | Body Add/Deduct: | 0.00 |
| | | Total: | 26868.75 |

**Disposition Code for Cash Application to use:**
- 001 Casualty Loss - for insurance losses
- 004 Completed Term - use for end of term dispositions
- 005 Inventory - for inventoried units
- 006 Workout - for modifications
- 007 Refinance - for refinances
- 008 Repo - use for ALL repossession accounts

VFS Leasing v. G.F. Kelly
Plaintiffs'
Doc. Prod.   P 000103

$1/0$

Page 1 of 1

# VOLVO

## Volvo Commercial Finance

7025 Albert Pick Road, Suite 105 (27409)
P.O. Box 26131
Greensboro, NC 27402-6131

Telephone: (877) 865-8623 ext 4277
Fax: (336) 931-3999

**Account Reconciliation Report**

Date: April 11, 2006

Lessee Name: G.F. KELLY, INC.

Account#: 001-2001308-415

| Year: | 2002 | Model: | VNL64T610 |
|---|---|---|---|
| Make: | VOLVO/ WHITEGMC | Vin: | 4V4NC9TH22N325021 |

| Sold To | | |
|---|---|---|
| Sale Date: | October 14, 2005 | Sale Price: 28000.00 |
| Contact Name: | Danny Everhart | Purchaser Repair : 0.00 |
| Company Name: | Central Carolina Trucks, Inc. | Purchaser Sales Commission : 0.00 |
| Address: | 306 Pineview Drive | Purchaser Other : 0.00 |
| Address: | | Purchaser Cleaning : 0.00 |
| City, State, Zip | Kernersville NC 27284 | Purchaser Transportation : 0.00 |
| | | Net Sale Price: 28000.00 |

| Non Sales Related Fees | | | |
|---|---|---|---|
| Sales Commissions : | 0.00 | Inspection : | 300.00 |
| Repo Fee : | 700.00 | Storage Fee : | 0.00 |
| Attorney Fee : | 0.00 | Repairs : | 4000.00 |
| Transportation : | 0.00 | Cleaning Fee : | 0.00 |
| Fee Paid Out : | 0.00 | Other Fees : | 200.00 |
| | | Total Fees: | 5200.00 |

| Remarketing Internal Data | | | |
|---|---|---|---|
| NI / Contract: | 37348.56 | Book Value: | 38168.68 |
| Cost % per Asset: | 100.00% | Engine Add/Deduct: | 0.00 |
| | | Trans Add/Deduct: | 0.00 |
| NI / Asset: | 37348.56 | Mileage Add/Deduct: | 0.00 |
| | | Atthment Add/Deduct: | 0.00 |
| | | Body Add/Deduct: | 0.00 |
| | | Total: | 38168.68 |

**Disposition Code for Cash Application to use:**
- 001 Casualty Loss - for insurance losses
- 004 Completed Term - use for end of term dispositions
- 005 Inventory - for inventoried units
- 006 Workout - for modifications
- 007 Refinance - for refinances
- 008 Repo - use for ALL repossession accounts

VFS Leasing v. G.F. Kelly
Plaintiffs'
Doc. Prod.   P 000002

168

# VOLVO

## Volvo Commercial Finance

7025 Albert Pick Road, Suite 105 (27409)
P.O. Box 26131
Greensboro, NC 27402-6131

Telephone: (877) 865-8623 ext 4277
Fax: (336) 931-3999

### Account Reconciliation Report

Date: January 10, 2006

Lessee Name: G.F. KELLY, INC.

Account#: 500-2001308-416

| Year: | 2000 | Model: | VNL64T660 |
|---|---|---|---|
| Make: | VOLVO/ WHITEGMC | Vin: | 4V4ND4RJ9YN246738 |

| Sold To | | | |
|---|---|---|---|
| Sale Date: | October 14, 2005 | Sale Price: | 22000.00 |
| Contact Name: | Ron Breeden | Purchaser Repair : | 0.00 |
| Company Name: | Tec of California | Purchaser Sales Commission : | 0.00 |
| Address: | 15170 Valley Blvd. | Purchaser Other : | 0.00 |
| Address: | | Purchaser Cleaning : | 0.00 |
| City, State, Zip | Fontana Ca 93325 | Purchaser Transportation : | 0.00 |
| | | Net Sale Price: | 22000.00 |

| Non Sales Related Fees | | | |
|---|---|---|---|
| Sales Commissions : | 0.00 | Inspection : | 300.00 |
| Repo Fee : | 700.00 | Storage Fee : | 0.00 |
| Attorney Fee : | 0.00 | Repairs : | 0.00 |
| Transportation : | 0.00 | Cleaning Fee : | 0.00 |
| Fee Paid Out : | 0.00 | Other Fees : | 700.00 |
| | | Total Fees: | 1700.00 |

| Remarketing Internal Data | | | |
|---|---|---|---|
| NI / Contract: | 81717.95 | Book Value: | 28500.00 |
| Cost % per Asset: | 0.00% | Engine Add/Deduct: | 0.00 |
| | | Trans Add/Deduct: | 0.00 |
| NI / Asset: | 0.00 | Mileage Add/Deduct: | 0.00 |
| | | Atthment Add/Deduct: | 0.00 |
| | | Body Add/Deduct: | 0.00 |
| | | Total: | 28500.00 |

**Disposition Code for Cash Application to use:**
- 001 Casualty Loss - for insurance losses
- 004 Completed Term - use for end of term dispositions
- 005 Inventory - for inventoried units
- 006 Workout - for modifications
- 007 Refinance - for refinances
- 008 Repo - use for ALL repossession accounts

VFS Leasing v. G.F. Kelly
Plaintiffs'
Doc. Prod.   P 000390

169



## VOLVO

### Volvo Commercial Finance

7025 Albert Pick Road, Suite 105 (27409)
P.O. Box 26131
Greensboro, NC 27402-6131

Telephone: (877) 865-8623 ext 4277
Fax: (336) 931-3999

**Account Reconciliation Report**

Date: November 10, 2005

Lessee Name: G.F. KELLY, INC.

Account#: 500-2001308-416

| Year: | 2000 | Model: | VNL64T660 |
|---|---|---|---|
| Make: | VOLVO/ WHITEGMC | Vin: | 4V4ND4RJ0YN246739 |

| Sold To | |
|---|---|
| Sale Date: November 10, 2005 | Sale Price: 22500.00 |
| Contact Name: Amanda Kent | Purchaser Repair: 0.00 |
| Company Name: Adesa - Atlanta | Purchaser Sales Commission: 700.00 |
| Address: 5055 Oakley Industrial Blvd | Purchaser Other: 0.00 |
| Address: | Purchaser Cleaning: 0.00 |
| City, State, Zip   Fairburn GA 30213 | Purchaser Transportation: 0.00 |
| | Net Sale Price: 21800.00 |

| Non Sales Related Fees | | | |
|---|---|---|---|
| Sales Commissions: | 0.00 | Inspection: | 300.00 |
| Repo Fee: | 700.00 | Storage Fee: | 0.00 |
| Attorney Fee: | 0.00 | Repairs: | 0.00 |
| Transportation: | 0.00 | Cleaning Fee: | 0.00 |
| Fee Paid Out: | 0.00 | Other Fees: | 0.00 |
| | | Total Fees: | 1000.00 |

| Remarketing Internal Data | | | |
|---|---|---|---|
| NI / Contract: | 81717.95 | Book Value: | 17100.00 |
| Cost % per Asset: | 50.00% | Engine Add/Deduct: | 0.00 |
| | | Trans Add/Deduct: | 0.00 |
| NI / Asset: | 40858.98 | Mileage Add/Deduct: | 0.00 |
| | | Atthment Add/Deduct: | 0.00 |
| | | Body Add/Deduct: | 0.00 |
| | | Total: | 17100.00 |

**Disposition Code for Cash Application to use:**

- 001 Casualty Loss - for insurance losses
- 004 Completed Term - use for end of term dispositions
- 005 Inventory - for inventoried units
- 006 Workout - for modifications
- 007 Refinance - for refinances
- 008 Repo - use for ALL repossession accounts

VFS Leasing v. G.F. Kelly
Plaintiffs'
Doc. Prod.    P 000352

190



## Volvo Commercial Finance

7025 Albert Pick Road, Suite 105 (27409)
P.O. Box 26131
Greensboro, NC 27402-6131

Telephone: (877) 865-8623 ext 4277
Fax: (336) 931-3999

### Account Reconciliation Report

Date: November 11, 2005

Lessee Name: G.F. KELLY, INC.

