IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| VFS LEASING CO., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 3:06cv638-SRW |
| | ) | (WO) |
| G. F. KELLY, INC. d/b/a KELLY | ) | |
| TRUCKING, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff VFS Leasing Co. ("VFS") brings claims against defendant G.F. Kelly, Inc.

d/b/a/ Kelly Trucking ("GFK") arising from GFK's default of its obligations pursuant to two

agreements for the lease of a number of tractors.   Plaintiff also sues defendant Guy Kelly for

breach of a contract guaranteeing GFK's obligations under the lease agreements..  Plaintiff

demands judgment from defendants in the amount of $318,841.57, plus interest, costs and

attorneys' fees.  This action is presently before the court on plaintiff's motion for summary

judgment.  Upon consideration of the motion, the court concludes that it is due to be

GRANTED as to liability and DENIED as to the amount of damages.

## THE SUMMARY JUDGMENT STANDARD

A party seeking summary judgment bears the initial burden of demonstrating to the

court the basis for its motion, and identifying those portions of the pleadings, depositions,

answers to interrogatories, and admissions that it believes show an absence of any genuine

issue of material fact.  Hairston v. Gainesville Publishing Co., 9 F.3d 913 (11th Cir. 1993).

For summary judgment purposes, an issue of fact is "material" if it is a legal element of the claim, as identified by the substantive law governing the case, such that its presence or absence might affect the outcome of the suit.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party.  Matsushita Electrical Industrial Company v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  The court must view the evidence, and all factual inferences properly drawn from the evidence, in the light most favorable to the nonmoving party.  Welch v. Celotex Corp., 951 F.2d 1235, 1237 (11th Cir. 1992); Rollins v. TechSouth, Inc., 833 F.2d 1525, 1528 (11th Cir. 1987).  It is improper for this court to weigh conflicting evidence or make credibility determinations; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  Anderson, 477 U.S. at 255.  Where a reasonable fact finder may "draw more than one inference from the facts, and that inference creates a genuine issue of material fact, then the court should refuse to grant summary judgment."  Barfield v. Brierton, 883 F.2d 923, 933-34 (11th Cir. 1989) (citation omitted).

Where the moving party will bear the burden of proof at trial,

that party must show affirmatively the absence of a genuine issue of material fact: it must support its motion with credible evidence . . . that would entitle it to summary judgment unless the non-moving party, in response, come[s] forward with significant, probative evidence demonstrating the existence of a triable issue of fact.

Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993)(quoting United States v. Four Parcels of Real Property, 941 F.2d 1428, 1438 (11th Cir. 1991)(en banc)).

2

# DISCUSSION

## Background

The twenty-one tractors at issue in this case were leased pursuant to two master lease agreements entered into between the parties[1] on February 11, 1997 and December 10, 1997, and are identified in various schedules to those leases. After GFK failed to provide insurance information and to make payments required by the leases, VFS repossessed the tractors and sold them. (Craver aff., ¶¶ 17-19). VFS now claims entitlement to deficiencies remaining on the leases after the sales.

VFS seeks recovery pursuant to the remedies provision of the leases, which states, in pertinent part:

> Whenever an Event of Default has occurred under this Agreement, Lessor will have all the rights and remedies provided by this Agreement, the UCC and other applicable law. Lessor's rights and remedies are cumulative. At the option of Lessor, with or without notice, Lessor's rights to the Vehicles may be canceled and all rental payments and other amounts owed under this Agreement will be immediately due and payable in full, together with all costs and expenses, including attorneys' fees, incurred by Lessor in the enforcement of its rights and remedies under this Lease. Lessor may take possession of any Vehicles (with or without legal process) and, to the extent permitted by law, may enter any locked or unlocked premises for that purpose. Lessor may, at its option, sell, lease, or otherwise dispose of any or all of the Vehicles after it obtains possession. Upon such sale, Lessee will pay to Lessor immediately, as liquidated damages for loss of bargain and not as a penalty, the amount by which the Stipulated Loss Value exceeds the net sales proceeds of such Vehicles in addition to all other amounts due.

---

[1] GFK entered into the agreements with Volvo Truck Finance North America Inc. VFS is the successor in interest to Volvo Commercial Finance LLC The Americas, which was the successor in interest to Volvo Commercial Finance Inc. The Americas, formerly known as Volvo Truck Finance North America Inc. (Craver aff., ¶ 2).