Account#: 500-2001308-417

| Year: | 2001 | Model: | VNL64T | |
|---|---|---|---|---|
| Make: | VOLVO/ WHITEGMC | Vin: | 4V4NC9JH01N314763 | 6528-1 |

| Sold To | |
|---|---|
| | |

| | | | |
|---|---|---|---|
| Sale Date: | October 31, 2005 | Sale Price: | 31100.00 |
| Contact Name: | FRANK CRAWFORD | Purchaser Repair : | 0.00 |
| Company Name: | The Ed Schmidt Truck Store | Purchaser Sales Commission : | 0.00 |
| Address: | 1270 Conant Street | Purchaser Other : | 0.00 |
| Address: | | Purchaser Cleaning : | 0.00 |
| City, State, Zip | Maumee OH 43537 | Purchaser Transportation : | 0.00 |
| | | Net Sale Price: | 31100.00 |

| Non Sales Related Fees | | | |
|---|---|---|---|
| Sales Commissions : | 0.00 | Inspection : | 300.00 |
| Repo Fee : | 700.00 | Storage Fee : | 0.00 |
| Attorney Fee : | 0.00 | Repairs : | 0.00 |
| Transportation : | 0.00 | Cleaning Fee : | 0.00 |
| Fee Paid Out : | 0.00 | Other Fees : | 200.00 |
| | | Total Fees: | 1200.00 |

| Remarketing Internal Data | | | |
|---|---|---|---|
| NI / Contract: | 128560.63 | Book Value: | 39156.25 |
| Cost % per Asset: | 33.33% | Engine Add/Deduct: | 0.00 |
| | | Trans Add/Deduct: | 0.00 |
| NI / Asset: | 42849.26 | Mileage Add/Deduct: | 0.00 |
| | | Atthment Add/Deduct: | 0.00 |
| | | Body Add/Deduct: | 0.00 |
| | | Total: | 39156.25 |

**Disposition Code for Cash Application to use:**
- 001 Casualty Loss - for insurance losses
- 004 Completed Term - use for end of term dispositions
- 005 Inventory - for inventoried units
- 006 Workout - for modifications
- 007 Refinance - for refinances
- 008 Repo - use for ALL repossession accounts

VFS Leasing v. G.F. Kelly
Plaintiffs'
Doc. Prod.   P 000247



## Volvo Commercial Finance

7025 Albert Pick Road, Suite 105 (27409)
P.O. Box 26131
Greensboro, NC 27402-6131

Telephone: (877) 865-8623 ext 4277
Fax: (336) 931-3999

### Account Reconciliation Report

Date: December 16, 2005

Lessee Name: G.F. KELLY, INC.

Account#: 500-2001308-417

| Year: | 2001 | Model: | VNL64T |
|-------|------|--------|--------|
| Make: | VOLVO/ WHITEGMC | Vin: | 4V4NC9JH21N314764 |

### Sold To

| | | | |
|---|---|---|---|
| Sale Date: | November 30, 2005 | Sale Price: | 25250.00 |
| Contact Name: | Ron Thomas | Purchaser Repair : | 0.00 |
| Company Name: | R & J Truck Sales | Purchaser Sales Commission : | 0.00 |
| Address: | 27600 Mound Road | Purchaser Other : | 0.00 |
| Address: | | Purchaser Cleaning : | 0.00 |
| City, State, Zip | Warren MI 48092 | Purchaser Transportation : | 0.00 |
| | | Net Sale Price: | 25250.00 |

### Non Sales Related Fees

| | | | |
|---|---|---|---|
| Sales Commissions : | 0.00 | Inspection : | 300.00 |
| Repo Fee : | 700.00 | Storage Fee : | 0.00 |
| Attorney Fee : | 0.00 | Repairs : | 5489.45 |
| Transportation : | 0.00 | Cleaning Fee : | 0.00 |
| Fee Paid Out : | 0.00 | Other Fees : | 200.00 |
| | | Total Fees: | 6689.45 |

### Remarketing Internal Data

| | | | |
|---|---|---|---|
| NI / Contract: | 128560.63 | Book Value: | 35000.00 |
| Cost % per Asset: | 100.00% | Engine Add/Deduct: | 0.00 |
| | | Trans Add/Deduct: | 0.00 |
| NI / Asset: | 128560.63 | Mileage Add/Deduct: | 0.00 |
| | | Atthment Add/Deduct: | 0.00 |
| | | Body Add/Deduct: | 0.00 |
| | | Total: | 35000.00 |

**Disposition Code for Cash Application to use:**
- 001 Casualty Loss - for insurance losses
- 004 Completed Term - use for end of term dispositions
- 005 Inventory - for inventoried units
- 006 Workout - for modifications
- 007 Refinance - for refinances
- 008 Repo - use for ALL repossession accounts

VFS Leasing v. G.F. Kelly
Plaintiffs'
Doc. Prod. P 000543

Case 3.06-cv-00638-SRW    Document 20-3    Filed 02/13/2007    Page 27 of 42

193

Page 1 of 1

# VOLVO

## Volvo Commercial Finance

7025 Albert Pick Road, Suite 105 (27409)
P.O. Box 26131
Greensboro, NC 27402-6131

Telephone: (877) 865-8623 ext 4277
Fax: (336) 931-3999

### Account Reconciliation Report

Date: January 10, 2006

Lessee Name: G.F. KELLY, INC.

Account#: 500-2001308-418

| Year: | 2001 | Model: | VNL64T660 |
|---|---|---|---|
| Make: | VOLVO/ WHITEGMC | Vin: | 4V4NC9JH91N314762 |

| Sold To | | |
|---|---|---|
| Sale Date: | October 14, 2005 | Sale Price: 31000.00 |
| Contact Name: | Danny Everhart | Purchaser Repair : 0.00 |
| Company Name: | Central Carolina Trucks, Inc. | Purchaser Sales Commission : 0.00 |
| Address: | 306 Pineview Drive | Purchaser Other : 0.00 |
| Address: | | Purchaser Cleaning : 0.00 |
| City, State, Zip | Kernersville NC 27284 | Purchaser Transportation : 0.00 |
| | | Net Sale Price: 31000.00 |

| Non Sales Related Fees | | | |
|---|---|---|---|
| Sales Commissions : | 0.00 | Inspection : | 300.00 |
| Repo Fee : | 700.00 | Storage Fee : | 0.00 |
| Attorney Fee : | 0.00 | Repairs : | 0.00 |
| Transportation : | 0.00 | Cleaning Fee : | 0.00 |
| Fee Paid Out : | 0.00 | Other Fees : | 200.00 |
| | | Total Fees: | 1200.00 |

| Remarketing Internal Data | | | |
|---|---|---|---|
| NI / Contract: | 43044.33 | Book Value: | 35694.20 |
| Cost % per Asset: | 100.00% | Engine Add/Deduct: | 0.00 |
| | | Trans Add/Deduct: | 0.00 |
| NI / Asset: | 43044.33 | Mileage Add/Deduct: | 0.00 |
| | | Atthment Add/Deduct: | 0.00 |
| | | Body Add/Deduct: | 0.00 |
| | | Total: | 35694.20 |

**Disposition Code for Cash Application to use:**
- 001 Casualty Loss - for insurance losses
- 004 Completed Term - use for end of term dispositions
- 005 Inventory - for inventoried units
- 006 Workout - for modifications
- 007 Refinance - for refinances
- 008 Repo - use for ALL repossession accounts

VFS Leasing v. G.F. Kelly
Plaintiffs'
Doc. Prod.    P 000267

r 4 4

Page 1 of 1



## Volvo Commercial Finance

7025 Albert Pick Road, Suite 105 (27409)
P.O. Box 26131
Greensboro, NC 27402-6131

Telephone: (877) 865-8623 ext 4277
Fax: (336) 931-3999

### Account Reconciliation Report

Date: December 1, 2005

Lessee Name: G.F. KELLY, INC.

Account#: 500-2001308-419

| Year: | 2000 | Model: | VNL64T660 |
|---|---|---|---|
| Make: | VOLVO/ WHITEGMC | Vin: | 4V4ND4JH2YN793584 |

| Sold To | | |
|---|---|---|
| Sale Date: | November 4, 2005 | Sale Price: 24000.00 |
| Contact Name: | Ron Breeden | Purchaser Repair : 0.00 |
| Company Name: | Tec of California | Purchaser Sales Commission : 0.00 |
| Address: | 15170 Valley Blvd. | Purchaser Other : 0.00 |
| Address: | | Purchaser Cleaning : 0.00 |
| City, State, Zip | Fontana Ca 93325 | Purchaser Transportation : 0.00 |
| | | Net Sale Price: 24000.00 |

| Non Sales Related Fees | | | |
|---|---|---|---|
| Sales Commissions : | 0.00 | Inspection : | 300.00 |
| Repo Fee : | 700.00 | Storage Fee : | 0.00 |
| Attorney Fee : | 0.00 | Repairs : | 0.00 |
| Transportation : | 0.00 | Cleaning Fee : | 0.00 |
| Fee Paid Out : | 0.00 | Other Fees : | 200.00 |
| | | Total Fees: | 1200.00 |

| Remarketing Internal Data | | | |
|---|---|---|---|
| NI / Contract: | 42886.30 | Book Value: | 28200.00 |
| Cost % per Asset: | 100.00% | Engine Add/Deduct: | 0.00 |
| | | Trans Add/Deduct: | 0.00 |
| NI / Asset: | 42886.30 | Mileage Add/Deduct: | 0.00 |
| | | Atthment Add/Deduct: | 0.00 |
| | | Body Add/Deduct: | 0.00 |
| | | Total: | 28200.00 |

**Disposition Code for Cash Application to use:**
- 001 Casualty Loss - for insurance losses
- 004 Completed Term - use for end of term dispositions
- 005 Inventory - for inventoried units
- 006 Workout - for modifications
- 007 Refinance - for refinances
- 008 Repo - use for ALL repossession accounts

VFS Leasing v. G.F. Kelly
Plaintiffs'
Doc. Prod.   P 000411

https://tams.tabithasoftware.com/Sections/AM/Pages/Clients/Volvo/US/Forms/ARR/view...    12/1/2005

197

Page 1 of 1

# VOLVO

## Volvo Commercial Finance

7025 Albert Pick Road, Suite 105 (27409)
P.O. Box 26131
Greensboro, NC 27402-6131

Telephone: (877) 865-8623 ext 4277
Fax: (336) 931-3999

**Account Reconciliation Report**

Date: January 10, 2006

Lessee Name: G.F. KELLY, INC.