(Exhibits A and B to Craver aff., ¶ 17; <u>see also</u> Exhibit E (plaintiff's deficiency calculations)).[2] The agreement requires the Lessee to pay repair and reconditioning costs for repossessed vehicles which do not meet certain specifications. (Master leases, ¶ 12).

GFK concedes that it is in default and that it owes some amount of money to VFS, but it disputes the amount owed under the leases. (Defendants' brief, Doc. # 20, p. 2). Specifically, defendants contend that the fees and costs VFS seeks to charge for the repossession, inspection, detailing and repair are excessive, and that the amount realized by VFS from the sale of the tractors is less than it would have been had VFS conducted the sales in a commercially reasonable manner.

**Plaintiff's Motion to Strike**

In opposition to the motion for summary judgment, defendants have filed the affidavits of defendant Guy Kelly and Charles Lance. In his affidavit, Kelly, the President of GFK, states his opinion that plaintiff is attempting to charge excessive amounts for repossession expense, inspection fees and detailing fees, and maintains that VFS did not sell the trucks following repossession in a commercially reasonable manner and in keeping with the standard in the industry. Lance was employed by GFK and was involved in inspecting and repairing the trucks at issue. His affidavit states that the estimate of reconditioning and repair expenses in the appraisal reports for the vehicles were excessive and, since they were provided to prospective purchasers, would logically have resulted in lower bids. He further

---

[2] The remainder of the provision deals with rights and remedies not at issue in this case, including the amount due when the Lessor does not take possession of the vehicles.

4

maintains that the charges for detailing eight trucks were unreasonable and excessive.

Plaintiff moves to strike these affidavits, arguing that defendants have not demonstrated that Kelly and Lance are sufficiently qualified to testify as experts in the area of the sale of used commercial tractors in the wholesale market after repossession, and that their opinions are based on speculation and conjecture. Defendants respond that the affidavits "show on their face that the affiants are qualified to give the opinions contained therein," and that "[a]ny evidence presented in the Motion to Strike goes to the weight of the testimony and not the admissibility." (Doc. # 38).

"On a motion for summary judgment, disputed issues of fact are resolved against the moving party[.] But the question of admissibility of expert testimony is not such an issue of fact[.]" General Elec. Co. v. Joiner, 522 U.S. 136 (1997). In determining the admissibility of expert testimony under Rule 702, the court considers whether: "'(1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert [v. Merrill Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993)]; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.'" United States v. Frazier, 387 F.3d 1244, 1260 (11th Cir. 2004)(quoting City of Tuscaloosa v. Harcros Chems., Inc., 158 F.3d 548, 562 (11th Cir. 1998)). "The proponent of expert testimony always bears 'the burden to show that his expert is "qualified to testify

competently regarding the matters he intend[ed] to address; [] the methodology by which the expert reach[ed] his conclusions is sufficiently reliable; and [] the testimony assists the trier of fact.'" The burden of establishing qualification, reliability, and helpfulness rests on the proponent of the expert opinion, whether the proponent is the plaintiff or the defendant in a civil suit, or the government or the accused in a criminal case." Frazier, 387 F.3d at 1260 (citations omitted)(alterations in original).

In his deposition, Kelly testified that he has no knowledge of the standard charges of a repossession company, the basis of the charges by the particular repossession company used by VFS in this case, or whether it charged other customers the same or a similar fee. He further testified that he does not know the basis of the inspection fee charges or the amount the inspection company charges its other customers, that he does not know of any other companies that perform inspections in connection with repossessions and sales, and that he has no experience with inspection fees in connection with repossessions. He has used an outside vendor to wash and clean the exterior of his trucks, but the vendor did not clean the inside of the trucks. He does not know what was involved in the detailing of the eight trucks for which there were detailing charges. His experience in selling tractors involved the sale of two trucks to a dealer within the year before his deposition and the sale of tractors at auction within the six months preceding the deposition. He has not ever purchased a tractor at any type of auction. (Kelly depo., pp. 18-20, 26, 63-66, 72-74). While Kelly has over twenty years of experience in the trucking industry, his affidavit and deposition testimony

do not demonstrate that he is qualified to testify about industry standards regarding repossession, reconditioning and sale of used tractors.