Account#: 500-2001308-420

| Year: | 2000 | Model: | VNL64T660 |
|---|---|---|---|
| Make: | VOLVO/ WHITEGMC | Vin: | 4V4ND4RJ0YN796989 |

| Sold To | | | |
|---|---|---|---|
| Sale Date: | October 14, 2005 | Sale Price: | 23000.00 |
| Contact Name: | Ron Breeden | Purchaser Repair : | 0.00 |
| Company Name: | Tec of California | Purchaser Sales Commission : | 0.00 |
| Address: | 15170 Valley Blvd. | Purchaser Other : | 0.00 |
| Address: | | Purchaser Cleaning : | 0.00 |
| City, State, Zip | Fontana Ca 93325 | Purchaser Transportation : | 0.00 |
| | | Net Sale Price: | 23000.00 |

| Non Sales Related Fees | | | |
|---|---|---|---|
| Sales Commissions : | 0.00 | Inspection : | 300.00 |
| Repo Fee : | 700.00 | Storage Fee : | 0.00 |
| Attorney Fee : | 0.00 | Repairs : | 0.00 |
| Transportation : | 0.00 | Cleaning Fee : | 0.00 |
| Fee Paid Out : | 0.00 | Other Fees : | 700.00 |
| | | Total Fees: | 1700.00 |

| Remarketing Internal Data | | | |
|---|---|---|---|
| NI / Contract: | 44845.20 | Book Value: | 28500.00 |
| Cost % per Asset: | 100.00% | Engine Add/Deduct: | 0.00 |
| | | Trans Add/Deduct: | 0.00 |
| NI / Asset: | 44845.20 | Mileage Add/Deduct: | 0.00 |
| | | Atthment Add/Deduct: | 0.00 |
| | | Body Add/Deduct: | 0.00 |
| | | Total: | 28500.00 |

**Disposition Code for Cash Application to use:**
- 001 Casualty Loss - for insurance losses
- 004 Completed Term - use for end of term dispositions
- 005 Inventory - for inventoried units
- 006 Workout - for modifications
- 007 Refinance - for refinances
- 008 Repo - use for ALL repossession accounts

VFS Leasing v. G.F. Kelly
Plaintiffs'
Doc. Prod.     P 000205

243

# VOLVO

## Volvo Commercial Finance

7025 Albert Pick Road, Suite 105 (27409)
P.O. Box 26131
Greensboro, NC 27402-6131

Telephone: (877) 865-8623 ext 4277
Fax: (336) 931-3999

### Account Reconciliation Report

Date: March 8, 2006

Lessee Name: G.F. KELLY, INC.

Account#: 500-2001308-421

| Year: | 2003 | Model: | VNL64T |
| Make: | VOLVO/ WHITEGMC | Vin: | 4V4NC9TJ33N341958 |

| Sold To | | |
|---|---|---|
| Sale Date: | October 31, 2005 | Sale Price: 39300.00 |
| Contact Name: | Rick Coode | Purchaser Repair : 0.00 |
| Company Name: | Volvo & GMC Truck Center of Carolina | Purchaser Sales Commission : 0.00 |
| Address: | 3880 North I -85 | Purchaser Other : 0.00 |
| Address: | | Purchaser Cleaning : 0.00 |
| City, State, Zip | Charlotte NC 28256 | Purchaser Transportation : 0.00 |
| | | Net Sale Price: 39300.00 |

| Non Sales Related Fees | | | |
|---|---|---|---|
| Sales Commissions : | 0.00 | Inspection : | 300.00 |
| Repo Fee : | 700.00 | Storage Fee : | 0.00 |
| Attorney Fee : | 0.00 | Repairs : | 2880.10 |
| Transportation : | 0.00 | Cleaning Fee : | 0.00 |
| Fee Paid Out : | 0.00 | Other Fees : | 700.00 |
| | | Total Fees: | 4580.10 |

| Remarketing Internal Data | | | |
|---|---|---|---|
| NI / Contract: | 266884.06 | Book Value: | 46300.00 |
| Cost % per Asset: | 0.00% | Engine Add/Deduct: | 0.00 |
| | | Trans Add/Deduct: | 0.00 |
| NI / Asset: | 0.00 | Mileage Add/Deduct: | 0.00 |
| | | Atthment Add/Deduct: | 0.00 |
| | | Body Add/Deduct: | 0.00 |
| | | Total: | 46300.00 |

**Disposition Code for Cash Application to use:**
- 001 Casualty Loss - for insurance losses
- 004 Completed Term - use for end of term dispositions
- 005 Inventory - for inventoried units
- 006 Workout - for modifications
- 007 Refinance - for refinances
- 008 Repo - use for ALL repossession accounts

VFS Leasing v. G.F. Kelly
Plaintiffs'
Doc. Prod.   P 000448

242

# VOLVO

## Volvo Commercial Finance

7025 Albert Pick Road, Suite 105 (27409)
P.O. Box 26131
Greensboro, NC 27402-6131

Telephone: (877) 865-8623 ext 4277
Fax: (336) 931-3999

### Account Reconciliation Report

Date: October 31, 2005

Lessee Name: G.F. KELLY, INC.

Account#: 500-2001308-421

| Year: | 2003 | Model: | VNL64T |
| Make: | VOLVO/ WHITEGMC | Vin: | 4V4NC9TJ63N341954 |

*(handwritten: 3 74190)*

| Sold To | | |
|---|---|---|
| Sale Date: | October 31, 2005 | Sale Price: 42300.00 |
| Contact Name: | Rick Coode | Purchaser Repair : 0.00 |
| Company Name: | Volvo & GMC Truck Center of Carolina | Purchaser Sales Commission : 0.00 |
| Address: | 3880 North I -85 | Purchaser Other : 0.00 |
| Address: | | Purchaser Cleaning : 0.00 |
| City, State, Zip | Charlotte NC 28256 | Purchaser Transportation : 0.00 |
| | | Net Sale Price: 42300.00 |

| Non Sales Related Fees | | | |
|---|---|---|---|
| Sales Commissions : | 0.00 | Inspection : | 300.00 |
| Repo Fee : | 700.00 | Storage Fee : | 0.00 |
| Attorney Fee : | 0.00 | Repairs : | 0.00 |
| Transportation : | 0.00 | Cleaning Fee : | 0.00 |
| Fee Paid Out : | 0.00 | Other Fees : | 200.00 |
| | | Total Fees: | 1200.00 |

| Remarketing Internal Data | | | |
|---|---|---|---|
| NI / Contract: | 266884.06 | Book Value: | 46713.73 |
| Cost % per Asset: | 20.00% | Engine Add/Deduct: | 0.00 |
| | | Trans Add/Deduct: | 0.00 |
| NI / Asset: | 53376.81 | Mileage Add/Deduct: | 0.00 |
| | | Atthment Add/Deduct: | 0.00 |
| | | Body Add/Deduct: | 0.00 |
| | | Total: | 46713.73 |

**Disposition Code for Cash Application to use:**
- 001 Casualty Loss - for insurance losses
- 004 Completed Term - use for end of term dispositions
- 005 Inventory - for inventoried units
- 006 Workout - for modifications
- 007 Refinance - for refinances
- 008 Repo - use for ALL repossession accounts

VFS Leasing v. G.F. Kelly
Plaintiffs'
Doc. Prod.    P.000156

http://tomr.tabithasoftware.com/Sections/AM/...

241



## VOLVO

### Volvo Commercial Finance

7025 Albert Pick Road, Suite 105 (27409)
P.O. Box 26131
Greensboro, NC 27402-6131

Telephone: (877) 865-8623 ext 4277
Fax: (336) 931-3999

**Account Reconciliation Report**

Date: January 10, 2006

Lessee Name: G.F. KELLY, INC.

Account#: 500-2001308-421

| Year: | 2003 | Model: | VNL64T |
|-------|------|--------|--------|
| Make: | VOLVO/ WHITEGMC | Vin: | 4V4NC9TJ43N341953 |

| Sold To | | |
|---------|---|---|
| Sale Date: | October 31, 2005 | Sale Price: 40300.00 |
| Contact Name: | Rick Coode | Purchaser Repair : 0.00 |
| Company Name: | Volvo & GMC Truck Center of Carolina | Purchaser Sales Commission : 0.00 |
| Address: | 3880 North I -85 | Purchaser Other : 0.00 |
| Address: | | Purchaser Cleaning : 0.00 |
| City, State, Zip | Charlotte NC 28256 | Purchaser Transportation : 0.00 |
| | | Net Sale Price: 40300.00 |

| Non Sales Related Fees | | | |
|------------------------|---|---|---|
| Sales Commissions : | 0.00 | Inspection : | 300.00 |
| Repo Fee : | 700.00 | Storage Fee : | 0.00 |
| Attorney Fee : | 0.00 | Repairs : | 0.00 |
| Transportation : | 0.00 | Cleaning Fee : | 0.00 |
| Fee Paid Out : | 0.00 | Other Fees : | 200.00 |
| | | Total Fees: | 1200.00 |

| Remarketing Internal Data | | | |
|---------------------------|---|---|---|
| NI / Contract: | 266884.06 | Book Value: | 46300.00 |
| Cost % per Asset: | 0.00% | Engine Add/Deduct: | 0.00 |
| | | Trans Add/Deduct: | 0.00 |
| NI / Asset: | 0.00 | Mileage Add/Deduct: | 0.00 |
| | | Atthment Add/Deduct: | 0.00 |
| | | Body Add/Deduct: | 0.00 |
| | | Total: | 46300.00 |

**Disposition Code for Cash Application to use:**
- ~~001 Casualty Loss - for insurance losses~~
- 004 Completed Term - use for end of term dispositions
- 005 Inventory - for inventoried units
- 006 Workout - for modifications
- 007 Refinance - for refinances
- 008 Repo - use for ALL repossession accounts

VFS Leasing v. G.F. Kelly
Plaintiffs'
Doc. Prod. P 000474

240

# VOLVO

## Volvo Commercial Finance

7025 Albert Pick Road, Suite 105 (27409)
P.O. Box 26131
Greensboro, NC 27402-6131

Telephone: (877) 865-8623 ext 4277
Fax: (336) 931-3999

### Account Reconciliation Report

Date: November 17, 2005

Lessee Name: G.F. KELLY, INC.