Even assuming that defendants have demonstrated that Kelly is qualified by experience to render the opinions in his affidavit, defendants have not met their burden of establishing the admissibility of those opinions. "'[I]f the witness is relying solely or primarily on experience, then the witness must explain *how* that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts. The trial court's gatekeeping function requires more than simply "taking the expert's word for it."'" Id. at 1261(quoting Committee Note to 2000 Amendments of Rule 702). "[I]t remains a basic foundation for admissibility that '[p]roposed [expert] testimony must be supported by appropriate validation – *i.e.*, "good grounds," based on what is known.'" Id. (quoting Daubert, 509 U.S. at 590). "An expert's opinion that lacks any credible support does not create an issue of fact." American Key Corp. v. Cole Nat. Corp., 762 F.2d 1569 (11th Cir. 1985)(citation omitted).

Charles Lance states that he has over thirty years of experience in estimating and performing repairs on over-the-road trucks and that he is familiar with the costs of labor and materials for all types of mechanical and body repairs. (Lance aff., ¶ 2). He states that "[i]n the selling of used trucks, it is industry standard that the truck should be in wholesale condition at the time it is sold, nothing more or nothing less" and expresses his opinion that the repairs shown on appraisal reports provided to VFS "would result in the trucks being in

more than wholesale condition which is not in keeping with the standard." (<u>Id</u>.,¶ 5).[3]  Lance

also states that the $500 detailing charge for the eight trucks is excessive and that "[i]n 2005

a reasonable charge for detailing a used truck in advance of placing it on the market for resale

would be $125.00."  (<u>Id</u>., ¶ 8).  Lance further states that "[h]ad reasonable and accurate

estimates of the costs of . . . reconditioning been provided [to prospective purchasers] bids

would have been higher and aligned with the actual value of the trucks."  (<u>Id</u>., ¶ 7).  Lance

testified that he has no experience in buying or selling vehicles at auction.  (Lance depo., p.

41).  Lance's description of his experience with repairing over-the-road trucks does not

demonstrate that he is qualified to testify regarding industry standards as to the sale of used

trucks, acceptable charges for detailing such trucks in preparation for sale, or the valuation

of used trucks.

> In his affidavit, Lance further testifies as follows:

> [T]he estimates of the costs of labor and materials to make the listed repairs are
> also greatly excessive.  I have evaluated the costs of these repairs based on my
> knowledge and experience, and have determined the actual costs of the same
> repairs.  Attached is a chart comparing the reconditioning expense contained
> in the appraisal report (third column) with my opinion of the actual costs of
> these repairs (fourth column).  The chart also shows the difference between the
> Volvo estimate and what, in my opinion, are the actual costs of these repairs,
> including all necessary parts and labor.  The total difference is more than
> $50,000.00.

(Lance aff., ¶ 6).  However, in his deposition testimony, Lance makes clear that his estimate

---

[3] In his deposition, Lance testified that the standard to which he refers in paragraph 5 is the
"Kelly Trucking standards," *i.e.*, "it would be repaired to what we would do it for if we had it at the
shop."  (Lance depo., pp. 39-41).

is based on what it would have cost for him, as an employee of GFK, to perform the repair in house. (Lance depo., p. 22-23). He does not state whether it is customary for appraisal reports to include estimates for reconditioning based on costs to repair a vehicle in house or whether it is commercially reasonable for a financing company to rely on such reports, nor has plaintiff demonstrated that Lance would be qualified to render opinions on these issues. Thus, plaintiff has not demonstrated that Lance's testimony would "assist[] the trier of fact, through the application of scientific, technical or specialized expertise, to understand the evidence or to determine a fact in issue." Frazier, *supra*, 387 F.3d at 1260. Additionally, as noted above, "'[i]f the witness is relying solely or primarily on experience, then the witness must explain *how* that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Id., at 1261. Lance's affidavit fails to explain why his experience performing in house repairs for GFK is a sufficient basis for his opinion that the reconditioning estimates provided in the appraisal report – which may or may not be based on the cost of repairing the vehicles in house – are "greatly excessive."

Accordingly, plaintiff's motion to strike the affidavits of Kelly and Lance is due to be granted. However, the determination that defendants' affidavits are inadmissible does not end the court's inquiry. As defendants argue, plaintiff filed no evidence with its motion regarding whether the sales and charged expenses were commercially reasonable. Whether plaintiff is entitled to judgment in the amount it seeks depends upon whether the sales and

expenses are required to be reasonable and, if so, which party bears the burden of proof on that issue.