Account#: 500-2001308-421

| Year: | 2003 | Model: | VNL64T |
|-------|------|--------|--------|
| Make: | VOLVO/ WHITEGMC | Vin: | 4V4NC9TJ23N341952 |

| Sold To | | |
|---------|---|---|
| Sale Date: | October 31, 2005 | Sale Price: 38000.00 |
| Contact Name: | FRANK CRAWFORD | Purchaser Repair : 0.00 |
| Company Name: | The Ed Schmidt Truck Store | Purchaser Sales Commission : 0.00 |
| Address: | 1270 Conant Street | Purchaser Other : 0.00 |
| Address: | | Purchaser Cleaning : 0.00 |
| City, State, Zip | Maumee OH 43537 | Purchaser Transportation : 0.00 |
| | | Net Sale Price: 38000.00 |

| Non Sales Related Fees | | | |
|---|---|---|---|
| Sales Commissions : | 0.00 | Inspection : | 300.00 |
| Repo Fee: | 700.00 | Storage Fee : | 0.00 |
| Attorney Fee : | 0.00 | Repairs : | 0.00 |
| Transportation : | 0.00 | Cleaning Fee : | 500.00 |
| Fee Paid Out : | 0.00 | Other Fees : | 200.00 |
| | | Total Fees: | 1700.00 |

| Remarketing Internal Data | | | |
|---|---|---|---|
| NI / Contract: | 266884.06 | Book Value: | 46300.00 |
| Cost % per Asset: | 20.00% | Engine Add/Deduct: | 0.00 |
| | | Trans Add/Deduct: | 0.00 |
| NI / Asset: | .53376.81 | Mileage Add/Deduct: | 0.00 |
| | | Atthment Add/Deduct: | 0.00 |
| | | Body Add/Deduct: | 0.00 |
| | | Total: | 46300.00 |

**Disposition Code for Cash Application to use:**
- 001 Casualty Loss - for insurance losses
- 004 Completed Term - use for end of term dispositions
- 005 Inventory - for Inventoried units
- 006 Workout - for modifications
- 007 Refinance - for refinances
- 008 Repo - use for ALL repossession accounts

VFS Leasing v. G.F. Kelly
Plaintiffs'
Doc. Prod.   P 000184

244

Page 1 of 1

# VOLVO

## Volvo Commercial Finance

7025 Albert Pick Road, Suite 105 (27409)
P.O. Box 26131
Greensboro, NC 27402-6131

Telephone: (877) 865-8623 ext 4277
Fax: (336) 931-3999

### Account Reconciliation Report

Date: November 11, 2005

Lessee Name: G.F. KELLY, INC.

Account#: 500-2001308-421

| Year: | 2003 | Model: | VNL64T |
|-------|------|--------|--------|
| Make: | VOLVO/ WHITEGMC | Vin: | 4V4NC9TJ53N341959 |

| Sold To | | | |
|---------|--|--|--|
| Sale Date: | October 31, 2005 | Sale Price: | 37000.00 |
| Contact Name: | FRANK CRAWFORD | Purchaser Repair : | 0.00 |
| Company Name: | The Ed Schmidt Truck Store | Purchaser Sales Commission : | 0.00 |
| Address: | 1270 Conant Street | Purchaser Other : | 0.00 |
| Address: | | Purchaser Cleaning : | 0.00 |
| City, State, Zip | Maumee OH 43537 | Purchaser Transportation : | 0.00 |
| | | Net Sale Price: | 37000.00 |

| Non Sales Related Fees | | | |
|------------------------|--|--|--|
| Sales Commissions : | 0.00 | Inspection : | 300.00 |
| Repo Fee : | 700.00 | Storage Fee : | 0.00 |
| Attorney Fee : | 0.00 | Repairs : | 0.00 |
| Transportation : | 0.00 | Cleaning Fee : | 0.00 |
| Fee Paid Out ; | 0.00 | Other Fees : | 200.00 |
| | | Total Fees: | 1200.00 |

| Remarketing Internal Data | | | |
|---------------------------|--|--|--|
| NI / Contract: | 266884.06 | Book Value: | 46300.00 |
| Cost % per Asset: | 20.00% | Engine Add/Deduct: | 0.00 |
| | | Trans Add/Deduct: | 0.00 |
| NI / Asset: | 53376.81 | Mileage Add/Deduct: | 0.00 |
| | | Atthment Add/Deduct: | 0.00 |
| | | Body Add/Deduct: | 0.00 |
| | | Total: | 46300.00 |

**Disposition Code for Cash Application to use:**
- 001 Casualty Loss - for insurance losses
- 004 Completed Term - use for end of term dispositions
- 005 Inventory - for inventoried units
- 006 Workout - for modifications
- 007 Refinance - for refinances
- 008 Repo - use for ALL repossession accounts

VFS Leasing v. G.F. Kelly
Plaintiffs'     P 000079
Doc. Prod.

*Volvo Finance Reps Sale*

| Contract Number | VIN# | Year | Make | Model | Mileage | NADA Wholesale | Recon Est. | Target $ | Sale Price | % of Target | Sale Type |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 500-2001308-411 | 4V4NC9RH61N325013 | 2001 | Volvo | VNL64T-610 | 577387 | $ 29,640.00 | $ 4,035.00 | $25,605.00 | $ 27,000.00 | 105.45% | Internet |
| 500-2001308-411 | 4V4NC9RH81N325014 | 2001 | Volvo | VNL64T-610 | 509728 | $ 29,075.00 | $ 7,930.00 | $21,145.00 | $ 31,000.00 | 146.61% | Internet |
| 500-2001308-411 | 4V4NC9RHX1N325015 | 2001 | Volvo | VNL64T-610 | 353198 | $ 31,595.05 | $ 6,950.00 | $24,645.05 | $ 26,000.00 | 105.50% | Internet |
| 500-2001308-412 | 4V4NC9RH11N325016 | 2001 | Volvo | VNL64T-610 | 481707 | $ 32,932.00 | $ 11,295.00 | $21,637.00 | $ 23,000.00 | 106.30% | Internet |
| 500-2001308-412 | 4V4NC9RH31N325017 | 2001 | Volvo | VNL64T-610 | 619323 | $ 29,975.00 | $ 6,550.00 | $23,425.00 | $ 25,000.00 | 106.72% | Internet |
| 500-2001308-413 | 4V4NC9TH41N325018 | 2001 | Volvo | VNL64T-610 | 527636 | $ 32,234.10 | $ 8,340.00 | $23,894.10 | $ 21,000.00 | 87.89% | Auction |
| 500-2001308-413 | 4V4NC9TH61N325019 | 2001 | Volvo | VNL64T-610 | 516020 | $ 33,424.50 | $ 6,200.00 | $27,224.50 | $ 24,000.00 | 88.16% | Internet |
| 500-2001308-414 | 4V4NC9TH02N325020 | 2002 | Volvo | VNL64T-610 | 490370 | $ 36,825.00 | $ 8,730.00 | $28,095.00 | $ 26,760.00 | 95.25% | Internet |
| 500-2001308-415 | 4V4NC9TH22N325021 | 2002 | Volvo | VNL64T-610 | 418136 | $ 40,574.56 | $ 8,055.00 | $32,519.56 | $ 28,000.00 | 86.10% | Internet |
| 500-2001308-416 | 4V4ND4RJ9YN246738 | 2000 | Volvo | VNL64T-660 | 408928 | $ 27,250.00 | $ 4,140.00 | $23,110.00 | $ 22,000.00 | 95.20% | Internet |
| 500-2001308-416 | 4V4ND4RJ0YN246739 | 2000 | Volvo | VNL64T-660 | 706128 | $ 21,896.80 | $ 5,935.00 | $15,961.80 | $ 22,500.00 | 140.96% | Auction |
| 500-2001308-417 | 4V4NC9JH01N314763 | 2001 | Volvo | VNL64T-610 | 398961 | $ 36,350.98 | $ 6,300.00 | $30,050.98 | $ 31,100.00 | 103.49% | Internet |
| 500-2001308-417 | 4V4NC9JH21N314764 | 2001 | Volvo | VNL64T-610 | 424645 | $ 34,808.88 | $ 4,855.00 | $29,953.88 | $ 25,250.00 | 84.30% | Internet |
| 500-2001308-418 | 4V4NC9JH91N314762 | 2001 | Volvo | VNL64T-610 | 384954 | $ 36,701.15 | $ 4,970.00 | $31,731.15 | $ 31,000.00 | 97.70% | Internet |
| 500-2001308-419 | 4V4ND4JH2YN793584 | 2000 | Volvo | VNL64T-660 | 402942 | $ 23,146.80 | $ 4,640.00 | $18,506.80 | $ 24,000.00 | 129.68% | Internet |
| 500-2001308-420 | 4V4ND4RJ0YN796989 | 2000 | Volvo | VNL64T-660 | 398958 | $ 27,250.00 | $ 9,485.00 | $17,765.00 | $ 23,000.00 | 129.47% | Internet |
| 500-2001308-421 | 4V4NC9TJ33N341958 | 2003 | Volvo | VNL64T-610 | 386311 | $ 45,700.00 | $ 4,960.00 | $40,740.00 | $ 39,300.00 | 96.47% | Internet |
| 500-2001308-421 | 4V4NC9TJ63N341954 | 2003 | Volvo | VNL64T-610 | 343451 | $ 46,361.96 | $ 2,235.00 | $44,126.96 | $ 42,300.00 | 95.86% | Internet |
| 500-2001308-421 | 4V4NC9TJ43N341953 | 2003 | Volvo | VNL64T-610 | 365071 | $ 45,700.00 | $ 4,700.00 | $41,000.00 | $ 40,300.00 | 98.29% | Internet |
| 500-2001308-421 | 4V4NC9TJ23N341952 | 2003 | Volvo | VNL64T-610 | 389877 | $ 45,700.00 | $ 7,265.00 | $38,435.00 | $ 38,000.00 | 98.87% | Internet |
| 500-2001308-421 | 4V4NC9TJ53N341959 | 2003 | Volvo | VNL64T-610 | 358253 | $ 45,769.88 | $ 8,200.00 | $37,569.88 | $ 37,000.00 | 98.48% | Internet |
| | | | | | | | | | | 104.61% | |