### Requirement for Commercial Reasonableness

The equipment lease at issue is governed by Article 2A of the Uniform Commercial Code, as adopted in North Carolina.[4]  The statute pertaining to the lessor's damages in the event of a breach by the lessee defers to the agreement of the parties "with respect to damages liquidated in the lease agreement." N.C.G.S.A. § 25-2A-528(1).  Damages payable upon default "may be liquidated in the lease agreement but only at an amount or by a formula that is reasonable in light of the then-anticipated harm caused by the default or other act or omission." N.C.G.S.A. § 25-2A-504.   The statute does not specify that a lessor's sale of repossessed equipment must be commercially reasonable, nor does the parties' agreement expressly include this requirement.  As noted above, the liquidated damage formula is established by the agreement as "the amount by which the Stipulated Loss Value exceeds the net sales proceeds of such Vehicles in addition to all other amounts due."  Upon review of the governing statutory and case law, the court concludes that this provision is enforceable only if the formula is reasonable, and that the formula is reasonable only if it is interpreted to include a requirement that "net sales proceeds" be in an amount which would be realized

---

[4]  The choice-of-law provision of the master leases and the guaranty state that they are governed by North Carolina law.  (Master leases, ¶ 23; Guaranty).

by a commercially reasonable sale.[5]

In reaching this conclusion the court is guided by rules of contract interpretation, under which the court is required to interpret a contract so as to make the agreement lawful and effective. See Gilmore v. Garner, 157 N.C. App. 664, 580 S.E.2d 15 (N.C. App. 2003)("'Intention or meaning in a contract may be manifested or conveyed either expressly or impliedly, and it is fundamental that that which is plainly or necessarily implied in the language of a contract is as much a part of it as that which is expressed. If it can be plainly seen from all the provisions of the instrument taken together that the obligation in question was within the contemplation of the parties when making their contract *or is necessary to carry their intention into effect*, the law will imply the obligation and enforce it.'")(quoting Lane v. Scarborough, 284 N.C. 407, 410-11, 200 S.E.2d 622, 625 (1973))(emphasis added). Additionally, the parties' agreement is subject to a statutory duty of good faith (see N.C.G.S.A. 25-1-304) which is defined as "honesty in fact and the observance of reasonable commercial standards of fair dealing" (N.C.G.S.A. § 25-1-201(20)). See L.C. Williams Oil Co., Inc. v. Exxon Corp., 625 F. Supp. 477 (M.D.N.C. 1985)("The purpose of the [UCC's] good faith obligation is to determine the terms to be implied in the contract when the terms are *not* expressly provided."). The statutory good faith obligation may not be disclaimed by contract. (N.C.G.S.A. § 25-1-302(b); see also UCC Comment to N.C.G.S.A. § 25-2A-101). Further, the court notes – by way of analogy – that the statutory provision for incidental

---

[5] Defendants do not contend that the provision is unenforceable. Rather, they dispute plaintiff's calculation of damages pursuant to the provision.

damages to a lessor include only "commercially reasonable" charges and expenses incurred in connection with the disposition of goods (N.C.G.S.A. § 25-2A-530).  Also, lessors who choose to enter substitute leases may use the terms of such leases to prove damages only if the new lease agreement is made in a "commercially reasonable" manner and, otherwise, must prove damages by resort to "market rent" (N.C.G.S.A. § 25-2A-527(2),(3); § 25-2A-528).

Accordingly, the court concludes that the parties' contractual remedies provision measures plaintiff's damage by reference to commercially reasonable expenses and the net sales proceeds realized from the commercially reasonable sale of the repossessed tractors.

**Burden of Proof**

As noted above, plaintiff filed no evidence with its motion regarding whether the sales and charged expenses were commercially reasonable.  Defendants contend that plaintiff bears the burden of establishing commercial reasonableness and, thus, that it has failed to establish its entitlement to summary judgment.  (Doc. # 20, p. 7).  Plaintiff argues that the issue of whether the sales were commercially reasonable arises only in the context of the affirmative defense of failure to mitigate. (Doc. # 27).