Purchasers

102 - TEC of Cal
104 - Central Carolina Trucks
103 - Ed Schmidt Truck (040)
105 - Central Carolina
              "
106   "  Adessa Auction
107   "  Ed Schmidt
108   "  MVK Volvo (michigan)
109   "  Central Carolina
110   - TEC of Cal
168   - Adessa Auction
169

190 - Ed Schmidt
192 - R+V Trucks - Michigan
193 - Central Carolina Trucks
197 - TEC of Cal
197 - TEC of Cal
243 - Volvo/GMC Charlotte
242 - Volvo/GMC Charlotte
241 - Volvo/GMC Charlotte
240 - Ed Schmidt
244 - Ed Schmidt

VFS Leasing v. G.
Plaintiffs'
Doc. Prod.
P 00

## IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF ALABAMA

VFS LEASING CO.,          )
                                   )
    PLAINTIFF,        )
                                   )
                                 )   CIVIL ACTION NO.: 3:06CV638-SRW
VS.                       )
                                 )
G. F. KELLY, INC d/b/a KELLY   )
TRUCKING; and GUY KELLY,   )
                                 )
    DEFENDANTS.      )

## AFFIDAVIT OF GUY KELLY

STATE OF ALABAMA
COUNTY OF RANDOLPH

      Before me, the undersigned authority in and for said state and county personally appeared Guy Kelly who, after being duly sworn, deposes and says as follows:

      1.      My name is Guy Kelly and I am president of GF Kelly, Inc. ("Kelly Trucking").  I have been in the trucking business since 1985 and started Kelly Trucking in 1990.

      2.      I am familiar with over-the-road trucks and the buying, repairing and selling of same.  I am very familiar with the 21 trucks at issue in this case as I was the person who bought the trucks and was responsible for overseeing them during the time they were owned by Kelly Trucking.  I am also very familiar with the condition of the trucks at the time they were repossessed by Volvo.

      3.      I have reviewed the deposition of Kevin Miller, exhibits to that deposition, and the affidavit of Charles Lance.  I have also reviewed the Motion for Summary Judgment filed by Volvo.

      4.      Based on my knowledge of and experience in the trucking industry, it is my opinion that Volvo is attempting to charge Kelly Trucking excessive amounts for repossession expense, inspection fees, and detailing fees.  The fees which Volvo requests the court to award are excessive and unreasonable.  These fees are not in keeping with the standard in the industry in 2005.

      5.      Additionally, based on my knowledge and experience in the industry, it is my opinion that Volvo did not resell the trucks following repossession in a commercially reasonable manner and in keeping with the standard in the industry.

      6.      Volvo is requesting that it be awarded $700.00 in repossession expense for each of the 21 trucks.  This amount is ridiculously excessive and unreasonable.  When it became apparent that Kelly Trucking could not make the required lease payments on the trucks due to unforeseen circumstances, I worked with Volvo to make the repossession simple and efficient. All 21 trucks were brought to the Kelly Trucking yard in Wadley, Alabama and Volvo was

notified as the trucks arrived in the yard.  Volvo then sent drivers to Wadley who drove the trucks 75 miles to the Adesa yard in Fairburn, Georgia.  The distance between the Kelly Trucking yard and the Adesa yard is less than 75 miles.  At the time of this repossession, the standard mileage rate to pay drivers would be 35 cents per mile round-trip.  For a 150-mile round-trip, the total cost for each truck would be $51.50.  The total mileage charge for all trucks would be $1,081.50.  To cover additional costs, the maximum reasonable amount of repossession expenses under these circumstances would be $200.00 per truck.  If a commercially reasonable charge of $200.00 had been claimed by Volvo, Kelly would be charged $4,200.00 rather than $14,700.00.  This is a difference of $10,500.00.  This is the amount that Kelly should not be charged by Volvo.

7.      Volvo claims it is due to be reimbursed an inspection fee of $300.00 on each truck.  The total amount Volvo is claiming for these inspections is $6,300.00.  I have reviewed the inspection reports and have determined the type and amount of work that went into to performing these inspections.  I have also reviewed the deposition of Miller where he describes these inspections.  The charge of $300.00 is unreasonable and excessive based on my experience and the standard in the industry.  The maximum amount that would be reasonable for an inspection under these circumstances is $125.00 per truck, which would result in a total charge of $1,675.00.  This results in a difference of $4,625.00.  Kelly Trucking should not be charged with this amount that Volvo is claiming.

8.      Volvo is claiming that it is entitled to $500.00 each for detailing 8 of the 21 trucks.  The total detailing expense being claimed is $4,000.00.  This amount is clearly excessive.  It is the standard in the industry for a used truck to be cleaned and detailed prior to putting it on the market for sale.  However, $500.00 is a greatly excessive price for this.  Detailing of trucks is done in my shop every day.  In 2005 the reasonable charge for detailing a truck of this type was $125.00.  Thus, Volvo should only be entitled to a total of $1,000.00 for detailing 8 trucks, not $4,000.00.  Kelly Trucking does not owe Volvo the difference of $3,000.00.

9.      Each inspection report contains an estimate of expenses associated with bringing the truck up to a wholesale condition.  It is the standard in the industry to sell trucks in a wholesale condition.  As stated in the affidavit of Charles Lance, the reconditioning expenses shown in the 21 appraisal reports are greatly excessive.  As an employee of Kelly Trucking for many years, Mr. Lance is very familiar with the reasonable cost associated with repairs such as those shown in these appraisal reports.  The reasonable amounts of these repairs are shown in the chart which is a part of his affidavit that I have reviewed.  By including greatly excessive reconditioning expenses in the information available to prospective bidders, Volvo drew a very unrepresentative picture of the value of the truck.  Obviously a truck that needs $8,000.00 in reconditioning is less valuable than a truck that needs $3,000.00 in reconditioning.  However, Volvo consistently with all 21 trucks showed an amount of reconditioning expenses that was excessive.  Had the actual real-world cost of the reconditioning been shown in the appraisal reports, prospective buyers would have had a much more representative picture of the true value of the trucks.  This would have resulted in higher bids and greater sale prices. Posting excessive reconditioning expenses was not commercially reasonable and in keeping with industry standards.

10.     The testimony of Kevin Miller, remarketing manager for Volvo, clearly shows that Volvo either has no policy relating to getting maximum sale prices on repossessed trucks or has a policy that can be violated when convenient.  For instance, Miller testified that a high-mileage truck in poor condition would be put through the auction rather than put out for bids on the Volvo web site.  However, the records on the 21 trucks reflected on two occasions that trucks were put in the auction that were low-mileage and good-condition trucks.  When asked to explain this discrepancy, Miller simply said that Volvo did not always want to put junk at the auctions so

sometimes they put better-condition trucks in the auction. Another example of Volvo's inconsistency is that Miller testified that Volvo sells repossessed trucks "is-as, where-is." However, there were three occasions in this case where Volvo paid substantial amounts of money to purchasers after the deal was closed and the purchase made. This is a clear violation of "as-is, where-is" policy and is not commercially reasonable

11.     Kevin Miller testified that Volvo puts a sale price on the web page for each truck it put on the market. He testified that the sale price posted on the Internet would be $3,000.00-$5,000.00 more than maximum wholesale value. However, on at least 18 of the 21 trucks, the posted sale price was greatly less than that amount. This again clearly shows that Volvo has no policy regarding disposal of repossessed trucks or does not consistently apply a policy.

12.     I have knowledge that it is the standard on web sites of other manufacturers and auction companies to allow prospective bidders to see bids previously placed. Additionally, once bids on a particular truck are opened, the web site specifically states the time and date on when the auction closes. That is the standard and is what is commercially reasonable in my opinion. However, on Volvo's web site, bidders do not have access to the amount of previous bids. This is not commercially reasonable. A bidder is much more likely to lowball. Also, someone who is outbid is not aware of that fact and thus does not know he needs to redid. That is my opinion which is based on my experience. Additionally, an auction on the Volvo web site can last from 1 hour to 30 days. The date and time an auction on a particular truck is closed is solely up to Volvo. The auction on 16 of the 21 trucks lasted 4 or fewer days. The maximum time for any auction was 14 days and only one other lasted 7 days. Twelve auctions remained open for 48 hours or less. In my opinion this is commercially unreasonable.