Plaintiff does not seek actual damages in this case but, instead, seeks damages pursuant to the liquidated damages clause.  As discussed above, this clause includes an implied term of commercial reasonableness.  The parties have cited no binding authority on the issue of the burden of proof on this implied term, and the court has found none.  In cases

12

involving the analogous statutory remedies provision pertaining to secured transactions under Article 9 of the UCC (see N.C.G.S.A. § 25-9-610 (formerly § 9-504(1), (3)), a secured creditor seeking a deficiency judgment bears the burden of establishing that its sale of collateral was conducted in a commercially reasonable manner.  North Carolina National Bank v. Burnette, 297 N.C. 524, 529, 256 S.E.2d 388, 391 (1979).[6]  Likewise, in the context of a seller's resale of goods upon default by a buyer under Article 2 (see N.C.G.S.A. § 25-2-706(1)),[7] the seller seeking to recover damages measured by the difference between the resale price and the contract price bears the burden of proving that the sale was conducted in a commercially reasonable manner.  Larsen Leasing, Inc. v. Thiele, Inc., 749 F. Supp. 821 (W.D. Mich. 1990)(applying Michigan law); Cook Composites, Inc. v. Westlake Styrene Corporation, 15 S.W.3d 124, 137 (Tex. App. - Houston (14th Dist.) 2000).

In resolving the issue of the burden of proving commercial reasonableness under UCC section 2-706, the Cook Composites court reasoned:

> Characterizing the requirements set forth in section 2.706 as elements of a seller's *prima facie* case for recovery of damages is also consistent with the way Texas courts have traditionally distinguished affirmative defenses from the elements of a *prima facie* case. Generally speaking, affirmative defenses

---

[6] Plaintiff argues that it is not "technically appropriate to apply Art. 9 in this case," that the "Article 9 'commercially reasonable' requirements do not apply verbatim where the transaction at issue does not involve an ownership interest in the property," and that defendants had no equity interest in the leased tractors.  (Doc. # 27, p. 2 n. 2).  The court agrees that Article 9, which pertains to secured transactions, is not applicable to this case and refers to the Article 9 provision and case law only by analogy.

[7] The Article 2 situation is more closely analogous to Article 2A leases than is a secured creditor transaction.

13

are any propositions that a defendant may interpose to defeat the plaintiff's *prima facie* case. See W.R. Grace Co. v. Scotch Corp., Inc., 753 S.W.2d 743, 746 (Tex.App.-Austin 1988, writ denied). "They do not rebut any factual propositions asserted in the plaintiff's case, but open the way for the defendant to adduce evidence establishing an *independent* reason why the plaintiff may not recover." Id. "An affirmative defense usually accepts the existence at one time or another of a *prima facie* case but alleges propositions which, if established, would defeat the claim." Cooper v. Scott Irr. Const., Inc., 838 S.W.2d 743, 747 (Tex.App.-El Paso 1992, no writ) (dissenting opinion). By claiming that Westlake failed to give presale notice and failed to act in a commercially reasonable manner, CCP is not seeking to establish independent reasons why Westlake should not recover damages under section 2.706; rather, these allegations tend to rebut the factual propositions necessary for Westlake to recover under section 2.706.

Finally, in making the determination, we note that the seller is in the best position to know what affirmative steps were taken to ensure the sale was conducted in a commercially reasonable manner and whether notice of intent to resell was given to the buyer. It would make no sense to impose the burden on the buyer to prove a negative as an affirmative defense, i.e., to prove the seller's failure to satisfy the elements of section 2.706. Considering the plain language of the statute and other UCC states' characterizations, and applying traditional notions of Texas jurisprudence, we find that presale notice and commercial reasonableness are elements of a *prima facie* claim for damages and not affirmative defenses.

Cook Composites, *supra*, 15 S.W.3d at 137 -138; see also Wallace v. Haserick, 105 N.C. App. 315, 412 S.E.2d 694, 695 (N.C.App. 1992)("Generally, a defense which contests one or more of the material allegations of the complaint is not an affirmative defense since it involves an element of the plaintiff's prima facie case.").[8]

With regard to the burden of proof, there is no meaningful distinction between an

---

[8] Plaintiff alleges in its complaint that the tractors were "sold in a commercially reasonable manner." (Complaint, ¶ 24). In their answer, defendants denied this allegation.