13.     Three trucks were sold to Volvo & GMC of Charlotte. According to Mr. Miller, this dealer is one of Volvo's top ten customers for used trucks. In all three auctions where this dealer was the high bidder, the auction was closed immediately after receipt of this dealer's bid. Even though the auction on all three trucks had been active, Volvo chose to close the auction as soon as this top dealer gave a higher bid. This is extremely suspicious and in my opinion is not commercially reasonable. As will be stated below, the sales price on all three of these trucks was more than $30,000.00 lower than the true value of the trucks.. Five trucks were sold to Ed Schmidt Trucks, another top 10 customer according to Mr. Miller. Four of the auctions were open for less than 48 hours and were closed as soon as Schmidt was the low bidder. Closing auctions so quickly for the benefit of one dealer is not commercially reasonable. The trucks were sold to Schmidt for more than $30,000.00 less than their value.

## PURCHASES BY TOP 10 CUSTOMERS

| Customer | GFK Truck No. | Serial No. (Last 3) | Days Bids Open | Bids |
|---|---|---|---|---|
| Ed Schmidt Trucks | 103 | 015 | 1 | 2 |
| | 108 | 019 | 2 | 2 |
| | 190 | 763 | 4 | 3 |
| | 249 | 952 | 2 | 3 |
| | 244 | 959 | 1 | 2 |
| Volvo of Charlotte | 243 | 958 | 4 | 3 |
| | 242 | 954 | 4 | 4 |
| | 241 | 953 | 4 | 4 |

14.    The standard in the industry is that a truck sold at auction, whether it be a live auction or an internet auction, is sold "as-is, where-is." According to Miller, this is also Volvo's policy. A bidder has the opportunity to determine the condition of the truck based on what is posted on the web site and also has the opportunity to visually inspect the truck at wherever it is located. Once the sales price is paid by the low bidder and the title is passed, the truck is owned by the low bidder and he takes the truck in an "as-is" condition. However, Volvo is attempting to charge Kelly Trucking $12,369.10 it had paid to three purchasers after the sale was closed. Volvo paid $4,000.00 on Kelly Truck No. 110; $5,489.00 on Kelly Truck No. 192; and $2,880.10 on Kelly Truck No. 243. According to Mr. Miller, the problems with these trucks were easily discoverable by both the bidder and the inspection company hired by Volvo. These payouts are not in keeping with industry standards and are commercially unreasonable. Kelly Trucking should not be charged for the amount of these payments. Documents produced by Volvo showing that these payments were made long after the trucks were sold "as is" are attached ("Volvo Repair Docs).

15.    Attached to this affidavit is a Resale Summary chart which has been prepared utilizing Volvo documents. The first column shows the Kelly truck number; the second column shows the last digits of the truck serial number; the third column shows the number of days bids were open on the web site; the fourth column shows the number of bids received on the truck; column five shows the commercially reasonable value of the truck after all deducts for necessary repairs and other expenses and that value is further discounted; column six shows the price Volvo sold the truck for; and column seven shows the difference between what the reasonable amount Volvo should have received for the truck and the amount Volvo actually received. The total difference for the 12 trucks included in the chart is $101,810.00. It is my opinion that this is the additional amount Volvo would have received had it conducted the reselling of these trucks in a commercially reasonable manner. The 8 trucks sold to the two top dealers described above are included in this chart and the loss on those trucks alone amounts to more than $60,000.00.

16.    The values shown in the fifth column are my opinion of what the trucks would have sold for had they been sold in a commercially reasonable manner. These values take into consideration the legitimate reconditioning expenses, the mileage, and make and model. These values were further discounted at least 10 percent, even though, as Mr Miller stated, it was a seller's market at the time these trucks were sold.

17.    There are many other costs and charges which Volvo is attempting to place on me and my company which are not legitimate and are excessive and unreasonable. The defendants are entitled to present evidence of all the unreasonable charges to the Court so that the Court can determine the amount that is due Volvo in this case. Volvo is not entitled to an amount close to what it is claiming in its motion for summary judgment.

**RESALE SUMMARY**

| GFK Truck No. | Serial No. (Last 3) | Days Bids Open | Bids | Value | Sale Price | Difference |
|---|---|---|---|---|---|---|
| 103 | 015 | 1 | 2 | $32,000 | $27,000 | $5,000 |
| 107 | 018 | 7 | 2 | $32,000 | $21000 | $11,000 |
| 108 | 019 | 2 | 2 | $32,000 | $24,000 | $8,000 |
| 109 | 020 | 6 | 3 | $36,000 | $26,670 | $9,330 |
| 110 | 021 | 2 | 3 | $38,000 | $28,000 | $10,000 |
| 169 | 739 | Not Available | Not Available | $27,000 | $22,000 | $5,000 |
| 192 | 764 | 14 | 5 | $34,000 | $25,520 | $8,480 |
| 243 | 958 | 4 | 3 | $51,000 | $38,000 | $13,000 |
| 242 | 954 | 4 | 4 | $52,000 | $40,300 | $11,700 |
| 241 | 953 | 4 | 4 | $51,000 | $42,300 | $8,700 |
| 240 | 952 | 2 | 3 | $49,000 | $39,300 | $9,700 |
| 244 | 959 | 1 | 2 | $49,000 | $37,000 | $12,000 |
| **TOTAL** | | | | | | **$101,810** |

/s/ Guy Kelly
Guy Kelly


SWORN TO AND SUBSCRIBED BEFORE ME this the 12th day of February, 2007


/s/ Kathleen W. Newman
Notary Public
My Commission Expires: 2/19/2007

# Central Carolina Trucks, Inc

**Invoice No.** 3842-33106

306 Pineview Drive  Kernersville, NC 27284
Watts: 800-672-4201   Local: 336-993-2106
Fax: 336-993-8466
usedtrucks@centralcarolinatrucks.com

3/31/2006

## ═ INVOICE ═

### Customer

| | |
|---|---|
| Name | Volvo Commercial Finance LLC The Americas |
| | Kevin Miller      Debra Nelson |
| Address | 7823 National Service Road |
| City | Greensboro        State NC      ZIP 27409 |
| Phone | 336-931-4148    Fax: 336-931-4148 |

| | |
|---|---|
| Date | 3/31/2006 |
| Used Truck # | 3842 |
| VIN | 325021 |
| Description | 02 610 |
| Ref | VOLVO |

| Qty | Description | Unit Price | TOTAL |
|---|---|---|---|
| 1 | Repair body work around cab of truck that had been done before incorrectly that was not noted on condition report | | $0.00 |
| | | $4,000.00 | $4,000.00 |
| | | | $0.00 |
| | | | $0.00 |
| | | | $0.00 |
| | | | $0.00 |
| | | | $0.00 |
| | | | $0.00 |
| | | | $0.00 |
| | | | $0.00 |
| | | | $0.00 |
| | | | $0.00 |
| | | | $0.00 |
| | | | $0.00 |
| | | | $0.00 |
| | | | $0.00 |
| | | | $0.00 |
| | | | $0.00 |
| | | | $0.00 |
| | | | $0.00 |
| | | SubTotal | |
| | | Shipping & Handling | |
| | | Taxes    State | |
| | | TOTAL | $4,000.00 |

G.F. Kelly
001-2001308-415

COPY IS IN USED TRUCK FOLDER!
Thank You  Danny

*Danny W. Everhart*

### Payment Details

- ○ Cash
- ● Check
- ○ Credit Card

Name _____
CC # _____
Expires _____

| Internal Office Use Only | |
|---|---|
| Credit Account 2302L | |
| Credit Account 6102L | |
| Credit Unit  3842 | $4,000.00 |
| Credit Account 90522 | |

*Thank You For Your Business !!!*

VFS Leasing v. G.F. Kelly
Plaintiffs'
Doc. Prod.    P 000567

*Visit Us On The Web at:  www.centralcarolinatrucks.com*

OK to pay By fax  Kv0406-06



**Cummins Atlantic Inc.**

MATERIAL RETURNED FOR CREDIT OR EXCHANGE MUST SHOW THIS INVOICE NUMBER. ALL MATERIAL RETURNED FOR CREDIT SUBJECT TO 15% HANDLING CHARGE. OLD UNITS ELIGIBLE FOR EXCHANGE MUST BE RECEIVED WITHIN 30 DAYS. FEDERAL ID# 56-0946192

CHARLOTTE
3700 JEFF ADAMS DR.
CHARLOTTE, NC 28206-
(704)5987690

**INVOICE NO.**

**003-57475**

REMIT TO: P.O. Box 601778
Charlotte, NC 28290-1771

**BILL TO**
VOLVO & GMC TRKS CAROLINA
P.O. BOX 560007
CHARLOTTE, NC 28258-

**OWNER**
VOLVO & GMC TRKS CAROLINA
P.O. BOX 560007
CHARLOTTE, NC 28258-
TIM

PAGE   1 OF 3
** CHARGE **

| DATE | CUSTOMER ORDER NO. | DATE IN SERVICE | ENGINE MODEL | PUMP NO. | EQUIPMENT MAKE |
|---|---|---|---|---|---|
| 16-FEB-2006 | | 02-OCT-2002 | ISX 500 | | VOLVO |
| CUSTOMER NO. | SHIP VIA | FAIL DATE | ENGINE SERIAL NO. | CPL NO. | EQUIPMENT MODEL |
| 7810 | | 03-FEB-2006 | 14042737 | CPL2829 | VNM SERIES |
| REF. NO. | SALESPERSON | PARTS DISP. | MILES/HOURS | PUMP CODE | UNIT NO. |
| 59331 | 1102 | | 366678 | | P6261 |

| QUANTITY ORDERED | BACK ORDERED | QUANTITY SHIPPED | PART NUMBER | DESCRIPTION | PRODUCT CODE | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|---|---|