element expressly set forth in a statutory remedies provision and an element necessarily implied in an agreed remedies provision. Accordingly, in order to recover the damages specified in the liquidated damages clause, plaintiff bears the burden of establishing that the "net sales proceeds" were realized from commercially reasonable sales and expenses. In support of its motion, plaintiff filed no evidence relating to this element of its claim for damages. Since plaintiff has affirmatively failed to establish its entitlement to relief, the motion for summary judgment is due to be denied as to plaintiff's claim for damages.[9]

## Kelly's Liability

Plaintiff has introduced evidence that defendant Kelly executed continuing guaranty agreements with regard to the obligations incurred by GFK to Volvo Commercial Finance and that he received notice of GFK's default. (Exhibit C, F to Craver aff.). Kelly does not specifically concede his liability under the guaranty agreement. However, he has failed to introduce any evidence demonstrating the existence of any genuine issue of material fact regarding the enforceability of the guaranty contract and the evidence establishes that GFK was in default of its obligations to VFS. "A guarantor's liability arises at the time of the

---

[9] With its reply brief, Plaintiff filed evidence directed to the issue of commercial reasonableness. In response to defendants' motion to strike this evidence, plaintiff argued that the evidence was filed in rebuttal to defendants' expert witness testimony. The court has concluded, however, that plaintiff was required to establish commercial reasonableness to establish its claim for damages. Because the additional evidence was submitted with the reply, defendants did not have the requisite opportunity to respond to the evidence on the present motion. Additionally, plaintiff does not dispute defendants' representation that neither Cox nor Weachter were identified as experts by the deadline established in the court's scheduling order. Accordingly, defendants' motion to strike the declarations (Doc. # 32) is due to be granted, and the court will not consider the additional evidence filed with plaintiff's reply brief.

15

default of the principal debtor on the obligation or obligations which the guaranty covers.

<u>Gillespie v. DeWitt</u>, 53 N.C. App. 252, 280 S.E.2d 736 7 (N.C. App. 1981)(citation omitted).

Accordingly, VFS is entitled to summary judgment as to Kelly's liability.

## CONCLUSION

For the foregoing reasons, it is ORDERED that:

(1) plaintiff's motion to strike the affidavits of Kelly and Lance (Doc. # 29) is GRANTED;

(2) defendants' motion to strike the declarations of Cox and Weachter (Doc. # 32) is GRANTED;

(3) defendants' motion to strike evidentiary submission (Doc. # 31) is GRANTED;

(4) plaintiff's motion for leave of court to modify scheduling order (Doc. # 35) is DENIED; and

(5) plaintiff's motion for summary judgment (Doc. # 12) is GRANTED as to the liability of defendants, and DENIED as to damages.

DONE, this 13th day of July, 2007.


/s/ Susan Russ Walker
SUSAN RUSS WALKER
UNITED STATES MAGISTRATE JUDGE

16

A copy of this checklist is available at the website for the USCA, 11th Circuit at www.ca11.uscourts.gov
Effective on April 9, 2006, the new fee to file an appeal will increase from $255.00 to $455.00.

## <u>CIVIL APPEALS JURISDICTION CHECKLIST</u>

1.    **<u>Appealable Orders:</u>** Courts of Appeals have jurisdiction conferred and strictly limited by statute:

   (a)    **Appeals from final orders pursuant to 28 U.S.C. § 1291:** Only final orders and judgments of district courts, or final orders of bankruptcy courts which have been appealed to and fully resolved by a district court under 28 U.S.C.§ 158, generally are appealable. A final decision is one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." <u>Pitney Bowes, Inc. v. Mestre</u>, 701 F.2d 1 365, 1 368 ( 11th Ci r. 1 983). A magistrate judge's report and recommendation is not final and appealable until judgment thereon is entered by a district court judge. 28 U.S.C. § 636(c).

   (b)    **In cases involving multiple parties or multiple claims,** a judgment as to fewer than all parties or all claims is not a final, appealable decision unless the district court has certified the judgment for immediate review under Fed.R.Civ.P. 54(b). <u>Williams v. Bishop</u>, 732 F.2d 885, 885- 86 (11th Cir. 1984). A judg ment which resolves all issues except matters, such as attorneys' fees and costs, that are collateral to the merits, is immediately appealable. <u>Budinich v. Becton Dickinson & Co.</u>, 486 U.S.196, 201, 108 S.Ct. 1717, 1721-22, 100 L .Ed.2d 178 (1988); <u>LaChance v. Duffy's Draft House, Inc.</u>, 146 F.3d 832, 837 (11th Cir. 1998).