OSN/MSN/VIN   4V4NC9TJ33N341958

COMPLAINT   SYMPTOMS:
LEAKS
OIL IN COOLANT & COOLANT IN OIL
TIM HOVIS
704-597-0551

CAUSE   BLOWN HEAD GASKET

CORRECTION   ADMINISTRATIVE TIME - OPEN AND CLOSE REPAIR ORDER (SHOP REPAIRS)
TROUBLESHOOT - LUBRICATING OR HYDRAULIC OIL IN COOLANT
TROUBLESHOOT - COOLANT IN LUBRICATING OIL
LUBRICATING OIL PAN - REMOVE AND INSTALL
HOOD, TILT - REMOVE AND INSTALL
BUMPER - REMOVE AND INSTALL
AIR CONDITIONER SYSTEM - EVACUATE AND RECHARGE
AIR CONDITIONER CONDENSOR - REMOVE AND INSTALL
CHARGE AIR COOLER - REMOVE AND INSTALL (PART OF ANOTHER REPAIR)
RADIATOR - REMOVE AND INSTALL (PART OF ANOTHER REPAIR)
REMOVE AND INSTALL INNER FENDER (AUTOMOTIVE APPLICATIONS)
AIR CLEANER ASSEMBLY, ENGINE-MOUNTED - REMOVE AND INSTALL, EACH
RADIATOR BRACES - REMOVE AND INSTALL
AIR CONDITIONER COMPRESSOR AND BRACKET - REMOVE AND INSTALL
POWER STEERING RESERVOIR - REMOVE AND INSTALL
COOLANT OVERFLOW TANK - REMOVE AND INSTALL
CYLINDER HEAD - REMOVE AND INSTALL
PRESSURE TESTED CYLINDER HEAD
INJECTOR - CLEAN EXTERIOR FOR REUSE, EACH TWO , EACH
RADIATOR - FLUSH
ENGINE - RUN-IN AND TEST (CHASSIS DYNAMOMETER)
STEAM CLEAN - COMPLETE ENGINE

COVERAGE   N/A

REMARK   REPAIR AUTHORIZED BY BENNY 4/18/06, 2794.96 ESTIMATE

ALL INVOICES DUE AND PAYABLE TO: P.O. Box 601778, Charlotte, NC 28290-1778

TERMS: NET 10TH PROX unless otherwise specified. A service charge of 1 1/2% per month (effective rate of 18% per annum) will be charged on past due amounts. Any claims for shortages or deductions for erroneous charges must be made within thirty days after receipt of goods. WARRANTY: The liability of Cummins Atlantic Inc. is limited to the obligations provided in the warranty provisions which are set forth on the reverse side hereof.

VFS Leasing v. G.F. Kelly
Plaintiffs'
Doc. Prod.   P 000564

AUTHORIZED BY : _____   DATE : _____

FEB-17-2006 10:40 FROM:CUMMINS ATLANTIC    7045963038    TO:7045970043    P.002/003



## Cummins
## Atlantic
## Inc.

MATERIAL RETURNED FOR CREDIT OR EXCHANGE MUST SHOW THIS INVOICE NUMBER. ALL MATERIAL RETURNED FOR CREDIT SUBJECT TO 15% HANDLING CHARGE. OLD UNITS ELIGIBLE FOR EXCHANGE MUST BE RECEIVED WITHIN 30 DAYS. FEDERAL ID# 56-0946192

CHARLOTTE
3700 JEFF ADAMS DR.
CHARLOTTE, NC 28206-
(704)5967590

| INVOICE NO |
|---|
| 003-57475 |

REMIT TO: P.O. BOX 601776
Charlotte, NC 28260-1771

**BILL TO**
VOLVO & GMC TRKS CAROLINA
P.O. BOX 560007
CHARLOTTE, NC 28256-

**OWNER**
VOLVO & GMC TRKS CAROLINA
P.O. BOX 560007
CHARLOTTE, NC 28256-
TIM  HOVIS - 704 597-0561

PAGE    2 OF 3

*** CHARGE ***

| DATE | CUSTOMER ORDER NO. | DATE IN SERVICE | ENGINE MODEL | PUMP NO. | EQUIPMENT MAKE |
|---|---|---|---|---|---|
| 16-FEB-2006 | | 02-OCT-2002 | ISX 500 | | VOLVO |
| **CUSTOMER NO.** | **SHIP VIA** | **FAIL DATE** | **ENGINE SERIAL NO.** | **CPL NO.** | **EQUIPMENT MODEL** |
| 7610 | | 03-FEB-2006 | 14042737 | CPL2629 | VNM SERIES |
| **REF. NO.** | **SALESPERSON** | **PARTS DISP.** | **MILEAGE/HOURS** | **PUMP CODE** | **UNIT NO.** |
| 56331 | 1102 | | 396578 | | P8251 |

| QUANTITY ORDERED | BACK ORDERED | QUANTITY SHIPPED | PART NUMBER | DESCRIPTION | PRODUCT CODE | UNIT PRICE | ACCOUNT |
|---|---|---|---|---|---|---|---|
| OSN/MSN/VIN | | | 4V4NC9TJ33N341956 | | | | |
| 1 | | 1 | 4025300 | SET,UPPER ENGINE GASKET | CECO | 172.97 | 172.97 |
| 1 | | 1 | 3824510 | CLEANER, QD CONTACT | CECO | 7.89 | 7.89 |
| 48 | | 48 | 3377361 | PB OIL BULK-QUART | VALVOLINE | 1.53 | 73.44 |
| 4 | | 4 | 83491-02 | ROLOC 3" DISC | OTHER | 2.06 | 8.24 |
| 4 | | 4 | 83488-02 | ROLOC 2" DISC | OTHER | .92 | 3.68 |
| 1 | | 1 | 02017 | SANDPAPER | OTHER | 1.59 | 1.59 |
| 16 | | 16 | 3163842 | NUT,REGULAR HEXAGON JAM | CECO | 1.32 | 21.12 |
| 1 | | 1 | 27217 | BRASS P | OTHER | .65 | 0.65 |
| 1 | | 1 | 4026684 | GASKET,OIL PAN | CECO | 98.68 | 98.68 |
| 1 | | 1 | LF9000 | LUBE FILTER | FLG | 39.10 | 39.10 |
| 3 | | 3 | 70609 | VALVOLINE PREMIUM BLUE-GL | VALVOLINE | 8.47 | 25.41 |
| 24 | | 24 | CS73 | TYRAP | OTHER | .33 | 7.92 |
| 1 | | 1 | FCA001 | ANTIFREEZE,PREMIXED-1 GL | OTHER | 9.02 | 9.02 |
| 2 | | 2 | DSR3167 | BULB | NONSTOCK Outside Purchased Parts | 2.21 | 4.42 * |
| 2 | | 2 | 8075020 | GROMMET | NONSTOCK Outside Purchased Parts | 4.46 | 8.92 * |
| 1 | | 1 | 20619046 | FILLER CAP | NONSTOCK Outside Purchased Parts | 15.68 | 15.68 * |
| 1 | | 1 | 8140024 | SENSOR LEVEL | NONSTOCK Outside Purchased Parts | 37.19 | 37.19 |

PARTS:                                          535.82
PARTS COVERAGE CREDIT:                          29.02CR
TOTAL PARTS:                    506.80
SURCHARGE TOTAL:                                0.00

ALL INVOICES DUE AND PAYABLE TO: P.O. Box 601776, Charlotte, NC 28260-1776

TERMS: NET 10TH PROX unless otherwise specified. A service charge of 1 1/2% per month (effective rate of 18% per annum) will be charged on past due amounts. Any claims for shortages r deductions for erroneous charges must be made within thirty days after receipt of goods. WARRANTY: The liability of Cummins Atlantic Inc. is limited to the obligations provided in the warranty provisions which are set forth on the reverse side hereof.

VFS Leasing v. G.F. Kelly
Plaintiffs'
Doc. Prod.  P 000565

AUTHORIZED BY : _____        DATE : _____



## Cummins Atlantic Inc.

MATERIAL RETURNED FOR CREDIT OR EXCHANGE MUST SHOW THIS INVOICE NUMBER. ALL MATERIAL RETURNED FOR CREDIT SUBJECT TO 15% HANDLING CHARGE. OLD UNITS ELIGIBLE FOR EXCHANGE MUST BE RECEIVED WITHIN 30 DAYS. FEDERAL ID# 58-0946192

CHARLOTTE
3700 JEFF ADAMS DR.
CHARLOTTE, NC 28206-
(704)5967690

**INVOICE NO**

**003-57475**

REMIT TO: P.O. Box 601776
Charlotte, NC 28260-1771

**BILL TO**

VOLVO & GMC TRKS CAROLINA
P.O. BOX 560007
CHARLOTTE, NC 28256-

**OWNER**

VOLVO & GMC TRKS CAROLINA
P.O. BOX 560007
CHARLOTTE, NC 28256-
TIM HOVIS - 704 597-0551

PAGE    8 OF 3

*** CHARGE ***

| DATE | CUSTOMER ORDER NO. | DATE IN SERVICE | ENGINE MODEL | PUMP NO. | EQUIPMENT MAKE |
|---|---|---|---|---|---|
| 15-FEB-2006 | | 02-OCT-2002 | ISX 500 | | VOLVO |

| CUSTOMER NO. | SHIP VIA | FAIL DATE | ENGINE SERIAL NO. | CPL NO. | EQUIPMENT MODEL |
|---|---|---|---|---|---|
| 7810 | | 03-FEB-2006 | 14042737 | CPL2629 | VNM SERIES |

| REF. NO. | SALESPERSON | PARTS DISP. | MILEAGE/HOURS | PUMP CODE | UNIT NO. |
|---|---|---|---|---|---|
| 59331 | 1102 | | 388878 | | P5291 |

| QUANTITY ORDERED | BACK ORDERED | QUANTITY SHIPPED | PART NUMBER | DESCRIPTION | PRODUCT CODE | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|---|---|
| OSN/MSN/VIN | | 4V4NC9TJ93N341955 | | | | | |

|  |  |  |
|---|---|---|
| LABOR: | | 2,373.30 |
| LABOR COVERAGE CREDIT: | | 0.00 CR |
| TOTAL LABOR: | 2,373.30 | |
| MISC.: | | 0.00 |
| MISC. COVERAGE CREDIT: | | 0.00 CR |
| TOTAL MISC.: | 0.00 | |