   (c)    **Appeals pursuant to 28 U.S.C. § 1292(a):** Appeals are permitted from orders "granting, continuing, modifying, refusing or dissolving injunctions or refusing to dissolve or modify injunctions . . ." and from "[i]nterlocutory decrees . . . determining the rights and liabilities of parties to admiralty cases in which appeals from final decrees are allowed." Interlocutory appeals from orders denying temporary restraining orders are not permitted.

   (d)    **Appeals pursuant to 28 U.S.C. § 1292(b) and Fed.R.App.P. 5**: The certification specified in 28 U.S.C. § 1292(b) must be obtained before a petition for permission to appeal is filed in the Court of Appeals. The district court's denial of a motion for certification is not itself appealable.

   (e)    **Appeals pursuant to judicially created exceptions to the finality rule:** Limited exceptions are discussed in cases including, but not limited to: <u>Cohen v. Beneficial Indus. Loan Corp.</u>, 337 U.S. 541, 546, 69S.Ct. 1221, 1225-26, 93 L.Ed. 1528 (1949); <u>Atlantic Fed. Sav. & Loan Ass'n v. Blythe Eastman Paine Webber, Inc.</u>, 890 F.2d 371, 376 (11th Cir. 1989); <u>Gillespie v. United States Steel Corp.</u>, 379 U.S. 148, 157, 85 S.Ct. 308, 312, 13 L.Ed.2d 199 (1964).

*Rev.: 4/04*

2.  **Time for Filing**: The timely filing of a notice of appeal is mandatory and jurisdictional. Rinaldo v. Corbett, 256 F.3d 1276, 1278 (11th Cir. 2001). In civil cases, Fed.R.App.P. 4(a) and (c) set the following time limits:

(a)  **Fed.R.App.P. 4(a)(1):** A notice of appeal in compliance with the requirements set forth in Fed.R.App.P. 3 must be filed in the district court within 30 days after the entry of the order or judgment appealed from. However, if the United States or an officer or agency thereof is a party, the notice of appeal must be filed in the district court within 60 days after such entry. **THE NOTICE MUST BE RECEIVED AND FILED IN THE DISTRICT COURT NO LATER THAN THE LAST DAY OF THE APPEAL PERIOD – no additional days are provided for mailing.** Special filing provisions for inmates are discussed below.

(b)  **Fed.R.App.P. 4(a)(3):** "If one party timely files a notice of appeal, any other party may file a notice of appeal within 14 days after the date when the first notice was filed, or within the time otherwise prescribed by this Rule 4(a), whichever period ends later."

(c)  **Fed.R.App.P. 4(a)(4):** If any party makes a timely motion in the district court under the Federal Rules of Civil Procedure of a type specified in this rule, the time for appeal for all parties runs from the date of entry of the order disposing of the last such timely filed motion.

(d)  **Fed.R.App.P. 4(a)(5) and 4(a)(6):** Under certain limited circumstances, the district court may extend the time to file a notice of appeal. Under Rule 4(a)(5), the time may be extended if a motion for an extension is filed within 30 days after expiration of the time otherwise provided to file a notice of appeal, upon a showing of excusable neglect or good cause. Under Rule 4(a)(6), the time may be extended if the district court finds upon motion that a party did not timely receive notice of the entry of the judgment or order, and that no party would be prejudiced by an extension.

(e)  **Fed.R.App.P. 4(c):** If an inmate confined to an institution files a notice of appeal in either a civil case or a criminal case, the notice of appeal is timely if it is deposited in the institution's internal mail system on or before the last day for filing. Timely filing may be shown by a declaration in compliance with 28 U.S.C. § 1746 or a notarized statement, either of which must set forth the date of deposit and state that first-class postage has been prepaid.

3.  **Format of the notice of appeal:** Form 1, Appendix of Forms to the Federal Rules of Appellate Procedure, is a suitable format. See also Fed.R.App.P. 3(c). A pro se notice of appeal must be signed by the appellant.

4.  **Effect of a notice of appeal:** A district court loses jurisdiction (authority) to act after the filing of a timely notice of appeal, except for actions in aid of appellate jurisdiction or to rule on a timely motion of the type specified in Fed.R.App.P. 4(a)(4).