WARRANTIES APPLIED:    PARTS NOT COVERED
TAX EXEMPT NUMBERS:    NC    201-1-060-00191    TAXES:

STATE    0.00

VFS Leasing v. G.F. Kelly
Plaintiffs'
Doc. Prod.    P 000566

ALL INVOICES DUE AND PAYABLE TO: P.O. Box 601776, Charlotte, NC 28260-1776

TERMS: NET 10TH PROX unless otherwise specified. A service charge of 1 1/2% per month (effective rate of 18% per annum) will be charged on past due amounts. Any claims for shortages or deductions for erroneous charges must be made within thirty days after receipt of goods. WARRANTY: The liability of Cummins Atlantic Inc. is limited to the obligations provided in the warranty provisions which are set forth on the reverse side hereof.

| | |
|---|---|
| SUB TOTAL: | 2,880.10 |
| TOTAL TAX: | 0.00 |
| TOTAL AMOUNT: US $ | 2,880.10 |

AUTHORIZED BY : _____    DATE : _____

DEFENDANT'S
EXHIBIT
tabbies Miller 19

*Att: Chris*

# POZZO Illinois Inc.    Sales, Service & Leasing

94 E. SAUK TRAIL • SO. CHICAGO HEIGHTS, IL 60411-6547 • (708) 756-3500 • FAX (708) 756-8486

*R+T TRUCK SALES*
*ATTN RON THOMAS*

PAGE   1   DATE 12/15/05      ESTIMATE FOR REPAIRS   BRANCH 02 ESTIMATE NO.2W10064
                             EXPIRES  1/14/06
         TIME PROMISED        EST COMPLETION DATE 12/15/05

    F   CASH TAXABLE
    O
    R

CUSTOMER NUMBER

SERVICE WRITER  KEVIN ROSENTHAL

| EQUIPMENT | 2000 OTHER | MODEL VOLVO | SERIAL# | 1N314764 |
| INFORMATION | | | UNIT# | 192 |
| | | | ODOMETER | 425,422 |
| | IN-SERVICE  0/00/00 | Miles | LICENSE | |

ESTIMATE SUMMARY

| SEG | DESCRIPTION | LABOR | PARTS/MISC. | TOTAL |
| 01 | ESTIMATE TO REPLACE TRANS. | 910.00 | 4,579.45 | 5,489.45 |
| | | 910.00 | 4,579.45 | 5,489.45 |

TAX EXEMPT

ESTIMATE TOTAL                5,489.45

## I N T E R N A L

CUST# &INTU   INTERNAL USED TRUCKS

*12/16/05*
*500-200(308-417*
*vin # 314764*
*G.F.Kelly*
*ok to pay*
*W.Nelson*

NO MATERIAL TO BE RETURNED WITHOUT OUR PERMISSION. CLAIMS OR RETURNS MUST BE MADE WITHIN 10
DAYS, ACCOMPANIED BY THIS INVOICE. RETURNS ARE SUBJECT TO HANDLING CHARGE.

A FINANCE CHARGE AT A PERIODIC RATE OF 1 1/2% PER MONTH, WHICH IS AN ANNUAL PERCENTAGE RATE OF 19%
WILL BE CHARGED ON ALL ACCOUNTS PAST DUE 30 DAYS. REASONABLE ATTORNEY FEES AND COSTS ADDED IF ACCOUNT PLACED
FOR COLLECTION

ACCOUNTS OVER 45 DAYS PAST DUE WILL BE PUT ON HOLD WITHOUT NOTICE UNTIL PAYMENT MADE IN FULL.

VFS Leasing v. G.F. Kelly
Plaintiffs'
Doc. Prod.  P 000560

**IN THE UNITED STATES DISTRICT COURT FOR THE**
**MIDDLE DISTRICT OF ALABAMA**

| | |
|---|---|
| VFS LEASING CO., | ) |
| | ) |
| **PLAINTIFF,** | ) |
| | )     **CIVIL ACTION NO.: 3:06CV638-SRW** |
| VS. | ) |
| | ) |
| G. F. KELLY, INC d/b/a KELLY | ) |
| TRUCKING; and GUY KELLY, | ) |
| | ) |
| **DEFENDANTS.** | ) |

## AFFIDAVIT OF CHARLES LANCE

STATE OF ALABAMA
COUNTY OF RANDOLPH

      Before me, the undersigned authority in and for said state and county personally appeared Charles Lance who, after being duly sworn, deposes and says as follows:

      1.     My name is Charles Lance and I have personal knowledge of the matters and things set forth herein.

      2.     I have over 30 years of experience in estimating and performing repairs on over-the-road trucks.  I am familiar with the costs of labor and materials for all types of mechanical and body repairs.

      3.     I was employed by G. F. Kelly, Inc. ("Kelly Trucking") during the time the 21 Volvo trucks at issue were in operation.  I was involved in inspecting and working on these trucks on many occasions.  I was also working for Kelly Trucking at the time the trucks were repossessed by Volvo.  Thus, I am familiar with the condition of the trucks at the time possession was turned over to the plaintiff.

      4.     I reviewed the appraisal reports on the 21 trucks at issue that have been produced by Volvo.  Each report contains an estimation of reconditioning expenses for repairs which Volvo claims are necessary to bring the truck to a wholesale condition.

      5.     Based on my knowledge on the conditions of these trucks at the time of repossession, it is my opinion that many of these repairs are excessive and are not necessary to bring the trucks to wholesale condition.  In the selling of used trucks, it is industry standard that the truck should be in wholesale condition at the time it is sold, nothing more or nothing less.  The repairs shown on these appraisal reports would result in the trucks being in more than wholesale condition which is not in keeping with the standard.

      6.     More importantly, the estimates of the costs of labor and materials to make the listed repairs are also greatly excessive.  I have evaluated the costs of these repairs based on my knowledge and experience, and have determined the actual costs of the same repairs.  Attached is a chart comparing the reconditioning expense contained in the appraisal report (third column) with my opinion of the actual costs of these repairs (fourth column).  The chart also shows the

difference between the Volvo estimate and what, in my opinion, are the actual costs of these repairs, including all necessary parts and labor.  The total difference is more than $50,000.00.

7.     Based on my review of portions of the deposition of Kevin Miller, an employee of Volvo, prospective purchasers of these trucks were provided with the appraisal reports showing these excessive costs to recondition the trucks.  These excessive reconditioning expenses would logically have resulted in lower bids by the prospective purchasers.  Had reasonable and accurate estimates of the costs of this reconditioning been provided, bids would have been higher and aligned with the actual value of the trucks.

8.     Plaintiff is also attempting to charge $500.00 each for detailing eight trucks.  This is a total of $4,000.00.  This charge is unreasonable and excessive.  In 2005 a reasonable charge for detailing a used truck in advance of placing it on the market for resale would be $125.00.  Thus, a reasonable charge for detailing six trucks would be $1,000.00.

## COMPARISON OF RECONDITIONING EXPENSES

| GFK Truck No. | Serial No. (Last3) | VFS Recon Expenses | Actual Recon Expenses | Difference |
|---|---|---|---|---|
| 102 | 013 | $4020 | $1950 | $2070 |
| 104 | 014 | $7885 | $4253 | $3652 |
| 103 | 015 | $6950 | $3665 | $3285 |
| 105 | 016 | $11265 | $9855 | $1410 |
| 106 | 017 | $6490 | $3455 | $3035 |
| 107 | 018 | $8250 | $5070 | $3180 |
| 108 | 019 | $6200 | $3515 | $2685 |
| 109 | 020 | $8625 | $5655 | $2970 |
| 110 | 021 | $8040 | $4100 | $3940 |
| 168 | 738 | $4080 | $2390 | $1690 |
| 169 | 739 | $5920 | $3115 | $2805 |
| 190 | 763 | $6300 | $3490 | $2810 |
| 192 | 764 | $4825 | $2040 | $2785 |
| 193 | 762 | $4940 | #2990 | $1950 |
| 194 | 584 | $4580 | $2565 | $2015 |
| 197 | 989 | $9470 | $6190 | $3280 |
| 243 | 958 | $4960 | $2790 | $2170 |
| 242 | 954 | $2220 | $1235 | $985 |
| 241 | 953 | $4700 | $2665 | $2035 |
| 240 | 952 | $7235 | $4995 | $2240 |
| 244 | 959 | $8200 | $5550 | $2650 |
| **TOTAL** | | **$135,155** | **$81,563** | **$53,592** |

/s/ Charles Lance
Charles Lance


SWORN TO AND SUBSCRIBED BEFORE ME this the 12th day of February, 2007


/s/ Kathleen W. Newman

Notary Public
My Commission Expires: 2/19/2007